**THE QUINLAN LAW FIRM, LLC**
William J. Quinlan, State Bar No. 028679
2415 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
Tel: 602.732.6500
Dir: 312.629.6012
E-Mail: wjq@quinlanfirm.com

David E. Hutchinson (*pro hac vice forthcoming*)
233 S. Wacker Drive, 61st Floor
Chicago, Illinois 60606
Tel: 312.883.5500
Dir: 312.971.8966
E-Mail: dhutchinson@quinlanfirm.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Mountains of Spices, LLC, a New York limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Sara Lihong Wei Lafrenz a/k/a Sara Wei, Xiuzhu Wei, Maywind Trading LLC, Jian Peng, Qishen Chen, and Jianjun Wang,<br><br>Defendants. | CASE NO. _____<br><br>**VERIFIED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Mountains of Spices, LLC ("MOS"), by their undersigned counsel, alleges as follows against Defendants Sara Lihong Wei Lafrenz a/k/a Sara Wei ("Sara"), Xiuzhu Wei ("Devin"), Maywind Trading LLC ("Maywind"), Jian Peng ("Jian"), Qishen Chen ("Chen"), and Jianjun Wang ("Wang"):

I. **INTRODUCTION**

1.      This action concerns Defendants' exploitation of a community loan program ("Loan Program") to their own ends, including the unlawful taking of funds from the Loan Program, and acts of fraud to conceal their theft committed either as administrators of the Loan Program or recipients of lender funds.

2. Plaintiff MOS is part of the anti-Chinese Communist Party ("anti-CCP") whistleblower movement ("the Movement"). The Movement consists predominantly of Chinese and Hong Kong nationals and community organizations, colloquially called "Farms," located throughout the world with the human rights mission to promote freedom and democracy in China. Farms are typically organized in a particular geographic area, such as New York or Phoenix. The organization of individual Farms vary, with some organized under a particular business entity and others organized less formally. For instance, the New York Farm is organized and operates via MOS; the Phoenix Farm, which Sara has been a leader of, is not organized under a particular business entity, although at times it operated through Maywind.

3. MOS and other members of the Movement have publicly exposed CCP human rights abuses and corruption through protests and created social media platforms allowing uncensored reporting on the CCP's activities and free communication among the Movement's supporters in China and worldwide.

4. Beginning in July 2020, members of the Movement developed the Loan Program. The Loan Program allowed participating anti-CCP activists to loan money to a community fund that would then loan funds to a designated third-party borrower ("Borrower") as a short-term investment to allow Loan Program participants to realize a return on that investment to support themselves and their anti-CCP efforts.

5. In or around August 2020, Sara's Phoenix Farm initiated the Loan Program under Sara's direction. Sara and her son Devin, whom on information and belief she designated as de facto chief financial officer of the Loan Program, managed all the funds and financials of the Loan Program for all individual and group lenders. Sara and Devin were chiefly responsible for managing and reporting to participating individuals and groups on funds received from participants and lent to the Borrower. In addition to Devin, Sara also selected her team at the Phoenix Farm to assist her in administering the Loan Program, including Jian, Chen, and Wang.

6. The Loan Program was well-received by the Movement and many Farms and individuals participated. MOS contributed approximately $9,966,846 to Sara's team for the Loan Program, directly sending $4.5 million and causing an additional $5,466,846 to be sent to Maywind, Jian's company.

7. In December 2020, Loan Program participants, including MOS and other lenders, became aware of complaints regarding Sara's failure to provide an executed Loan Agreement at the Phoenix Farm after the lenders' funds were received by her team. Leaders of Farms, including MOS, began demanding from Sara that she explain this failure as well as a full accounting of all funds received and loaned out by the Loan Program. Concerns arose that Sara and her team mismanaged the Loan Program funds and that money was missing.

8. Sara and her team refused to provide any accounting as demanded. Instead, on December 26, 2020, Sara sent a letter to the Loan Program participants, including MOS, stating that $89,776,743.35 million of the funds received from them were loaned to the Borrower. Sara did not provide an accounting of the total amount of funds received from Farms and individual lenders, what funds remained under her control, or bank statements showing the Loan Program funds received and disbursed. Sara's letter inexplicably stated that Loan Program participants had to deal directly with Maywind. Sara closed her communication by telling the participants to no longer contact her regarding the Loan Program. Thereafter, Sara cut off contact with the Loan Program participants.

