WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Mountains of Spices LLC,

            Plaintiff,

v.

Sara Lihong Wei Lafrenz, et al.,

            Defendants.

No. CV-21-01497-PHX-JAT

**ORDER**

In this action Plaintiff Mountain of Spices, LLC sues to recover funds it allegedly transferred to Defendants Sara Lihong Wei Lafrenz ("Sara") and Maywind Trading, LLC ("Maywind"). Plaintiff alleges that it sent the money with the understanding that Sara and Maywind would facilitate its transfer to a specific predesignated borrower to be repaid with interest. It further alleges that Sara, Maywind, and other Defendants instead used this money for their own purposes and have refused to return it to Plaintiff. Before the Court is Plaintiff's motion for entry of final default judgment against Sara and Maywind only. (Doc. 70). The Court now rules.

I.     **BACKGROUND**

The complaint depicts a world-spanning whistleblower "Movement" dedicated to promoting liberty and fighting communism in China.[1] Its members, mainly Chinese nationals, are muckrakers, exposing by protest and publication the alleged crimes and corruptions of the Chinese Communist Party. (*See id.*). Movement members are loosely

---

[1] (*See* Doc. 22 at 1–2). The Court takes the facts in the complaint as true on a motion for default judgment. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

organized into so-called Farms by geographic location, with some Farms operating through business entities and others operating less formally. (*See id.* at 2). Plaintiff alleges itself to be part of this Movement. (*Id.*).

In the summer of 2020, Movement leaders conceived a scheme through which members could earn interest by lending money to supporters. (*Id.* at 6). Sara, the leader of the Farm in Phoenix, Arizona, was to gather money from Farms and individual members and loan that money to a specific, pre-determined borrower. (*Id.*). The complaint describes the ends to which the designated borrower was to put the loaned funds as "general working capital purposes, . . . including . . . investment into equity markets or . . . operating expenses," but does not identify the borrower or specify the nature of its business. (*Id.*).

Sara designated Maywind to receive member funds for this "Loan Program," and chose her son, Defendant Xiuzhu "Devin" Wei, to serve as de-facto chief financial officer. (*Id.* at 7). She also allegedly selected Jian Peng, Maywind's sole member, as well as Defendants Qisheng Chen ("Chen") and Jianjun Wang ("Wang") to assist her in administering the loan program. (*Id.*; Doc. 42 at 8–9). Sara provided a loan agreement to lenders and promised she would countersign and return the agreements. (*See* Doc. 22 at 8). She promised she would account for all funds and report monthly to Plaintiff. (*See id.*). And she promised she would lend to the designated borrower all funds the lenders transferred to her. (*See id.* at 6, 8).

Plaintiff, relying on these promises, transferred nearly $4.6 million to Maywind bank accounts from August to October of 2020. (*Id.* at 9; Doc. 70-1 at 2). Over the same period and continuing into December of 2020 Plaintiff also directed six individual lenders to send a total of just over $5.4 million to Maywind. (Doc. 22 at 9). Counting additional transfers from other Farms and lenders the complaint suggests that Maywind and Sara eventually received somewhere between $44 million and $90 million.

Sara, however, did not keep her promises. (*See id.* at 6–11). She failed to countersign the loan agreements, failed to account for Plaintiff's funds or provide reports, and failed to detail whether or where Maywind had transferred Plaintiff's money. (*Id.* at 8, 10–11). Sara

later indicated in statements in online chat groups that some money had been transferred from Maywind to Wang and Chen. (*Id.* at 13).

Plaintiff commenced this action in August of 2021, naming as defendants Sara, Devin, Maywind, Jian, Chen, and Wang, and claiming unjust enrichment, constructive fraud, conversion, and negligent misrepresentation. (Doc. 1). Plaintiff has subsequently filed two amended complaints and voluntarily dismissed the action as to Jian only. (Docs. 9; 22; 26). Wang, Chen, and Devin have each answered the complaint, but Sara and Maywind have not. (Docs. 13; 50; 65). On Plaintiff's motion the Clerk of Court entered Sara's and Maywind's defaults, after which Plaintiff filed this motion for final default judgment against them. (Docs. 34; 39; 70).

## II.   ANALYSIS

Once the clerk has entered default against a party, the Court has discretion to enter a default judgment against that party. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *and see* Fed. R. Civ. P. 55(b)(2). However, in cases involving multiple claims or parties a judgment as to fewer than all claims or parties is final "only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). In the absence of such a finding, any such judgment "does not end the action as to any of the claims or parties and may be revised at any time before" the entry of final judgment as to all claims and parties. *Id.* The Court will first consider whether entry of default judgment is warranted, and if whether such a judgment should be certified as final.

### a.   Entry of Default Judgment

In exercising its discretion to enter default judgment, a court may consider several factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

1    *Eitel v. McCool*, 782 F.2d 1470, 1472–73 (9th Cir. 1986). In conducting this inquiry, the

2    Court "takes the well-pleaded factual allegations in the complaint as true." *DirecTV, Inc.*

3    *v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (cleaned up). The Court will consider each of

4    the factors in turn.

5            **i.   *Possibility of Prejudice to the Plaintiff***

6            Plaintiff may be prejudiced because Sara and Maywind are not participating in this

7    litigation, potentially leaving Plaintiff without a remedy against them if the Court does not

8    enter default judgment. *See Elektra Ent. Grp., Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D.

