**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mountains of Spices LLC, | No. CV-21-01497-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Sara Lihong Wei Lafrenz, et al., | |
| Defendants. | |

**I.  Procedural History**

Pending before the Court is Plaintiff's motion to amend the complaint. (Doc. 82). This would be Plaintiff's Third Amended Complaint. The proposed Third Amended Complaint seeks to add three new defendants and add back a fourth defendant that Plaintiff previously voluntarily dismissed. (Doc. 82 at 35). Additionally, it seeks to add some additional factual allegations and two addition types of relief. (Doc. 82 at 35-54).

This case was filed on August 31, 2021. The first amendment complaint was filed September 16, 2021. The second amended complaint was filed January 19, 2022. Due to Plaintiff having difficulty accomplishing service, a Scheduling Conference was not held until June 1, 2022.

While a motion for default judgment was pending, Plaintiff strategically moved for an extension of time to file a motion to amend the complaint because Plaintiff believed that if it could take default judgment against some Defendants, then amend the complaint, Plaintiff would not be required to re-serve those defaulted Defendants with the later-filed

amended complaint. (Doc. 78). The Court granted an extension of the Rule 16 deadline for filing motions to amend the complaint (Doc. 79). Thus, the motion to amend is timely under this Court's Rule 16 scheduling order.

However, immediately after this case was filed, on September 2, 2021, the Court gave Plaintiff several warnings. Specifically, the Court issued an order which included:

> THE PARTIES ARE CAUTIONED that it is the practice of this Court to not extend the Dispositive Motion Deadline beyond the two-year anniversary of the case being filed in or removed to Federal Court, nor to allow the Discovery Cut-Off to extend beyond 30 days before the Dispositive Motion Deadline. Accordingly, delays in effectuating service of process, the filing of or pendency of motions, settlement discussions or mediation, etc., will not be considered as justification to exceed the above referenced two-year deadline. Furthermore, it is the practice of this Court to wait until after dispositive motions are resolved to set the trial date. For this reason the Court will set deadlines at the Rule 16 Scheduling Conference for filing motions to amend the pleadings. The parties are admonished that "there is no trial date set" will not be an excuse for late motions to amend the pleadings, failing to complete discovery, or other requests for extensions of deadlines[.]

(Doc. 7 at 2) (emphasis omitted).

Thus, Plaintiff has known since the inception of this case that the Court would not permit this case to extend indefinitely. Against this backdrop, the Court will consider Plaintiff's motion to file a Third Amended Complaint, which was filed approximately one and one-half years after the original complaint.

## II.     Legal Standard

The Court should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a). Whether to grant a motion to amend depends on the following factors: (1) undue delay, (2) bad faith, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint. *Western Shoshone Nat. Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991). The most important of these factors is prejudice to the opposing party. *U.S. v. Pend Oreille Public Utility Dist., No. 1*, 926 F.2d 1502, 1511 (9th Cir. 1991). Nonetheless, futility alone justifies denying leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (1995).

/ / /

/ / /

### III. Analysis

#### A. Undue Delay

As recounted above, this case has been pending since August of 2021, or one year and seven months. Discovery closes on May 19, 2023, and dispositive motions are due by June 9, 2023. This Court cannot grant leave to amend, allow time for service on the newly added Defendants and still expect these newly added Defendants to meet the existing deadlines. Thus, allowing the addition of new Defendants at this late stage of the case will necessarily either substantially delay the case because the Court would need to extend these deadlines, or severely prejudice those newly added Defendants by depriving them of the opportunity to take discovery if the Court does not extend the deadlines.

Moreover, the Court must consider whether the delay was "undue". Plaintiff's motion states that the need for amendment is based on discovery in this case. (Doc. 82). However, Plaintiff does not specify when it received the discovery that caused it to move to amend. Plaintiff attaches a deposition from January 2022 (Doc. 82 at 58) as evidence of "new" information causing it to move to amend. But Plaintiff had that discovery a year before moving to amend in January 2023. Because Plaintiff has failed to show that it pursued discovery diligently, or that it received discovery responses recently despite its diligence, Plaintiff has failed to show that waiting until 2023 to move to amend was not an undue delay.