9. Similarly, Maywind and its owner Jian, despite being asked repeatedly by the Farms and lenders, have failed to provide any bank statements or accounting regarding the Loan Program funds Maywind received, and have not returned any funds to the lenders or the community groups. In fact, Maywind and Jian in a separate civil litigation in Arizona made false representations to the court that Maywind is an operating business and the true owner of approximately $4 million in funds belonging to lenders of the Loan Program. Sara, despite maintaining contact with Jian, made no effort to correct or expose these false statements.

10. As of the start of 2021, Sara went into hiding after several individual lenders filed police complaints against her and protested outside her known residence in Arizona demanding their money. She has periodically appeared on her YouTube channel and on her Discord chat group where she admitted her managing role in the Loan Program and presented proof of some loans issued. During these broadcasts, Sara has declined to answer questions regarding the Loan Program's funds. On one occasion, however, she admitted that she was using funds from the Loan Program to repay individuals she had defrauded in a securities transaction for which she is being investigated and presented images of bank account statements showing funds being paid to individuals rather than the Borrower.

11. To date, MOS and other Farms have not been given a full accounting of the money they sent to Sara and her team for the Loan Program and have not had their Loan Program funds returned.

12. Each of the Defendants: (a) directly participated in the receipt and unlawful conversion of funds from MOS, to their benefit and MOS's detriment; (b) participated in, was aware of, or recklessly disregarded the diversion of MOS' funds were outside of the Loan Program; (c) was directly or indirectly involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and documents alleged herein; (d) was aware of or recklessly disregarded the fact that they were in receipt of stolen funds or funds obtained through fraudulent statements and information; and/or (e) approved or ratified these statements and information.

## II. JURISDICTION & VENUE

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

14. This Court has personal jurisdiction over each Defendant named herein because each defendant has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the claims occurred in or emanated from this District.

**III. PARTIES**

16. Plaintiff Mountains of Spices LLC ("MOS") is a New York limited liability company with its principal place of business in Nassau County, NY. MOS contributed approximately $9,966,846 to Sara and her team for the Loan Program.

17. Defendant Sara Lihong Wei Lafrenz a/k/a Sara Wei ("Sara") is or was the leader of the Phoenix Farm and the administrator of the Loan Program, and upon belief is a resident of Tucson, Arizona.

18. Defendant Xiuzhu "Devin" Wei ("Devin") is the son of Sara, a resident of Arizona, and the de facto chief financial officer of the Loan Program under Sara.

19. Defendant Maywind Trading LLC ("Maywind") is an Illinois limited liability company also registered as a foreign company doing business in Arizona with principal place of business in Arizona. Maywind was the recipient of millions of dollars of funds for the Loan Program.

20. Defendant Jian Peng ("Jian") is the owner of Maywind, a resident of Arizona, and a member of Sara's team managing and administering the Loan Program proceeds. After Maywind receive Loan Program funds from MOS and others, Jian acted to prevent the return of those funds to the rightful owners.

21. Defendant Qishen Chen ("Chen") upon information and belief is a resident of Texas and a member of Sara's team managing and administering the Loan Program proceeds. Chen also improperly took, received and/or used Loan Program funds, including for purposes of a real estate investment in Texas.

22. Defendant Jianjun Wang ("Wang") upon information and belief is a resident of Arizona and a member of Sara's team managing and administering the Loan Program proceeds. Wang also improperly took, received and/or used Loan Program funds, including for purposes of a real estate investment in Texas.

5

## IV. FACTUAL BACKGROUND

### A. Background of the Movement and the Loan Program

23. Beginning in July 2020, MOS, Sara, and other leaders of the Movement discussed the creation of a program in which Movement supporters and Farms would create a fund that would loan funds to Movement supporters while allowing lender participants to earn interest on loans (the "Loan Program"). Farms, such as MOS, entered into loan agreements with individuals to bundle those individual contributions to provide them to the Loan Program, and individual supporters of the Movement could also directly participate in the Loan Program.

24. The Movement leaders had identified a third-party Borrower to borrow the Loan Program funds. The Movement leaders, including MOS and Sara, agreed that all funds initially captured by the Loan Program would be loaned to the Borrower. Those loans would be secured by the Borrower and earn 6% interest.

25. The Loan Program created a Borrower Agreement for the Borrower and allowed the loaned funds to be used for general working capital purposes of the Borrower, including to make further investment into equity markets or for operating expenses.