9    Cal. 2005). This is particularly true in the case of Sara: Plaintiff has submitted documents

10   with its motion suggesting that Sara is both refusing to participate in this litigation and

11   declining to return Plaintiff's money until a default judgment is entered. (*See* Doc. 70-1 at

12   66–67).

13          Further, in documents supporting its motion Plaintiff has demonstrated the

14   possibility that Sara and Maywind may be using Plaintiff's money to pay their own

15   expenses. For example, Plaintiff has raised the possibility that Sara has used its funds to

16   pay part of a 57-million-dollar SEC judgment against her company or has transferred the

17   money from Maywind to an LLC Sara owns (Docs. 70–1 at 55, 72). Similarly, Maywind

18   has apparently paid millions of dollars to two law firms. (Doc. 70-1 at 45–50). While these

19   documents do not demonstrate that any Defendant has used Plaintiff's funds rather than

20   funds from other sources in these expenditures, these documents along with the defaulted

21   Defendants' failure to participate in this litigation are enough to demonstrate the possibility

22   of prejudice to Plaintiff if default judgment is not entered. The first factor therefore weighs

23   in favor of entering default judgment.

24          **ii.   *Sufficiency of the Complaint and Merits of Plaintiff's Claims***

25          The second and third factors dealing with sufficiency of the complaint and the merits

26   of plaintiff's claims—perhaps the most important among the *Eitel* factors—are usually

27   considered together. *See, e.g.*, *Ariz. Bd. of Regents v. Doe*, 555 F. Supp. 3d 805, 816 (D.

28   Ariz. 2021). These factors require a court to consider "whether the plaintiff has stated a

claim on which it may recover." *Id.* (cleaned up); *see DirecTV*, 503 F.3d 847, 854–55 (9th Cir. 2007). The Court will review Plaintiff's claims against Sara and Maywind to determine whether each adequately states a claim.

      1.  *Unjust Enrichment*

      Count One of the complaint is a claim for unjust enrichment against all Defendants. (Doc. 22 at 14–15). Unjust enrichment requires "(1) an enrichment, (2) an impoverishment, (3) a connection between the two, (4) the absence of justification for the enrichment and impoverishment and (5) the absence of any remedy at law." *Loiselle v. Cosas Mgmt. Grp.*, 228 P.3d 943, 946 ¶ 9 (Ariz. App. 2010) (citation omitted).

      This Court previously found that Plaintiff had stated a claim for unjust enrichment on which it could recover against Devin. (Doc. 55 at 4–5). That analysis is largely applicable to Plaintiff's unjust enrichment claims against Sara and Maywind. Plaintiff was made poorer when it transferred its funds to Maywind, Sara failed to lend them to the designated borrower, and Plaintiff was deprived of the interest it expected to earn from the loan. (Doc. 22 at 8–11; *cf.* Doc. 55 at 5). Sara and Maywind were enriched as a direct result of this loss, as the money was transferred to Maywind accounts which Sara controlled. (Doc. 22 at 7; *cf.* Doc. 55 at 5). Further, Plaintiff has alleged that the impoverishment and corresponding enrichment were a result of Sara and Maywind misappropriating the money without justification or authorization. (Doc. 22 at 12–14; *cf.* Doc. 55 at 5).

      The only remaining question is whether, given that Plaintiff has also advanced several tort claims against Sara and Maywind, Plaintiff has adequately alleged the fifth element, the "absence of any remedy at law." Even where remedies at law are sought in the same action, unjust enrichment may be pleaded in the alternative. *Adelman v. Christy*, 90 F. Supp. 2d 1034, 1045 (D. Ariz. 2000). Because Plaintiff's tort claims may yet fail, the Court cannot say that Plaintiff has failed to adequately allege the fifth element of unjust enrichment—although Plaintiff will be "barred from collecting a double recovery should [it] prevail." *Id.* Thus, the second and third factors weigh in favor of granting a default judgment as to Count One against Sara and Maywind.

2.   *Constructive Fraud*

Count Two of the complaint is a claim for constructive fraud against Sara and Maywind. (Doc. 22 at 15–16). In Arizona a cause of action for constructive fraud arises where the defendant, by failing to make a full and truthful disclosure of all material facts, breaches a duty arising from a fiduciary or confidential relationship, inducing reliance by the other to his detriment. *Compare Rhoads v. Harvey Pubs., Inc.*, 700 P.2d 840, 846 (Ariz. App. 1984) (citing *Stewart v. Phx. Nat'l Bank*, 64 P.2d 101, 106 (Ariz. 1937)); *with Green v. Lisa Frank, Inc.*, 211 P.3d 16, 33–34 ¶ 53–54 (Ariz. App. 2009). Recovery on a constructive fraud theory is available "for representations as to future conduct, and not merely as to past facts. . . . In other words, to use the homely western phrase, the party in whom confidence is . . . reposed must 'lay his cards on the table.'" *Stewart*, 64 P.2d at 106.

Fiduciary relationships are a subset of confidential relationships. *See Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317, 335 (Ariz. 1996). In fiduciary relationships "something approximating business agency, professional relationship, or family tie impel[s] or induc[es] the trusting party to relax the care or vigilance he would ordinarily exercise." *In re McDonnell's Estate*, 179 P.2d 238, 241 (Ariz. 1947) (citation omitted). In such relationships the fiduciary holds "superiority of position" as demonstrated by "substitution of the fiduciary's will" for the beneficiary's will in "material aspects of the transaction at issue." *Standard Chartered*, 945 P.2d at 335 (cleaned up). Other confidential relationships are those which do not fall "into any well-defined category of the law," but in which there is the same "great intimacy, disclosure of secrets, intrusting of power, and superiority of position in the case of the representative" as appears in fiduciary relationships, such that they "should have like results." *Taeger v. Cath. Fam. & Cmty. Servs.*, 995 P.2d 721, 726 ¶ 11 (Ariz. App. 1999).