Additionally, Plaintiff chose to delay for strategic reasons. Specifically, in November of 2022, Plaintiff stated:

> Plaintiff filed a Motion for Default Judgment against Defendants Sara Lihong Wei LaFrenz a/k/a Sara Wei ("Sara Wei") and Maywind Trading, LLC ("Maywind"). As of the time of the present filing, however, the Court has not yet ruled on Plaintiff's motion for default judgment. Thus, Plaintiff is concerned that, should it move to amend its Complaint—as it presently intends to do—before the December 16, 2022 deadline set by the Court, Plaintiff would potentially be required to re-serve Sara Wei and Maywind with the amended Complaint, move for default a second time against both defendants, and re-file its motion for default judgment.

(Doc. 78 at 2). Thus, Plaintiff knew at some point before this November 2022 filing that it was going to seek leave to amend and delayed for some unknown period of time for its

own strategic advantage. Plaintiff's lack of clarity as to when it discovered the evidence it claims lead it to move to amend again prevents the Court from finding there was no undue delay.

Additionally, the Court rejects Plaintiff's argument that there is no undue delay because there is no firm trial date. As the Court explained at the Scheduling Conference, the Court sets a trial date after the close of discovery to have a more realistic idea of when the case will be ready for trial. However, the scheduling order states: "IT IS FURTHER ORDERED that because the deadlines set forth herein will trigger setting a trial date, the Court deems these deadlines to be the equivalent of a firm trial date." (Doc. 63 at 7 (emphasis omitted); *see also* Doc. 7 at 2 (quoted above)). Accordingly, there is effectively a firm trial date because the scheduling order deadlines are otherwise firm. And for the reasons discussed, the Court cannot add four new Defendants and realistically expect to keep the same deadlines. Thus, while Plaintiff may be correct that the additional facts Plaintiff seeks to allege by amendment would not significantly alter the timing of this case, the addition of four Defendants makes amendment at this late stage too delaying.

Finally, as to Defendant Jian Peng, this Defendant was named in Plaintiff's prior three complaints, but voluntarily dismissed. (Doc. 82 at 12, n.1). It is not possible that Plaintiff only recently discovered Jian Peng's affiliation with the other Defendants in this case given that Plaintiff has alleged an affiliation all along.

Thus, for all of the foregoing reasons, the Court finds that granting leave to amend at this stage of the case would cause an undue delay to the Court and the proceedings. *See David v. Powell*, 901 F.Supp.2d 1196, 1212 (S.D. Ca. 2012) ("Undue delay is delay that prejudices the nonmoving party or imposes unwarranted burdens on the court." (citation omitted)). Further Plaintiff has failed to show when it discovered the facts that lead to this motion to amend; thus, Plaintiff has failed to show that it did not compound the delay by lack of diligence in seeking leave to amend. *See generally Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990). Thus, the Court finds this factor weights against granting leave to amend.

### B. Bad Faith

The Court cannot conclude that Plaintiff acted in bad faith. *See Wizards of the Coast LLC v. Cryptozoic Entertainment LLC*, 309 F.R.D. 645, 651 (W.D. Wash. 2015) ("In the context of a motion for leave to amend, 'bad faith' means acting with intent to deceive, harass, mislead, delay, or disrupt.") (citing *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006)). However, Plaintiff's delay in filing a motion to amend to obtain a ruling on the motion for default judgment was not a good faith effort to avoid delay. Specifically, this Court has held:

> [W]hen Plaintiff filed the Amended Complaint its original complaint became ineffectual. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (noting that an "amended pleading supersedes the original pleading" such that "after amendment the original pleading no longer performs any function and is treated thereafter as nonexistent" (quotations omitted) (emphasis added)). Because Plaintiff's original complaint "no longer performs any function," a default based on the original complaint must also be rendered ineffectual and non-existent. *See Best W. Int'l, Inc. v. Melbourne Hotel Investors, LLC*, 2007 WL 2990132, at *1 (D. Ariz. Oct. 11, 2007) (noting that the filing of an amended complaint subsequent to a motion for default judgment "mooted" the default judgment motion); *Ogunsalu v. Nair*, 264 F. App'x 672, 674 (9th Cir. 2008) (unpublished) (noting that motions directed at superseded pleadings are to be denied as moot); *Nelson v. Nationwide Mortg. Corp.*, 659 F. Supp. 611, 615 (D. D.C. 1987) ("In light of [the plaintiff's] filing of an amended complaint, her [previous] motions for entry of default judgments against [the defendants] must be denied as moot.").
>
> In this case, the Clerk of Court entered default on Plaintiff's original complaint. At this time, default has not been entered on Plaintiff's Amended Complaint. Consequently, default judgment on the Amended Complaint would be improper because no default has been entered on the Amended Complaint. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) (discussing the two-step process under Rule 55).

*ThermoLife Int'l, LLC v. Sechel Holdings, Inc.*, No. CV 14-2291-PHX-JAT, 2015 WL 1521779, at *1–2 (D. Ariz. Apr. 3, 2015).

Thus, if leave to amend were granted, all of the effort the Court made on the motion for default judgment would have been wasted because the complaint on which default was entered would be "non-existent." (*See* Doc. 84 at 1-22). Thus, while Plaintiff's delay for strategic advantage did not rise to the leave of bad faith, it did delay the case in a pointless way if leave to amend is granted. This is not a good faith effort to avoid delay and to

avoide disruption of the progress of the case. The Court finds that this factor weighs neither in favor of nor against granting leave to amend.

### C.     Prejudice to the Opposing Party

As alluded to above, unless this Court basically restarts discovery in this case, the newly added Defendants would be prejudiced because the discovery deadlines would expire before the deadline to serve them. (Again, discovery closes on May 19, 2023, and dispositive motions are due by June 9, 2023.) Additionally, the staleness of these allegations also prejudices the proposed-to-be-added new Defendants because by Plaintiff's own allegations, by December 2020 there were concerns about the money that was "loaned". Over two years elapsed before a motion to amend was filed in January 2023. The delay in notifying these Defendants of the allegations against them could have caused them to not preserve records that could have been relevant to their defense.

Further, the existing Defendants would be prejudiced because discovery would basically have to begin anew, including the newly added Defendants potentially seeking to redo discovery that has already been completed. For example, one Defendant is currently opposing having his deposition taken a second time by Plaintiff. (Doc. 86). These types of requests to repeat discovery would presumably be commonplace if four new Defendants are added. Additionally, if the Court were to extend the deadlines to avoid prejudicing the newly added Defendants, the existing Defendants would suffer the prejudice of having this litigation drawn out even longer before resolution.

Thus, for all of the foregoing reasons, the Court finds this factor weights against granting leave to amend.

### D.     Futility of Amendment

This factor weighs most strongly against allow an amendment. First, all of the claims in the proposed Third Amended Complaint are tort claims. Assuming an accrual date of the cause of action being December 2020 (when the Third Amended Complaint alleges the issues with loans were discovered (Doc. 82 at 14 ¶7)), the two-year statute of limitations had expired by the time the motion to amend was filed. *See Tavilla v. Cephalon,*

- 6 -

*Inc.*, 870 F. Supp. 2d 759, 763 (D. Ariz. 2012) (citing Ariz. Rev. Stat. § 12-542). Thus, barring relation back or some other tolling, new Defendants would likely be subject to dismissal.

Second, as discussed more fully below, the Court has, in ruling on the motion for default judgment, dismissed many of these claims. (Doc. 84). Nonetheless, the motion to amend seeks to replead all of them.