26. In June 2020, Sara, Farms, including MOS, and individual Movement leaders began the Loan Program through community meetings and various on-line platforms.

27. At that time, Sara was one of the Movement's most visible leaders who hosted an on-line video blog called "Voice of Guo" ("VOG") which had thousands of viewers each week. In addition, Sara had extensive experience in coordinating and administering past Movement initiatives, including managing finances and overseeing Movement funds.

28. MOS and other Movement leaders designated Sara as the administrator for the Loan Program and agreed that the loan proceeds would be collected in accounts that Sara and her son Devin controlled. As administrator, Sara was responsible for collecting, documenting, and tracking the Loan Program's funds; documenting and issuing loans to the Borrower; and providing a regular accounting of the Loan Program's finances to Movement leaders including MOS. Sara was the only one designated to act in this capacity for the Loan Program

and the sole person responsible to the Movement for maintaining the Loan Program's books.

29. MOS and the other lenders relied on Sara to administer the Loan Program, and she was uniquely situated with superior access to and control over the Loan Program proceeds.

30. On information and belief, Sara designated Devin to act as the de facto chief financial officer ("CFO") for the Loan Program, even though Devin had no prior CFO or major accounting experience.

31. On information and belief, Sara initially designated Jian's company, Maywind, to serve as the entity that would receive and administer the Loan Program's funds since Maywind existed and already had bank accounts.

32. On information and belief, on or about September 5, 2020, Sara, in her capacity as administrator of the Loan Program, also directed the creation of two Arizona companies – Santel LLC ("Santel") and Medical Supply System International LLC ("Medical Supply"). Sara instructed Jian, Maywind's owner, to assist in registering Santel and Medical Supply (collectively with Maywind, "the Loan Companies"), to assist in receiving and administering Loan Program funds. Sara and Devin maintained control of the Loan Companies. The Loan Companies have had no operations or revenue unrelated to the Loan Program, nor did they have any employees.

33. Sara selected individuals to serve as owners of the Loan Companies and instructed them to open multiple bank accounts that would be used to receive Loan Program funds. Sara and Devin immediately assumed full control of the Loan Companies' bank accounts and finances after the accounts were opened. All bank and corporate documents and passwords were surrendered to Sara and Devin who kept them in a safe only accessible by them. She then utilized bank accounts at Maywind, Santel, and Medical Supply to receive funds from the lenders to the Loan Program.

34. At all times Sara and Devin maintained full control and authority over the Loan Companies' bank accounts and the funds transferred to them. Sara and Devin would direct the Loan Companies' registered owners to complete wires and financial transactions from these

accounts as needed, particularly when receiving funds or transferring funds to the Borrower.

**B. The Loan Program Operations Beginning at Sara's Phoenix Farm**

35. Sara directly or through her team coordinated the collection of loan funds from individuals by communicating with them via WhatsApp or her Discord VOG chatgroup.

36. The Loan Program contemplated a standard Loan Agreement for lenders which laid out the terms of loans to the Loan Program including an interest rate of 3 percent over a fixed term of three years. This Loan Agreement was to be executed by both Sara and the lenders to create a binding agreement. Sara and her team delivered to and required individual and Farm lenders to complete, execute, and submit this Loan Agreement.

37. Sara and her team promised to countersign and return the Loan Agreement to the lenders. Sara, however, failed to provide a Loan Agreement executed by her or designees for the Loan Program, despite promising to provide one after the lenders transmitted their funds to the bank account Sara and/or her team designated. In refusing to do this, Sara deprived all lenders, including MOS, of any record of the transmittal of and receipt of their funds to the Loan Program as well as the interest and legal terms applicable to their loan.

**C. MOS Involvement with the Loan Program Operations and Sara**

38. Similar to individual lenders, Sara promised MOS, and other Farms that bundled individuals' funds for the Loan Program, an executed Loan Agreement. Sara would confirm with MOS the receipt of funds transferred to the Loan Companies. In addition, Sara told MOS, and MOS relied upon her stating, that she would provide them a monthly accounting of the funds MOS transmitted as well as an accounting of the funds loaned by the Loan Program to the Borrower.

39. At the start of August 2020, Sara and other Movement leaders provided the Loan Companies' bank account information to Movement leaders and the Farms, including MOS. At the start of the Loan Program, the bank accounts designated by Sara and provided to the Farms, including MOS, belonged to Maywind.