Relationships which may be confidential in nature include husband–wife, parent–child, guardian–ward, attorney–client, partners, joint adventurers, director–corporation, broker–client, agent–principal, and trustee–beneficiary. *Rhoads*, 700 P.2d at 847 (citation omitted). By contrast, confidential relationships are ordinarily not recognized in cases

involving only arms-length commercial transactions, such as those creating a debtor–creditor relationship. *Compare Standard Chartered*, 945 P.2d at 335; *with Stewart*, 64 P.2d at 106.

In arguing that it adequately alleged confidential relationships between itself and Sara and Maywind respectively, Plaintiff relies on *Autoville, Inc. v. Friedman*, 510 P.2d 400 (Ariz. App. 1973). There the Arizona Court of Appeals stated that transfer of property to another for a specific purpose creates a fiduciary duty:

> Where one intrusts his property to another for a particular purpose, it is received in a fiduciary capacity; and, when turned into money, that is also received in the same capacity. It does not belong to the agent, and he can lawfully exercise no power or authority over it, except for the benefit of his principal, and only as authorized by him. If the agent uses it for his own purposes . . . it is a conversion of that which does not belong to him.

*Id.* at 404 (quoting *Britton v. Ferrin*, 63 N.E. 954, 956 (N.Y. 1902)). Examination of *Autoville* and *Britton* reveals that this duty arises as part of an agent–principal relationship. *See Autoville*, 510 P.2d at 404; *Britton*, 63 N.E. at 956. The Court therefore construes Plaintiff's reliance on *Autoville* as an argument that Sara and Maywind were its agents.

An agency may be created by "conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." *State Farm Mut. Ins. Co. v. Long*, 492 P.2d 718, 721 (Ariz. App. 1972) (quoting Restatement (Second) of Agency § 26 (Am. L. Inst. 1958)). The complaint alleges that Plaintiff and Sara agreed that Sara would collect, document, and track its funds and issue loans to the borrower. (Doc. 22 at 7–8). Sara (plainly) could have reasonably concluded from Plaintiff's instructions to her to act on its behalf in this matter that Plaintiff desired her to act on its behalf. Plaintiff therefore has adequately alleged an agency relationship between itself and Sara.

Similarly, Plaintiff alleged that it "established a relationship" with Maywind and "entrusted . . . Maywind with its funds for purposes of the Loan Program, including that they would only be provided to the Borrower." (Doc. 22 at 15). Further, the complaint

alleges that Sara designated Maywind to receive Plaintiff's funds, told Jian (Maywind's owner) that Maywind would "assist in receiving and administering . . . funds," and provided Maywind's bank account information to Plaintiff, whereupon Plaintiff sent Maywind the funds. (Doc. 22 at 6–10). The complaint therefore alleges actions by Sara and Plaintiff from which Maywind could have reasonably concluded that it was to act on Plaintiff's behalf in receiving and holding the funds. Thus, the Court finds that Plaintiff has adequately alleged an agency relationship between itself and Maywind, either as a direct agent or as Sara's subagent.

In Arizona, an "agreement to act on behalf of the principal causes the agent to be a fiduciary." *Valley Nat'l Bank v. Milmoe*, 248 P.2d 740, 744 (Ariz. 1952); *see Autoville*, 510 P.2d at 404; *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 401–02 (Ariz. 1984); Restatement (Second) of Agency § 387; *see also* Restatement (Second) of Agency § 428 cmt. a (stating that a subagent "owes to the principal all the duties of a fiduciary to a beneficiary"). Thus, in adequately alleging agency relationships between itself, Sara, and Maywind, Plaintiff has by the same token adequately alleged fiduciary relationships.

The Court also finds that the complaint adequately alleges that Sara breached her alleged duty of "full and truthful disclosure of all material facts" to Plaintiff. The complaint alleges that Sara misled Plaintiff by misstatements or omissions concerning the "purpose and use of the funds obtained from Plaintiff, including that the Loan Program funds would only be provided to the third-party Borrower," and that she made these and other misrepresentations knowing they were false. (Doc. 22 at 15–16). The complaint further alleges that Plaintiff would not have sent the funds but for these misrepresentations. Thus, Plaintiff adequately states a claim for constructive fraud against Sara by alleging that Sara breached a duty of truthfulness to Plaintiff, thereby inducing Plaintiff's detrimental reliance.

The same cannot be said for the complaint's allegations regarding Maywind. While the complaint is replete with allegations of Maywind's dishonesty toward Plaintiff, it

contains no indication that Plaintiff reasonably and detrimentally relied on any of Maywind's acts or omissions. According to the complaint, after Plaintiff transferred the money Maywind refused to provide documentation regarding Maywind's bank accounts, refused to return the money, transferred the money to unauthorized persons, and falsely asserted in another lawsuit that Plaintiff's funds belong to Maywind. (Doc. 22 at 10–13, 15). Plaintiff therefore has certainly alleged that Maywind breached a duty of truthfulness to Plaintiff in a manner which is detrimental to Plaintiff.