Third, the Court has concerns regarding whether any of the allegations in the case will withstand the adversarial process. Notably, for purposes of the motion for default judgment, as the law requires, the Court accepted as true Plaintiff's allegations. (Doc. 82 at n.1). However, for this futility analysis, the Court will consider the plausibility of these allegations. *See Hernandez v. Costco Wholesale Corp.*, No. CV-21-00357-PHX-DLR, 2022 WL 17537981, at *3 (D. Ariz. Dec. 8, 2022) ("A motion to amend is futile if the amended portion fails to state a plausible claim for relief.").

The foundation of the claims in this case arise from the following "relationship" between the parties: "The Loan Program allowed participating anti-CCP[1] activists to loan money to a community fund that would then loan funds to a designated third-party borrower ("Borrower") as a short-term investment to allow Loan Program participants to realize a return on that investment to support themselves and their anti-CCP efforts." (Doc. 22 at 2 (Doc. 22 is the Second Amended Complaint and the operative pleading in this case)). In other words, Plaintiff alleges that secret-unnamed activists are wealthy enough to have money to loan.[2] These secret lenders give their money to organizations like Plaintiff, who then transfers the money to a middleman who has no function other than to be a passthrough conduit of this money. (Generally, Plaintiff contends that the Defendants Sara and her company, Maywind,[3] are the "middlemen").[4] The middleman is then

---

[1] This term is defined as: "anti-Chinese Communist Party ("anti-CCP")." (Doc. 22 at 1).

[2] Specifically, at some points in the second amended complaint, Plaintiff alleges that $89,776,743.35 has been loaned through this program. (Doc. 22 at 3).

[3] Sara Lihong Wei Lafrenz ("Sara") and Maywind Trading, LLC ("Maywind").

[4] The factual allegations in this case are, at best, unclear. In the verified Second Amended

- 7 -

supposed to loan the money to the "Borrower," another secret-unnamed person with enough wealth to pay interest on this loan. No business purpose is stated for the Borrower other than to give money to the lenders so they can "support themselves and their anti-CCP efforts."[5] The Borrower then pays this interest back to the middleman, who funnels it back to the original lenders. All of this is done without any paperwork documenting the loans, the rate of return, a repayment schedule, or the "real parties in interest" because the true lenders' and the true borrowers' identities are secret.

This scheme raises many questions. Plaintiff alleges that these loans were supposed to be at 3 percent interest for a term of 3 years, but also alleges the Borrower would pay 6%. (*See* footnote 4 above). Plaintiff claims that Sara was supposed to execute loan documents containing the 3 year/3% terms, but she never did. (Doc. 22 at 8 ¶37). Plaintiff (and others) nonetheless transferred money to her and/or her companies without this documentation. Plaintiff does not bring a claim in this case for breach of contract. But without repayment terms, Plaintiff cannot prove that these "loans" were anything other than gifts or payments for some as-yet-unrevealed service or good.

Thus, for Plaintiff to be entitled to recover in this case on the four tort claims pled in the Second Amended Complaint and re-pled in the proposed Third Amended Complaint, the Court must accept some version of underlying contract terms as true because such terms would be the only way a duty of repayment on Defendants would exist. And as indicated above, the Court accepted these allegations as true in considering the motion for default judgment. But for purposes of whether these allegations are plausible, the Court must ask: is it plausible that if a plaintiff loaned 90 million dollars to someone, completely unsecured

---

Complaint, Plaintiff claims that the interest rate on the loans was supposed to be 3%. (Doc. 22 at 8 ¶36). However, earlier in the Second Amended Complaint, it states that the Borrower would pay 6% interest. (Doc. 22 at 6 ¶24). Perhaps Sara was allowed to keep this 3% difference as her consideration for acting as the middleman, but the Court cannot find such an allegation (or any other explanation for this difference) in the Second Amended Complaint (Doc. 22) or the motion for default judgment (Doc. 70).

[5] Later in the second amended complaint, a vague business purpose is alleged for the Borrower, namely, "us[ing the loan] for general working capital purposes of the Borrower, including to make further investment into equity markets or for operating expenses." (Doc. 22 at 6 ¶25).

and undocumented, that that person might abscond with the money? Yes. But it is plausible that anyone would actually do that? It seems very unlikely unless an as-yet-unrevealed ulterior motive exists.