40. MOS and other Farms began transmitting funds collected from individual Loan Program participants to Maywind's account. Sara would confirm the amount of funds

received by the Loan Program with the individual Farms via WhatsApp.

41. Further, MOS and other lenders relied on Sara as the principal responsible party for coordinating with the Loan Program's designated Borrower on the signing of agreements and the actual issuance of the loan funds to the Borrower.

42. Between August 11, 2020, and October 6, 2020, in reliance on Sara's representations and her position as administrator of the Loan Program, MOS in five separate transactions directly transferred a total of $4.5 million to Maywind's Chase Bank account for the Loan Program.

43. Further, relying on Sara's representations and her unique position and role as the administrator of the Loan Program, MOS caused and coordinated with Sara the following transfers:

- On August 13, 2020, MOS, through its affiliated entity Davy and Tony International Limited, transferred $1,500,00.00 to Maywind's Chase Bank account and Sara acknowledged and confirmed with MOS the Loan Program's receipt of these funds on September 9, 2020;

- On August 20, 2020, MOS instructed Lender #00068 to wire $2,850,000.00 to Maywind's Chase Bank account and Sara acknowledged and confirmed with MOS the Loan Program's receipt of these funds on September 9, 2020;

- On September 3, 2020, MOS instructed Lender #01223 to wire $580,000 to Maywind's Chase Bank account and Sara acknowledged and confirmed with MOS the Loan Program's receipt of these funds on September 9, 2020;

- On November 23, 2020, MOS instructed Lender #00673 to wire $100,050.00 to Maywind's Chase Bank account and Sara acknowledged and confirmed with MOS the Loan Program's receipt of these funds on November 25, 2020;

- On November 30, 2020, MOS instructed Lender #01268 to wire $300,000.00 to Maywind's Chase Bank account and Sara acknowledged and confirmed with MOS the Loan Program's receipt of these funds on December 8, 2020;

- On December 1, 2020, MOS instructed Rainbow Gifts Inc., to wire $86,766.00 to Maywind's Chase Bank account and Sara acknowledged and confirmed with MOS the Loan Program's receipt of these funds on December 7, 2020.

44. In total, MOS directly transferred or caused to be transferred approximately $9,966,846.00 to Sara and Maywind, with Sara acknowledging the receipt of all of MOS' fund transfers. MOS made and continued to make these transfers based on Sara's role as administrator of the Loan Program and based on her representations that the funds would be properly accounted for and utilized for the Loan Program.

45. On information and belief, from August 11 to December 8, 2020, MOS, other participating Farms, and individual lenders estimate they collectively transmitted at least $44 million in loan proceeds to Maywind's bank accounts through wire transfers.

**D. Defendants' Misconduct with the Loan Program Funds Comes to Light as Sara Absconds**

46. Although Sara would acknowledge receipts of funds by the Loan Companies, she and Devin failed to provide accounting and bank statements to MOS or any other Farm participants regarding the Loan Program's funds and the loans to the Borrower despite multiple requests from MOS to Sara.

47. Individual lenders also began to complain to participating Farms and Movement leaders that Sara had failed to provide them a fully executed Lender Agreement as she had promised and that Sara and her team in Phoenix were no longer responding to their requests for their executed agreements or account statements.

48. On December 19, 2020, Sara disclosed for the first time via WhatsApp to MOS and other Farm participants that she had not fully issued the loan to the designated Borrower. Sara did not explain why she as the Administrator was holding onto the Loan Program's funds particularly since the Loan Program leaders had identified and approved only one Borrower at that time.

49. On December 24, 2020, MOS and other participants of the Loan Program obtained access to the account statements from Medical Supply and Santel – two of the Loan Companies – directly from the companies' owners who broke away from Sara and her team. Despite this, Sara, Devin, and Jian have refused to provide any documentation regarding Maywind's bank accounts.

50. On or around December 25, 2020, MOS requested via WhatsApp that Sara provide an accounting of the loan funds transferred to Maywind including an itemized accounting of funds received by Maywind lender name and date, the total amount of loan proceeds received by Maywind, and copies of the bank records of all Loan Companies involved.