But Plaintiff has not alleged, as would be required to state a claim for constructive fraud, that any such detriment was caused by justifiable reliance induced by Maywind's breach of duty. (*See* Docs. 22 at 15–16; 70 at 10–11); *and see Dawson v. Withycombe*, 163 P.3d 1034, 1057–59 (Ariz. App. 2007). Nor can the Court discern any such reliance from the complaint. For example, Plaintiff could theoretically have alleged that Maywind knew before the funds were transferred that Sara's misrepresentations were false yet remained silent in breach of its duty of truthfulness. In this scenario, Plaintiff's funds transfer could be said to have been undertaken in reliance on Maywind's omission. (*See* Docs. 22; 70 at 3–4, 10–11). But Plaintiff does not allege this. Rather, Plaintiff only alleges that it relied on Sara's misrepresentations in transferring the funds. (*See id.* at 3–4, 10–11, 13 ("[Plaintiff] suffered all of these damages based on its reliance o[n] Sara's falsehoods and its trust in her . . . ."); *see also* Doc. 70 at 17 ("[B]ased on Sara's misrepresentations . . . Sara and Maywind improperly obtained . . . [Plaintiff's] funds . . . .")). Because Plaintiff has failed to allege that it was induced to detrimental reliance by a breach of Maywind's duty to it, Plaintiff has necessarily also failed to state a claim for constructive fraud against Maywind.

Consequently, while the second and third *Eitel* factors weigh in favor of entering default judgment as to Count Two against Sara, they weigh heavily against entering such judgment against Maywind.

3.  *Conversion*

Count Three of the complaint is a claim for conversion against Sara and Maywind, among other Defendants. (Doc. 22 at 16–17). Conversion is "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Universal Mktg. & Ent., Inc. v. Bank One*, 53 P.3d 191, 193 ¶ 6 (Ariz. App. 2002) (citing Restatement (Second) of Torts § 222 cmt. a (Am. L. Inst. 1965)) (cleaned up). In determining the seriousness of the interference courts may consider (among other factors): the extent and duration of the actor's control over the chattel; the actor's intent to assert control inconsistent with the owner's right of control; the actor's good faith; and the inconvenience and expense caused to the owner. *See Miller v. Hehlen*, 104 P.3d 193, 203 ¶ 34 (Ariz. App. 2005) (citing Restatement (Second) of Torts § 222A(2)). To state a claim for conversion a plaintiff must "have had the right to immediate possession of the personal property at the time of the alleged conversion." *See Case Corp. v. Gehrke*, 91 P.3d 362, 365 ¶ 11 (Ariz. App. 2004) (citation omitted). Additionally, where the property allegedly converted is money, a plaintiff must allege facts showing both that the money "can be described, identified, or segregated," and "an obligation to treat it in a specific manner." *See id.* Further, a "conversion claim cannot be maintained . . . to collect on a debt that could be paid by money generally." *Id.* at 366–67 ¶ 18 (citation omitted).

The Court finds that Plaintiff has adequately stated a claim for conversion against Sara and Maywind. First, the facts alleged satisfy the elements of a conversion claim under Arizona law. The complaint alleges that Sara and Maywind intentionally exercised dominion over Plaintiff's money by refusing to return it and by using it for purposes that they knew Plaintiff had not authorized, including transferring it to Wang and Chen. (Doc. 22 at 12–13, 16–17). This alleged interference is serious enough to require Sara and Maywind to pay the full value of the chattel, as the facts above demonstrate bad faith and continuing interference with Plaintiff's ability to utilize millions of dollars which it rightfully should possess.

1    Second, the facts alleged satisfy additional restrictions on conversion claims

2 involving money. As the Arizona Court of Appeals has pointed out, many limitations on

3 conversion actions for money are intended to prevent a contract dispute between a debtor

4 and a creditor from turning into a tort action. *Koss Corp. v. Am. Express Co.*, 309 P.3d 898,

5 914 ¶ 54 (citing *Chicago Title Ins. Co. v. Ellis*, 978 A.2d 281, 287–88 (N.J. Super. Ct. App.

6 Div. 2009)). Where funds are fraudulently obtained, however, the recipient never

7 "obtain[s] a right to exercise dominion or control over the money," and the money

8 "continue[s] to belong to its owner" just as it would "where it has been stolen by a thief."

9 *Chicago Title*, 978 A.2d at 287–88. In such cases no debtor–creditor relationship is formed.

10 *Id.*; *and see Autoville*, 510 P.2d at 404. In the absence of a debtor–creditor relationship the

11 restriction against conversion claims to collect on *debts* that could be paid by money

12 generally cannot apply.

13    As discussed, the complaint alleges both that Sara and Maywind were obliged to

14 treat the funds in a specific manner (by lending them to the designated borrower) and that

15 the funds were obtained fraudulently. Thus, under the facts alleged no debtor–creditor

16 relationship between Plaintiff and Sara or Maywind was formed, the money rightfully

17 belonged to Plaintiff at all times, and restrictions on conversion actions between debtors

18 and creditors for money do not apply. Additionally, the funds are describable in that the

19 complaint alleges the precise amount transferred to Maywind's bank account and the dates

20 on which the funds were transferred.[2] Plaintiff has therefore stated a claim for conversion

21 against Sara and Maywind. The second and third *Eitel* factors weigh in favor of entering

22 default judgment as to Count Three against Sara and Maywind.