Answering the first question only, the Court denied two motions to dismiss. (Doc. 55). Those motions, filed by pro se Defendants, did not raise the plausibility of the overall facts in this case. (*See id.*).[6] However, in moving for default judgment, Plaintiff elaborated on facts of this case. (Doc. 70). That motion, in conjunction with the motion to amend, has caused the Court to consider the second question and the plausibility of the entire foundation that forms the basis of this case.

Nonetheless, the Court will turn next to the futility of certain claims (apart from the statute of limitations problem) and the futility of certain damages.

As to the claims, the Court has already endeavored to unearth what is recoverable in this case in ruling on the motion for default judgment against Sara and Maywind. (Docs. 82, 84). The Court concluded that Order by dismissing Count One against Sara and Maywind, Count Two against Maywind, and Count Four in its entirety for failure to state a claim. Count One is unjust enrichment, Count Two is constructive fraud, and Count Four is negligent misrepresentation. Thus, the Court concluded that Plaintiff could only recover on Count Three – conversion – and potentially Count Two against Sara but only to the extent the damages would not be duplicative of Count Three. (Doc. 84 at 19). For all of the reasons discussed at length in that Order, many of the claims sought to be included in the Third Amended Complaint are futile. *See* (Doc. 84).

As to damages, the Third Amended Complaint does not specify an exact amount of damages sought by Plaintiffs. At one point, the proposed Third Amended Complaint references seeking $9,966,846 (Doc. 82 at 16), and at another point it references 44 million in transfers to Sara (Doc. 82 at 21) and at another point it references $89,776,743.35 in

---

[6] As noted in the Order, the basis for both motions to dismiss was a denial of the facts against the individual moving Defendants, not a challenge to the plausibility of the complaint as a whole. (Doc. 55 at 3) ("Wang principally argues that the allegations against him are untrue." "Devin contends that…Plaintiff has not alleged any facts that would show unjust enrichment because he did not receive any money.")

transfers to Sara (Doc. 82 at 23). However, this Court has held that Plaintiff can only recover Plaintiff's own money, not money transferred to Sara by other third parties, even if Plaintiff told those (secret) third-parties to make the transfers. (Doc. 84 at 19). Thus, the most Plaintiff can recover is $4,550,000.00. Accordingly, to the extent the proposed Third Amended Complaint seeks damages in excess of this amount, it is futile.

Additionally, both through a discovery dispute pending before this Court (Doc. 92 at 9-10) and the proposed Third Amended Complaint (Doc. 82 at 25), this Court has learned that there is parallel litigation pending in Maricopa County Superior Court because a bank that was being utilized for some part of this transaction became concerned about the true owner of the funds and, via an interpleader action, deposited $8,909,024.07 with that court. Plaintiff in this case has made a claim to those funds. Those funds exceed the $4,550,000.00 this Court has concluded is the maximum Plaintiff can recover in this case. Those funds are for this same transaction. Thus, to the extent Plaintiff recovers more than $4,550,000.00 in that litigation, this entire lawsuit is futile because Plaintiff will have been made whole.

Thus, for all of the foregoing reasons, the Court finds that this factor weighs against granting the motion to amend and allowing the proposed Third Amended Complaint to be filed.

### E.      Prior Opportunities to Amend

As discussed above, Plaintiff has already amended the complaint twice. Plaintiff having already taken three opportunities to state the claims in this case, this factor weighs against allow Plaintiff to file a fourth version of the complaint.

## IV.    Conclusion

In summary, four of the five factors weight against allowing the proposed Third Amended Complaint to be filed and one factor is neutral. As a result, the Court will deny the motion. Thus,

**IT IS ORDERED** that the motion to amend (Doc. 82) is denied.

**IT IS FURTHER ORDERED** that in addition to the parties in this case, the Clerk

of the Court shall send a copy of this Order to movant in Doc. 87 (Xin Zhang).

Dated this 17th day of March, 2023.

*James A. Teilborg*
Senior United States District Judge