51. On December 26, 2020, Sara sent a WhatsApp message with attachments to MOS and the other Farm participants, stating (in Chinese): "*the following document lists the remittance details pertaining to the Phoenix farm loan program prior to its dissolution. . . . The total amount is 89,776,743.35 USD.*"

52. In addition, Sara's letter indicated that MOS and the other Farms would have to directly request an accounting of Loan Program funds from Maywind. Sara's assertion that she did not control the funds at Maywind and had no financial information from Maywind's account, despite controlling the company's bank accounts, was false and appalling to the Loan Program lenders, including MOS.

53. Sara's public announcement that she was unilaterally washing her hands of all responsibility over the Loan Program funds, and further had dissolved the Phoenix Farm, was a shock to MOS and other lenders. Sara failed to include a full accounting of the proceeds, only indicating that $89,776,743.35 had been loaned but not indicating where and how much remained in the Loan Companies' accounts.

54. Following Sara's announcement, MOS, other participating Farms, and individual lenders demanded a full accounting from Sara and her Loan Program team. Many individual participants of the Loan Program protested outside of Sara's Arizona residence demanding their money and loan agreements.

55. Sara, Devin, Jian, and Maywind have ignored all requests from MOS to provide bank statements pertaining to Loan Program funds and a full accounting of the funds. Sara has never provided a response or accounting to MOS.

### E. Xin Zhang, Jian, and Maywind Frustrate and Prevent the Return of MOS' Loan Program Funds that Maywind Transferred to G-Service LLC.

56. On January 12, 2021, Comerica Bank filed an interpleader suit with the Superior Court of Arizona, County of Maricopa, asking the court to decide the rightful claimants to $8,909,024.07 deposited in an account for G-Service, LLC, by Maywind, Santel, and Medical Supply. (*Comerica Bank v. G-Service LLC, et al.*, Case No. CV2021-000495 (Sup. Ct. Maricopa Cty.) ("Interpleader Suit").)

57. Xin Zhang ("Zhang") was a co-owner of G-Service and was also a member of Sara's Loan Program office. The interpleader suit arose from an ownership dispute when Zhang attempted to transfer his 50% ownership stake in the company to Jian.

58. During the course of this interpleader suit, it was revealed that Maywind had transferred $4 million to G-Service in October 2020. Zhang's co-owner declared in a filing in the Interpleader Suit that the entire $8,909,024.07 in G-Service's account, including funds transferred by Maywind, belonged to the lenders in the Loan Program, and should be returned to the lenders of the Loan Program. Indeed, those funds had only been transferred to G-Service at Sara's request.

59. In response to his co-owner's attestation, Zhang presented a fabricated contract signed with Jian purporting that Maywind engaged the G-Service for website services and was entitled to a refund of the entire $4 million that it transferred to G-Service. At no time did Zhang or Jian reveal their participation and work with Sara on the Loan Program or that Maywind was solely operating in Arizona to receive Loan Program funds. Further, Zhang and Jian continue to assert falsely in court that the funds belong to Jian and not the Loan Program's participants. The interpleader suit remains pending.

### F. Sara Admits to Misusing the Loan Program Funds, and Defendants Leave MOS Without Redress

60. On February 16, 2021, Sara posted on her Discord chatgroup that she had provided refunds to investors of a security private placement for which she and her company, VOG, were under investigation by the SEC. As proof that she made these payments, Sara

posted images of bank account statements from showing payments to various individuals. Individuals also publicly acknowledged receiving Maywind checks reimbursing them for their investment in VOG. In doing so, Sara admitted and posted evidence that she used Loan Program funds deposited in Maywind's bank account to pay individuals for potential personal and corporate liabilities she and her company owed. The use of funds for this purpose were not authorized in the Loan Program.

61. On July 23, 2021, Sara, on her VOG Discord chatgroup and the VOG YouTube channel, admitted that Loan Program funds from Maywind had been transferred to Chen and Wang for "safekeeping" and that they had absconded with the funds and ceased communications with Maywind. After proclaiming that she no longer wished to communicate with Chen and Wang, she asked anyone in her audience who knew Wang and Chen to help deliver a message that they should not embezzle the funds and should reach out to Maywind regarding the return of these funds.

62. Sara did not explain why she directed Maywind to transfer these funds to Chen and Wang, how much Loan Program money was transferred to them, nor has she provided any updates on the missing funds.

63. On July 28, 2021, Sara held another discord chat on her VOG chatgroup where she discussed Maywind. Again, Sara admitted that Loan Program funds were transferred from Maywind to Wang and Chen. Sara again revealed that Wang and Chen refused to return the Loan Program funds to Maywind. Sara stated she took a risk in allowing them to use the Loan Program money to make investments in commercial real estate in Texas.