23

24 _____

[2] (Doc. 22 at 9–10); *cf. Koss*, 309 P.3d at 915 ¶ 55 (citing *Chicago Title*, 978 A.2d at 288)

25 (finding that "funds placed in an account" can be "described by the amounts of the checks"); *Autoville*, 510 P.2d at 402, 404 (holding a dealership liable for conversion of

26 proceeds of a truck sale where $1,200 from the sale was specified in advance to be remitted to the truck's owner but was instead "pocketed" by the defendants); *see also* Dan B. Dobbs

27 et al., *Dobbs' Law of Torts* § 711 (2d ed. 2022) (ebook) (citing *In re Estate of Johnson*, No. 1 CA-CV 09-0447, 2010 WL 2927438 (Ariz. App. 2010)) ("If the defendant, without

28 authority to do so, transfers funds from the plaintiff's account to his own or another account, he is a converter even though the transfer is purely a bookkeeping entry, not a physical movement of cash.")

### 4. *Negligent Misrepresentation*

Count Four of the complaint is a claim for negligent misrepresentation against Sara. (Doc. 22 at 17–18). In Arizona, the "elements of negligent misrepresentation are: (1) the defendant provided false information in a business transaction; (2) the defendant intended for the plaintiff to rely on the incorrect information or knew that it reasonably would rely; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; (4) the plaintiff justifiably relied on the incorrect information; and (5) resulting damage." *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 340 P.3d 405, 412 ¶ 30 n.7 (Ariz. App. 2014). Arizona law does not recognize negligent misrepresentation claims based on promises of future conduct or incorrect statements of future events.[3]

Plaintiff's claim for negligent misrepresentation fails because each of the alleged misrepresentations Plaintiff claims caused its damages were either promises of future conduct or were made after Plaintiff transferred the money. Plaintiff alleges that, before it transferred the money, Sara told Plaintiff that she would provide executed loan agreements, issue funds to the designated borrower, and provide a monthly accounting of funds received by Maywind and lent to the borrower. (Doc. 22 at 8–9). Plaintiff also alleges that, after it transferred the money, Sara told Plaintiff that she had transferred the funds to the designated borrower and failed to tell Plaintiff that she had actually used the funds for her own personal purposes. (*See id.* at 6, 10, 12–13; Doc. 70 at 12–13). The alleged misrepresentations in the former group are promises of future action which as a matter of law cannot form the basis for a negligent misrepresentation claim. The alleged misrepresentations in the latter group could not have been relied upon in transferring the funds because Sara allegedly made them after the funds had been transferred.

---

[3] *McAlister v. Citibank*, 829 P.2d 1253, 1261 (Ariz. App. 1992). Unlike claims of negligent misrepresentation, actual fraud claims may be based on "unfulfilled promises" so long as such promises "were made with the present intent not to perform." *Id.* at 1260 (citation omitted). However, negligent misrepresentation and actual fraud are separate torts. *Id.* at 1261.

Thus, Plaintiff has failed to adequately state a claim for negligent misrepresentation against Sara. The second and third *Eitel* factors therefore weigh against entry of default judgment against Sara as to Count Four.

### iii. *Sum of Money at Stake*

The third factor weighs against granting the requested damages of $9,966,846 but not against granting a lesser sum of $4,550,000. Although "Rule 55 does not limit the amount of money that can be awarded in a default judgment, . . . . courts are ordinarily reluctant to enter a default judgment when the stakes are high." *Hydentra HLP Int. Ltd. v. Porn69.org*, No. CV-15-00451-PHX, 2016 WL 3213208, at *1 (D. Ariz. June 10, 2016). A large sum of money at stake may therefore weigh against entry of default judgment. *See Hawks v. Seery*, No. 21-00092-PHX, 2021 WL 5162536, at *4 (D. Ariz. Nov. 5, 2021); *J & J Sports Prods., Inc. v. Cardoze*, No. C 09–05683, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010) (citing *Eitel*, 782 F.2d at 1472). Nonetheless, where the amount sought is directly proportional to the harm a plaintiff incurred, this factor does not preclude entry of default judgment. *See NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 617 (9th Cir. 2016).

The nearly $10 million Plaintiff seeks in damages is a substantial sum of money, as is the nearly $4.6 million it alleges it sent to Maywind. The third factor weighs against entry of default judgment as to the former sum because that number is both large and not proportional to Plaintiff's alleged injury. As the Court will discuss more fully below, the complaint fails to explain how third parties sending money to Maywind harmed Plaintiff, and otherwise fails to demonstrate Plaintiff's standing to sue for the return of that money. Thus, the larger sum Plaintiff seeks is more than twice the damages to which its complaint demonstrates entitlement, and is not proportional to the seriousness of Sara and Maywind's conduct toward the Plaintiff. However, the nearly $4.6 million Plaintiff alleges it sent to Maywind at Sara's direction is directly proportional to Plaintiff's alleged harm. The fourth *Eitel* factor therefore does not bar entry of default judgment in the amount of that lesser sum.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### iv. *Possibility of Dispute Concerning Material Facts*

The fifth *Eitel* factor does not weigh in favor either of granting or denying Plaintiff's motion. On the one hand, because default has been entered the well-pleaded facts in the complaint are deemed admitted as against Sara and Maywind. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (citing *TeleVideo Sys. Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987)). And thus far the answering Defendants have either professed a lack of knowledge regarding Plaintiff's allegations or denied them only as to themselves. (*See* Docs. 50; 65). But because each of Plaintiff's allegations against the non-defaulted Defendants hinges on whether Sara obtained the money wrongfully, there remains a possibility that the circumstances surrounding Sara's procurement of the money will become subject to dispute as the litigation progresses.