64. While Sara did not disclose the amount of Loan Program funds she had transferred to Wang and Chen, she stated that they made a $3 million profit from the funds received from the Loan Program. She stated that Wang and Chen refused to share the profits, let alone return the original amount of Loan Program funds she transferred to them. Sara closed by stating that they threatened her to not report this situation to government authorities and insisted that their company owns the Loan Program's money.

## V. CLAIMS FOR RELIEF

**COUNT I**
**Unjust Enrichment**
**(Against All Defendants)**

65. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

66. Plaintiff conferred a benefit on Defendants when it sent, or caused to be sent, $9,966,846.00 to Defendants Sara, Jian, and Maywind for purposes of the Loan Program.

67. Defendants Sara and Maywind thereafter transferred a portion of Plaintiff's funds to Defendants Devin, Chen, and Wang.

68. Defendant Sara also used a portion of Plaintiff's funds held at Maywind to refunds investors of a security private placement related to her and her company, VOG, which was separate from the Loan Program.

69. Accordingly, Defendants Sara, Jian, Maywind, Devin, Chen, and Wang were enriched by Plaintiff's nearly $10 million that was intended for the Loan Program.

70. Defendants' actions have impoverished Plaintiff by the loss of their funds transmitted for the Loan Program.

71. Defendants' enrichment from Plaintiff's Loan Program funds, for their own purposes unrelated to the Loan Program, was improper, unauthorized, and without justification.

72. Defendants never provided Plaintiff with the Loan Agreement and accounting, although Defendants received the funds voluntarily and never returned the funds to Plaintiff MOS.

73. Defendants have retained funds transferred or caused to be transferred by MOS and have engaged in a pattern of false, misleading, and deceptive conduct designed to prevent Plaintiff from recovering the funds and any earned interest.

74. Particularly because Defendants failed to provide Plaintiff with the promised Loan Agreement and accounting, Plaintiff lacks a remedy at law for their unjust enrichment. It would be against equity and good conscience to permit Defendants to continue to retain the

money at Plaintiff's expense.

## COUNT II
### Constructive Fraud
### (Against Sara, Jian, & Maywind)

75. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

76. Plaintiff and Defendants Sara, Jian, and Maywind established a relationship for purposes of the Loan Program that demonstrates confidences and trust so similar to a fiduciary relationship that it should be treated as a fiduciary relationship under Arizona law.

77. As the administrator of the Loan Program, Sara held a unique and superior position to Plaintiff with respect to the use and accounting of the Loan Program funds, including the nearly $10 million Plaintiff transferred at Sara's direction for the Loan Program. Plaintiff also entrusted Jian and Maywind with its funds for purposes of the Loan Program, including that they would only be provided to the Borrower. Those Defendants held a superior position to Plaintiff with respect to the control and use of the Loan Program funds.

78. Plaintiff reasonably relied on and trusted Sara, Jian, and Maywind to manage and account for the Loan Program funds for the intended purpose of the Loan Program.

79. Sara breached her confidential relationship with Plaintiff, including by making material misstatements and/or omissions about the Loan Program in connection with receiving funds from Plaintiff, the status of the funds, and the use of the funds.

80. Jian and Maywind breached their confidential relationship with Plaintiff, including by misusing Plaintiff's Loan Program funds they were entrusted with, refusing, or failing, to account for those funds, and by seeking to prevent the return of Plaintiff's funds in the course of the Interpleader Suit.

81. Sara's material misstatements and omissions were made with knowledge of their falsity or misleading character and with an intent to deceive, manipulate, and defraud Plaintiff into sending money to Maywind at her instruction.

82. Sara's material misstatements and/or omissions to Plaintiff include:

   a. False or misleading statements concerning the purpose and use of the funds obtained from Plaintiff for the Loan Program, including that the Loan Program funds would only be provided to the third-party Borrower who would secure the loan and pay interest;

   b. False or misleading statements concerning the terms for the loans, including her use of the Loan Program proceeds without securing the funds and her personal taking and use of the funds;

   c. False or misleading statements concerning providing regular account reports of funds lent by Plaintiff to the Loan Program as well as bank statements;

   d. False and misleading statements concerning the location of the funds;

   e. False and misleading statements that the Loan Programs funds were fully loaned to the Borrower.

   f. False, misleading statements, and omissions that Loan Programs were transferred to individuals, neither who was a Borrower.