### v. *Excusable Neglect*

The record contains no indication that Sara's or Maywind's defaults were due to excusable neglect. Both Sara and Maywind have been duly served with the summons and second amended complaint. (*Compare* Doc. 19, *with* Doc. 21, *and* Doc. 70 at 5; *and compare* Doc. 30 at 5, *with* Doc. 32). Despite having notice of the action, neither Sara nor Maywind have responded in any way. Further, in granting Plaintiff's motion for alternative service this Court found that Sara appeared to be evading service, making it unlikely that her failure to answer was due to excusable neglect. (Doc. 30 at 4). Thus, the sixth *Eitel* factor weighs in favor of entering default judgment against Sara and Maywind.

### vi. *Policy Favoring Decision on the Merits*

While "[c]ases should be decided upon their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472, where a defendant wholly fails to respond to the complaint a decision on the merits becomes "impractical, if not impossible," *PepsiCo*, 238 F. Supp. 2d at 1177. In such cases, "the default mechanism is necessary to deal with wholly unresponsive parties who otherwise could cause the justice system to grind to a halt." *Ariz. Bd. of Regents*, 555 F. Supp. 3d at 816. Because neither Sara nor Maywind have answered the complaint this factor does not weigh against entry of default judgment.

Considering all the factors, the Court concludes that entry of default judgment is appropriate as to Plaintiff's claims of unjust enrichment, conversion, and (against Sara only) constructive fraud. But Plaintiff has failed to state a claim against Maywind for constructive fraud and against Sara for unjust enrichment, and entry of default judgment on these claims would not therefore be proper. *See DirecTV*, 503 F.3d at 855. These inadequately stated claims will be dismissed rather than left to "linger on the Court's docket." *Ariz. Bd. of Regents*, 555 F. Supp. 3d at 819 (citation omitted).

**b. Damages**

Having determined the claims for which default judgment is warranted, the Court must now consider the appropriate remedy for each claim. The Court need not take as true allegations in the complaint related to the amount of damages. *Geddes v. United Fin. Grp.*, 559 F.2d at 560 (citation omitted). "Plaintiff's burden of 'proving up' damages is relatively lenient," as most of the factual and legal predicates entitling a plaintiff to damages are deemed admitted upon default. *See Phillip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). But Plaintiff's demand for relief must be specific, and "if the facts necessary to determine damages are not contained in the complaint, or are legally insufficient, they will not be established by default." *Id.* (first citing *Cripps v. Life ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); then citing Fed. R. Civ. P. 8(a)(3)). Additionally, a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed R. Civ. P. 54(c).

Plaintiff demands damages "against all of the Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial." (Doc. 22 at 18). Plaintiff's motion for default judgment similarly demands that judgment be entered jointly and severally against Sara and Maywind, specifying damages of $9,966,866, the amount plaintiff transferred to Maywind. (Doc. 70 at 18). Of this amount, as discussed, approximately $4.6 million was sent directly by Mountain of Spices to Maywind, while an additional $5.4 million was sent by others. The Court will determine

1    whether Plaintiff has adequately "proved up" its damages before turning to the appropriate

2    remedy for each claim.

3         i. **Entitlement to Damages**

4         Plaintiff has shown entitlement to damages in the amount of the $4,550,000 it sent

5    to Maywind. (See Doc. 70-1 at 23–24, 28–34, 36).

6         However, Plaintiff has failed to show entitlement to damages for the $5.4 million

7    other lenders sent to Maywind. Although Plaintiff includes evidence with its motion

8    showing that the money was indeed transferred, Plaintiff does not explain why it should be

9    compensated for an economic loss sustained by third parties. (*See* Docs. 22 at 1–19; 70-1

10   at 22–25, 36, 38, 40, 42). Rather, the unstated assumption of the complaint appears to be

11   that causing others to transfer money to Maywind is enough to enable it to sue for

12   compensation for the loss of that money. If there is a legal reason entitling Plaintiff to these

13   damages, it is not explained in either the complaint or the motion for default judgment—

14   notwithstanding Plaintiff's belated assertion in its motion that the $5.4 million was "sent

15   to Maywind by six individuals who had loaned these funds" to Plaintiff. (Doc. 70 at 18

16   (citing Qidong Xia Decl., Doc. 70-1 at 23)).

17        This showing of entitlement to damages for the $5.4 million is deficient. Initially,

18   the complaint does not demonstrate that Plaintiff has standing to sue for money lost by

19   others. Standing requires at minimum that a plaintiff demonstrate that "it has suffered an

20   injury in fact." *Krottner v. Starbucks Corp.*, 628 F.3d 1139,  1141 (9th Cir. 2010) (cleaned

21   up). Because the complaint does not contain facts showing how an injury to third parties is

22   an injury to Plaintiff, it does not demonstrate standing to sue for the $5.4 million.

23        Because this deficiency is fundamental it also carries through to create other

24   problems with Plaintiff's case. Plaintiff's unjust enrichment claim would fail with respect

25   to the $5.4 million because Plaintiff could not have been impoverished by losing funds it

26   never owned. Plaintiff's conversion claim would likewise fail because Plaintiff has not

27   shown a right of possession of the $5.4 million at the instant of conversion. And Plaintiff's

28   constructive fraud claim would fail because Plaintiff has not shown the loss of the $5.4

million was a detriment to it. Similarly, the Court would be unable to award damages to compensate Plaintiff for a loss it did not suffer.