83. Plaintiff reasonably relied on these misstatements and/or omissions and transferred funds to Defendants Sara, Jian, and Maywind for the Loan Program.

84. Had Plaintiff known the truth, they would not have transferred or caused to be transferred funds to Sara, Jian, and Maywind.

85. As a result of Sara's misstatements and/or omissions in breach of her relationship with Plaintiff, Plaintiff has been injured by the loss of their funds transmitted for the Loan Program.

**COUNT III**
**Conversion**
**(Against Sara, Jian, Maywind, Wang & Chen)**

86. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

87. Defendants Sara, Jian, Maywind, Wang, and Chen intentionally acted in concert to exercise control over Plaintiff's funds intended for the Loan Program in order to divert those funds from the Loan Program to their own benefit.

88. Sara intentionally exercised control of Plaintiff's funds in her role as administrator of the Loan Program, and severely interfered with Plaintiff's rights to those funds by failing to provide an executed Loan Agreement, failing to provide an accounting of Plaintiff's funds, and by diverting those funds to herself and other Defendants for their own ends rather than for the Loan Program.

89. Jian and Maywind intentionally exercised control over Plaintiff's funds, and interfered with Plaintiff's right to those funds, by failing to return those funds specifically received for purposes of the Loan Program following Plaintiff's demands for accounting and return of those funds.

90. Wang and Chen also intentionally exercised control over Plaintiff's funds intended for the Loan Program, interfering with Plaintiff's right to those funds, including by wrongfully receiving those funds for purposes of an undisclosed real estate investment in Texas whereby they purportedly received a $3 million profit on their investment. Plaintiff's funds were provided to Sara and her Loan Program team solely for purposes of the Loan Program, and no commercial real estate or other personal investment by Wang or Chen was ever authorized or approved by Plaintiff.

91. Defendants' egregious appropriation of Plaintiff's funds that were intended solely for the Loan Program and their refusal to cooperate much less return the funds has seriously interfered with Plaintiff's right to those funds such that they should be obligated to pay the entire amount of Plaintiff's contribution to the Loan Program.

**COUNT IV**
**Negligent Misrepresentation**
**(Against Sara)**

92. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

93. Sara made repeated material misrepresentations and omissions to Plaintiff, which they knew, or were negligent in not knowing, were false. Specifically, Sara provided false information or omissions to Plaintiff regarding: their obligation and intention to provide an executed Loan Agreement and monthly financial reporting; the ownership and origin of

Plaintiff's funds; the terms of Plaintiff's loan to the Loan Program; the possession of the Plaintiff's funds; and how Plaintiff's Loan Program funds would be used.

94. These statements were false and/or misleading at the time they were made, were material to Plaintiff's decision to transfer or cause to be transferred funds to the Loan Program administered by Sara, and Sara intended for Plaintiff to rely on this incorrect information or knew that it reasonably would rely on her false representations.

95. Sara failed to exercise reasonable care or competence in communicating this false and/or misleading information to Plaintiff.

96. Plaintiff justifiably relied on Sara's misrepresentations in making their decision to transfer funds to Sara, Maywind and Jian.

97. Sara understood, or should have reasonably understood, that Plaintiff was relying upon her misrepresentations in making the decision to transfer the funds to herself, Maywind, and Jian.

98. Plaintiff was damaged as the result of Sara's misrepresentations in an amount to be determined at trial.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

(A) Awarding damages in favor of Plaintiff against all of the Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon; and

(B) Awarding such other relief as the Court may deem just and proper.

## VII. JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated August 31, 2021.   **THE QUINLAN LAW FIRM, LLC**

_William J. Quinlan_
David Hutchinson (*pro hac vice forthcoming*)
*Attorneys for Plaintiff Mountains of Spices*

**<u>Verification</u>**

Under penalty of perjury of the laws of this state, I, Qidong Xia, President of Mountains of Spices, LLC, declare that I have read the foregoing Verified Complaint, know the contents thereof, and state that it is true of my own knowledge, except the matters stated therein on information and belief, and that as to those matters, I believe them to be true.

Dated: August 31, 2021



Qidong Xia, President
Mountains of Spices, LLC

Doc ID: e88e657c07ce229ab10ee5001b27bd97c7559b4d