Nor is Plaintiff's assertion in its motion that third parties "loaned" Plaintiff the money by sending it to Maywind enough to correct this deficiency. This assertion is much closer to a contradiction of the facts in the verified complaint than it is to an elaboration of them. The complaint alleges that Plaintiff "entered into loan agreements with individuals to bundle those individual contributions to provide them to the Loan Program, and individual supporters of the Movement could also directly participate in the Loan Program." (Doc. 22 at 6). Plaintiff has not provided any such loan agreements between it and the lenders of the $5.4 million, and the fact that those lenders provided their funds directly and unbundled to Maywind strongly suggests that they were in the latter group rather than the former. Further, as discussed, at no point does the complaint allege that the $5.4 million was loaned to Plaintiff. In view of this inconsistency, Plaintiff's conclusory declaration that funds were loaned to it "is insufficient to support such a substantial damages award." *Cf. Kiwijet, LLC v. Xiamen Hayonex Int'l Logistics Co.*, No. 2:21-cv-07512, 2022 WL 2155973, at *4 (C.D. Cal. June 2, 2022) (declining to award a multi-million-dollar default judgment where no evidence beyond statements in a declaration supported that amount); *Talavera Hair Prods. Inc. v. Taizhou Yunsung Elec. Appliance Co.*, No. 18-CV-823, 2021 WL 3493094, at *16 (S.D. Cal. Aug. 6, 2021) (same).

The Court therefore finds that Plaintiff has not met its burden on default judgment of proving up its damages with respect to the $5.4 million, but has met this burden with respect to the $4,550,000.

### ii.  *Type of Damages*

The usual measure of damages as a remedy for conversion is the fair market value of the chattel at the time of trial, or if not in possession at the time of trial, the fair market value at the time of the conversion. *In re 1969 Chevrolet*, 656 P.2d 646, 650 (Ariz. App. 1982). In either case, because the chattel in question is $4,550,000 in U.S. currency, the value would be the same.

1    The Court finds that liability for the alleged conversion is joint and several as

2  between Sara and Maywind. Joint and several liability in Arizona was largely abolished by

3  the Uniform Contribution Among Tortfeasors Act. *Yslava v. Hughes Aircraft Co.*, 936 P.2d

4  1274, 1277 (Ariz. 1997) (citing Ariz. Rev. Stat. § 12-2506(A).  Section 12-2506 provides

5  that in actions "for personal injury, property damage or wrongful death, the liability of each

6  defendant for damages is several only and is not joint" with certain exceptions. Ariz. Rev.

7  Stat. § 12-2506(A). Section 12-2501(G) in turn provides that "'property damage' means

8  both physical damage to tangible property and economic loss caused by breach of duty."

9  *Id.* § 12-2501(G). It follows from these sections that, outside of personal injury or wrongful

10 death claims, comparative fault is not imposed where property is intangible or not

11 physically damaged, or where economic loss is caused by something other than a breach

12 of duty.

13    The conversion claim here is not a claim for personal injury or wrongful death. Nor

14 is breach of duty an element of conversion. And even if the electronically transferred funds

15 that are the subject of the conversion claim can be considered tangible property, there is no

16 allegation that these funds were somehow physically damaged. Thus, UCATA does not

17 apply and joint and several liability is available, as under the common law, where (as here)

18 the injury done is indivisible. *See Yslava*, 936 P.2d at 1277; *Fagerberg v. Phx. Flour Mills

19 Co.*, 71 P.2d 1022, 1024, 1029 (Ariz. 1937) (affirming a judgment finding several directors

20 of a corporation jointly and severally liable for conversion where they used corporate funds

21 for personal investments).[4]

22    The appropriate damage award for Plaintiff's constructive fraud claim is also

23 $4,550,000. *See Gibraltar Escrow Co. v. Thomas J. Grosso Inv., Inc.*, 421 P.2d 923, 925–

24

25
———————————————
26 [4] Alternatively, even if the converted funds are considered tangible property which was
   physically damaged Plaintiff has adequately alleged that Sara and Maywind acted in
27 concert by pleading facts indicating that they consciously agreed to intentionally convert
   Plaintiff's funds by receiving them in Maywind's bank account and using them for
28 unauthorized purposes. (*See* Doc. 22 at 12–13, 16–17). Thus, even if UCATA applies
   liability would still be joint and several under the "acting in concert" exception. *See* Ariz.
   Rev. Stat. § 12-2506(D)(1).

26, 929 (Ariz. App. 1966) (awarding in damages the payment amount of a fraudulently induced loan).

Because Plaintiff is entitled to judgment on these tort claims, Plaintiff has a "remedy at law" which is "clear, adequate, and complete" against Sara and Maywind, "depriv[ing] equity of jurisdiction" and causing Plaintiff's unjust enrichment claims against them to fail. *See Loiselle*, 228 P.3d at 947 ¶ 14. The Court will therefore dismiss Plaintiff's unjust enrichment claim as to Sara and Maywind.

Although the Court has found that Plaintiff is entitled to default judgment on multiple claims, Plaintiff may not recover more than once for the same harm. *Burgess v. Premier Corp.*, 727 F.2d 826, 837 (9th Cir. 1984); *Hall v. Schulte*, 836 P.2d 989, 994 (Ariz. App. 1992) ("A plaintiff is entitled to be made whole in damages, and that is all."). Therefore, because the complaint demonstrates that the Plaintiff has lost $4,550,000, the Court will upon entry of judgment against Sara and Maywind award damages only in that amount, plus post-judgment interest.

### c. Entry of Final Judgment

Having determined the claims on which Plaintiff is entitled to default judgment and the appropriate remedies for those claims, the only remaining question is whether the Court should enter final default judgment given that other Defendants remain in the case. This decision "is left to the sound judicial discretion of the district court," based on a determination of whether there is "any just reason for delay," considering "judicial administrative interests as well as the equities involved." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980).

The possibility of inconsistent liability in cases involving several defendants may constitute a just reason to delay entry of final judgment as to less than all defendants. *See In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001). This rule originally applied where defendants were alleged to be jointly liable, but has been extended to cases where defendants are jointly and severally liable or merely similarly situated. *See id.* (first citing *Frow v. De La Vega*, 82 U.S. 552 (1872); then citing *Gulf Coast Fans, Inc. v. Midwest*

*Elecs. Imps., Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984)); 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2690, 96 (4th ed. 2016).

Plaintiff argues that entry of final default judgment is proper because there is no just reason for delay and the allegations against the defaulted and non-defaulted Defendants are based on different legal theories such that differing judgments might not be illogical. (Doc. 70 at 16). Specifically, Plaintiff notes that the constructive fraud claim is alleged only against Sara and Maywind. (*Id.* at 17). Plaintiff further argues that the liability of the defaulted and non-defaulted Defendants is theoretically and factually distinct because Sara's and Maywind's liability for unjust enrichment and conversion stems from improperly obtaining Plaintiff's funds through Sara's misrepresentations, while Chen and Wang's liability stems from later improperly receiving those funds from Sara and Maywind. (*Id.*).

The Court declines for two reasons to enter final default judgment against Sara and Maywind. First, the complaint claims that all Defendants are jointly and severally liable. (Doc. 22 at 18) ("Plaintiff demands . . . damages . . . against all of the Defendants, jointly and severally, . . . ."). Specifically, with respect to Count Three the complaint alleges that "Sara, . . . Maywind, Wang, and Chen intentionally acted in concert" to convert Plaintiff's funds. *See* Ariz. Rev. Stat. § 12-2506(D); (F)(1) (stating that "a party is responsible for the fault of another person, if . . . the party and the other person were acting in concert" to commit an intentional tort.). Because Wang and Chen are still defending this case a default judgment against Maywind or Sara for conversion cannot be certified as final.

Second, while it is true that the claims and their supporting factual allegations differ somewhat between Defendants, the wrong which lies at the heart of each of the torts alleged, and which if borne out by evidence would make each Defendant's actions tortious, is in each case essentially the same wrong. The essence of Plaintiff's grievance is that Sara and Maywind were obliged to use Plaintiff's funds to extend a loan to a specific borrower to generate interest for Plaintiff and other investors, but instead used the money for other, unauthorized, purposes. As discussed, it is this alleged obligation and subsequent breach

which forms the basis of the constructive fraud claim, which in the unjust enrichment framework makes each Defendant's enrichment unjust, and which in the conversion framework makes Plaintiff the rightful possessor at the instant of conversion and makes Sara's transfer of Plaintiff's funds to Chen and Wang tortious.

Thus, as this litigation progresses, whether Sara and Maywind obtained the money wrongfully will be relevant to Wang's and Chen's defenses against charges of conversion and unjust enrichment. Wang and Chen will consequently have the incentive and opportunity to attempt to show that Sara and Maywind did not obtain Plaintiff's funds fraudulently or use them for an unauthorized purpose. If an attempt to disprove this foundational allegation is successful, it appears likely that Wang and Chen would not be liable for unjust enrichment or conversion. In that eventuality a final default judgment against Sara and Maywind which assumes the truth of that foundational allegation would be jarringly incongruous with a contrary disposition, resting on the rebuttal of the very same allegation, in Wang and Chen's favor. *Cf. Unicolors, Inc. v. NB Bro. Corp.*, No. CV-16-2268, 2017 WL 3579489, at *2 (C.D. Cal. June 14, 2017) (declining to enter default judgment where defendants had sold copyright-infringing garments in separate sequential acts because proving the garments did not infringe in the first place would render judgments inconsistent). The Court therefore finds that the best course is to delay entry of final judgment until all claims are adjudicated as to all defendants.

Upon resolution of Plaintiff's claims against all non-defaulted Defendants in a manner not inconsistent with the default judgment contemplated in this order, Plaintiff may move this Court for entry of final default judgment against Sara and Maywind.

### III.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's motion for default judgment (Doc. 70) is granted in part and denied in part as specified herein. (The Clerk of the Court shall not enter a separate judgment at this time.)

**IT IS FURTHER ORDERED** that, within 5 days of resolution of Plaintiff's claims against all non-defaulted Defendants (if such resolution is not inconsistent with the default judgment to which this order finds entitlement) Plaintiff may move this Court for entry of final default judgment in the amount of $4,550,000 plus post-judgment interest, jointly and severally against Sara and Maywind.

**IT IS FINALLY ORDERED** that Count One against Sara and Maywind, Count Two against Maywind, and Count Four are dismissed without prejudice for failure to state a claim.

Dated this 26th day of January, 2023.

James A. Teilborg
Senior United States District Judge