Exhibit 12

# Exhibit 12

Clerk of the Superior Court
*** Electronically Filed ***
M. Bouise, Deputy
4/30/2021 11:59:02 AM
Filing ID 12840273

**THE QUINLAN LAW FIRM, LLC**
William J. Quinlan, State Bar No. 028679
2415 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
Tel: 312.883.5500
E-Mail: wjq@quinlanfirm.com
*Attorneys for Intervenor*
*Mountains of Spices LLC*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## COUNTY OF MARICOPA

| | |
|---|---|
| COMERICA BANK, a Texas Banking Association, <br><br> Plaintiff/Interpleader, <br><br> vs. <br><br> G-SERVICE, LLC, et al. <br><br> Defendants. | Case No. CV2021-000495 <br><br> **VERIFIED MOTION TO INTERVENE** <br><br> (Assigned to the Honorable Timothy Thomason) |
| XIN ZHANG, individually, <br><br> Crossclaim Plaintiff, <br><br> v. <br><br> YUN JING, individually, <br><br> Crossclaim Defendant. | |
| QISHENG CHEN, individually, <br><br> Crossclaim Plaintiff, <br><br> v. <br><br> YUN JING, individually, <br><br> Crossclaim Defendant. | |
| G-SERVICE, LLC, an Arizona Limited Liability Company, <br><br> Crossclaim Plaintiff, <br><br> v. <br><br> YUN JING, individually, <br><br> Crossclaim Defendant. | |

Pursuant to Rules 24(a) and 24(b), Ariz. R. Civ. P., Mountains of Spices LLC ("Mountains of Spices" or "MOS") moves to intervene as a defendant in this Interpleader action. Counsel for Mountains of Spices has contacted counsel for all parties of record to determine whether any party objects to this Motion, and no party responded with any objection.

## INTRODUCTION

This Interpleader Action concerns $8,909,024.07 held in the deposit account ending in 3064 ("Account") that Defendant G-Service LLC ("G-Service") opened with Plaintiff Comerica Bank ("Comerica"). By this Action, Comerica requests that the Court adjudicate the rights of all parties in and to the Account's funds. (Complaint, at 4.) MOS has a significant interest in the subject matter of this lawsuit and seeks leave to intervene pursuant to Rule 24(a) or, alternatively, Rule 24(b) of the Arizona Rules of Civil Procedure. Specifically, MOS is the rightful claimant to $4 million of the funds held in the Account. MOS had provided those funds to a non-party entity, Maywind Trading LLC ("Maywind"), for purposes of a loan investment program. However, after MOS provided the loaned funds to Maywind for investment, Maywind, at the direction of non-party Sara Wei (a/k/a Sara Wei LiHong LaFrenz), instead transferred $4 million of MOS' funds to Defendant G-Service's Account. In December 2020, upon discovering that Sara Wei directed the transfer of MOS' funds from Maywind to G-Service, MOS demanded an accounting of all the funds it had provided to Maywind under MOS' loan program, including the $4 million Sara Wei caused Maywind to send to G-Service's Account. Instead, Sara Wei cut off communication with MOS on or about December 26, 2020; shortly thereafter, Comerica initiated this Action. MOS requests that the Court grant it leave to intervene as defendant under Rule 24(a) or, alternatively, the Court should grant it leave to intervene pursuant to Rule 24(b).

## BACKGROUND

MOS is a limited liability company registered in the state of New York. MOS was formed to borrow funds from its lenders, who are either individuals or businesses, for investment purposes. It is just one of many similar entities established by members of the Chinese community, who primarily live in the United States, for investment purposes.

1

Generally, MOS receives funds from its lenders pursuant to individual loan agreements, and invests those funds, with the goal of achieving a return on investment for its lenders.

Maywind is a limited liability company registered in Illinois and doing business in Arizona. Maywind's relationship with MOS is supposed to operate as follows: MOS and other similar investment entities send funds to Maywind. Maywind then distributes those funds to other individuals or businesses at the direction of MOS and the other investment entities. The monies distributed by Maywind are investments, and are expected to receive a certain return on investment for MOS and its lenders. In short, MOS, through this loan program, is meant to help its lenders achieve a return on their investments.

Sara Wei is a de facto manager of Maywind and has a close relationship with the founder of Maywind. She managed and operated Maywind's bank accounts that were utilized as part of the loan program between MOS and its lenders. In short, she controlled the money that Maywind received as part of the loan program that MOS and other similar entities administered in 2020. Because she had this control, she was able to cause Maywind to distribute MOS' funds.

One entity receiving funds from Maywind was G-Service, a defendant in this Interpleader Action. G-Service is an Arizona limited liability company incorporated on September 28, 2020. One of G-Service's 50% members, Xin Zhang, who is also a defendant in this Interpleader Action, contends that G-Service received $4 million from Maywind as a prepayment on a contract for future services that were not completed. As discussed more below, that $4 million is part of, and is directly traced to, the $8,909,024.07 held in the Account that G-Service opened with Plaintiff Comerica Bank.

A.    **Mountains of Spices' Loan Program Involving Maywind.**

As relevant here, beginning in August 2020, MOS started a loan program with its lenders, who are individuals and businesses from the Chinese community. The lenders loaned funds to MOS, which MOS would then cause to be invested. Pursuant to that arrangement, between August 11, 2020, and August 26, 2020, MOS transferred at least $4.5 million to Maywind. MOS expected Maywind to further disburse those funds and receive a return on investment. Specifically, Sara Wei, on behalf of Maywind, was directed to disburse those funds

2

only to ACA Corporation ("ACA"), an investment fund that makes equity investments.

Then, on December 19, 2020, Sara Wei disclosed to MOS — for the first time — that only a portion of the loan proceeds MOS directed to be deposited into Maywind with the intent to then be transferred to ACA was actually transferred to ACA. At the same time, Sara Wei notified MOS that G-Service received money from Maywind and other entities controlled by Sara Wei, totaling $9 million. MOS, however, did not authorize G-Service to receive any funds that MOS transferred to Maywind. Accordingly, on or around December 21, 2020, MOS sought an accounting of its funds from Sara Wei and Maywind. MOS then learned, on or about December 25, 2020, that, without authorization from and prior notice to MOS, Sara Wei transferred $4 million of MOS' funds from Maywind on October 6, 2020 to G-Service's Account. MOS immediately demanded that Sara Wei provide a complete accounting of all funds transferred to Maywind for the loan investment program. Sara Wei and Maywind ignored MOS' demands for accounting, and have not responded to or communicated with MOS since December 26, 2020. Within two weeks of when Sara Wei and Maywind stopped communicating with MOS, Comerica filed this Interpleader Action.

**B.    Through This Action, G-Service and Xin Zhang Seek to Prevent Returning the $4,000,000 of Mountains of Spices' Funds Now Held in G-Service's Comerica Bank Account.**

In addition to Wei's and Maywind's refusal to communicate with it, MOS submits that Maywind and G-Service are attempting to prevent the return of MOS' funds that are currently held in the Account with Comerica. Specifically, G-Service and Xin Zhang (a 50% member of G-Service) allege that Maywind purportedly entered into a service agreement with G-Service on October 4, 2020, for G-Service to build a website for Maywind. (*See* Defendants G-Service, LLC and Xin Zhang Motion for Partial Distribution of Funds to Process Payroll and Insurance, No. CV2021-000495 (filed Mar. 13, 2021); *see also* Defendant G-Service LLC's Answer to Interpleader Complaint and Crossclaims Against Defendant Yun Jing, No. CV2021-000495 (filed Mar. 11, 2021).) G-Service claims that, pursuant to that agreement, Maywind prepaid $4 million to it. (*See id.*) G-Service claims that it will transfer the $4 million back to Maywind

once those funds are disbursed to it. (*See id.*)

The purported prepayment for a contract is specious, at best. Indeed, certain owners of G-Service are the same people who control Maywind or are otherwise affiliated with Maywind so that any disbursement to Maywind will result in those funds remaining in their control. Moreover, the timing and amount of funds transferred from Maywind to G-Service indicates that the $4 million G-Service contends it received from Maywind for an October 4, 2020 services agreement actually involves the $4 million of MOS' funds that Wei transferred to G-Service, without MOS' authorization, which MOS has since sought to recover, to no avail. Defendants G-Service and Xin Zhang are now plainly colluding with Maywind to prevent MOS from recovering the $4 million that MOS demanded be returned in December 2020.

Importantly, one of the 50% members of G-Service, Defendant Yun Jing, acknowledges that third parties (including MOS) rightfully are owed the funds subject to this Interpleader Action. (*See* Yun Jing Answer to Interpleader Complaint, No. CV 2021-000495, ¶ 19 (filed Feb. 2, 2021).)

As such, since late 2020, Maywind and Defendants G-Service and Xin Zhang have acted in concert to misuse and improperly retain $4 million of MOS' funds held in G-Service's Comerica Bank Account. By its Answer and related filings in this case, G-Service is apparently attempting to request that the Court release MOS' funds to G-Service and/or non-party Maywind, rather than to rightfully return the $4 million to MOS. As such, if any of MOS' $4 million held by Comerica are transferred to G-Service or Maywind, MOS expects that those funds will be lost forever, and that neither G-Service nor Maywind will return MOS' funds.

## ARGUMENT

Rule 24 of the Arizona Rules of Civil Procedure governs intervention into an action. Ariz. R. Civ. P. 24. On timely motion, a party may seek to intervene in an action, either as of right or permissively. *Id.* Courts "take the allegations of [the movant's] motion to intervene as true." *Woodbridge Structured Funding, LLC v. Ariz. Lottery*, 235 Ariz. 25, 27 (Ariz. App. 2014). As discussed below, the Court should permit Mountains of Spices to intervene in this Interpleader Action as a matter of right, or, alternatively, as a permissive intervention due to its

4

claim to about half the funds that are subject to this Action.

**A.    Mountains of Spices Should Be Permitted to Intervene as a Matter of Right.**

"On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the subject of the action, and is so situated that disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect that interest, unless existing parties adequately represent that interest." Ariz. R. Civ. P. 24(a).

"Intervention of right is appropriate when the party applying for intervention meets all four of the following conditions: (1) the motion must be timely; (2) the applicant must assert an interest relating to the property or transaction which is the subject of the action; (3) the applicant must show that disposition of the action may impair or impede its ability to protect its interest; and (4) the applicant must show that the other parties would not adequately represent its interests." *Woodbridge Structured Funding*, 235 Ariz. at 28. MOS satisfies each of these requirements.

**1.    Mountains of Spices' Motion Is Timely.**

First, MOS' motion is timely. In deciding whether a motion to intervene is timely, Arizona courts consider "the stage to which the lawsuit has progressed," "whether the applicant could have attempted to intervene earlier," and "whether the delay in moving for intervention will prejudice the existing parties in the case." *State ex rel. Napolitano v. Brown & Williamson Tobacco Corp.*, 196 Ariz. 382, 384 (2000).

Regarding the first two elements, this matter is in its early stages, and MOS did not learn until recently that these proceedings had commenced and were directly related to MOS' funds. Plaintiff Comerica Bank filed its Interpleader Complaint on January 12, 2021. Defendant G-Service filed its Answer to the Complaint, and its simultaneously filed Crossclaims, on March 11, 2021. In its Answer and Crossclaim, G-Service represented that it is entitled to $5,917,418.30 worth of funds held by Comerica which, according to G-service, "are necessary to satisfy the LLC's contractual obligations." (*See* G-Service LLC Answer to Interpleader Complaint and Crossclaims Against Defendant Yun Jing, No. CV 2021-000495, ¶ 35 (filed Mar. 11, 2021).) Included in that sum is the $4 million of funds that, as discussed above, belong

5

to MOS. Additionally, after becoming aware of this action, MOS sought counsel in Arizona, and has now filed the instant motion shortly after doing so. Given that this motion to intervene is being filed shortly after MOS became aware that G-Service was taking a position in this litigation detrimental to it (see G-Service's Answer), MOS acted promptly in seeking to intervene. *See Heritage Village II Homeowners Assoc. v. Norman*, 246 Ariz. 567, 571-72 (Ariz. App. 2019).

Likewise, it cannot be disputed the parties would not be prejudiced by this timely intervention, where Answers and Crossclaims have just recently been filed. This is especially true where a ruling has not even been entered in this case, let alone a judgment. *See Winner Enters., Ltd. v. Superior Court*, 159 Ariz. 106, 109 (Ariz. App. 1988) (court found no prejudice where pretrial intervention would not delay trial).

2.    **Mountains of Spices Has an Interest in the Subject of the Interpleader Action.**

Second, MOS has a clear interest in the subject matter of the action, both in its claim to $4 million of the nearly $9 million held by Comerica that are subject to this Action, and also to ensure that Defendants do not prevail in their improper attempt to take or distribute funds subject to this action that are rightfully owed to MOS. *See Woodbridge Structured Funding, LLC v. Arizona Lottery*, 235 Ariz. 25, 28, ¶ 15 (App. 2014) ("[A]n applicant must show it has such an interest in the case that the judgment would have a *direct* legal effect upon its rights."). Significantly, MOS can directly trace $4 million that it loaned to Maywind that is now held by Comerica in G-Service's Account; funds transferred without MOS' authorization that never should have been given to G-Service, and that MOS has demanded be returned, to no avail. To that end, consistent with Rule 24(c)(1)(B), attached as Exhibit 1 to this Motion is the proposed pleading in intervention that sets out the claim for which MOS seeks to intervene. Considering that Rule 24 "is remedial and should be liberally construed with the view of assisting parties in obtaining justice and protecting their rights," *Bechtel v. Rose In and For Maricopa County*, 150 Ariz. 68, 72 (1986), MOS has a demonstrable interest in this action.

6

### 3. Mountains of Spices' Interest in the Subject of the Interpleader Action Would Be Impaired by Disposition of This Case.

Third, MOS' interest in the funds that are the subject matter of this action would be substantially impaired by disposition of this case without it. As noted above, MOS' monies comprise $4 million of the funds at issue in this action, which G-Service seeks to dispose or otherwise distribute to the detriment of MOS. Specifically, Defendants G-Service and Xin Zhang have falsely asserted that $4 million of the funds subject to this action were Maywind's prepayment to G-Service for an October 4, 2020 "service agreement" to develop a website for Maywind. (*See* G-Service LLC Motion for Partial Distribution for Payroll, No. CV2021-000495, at 3-4 (filed Mar. 13, 2021).) But on information and belief, that service agreement and the purported "prepayment" are a sham. Indeed, the entire purported agreement is half a page, including signature blocks. (See Purported Service Agreement between Maywind and G-Service, attached hereto as Exhibit 2.) That agreement's true purpose is clearly a pretense to obstruct and prevent MOS from reclaiming its funds.

Instead, the entirety of the $4 million Maywind provided to G-Service's Comerica Bank Account is properly traced to MOS; funds that MOS directed Maywind to transfer to a different business, but Maywind instead transferred those funds to G-Service on October 6, 2020. The fact that Defendants G-Service and Xin Zhang now attempt to mischaracterize MOS' funds to the Court as part of some $4 million website development agreement demonstrates that those Defendants seek to impair MOS' right to those funds. MOS, therefore, "meet[s] the minimal burden of showing that disposition of the action may impair or impede their ability to protect their interest." *Norman*, 246 Ariz. at 573.

### 4. Defendants Cannot Adequately Represent Mountains of Spices' Interests.

Finally, the Defendants cannot adequately represent MOS' interests; on the contrary, Defendants G-Service and Xin Zhang are improperly attempting to convert MOS' funds for themselves. Specifically, G-Service and Zhang have brought purported claims to over $5 million on grounds that are, at best, questionable. (*See* G-Service LLC Answer to Interpleader Complaint and Crossclaims Against Defendant Yun Jing, No. CV2021-000495 (filed Mar. 11,

7

2021).) *See Norman*, 246 Ariz. 571-72. Indeed, Defendant Yun Jing, one of the 50% members of G-Service, acknowledges that those funds *do not belong* to G-Service or any of the other defendants. (*See* Yun Jing Answer to Interpleader Complaint, No. CV2021-000495, ¶ 19 (filed Feb. 2, 2021) ("Defendant affirmatively alleges that the funds identified . . . belong to various third parties not named in the complaint . . . and not to defendant or any of the other defendants.")). That member further contends that Comerica should return the funds that are the subject of this Interpleader Action, not to G-Service or Zhang, but rather to the third parties who rightfully are owed those funds, once their identifies are confirmed. (*Id.* at ¶ 20.) MOS is one of those third parties entitled to some portion of those funds — specifically, $4 million. And because none of the Defendants presently in this case are one of the yet-identified third parties, the Defendants cannot adequately represent MOS' interests.

As such, this Court should grant, as a matter of right, MOS' Motion to Intervene.

**B.    Alternatively, Mountains of Spices Should Be Granted Permissive Intervention.**

Alternatively, the Court should grant MOS leave for permissive intervention. Under Rule 24(b)(1)(B), Ariz. R. Civ. P., "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." MOS has a claim that shares both a common question of law or fact: specifically, which Defendant is entitled to the nearly $9 million of funds that were held by Comerica, and the propriety of any future court order directing disbursement to one or multiple defendants. *See, e.g., Zenith Electronics Corp. v. Ballinger*, 220 Ariz. 257, 267 (Ariz. App. 2009) ("In the circumstances of Public Citizen's motion to intervene, a common question of law involves the propriety of the protective order and the extent to which it may be modified at this stage of the proceedings.").

Additionally, when analyzing permissive intervention, courts also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Ariz. R. Civ. P. 24(b)(3). Given this early stage of the proceedings, where no dispositive rulings have even been issued, it cannot be disputed that allowing MOS to intervene would neither delay nor

prejudice the adjudication of the original parties' rights. *See Winner Enters., Ltd.*, 159 Ariz. at 109 (no prejudice where pretrial intervention would not delay trial). To the contrary, by intervening, MOS will more adequately ensure that the proper party's rights are being vindicated in these proceedings. This is apparent here where Defendants G-Service and Xin Zhang are improperly seeking for themselves over $5 million of the funds held by Comerica; funds that actually trace directly to MOS and that belong to MOS.

## CONCLUSION

As such, this Court should grant Mountains of Spices' Motion to Intervene as a matter of right under Rule 24(a). Alternatively, the Court should grant permissive intervention under Rule 24(b). Finally, Mountains of Spices requests that the Court grant any other relief deemed fair and just.

Respectfully submitted this 30th day of April 2021.

THE QUINLAN LAW FIRM, LLC

By:  /s/ William J. Quinlan
     William J. Quinlan

*Attorneys for Intervenor*
*Mountains of Spices LLC*

9

## VERIFICATION

I, Qidong Xia, President of Mountains of Spices, LLC, hereby certify that I have read the foregoing Verified Motion to Intervene, know the contents thereof, and state that it is true of my own knowledge, except the matters stated therein on information and belief, and that as to those matters, I believe them to be true.

_Qidong Xia_
Qidong Xia,
Mountains of Spices, LLC

Title: President

10

Doc ID: 4a7baf010a07fbedeff6ed28d0f7cf44fd0f089ee

The foregoing document FILED and SERVED on April 30, 2021 via TurboCourt to:

Ronald M. Horwitz
Janessa E. Koenig
WADDELL SERAFINO GEARY
  RECHNER JENEVEIN, P.C.
4645 N. 32nd St, Suite A-150
Phoenix, AZ 85018
rhorwitz@wslawpc.com
jkoenig@wslawpc.com
*Attorneys for Plaintiff*

Daniel B. Mestaz
WILLIAMS|MESTAZ, LLP
6225 North 24th Street, Suite 125
Phoenix, Arizona 85016
dmestaz@williamsmestaz.com
*Attorney for Defendant/Crossclaim Defendant Yun Jing*

Marcos Eduardo Garciaacosta
DIAMONDBACK LEGAL, PLLC
3101 N. Central Ave. Suite 790
Phoenix, AZ 85012
marcos@diamondbacklegal.com
*Attorney for Defendant/Crossclaim Plaintiff Qisheng Chen*

/s/ Nicole Griesbach

11

Exhibit 13

# Exhibit 13

**THE QUINLAN LAW FIRM, LLC**
William J. Quinlan, State Bar No. 028679
2415 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
Tel: 312.883.5500
E-Mail: wjq@quinlanfirm.com

*Attorneys for Intervenor-Defendant*
*Mountains of Spices LLC*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**COUNTY OF MARICOPA**

| | |
|---|---|
| COMERICA BANK, a Texas Banking Association, <br><br>               Plaintiff/Interpleader, <br><br> vs. <br><br> G-SERVICE, LLC; an Arizona Limited Liability Company; YUN JING, individually; XIN ZHANG, individually; and QISHENG CHEN, individually, <br><br>               Defendants. | Case No. CV2021-000495 <br><br> **INTERVENOR-DEFENDANT MOUNTAINS OF SPICES LLC VERIFIED ANSWER TO INTERPLEADER COMPLAINT** <br><br> (Assigned to the Honorable Timothy Thomason) |
| XIN ZHANG, individually, <br><br>               Crossclaim Plaintiff, <br><br> v. <br><br> YUN JING, individually, <br>               Crossclaim Defendant. | |
| QISHENG CHEN, individually, <br><br>               Crossclaim Plaintiff, <br><br> v. <br><br> YUN JING, individually, <br><br>               Crossclaim Defendant. | |

G-SERVICE, LLC, an Arizona Limited Liability Company,

Crossclaim Plaintiff,

v.

YUN JING, individually,

Crossclaim Defendant.

COMERICA BANK, a Texas Banking Association,

Plaintiff/Interpleader,

vs.

MOUNTAINS OF SPICES, LLC, a New York Limited Liability Company,

Intervenor-Defendant.

Intervenor-Defendant Mountains of Spices, LLC ("Mountain of Spices"), by and through its attorneys, The Quinlan Law Firm, LLC, hereby answers the interpleader complaint as follows:

## PARTIES, JURISDICTION, AND VENUE

1. The Plaintiff Comerica Bank is a Texas Banking Association duly authorized to conduct business in the State of Arizona.

**ANSWER:** Mountains of Spices lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 1 of the Complaint, and on that basis denies the allegations of Paragraph 1.

2. The Defendant G-Service LLC is an Arizona limited liability company transacting business in the County of Maricopa, State of Arizona.

**ANSWER:** Mountains of Spices lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 2 of the Complaint, and on that basis denies the allegations of Paragraph 2.

1

3.     Upon information and belief, the Defendant Yun Jing is in an individual residing in the State of Arizona, County of Maricopa.

ANSWER:  Mountains of Spices lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 3 of the Complaint, and on that basis denies the allegations of Paragraph 3.

4.     Upon information and belief, the Defendant Xin Zhang is in an individual residing in the State of Arizona, County of Maricopa.

ANSWER:  Mountains of Spices lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 4 of the Complaint, and on that basis denies the allegations of Paragraph 4.

5.     Upon information and belief, the Defendant Qisheng Chen is in an individual residing in the State of Arizona, County of Maricopa.

ANSWER:  Mountains of Spices lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 5 of the Complaint, and on that basis denies the allegations of Paragraph 5.

6.     The above-named Defendants have caused certain events to occur within the County of Maricopa, State of Arizona, and the Defendants are all residents of and/or are transacting business in Maricopa County, Arizona. The funds which are the subject of this Interpleader Complaint are also located in Maricopa County, Arizona. Jurisdiction and venue are therefore properly with this court.

ANSWER:  Mountains of Spices admits the allegations in Paragraph 6 of the Complaint.

### GENERAL ALLEGATIONS

7.     On or about September 29, 2020, the Defendant G-Service LLC opened a deposit account with Plaintiff, Account Number ending in 3064 ("the Account"). A true and correct copy of the Deposit Account Contract is attached hereto as Exhibit "A" and incorporated herein by this reference.

ANSWER:  Mountains of Spices lacks sufficient knowledge or information to admit

2

or deny the allegations contained in Paragraph 7 of the Complaint, and on that basis denies the allegations of Paragraph 7.

8.    At the time the Account was opened, the only authorized signers on the Account were the Defendants Yun Jing and Xin Zhang.

**ANSWER:** Mountains of Spices lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 8 of the Complaint, and on that basis denies the allegations of Paragraph 8.

9.    Since the opening of the Account the Plaintiff observed suspicious activity in connection with the Account, causing the issuance of Suspicious Activity Reports regarding the Account.

**ANSWER:** Mountains of Spices lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 9 of the Complaint, and on that basis denies the allegations of Paragraph 9.

10.    According to the records of the Arizona Corporation Commission, on or about December 31, 2020 there was a change in the members of Defendant G-Service LLC. Specifically. it appears that Defendant Xin Zhang was removed as a member of G-Service LLC, and that Defendant Qisheng Chen was added as a new member of G-Service LLC. See Records of Arizona Corporation Commission attached hereto as Exhibit "B".

**ANSWER:** Mountains of Spices lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 10 of the Complaint, and on that basis denies the allegations of Paragraph 10. To the extent that the allegations in Paragraph 10 seek to paraphrase or characterize the contents of a written document, the document speaks for itself.

11.    Despite the change in membership of G-Service LLC, Xin Zhang remains as an authorized signer on the Account.

**ANSWER:** Mountains of Spices lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 11 of the Complaint, and on that basis denies the allegations of Paragraph 11.

12.    During the first week of January 2021, both Qisheng Chen and Xin Zhang

3

attempted to withdraw approximately half of the funds in the Account, and they advised Plaintiff that they were concerned that Yun Jing was going to attempt to withdraw all of the funds from the Account.

ANSWER: Mountains of Spices lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 12 of the Complaint, and on that basis denies the allegations of Paragraph 12.

13.   Plaintiff then received a request from Yun Jing to change his email address so he could set up a new online profile with Plaintiff because he was concerned that Xin Zhang was going to access the Account and withdraw funds. Yun Jing has also recently advised Plaintiff that he did not authorize the change in members of G-Service LLC.

ANSWER: Mountains of Spices lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 13 of the Complaint, and on that basis denies the allegations of Paragraph 13.

14.   As a result of these recent events, pursuant to its rights and authorization in the Deposit Account Contract, Plaintiff has placed a freeze / hold on the Account, to prevent anyone from withdrawing funds from the Account. See Exhibit "A" at Page 10, Paragraph 3.5.

ANSWER: Mountains of Spices lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 14 of the Complaint, and on that basis denies the allegations of Paragraph 14. To the extent that the allegations in Paragraph 14 seek to paraphrase or characterize the contents of a written document, the document speaks for itself.

15.   As of the present date, the amount of funds being held in the Account is the sum of $8,909,024.07.

ANSWER: Mountains of Spices lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 15 of the Complaint, and on that basis denies the allegations of Paragraph 15.

16.   Inconsistent and conflicting demands have been made upon Plaintiff by Defendants with regard to the funds held in the Account. As a result, and by virtue of such demands, Plaintiff is or may be subject to double or multiple liability and is therefore entitled

4

to invoke the interpleader jurisdiction of this Court pursuant to Rule 22, Ariz.R.Civ.P.

ANSWER: Mountains of Spices lacks sufficient knowledge or information to admit or deny the factual allegations contained in Paragraph 16 of the Complaint, and on that basis denies the allegations of Paragraph 16. The allegations in the second sentence of Paragraph 16 are a legal conclusion to which no response is required.

17.   Plaintiff is entitled, under the Deposit Account Contract, to file this interpleader action to obtain instructions from the Court with regard to the Account at the expense of G-Service LLC, and to claim against and deduct from any proceeds held in the Account an amount equal to all of Plaintiffs costs and expenses, including attorney's fees, incurred in connection with this matter. See Exhibit "A" at Page 10, Paragraphs 3.5 and 3.6.

ANSWER: To the extent that the allegations in Paragraph 17 seek to paraphrase or characterize the contents of a written document, the document speaks for itself. The allegations in Paragraph 17 are a legal conclusion to which no response is required.

18.   This is an action arising from a Contract, and pursuant to the express terms of the Deposit Account Contract and/or A.R.S. §12-341.01 Plaintiff is entitled to an award of its attorney's fees and costs incurred in this action.

ANSWER: The allegations in Paragraph 18 are a legal conclusion to which no response is required.

## CLAIMS TO INTERPLEADER FUNDS

Mountains of Spices sets forth the following claims to the Interpleader Funds:

19.   Mountains of Spices LLC is a limited liability company formed in June 2020 and registered in the state of New York.

20.   Mountains of Spices was formed to borrow funds from its lenders, who are either individuals or businesses, for investment purposes. It is just one of many similar entities established by members of the Chinese community, who primarily live in the United States, for investment purposes.

21.   Generally, Mountains of Spices receives funds from its lenders pursuant to individual loan agreements, and invests those funds, with the goal of achieving a return on

5

investment for its lenders.

22. Maywind is a limited liability company registered in Illinois and doing business in Arizona.

23. Mountains of Spices and other similar investment entities send funds to Maywind. Maywind then distributes those funds to other individuals or businesses at the direction of Mountains of Spices and the other investment entities. The monies distributed by Maywind are investments, and are expected to receive a certain return on investment for Mountains of Spices and its lenders.

24. Sara Wei is a de facto manager of Maywind and has a close relationship with the founder of Maywind. She managed and operated Maywind's bank accounts that were utilized as part of the loan program between Mountains of Spices and its lenders.

25. On information and belief, G-Service is an Arizona limited liability company incorporated on September 28, 2020. One of G-Service's 50% members, Xin Zhang, who is also a defendant in this Interpleader Action, contends that G-Service received $4 million from Maywind as a prepayment on a contract for future services that were not completed.

26. Beginning in August 2020, Mountains of Spices started a loan program with its lenders, who are individuals and businesses from the Chinese community. The lenders loaned funds to Mountains of Spices, which Mountains of Spices would then cause to be invested.

27. Pursuant to that arrangement, between August 11, 2020, and August 26, 2020, Mountains of Spices transferred at least $4.5 million to Maywind. Mountains of Spices expected Maywind to further disburse those funds and receive a return on investment.

28. Specifically, Sara Wei, on behalf of Maywind, was directed to disburse those funds only to ACA Corporation ("ACA"), an investment fund that makes equity investments.

29. On December 19, 2020, Sara Wei disclosed to Mountains of Spices — for the first time — that only a portion of the loan proceeds Mountains of Spices directed to be deposited into Maywind with the intent to then be transferred to ACA was actually transferred to ACA.

30. At the same time, Sara Wei notified Mountains of Spices that G-Service received

6

money from Maywind and other entities controlled by Sara Wei, totaling $9 million.

31. Mountains of Spices, however, did not authorize G-Service to receive any funds that MOS transferred to Maywind.

32. Accordingly, on or around December 21, 2020, Mountains of Spices sought an accounting of its funds from Sara Wei and Maywind.

33. Mountains of Spices then learned, on or about December 25, 2020, that, without authorization from and prior notice to Mountains of Spices, Sara Wei transferred $4 million of Mountains of Spices' funds from Maywind on October 6, 2020 to G-Service's Account.

34. Mountains of Spices immediately demanded that Sara Wei provide a complete accounting of all funds transferred to Maywind for the loan investment program. Sara Wei and Maywind ignored Mountains of Spices' demands for accounting, and have not responded to or communicated with Mountains of Spices since December 26, 2020.

35. Within two weeks of when Sara Wei and Maywind stopped communicating with Mountains of Spices, Plaintiff Comerica Bank filed this Interpleader Action.

36. On information and belief, Mountains of Spices submits that Maywind and G-Service are attempting to prevent the return of Mountains of Spices' funds that are currently held in the Account with Comerica. Specifically, G-Service and Xin Zhang (a 50% member of G-Service) allege that Maywind purportedly entered into a service agreement with G-Service on October 4, 2020, for G-Service to build a website for Maywind. (*See* Defendants G-Service, LLC and Xin Zhang Motion for Partial Distribution of Funds to Process Payroll and Insurance, No. CV2021-000495 (filed Mar. 13, 2021); *see also* Defendant G-Service LLC Answer to Interpleader Complaint and Crossclaims Against Defendant Yun Jing, No. CV 2021-000495 (filed Mar. 11, 2021).) G-Service claims that, pursuant to that agreement, Maywind prepaid $4 million to it. (*See id.*) G-Service claims that it will transfer the $4 million back to Maywind once those funds are disbursed to it. (*See id.*)

37. On information and belief, the purported prepayment for a contract is specious. Indeed, certain owners of G-Service are the same people who control Maywind or are otherwise affiliated with Maywind so that any disbursement to Maywind will result in those funds

remaining in their control.

38. Moreover, the timing and amount of funds transferred from Maywind to G-Service indicates that the $4 million G-Service contends it received from Maywind for an October 4, 2020 services agreement actually involves the $4 million of Mountains of Spices' funds that Wei transferred to G-Service, without Mountains of Spices' authorization, which Mountains of Spices has since sought to recover, to no avail.

39. On information and belief, Defendants G-Service and Xin Zhang are now colluding with Maywind to prevent Mountains of Spices from recovering the $4 million that Mountains of Spices demanded be returned in December 2020.

40. Importantly, one of the 50% members of G-Service, Defendant Yun Jing, acknowledges that third parties (including Mountains of Spices) rightfully are owed the funds subject to this Interpleader Action. (*See* Yun Jing Answer to Interpleader Complaint, No. CV 2021-000495, ¶ 19 (filed Feb. 2, 2021).)

41. As such, since late 2020, on information and belief, Maywind and Defendants G-Service and Xin Zhang have acted in concert to misuse and improperly retain $4 million of Mountains of Spices' funds held in G-Service's Comerica Bank Account.

42. G-Service is apparently attempting to request that the Court release Mountains of Spices' funds to G-Service and/or non-party Maywind, rather than to rightfully return the $4 million to Mountains of Spices.

43. If any of Mountains of Spices' $4 million held by Comerica are transferred to G-Service or Maywind, Mountains of Spices expects that those funds will be lost forever, and that neither G-Service nor Maywind will return Mountains of Spices' funds.

44. Mountains of Spices is entitled to $4,000,000 of the funds in the G-Service account at Comerica Bank subject to this Interpleader Action.

WHEREFORE, intervenor Mountains of Spices requests judgment as follows:

A. That the Court enter an Order releasing $4,000,000 subject to this Interpleader Action to Mountains of Spices, the only party with a rightful claim to those funds.

B. Award of defendant Mountains of Spices' costs pursuant to A.R.S. § 12-341; and

8

C.    For such other relief that the Court deems just and appropriate.

Respectfully submitted this 30th day of April 2021.

THE QUINLAN LAW FIRM, LLC

By:    /s/ William J. Quinlan
       William J. Quinlan

*Attorneys for Intervenor*
*Mountains of Spices LLC*



9

## VERIFICATION

I, Qidong Xia, President of Mountains of Spices, LLC, hereby certify that I have read the foregoing Verified Answer to Interpleader Complaint, know the contents thereof, and state that it is true of my own knowledge, except the matters stated therein on information and belief, and that as to those matters, I believe them to be true.

*Qidong Xia*

Qidong Xia
Mountains of Spices, LLC

Title: President



10

Doc ID: 4a7baf010a07fbedef6ed28d0f7cf44fd0f069ee

Exhibit 14

# Exhibit 14

Clerk of the Superior Court
*** Electronically Filed ***
K. Higuchi-Mason, Deputy
4/15/2022 4:09:01 PM
Filing ID 14188863

**THE QUINLAN LAW FIRM, LLC**
William J. Quinlan, State Bar No. 028679
2415 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
Tel: 312.883.5500
E-Mail: wjq@quinlanfirm.com
*Attorneys for Intervenor*
*Mountains of Spices LLC*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## COUNTY OF MARICOPA

| | |
|---|---|
| COMERICA BANK, a Texas Banking Association, <br><br> Plaintiff/Interpleader, <br><br> v. <br><br> G-SERVICE, LLC, an Arizona Limited Liability Company; YUN JING, individually; XIN ZHANG, individually; and QISHENG CHEN, individually, <br><br> Defendants. | Case No. CV2021-000495 <br><br> **MOUNTAIN OF SPICES, LLC'S CLAIM FOR PORTION OF INTERPLEADER FUNDS AND** <br><br> (Honorable Timothy Thomason) <br><br> (Special Master: Rebecca A. Albrect) |
| **AND RELATED CROSSCLAIMS** | |
| G-SERVICE, LLC, an Arizona limited liability company, <br><br> Crossclaim Plaintiff, <br><br> v. <br><br> Yun Jing, individually, <br><br> Crossclaim Defendant. | |
| And <br><br> *MOUNTAINS OF SPICES, LLC*, a New York limited liability company, <br><br> Intervenor-Defendant | |

The below identified person/entity makes a claim on a portion of the funds interplead in this matter.

**CLAIMANT**

Name: __Mountains of Spices, LLC-Qidong Xia__

Street Address: __40 Brompton Road, Greak Neck, NY__
__11021__

E-mail address: __wjq@quinlanfirm.com__

Amount claimed: __$4,000,000.00__

Basis of Claim: (Add additional pages, if necessary.)

__Please see attached "Mountains of Spices, LLC's Claim For Portion of__
__Interpleader Funds" and exhibits attached thereto__

Documents: (Identify documents below. Attach copies to this form.)

__Please see attached "Mountains of Spices, LLC's Claim for Portion of__
__Interpleader Funds" and exhibits attached thereto__

I swear/affirm that the forgoing is true and correct to the best of my knowledge and belief,

_Qdroy Xia_                                     Date: __April 15, 2022__
Signature

__Qidong (David) Xia__
Printed name

**File one copy with the attachments with the Court.**

**Forward one copy with the attachments, by hard copy or electronically to:**

Rebecca Albrecht
Bowman and Brooke LLP
2901 North Central Avenue, Suite 1600
Phoenix, Arizona 85012
Rebecca.Albrecht@bowmanandbrooke.com

Doc ID: cc87dc03d05fe110ded16d9a8019e7b9dca8107e

## BASIS OF CLAIM FOR PORTION OF INTERPLEADER FUNDS

Plaintiff, Mountains of Spices, LLC ("Mountains of Spices" or "MOS"), pursuant to the Special Master's March 15, 2022 direction, submits this Claim for Portion of Interpleader Funds. The basis for MOS' claim is unjust enrichment, and in support of that claim MOS states as follows:

## I.    INTRODUCTION

The Special Master's March 15, 2022, letter requested that, for the interplead funds deposited in the above-captioned matter, MOS state: the amount it claims it is owed; the basis for its claim; and any documents to support its claim. As set forth below, in detail, MOS is owed $4 million of the funds—based on a claim for unjust enrichment against G-Service, LLC ("G-Service"). The documents supporting this claim are attached as exhibits to this claim.

This action presents a claim of unjust enrichment. As part of a larger lending program (the "Loan Program"), MOS had an agreement with Sara Wei ("Wei"), the *de facto* manager of Maywind Trading, LLC ("Maywind"), to send money borrowed from MOS' lenders to a third-party borrower, ACA Corporation ("ACA"), for investment purposes. Pursuant to this agreement, MOS sent $4.5 million to Maywind in August 2021. However, rather than send the money to ACA as promised, on October 6, 2020, without notice or authorization, Wei sent $4 million of MOS' money to the bank account of a separate company, G-Service. Maywind and G-Service subsequently attempted to legitimize this unauthorized transfer and prevent the return of MOS' $4 million by means of a clearly fraudulent single-page "Service Agreement," falsely dated October 4, 2020. Wei's apparent plan to abscond with this money was, however, prevented when Comerica Bank filed the present interpleader action as a result of apparent infighting among the various individuals purporting to control G-Service. As a result, the $4 million belonging to MOS remains in the account at issue in this action—G-Service's Comerica bank account ending in "3064" ("Comerica Account" or "Comerica Bank Account").

MOS, therefore, requests that the Special Master and the Court approve its claim in full and order the return of all $4 million of MOS' funds currently in the Comerica Bank Account. If an entity other than MOS is allowed to retain MOS' $4 million, the result would be an unjust

3

enrichment.

## II.    BACKGROUND

MOS—formed in the summer of 2020— is a limited liability company which is part of the anti-Chinese Communist Party (the "CCP") "Whistleblower Movement" ("the Movement"). (Ex. A, Decl. of Q. Xia, ¶ 1-2.) Shortly after its formation, it engaged with a Loan Program, that was commenced by leaders of the Whistleblower Movement. (Ex. A, Decl. of Q. Xia, ¶ 2-3.) The Loan Program allowed participants to loan money that was supposed to eventually be invested with ACA, in order to allow participants to realize a return on their investment. (Ex. A, Decl. of Q. Xia, ¶ 4-6.) Specifically, once MOS received money from Loan Program participants, it would then send the funds to Maywind, and Maywind, at the direction of its *de facto* manager Wei and pursuant to its agreement with MOS, would then distribute the funds to ACA, where the funds would then be invested. (Ex. A, Decl. of Q. Xia, ¶ 4-6.)

Pursuant to this arrangement, in August 2020, MOS wired $4.5 million in funds to Maywind, with the instruction that that the funds were to be further distributed to ACA. (Ex. A, Decl. of Q. Xia, ¶ 6-7; Ex. B, Chase and Bank of America Statements Showing August 2020 Withdrawals totaling $4.5 million from MOS' Accounts to Maywind). Rather than do so, however, Wei, without notice to or prior authorization from MOS, on October 6, 2020, sent $4 million of MOS' money to G-Service's Comerica Account, where it remains today. (Ex. A, Decl. of Q. Xia, ¶ 8, 11, 12, Exs. 1-3 attached thereto;[1] Ex. C, Oct. 2020 Comerica Bank Account Statement for G-Service, LLC, at 2 (showing an October 6, 2020, $4 million wire transfer from Maywind to G-Service's Account ending in "3064"); Ex. D Affidavit of Jian Peng In Support of G-Service LLC and Xin Zhang's Verified Response In Opposition to Mountains of Spices LLC's Verified Motion to Intervene, ¶ 10, CV2021-000495 (filed on May 8, 2021) ("On October 6, 2020, Maywind wired $4,000,000 from its Wells Fargo account ending in 3454 directly into G-Service's operating Account at Comerica Bank." (cleaned up).).

---

[1] Certified English translations for Exhibits 1 and 2 to the Declaration of Qidong Xia are attached to the Declaration of Yinying Wang, attached hereto as Exhibit L.

4

Maywind first learned that its money may not have been sent to ACA as agreed on December 19, 2020, when Wei disclosed to MOS that she had sent millions of dollars in Loan Program funds to G-Service and other entities besides ACA. (Ex. A, Decl. of Q. Xia, ¶ 8, 12). As a result, on or around December 25, 2020, MOS sought an accounting of its money from Wei. (Ex. A, Decl. of Q. Xia, ¶ 10). In response, Wei sent MOS a message indicating that she should no longer be contacted regarding the Loan Program. (Ex. A, Decl. of Q. Xia, ¶ 11 and exhibits attached thereto). Along with that message, she provided documentation demonstrating that Maywind had transferred $4 million to G-Service on October 6, 2020. (Ex. A, Decl. of Q. Xia, ¶ 12, and exhibits attached thereto). G-Service's bank statements confirm that it received these funds from Maywind on October 6, 2020. (Ex. C, Oct. 2020 Comerica Bank Account Statement for G-Service, LLC.) Within two weeks from when Sara Wei and Maywind stopped communicating with MOS, Comerica filed this Interpleader Action. (Ex. E Plaintiff Comerica Bank's Interpleader Complaint, CV2021-000495 (Filed January 12, 2020).)

G-Service initially sought recovery of the funds in this case and filed an Answer asserting six cross-claims. (Ex. F, Answer of G-Service, LLC To Interpleader Complaint and Crossclaims Against Defendant Yun Jing, CV2021-000495 (Filed March 11, 2021).) In support of its cross-claims, G-Service asserted, without further elaboration, that Maywind had "prepaid" $4 million G-Service—the same $4 million that MOS identified as its own money which had been sent by Maywind to G-Service rather than to ACA as MOS directed—for certain unidentified services. (Id., ¶ 15.) MOS moved to intervene in the present case on April 30, 2021, on the basis that it was the rightful claimant to $4 million of the funds at issue, which it had provided to Maywind as part of the Loan Program and Maywind had subsequently misused. (Ex. G, MOS Verified Mot. to Intervene, CV2021-00495 (Filed Apr. 30, 2021.).) As part of its Motion to Intervene, MOS attached a copy of the purported "Service Agreement" between Maywind and G-Service pursuant to which Maywind "prepaid" $4 million—which was less than half a page—and indicated that, on information and belief, the agreement and payment were a sham created by G-Service and Defendant Zhang with the intent to obstruct MOS from reclaiming its funds so that G-Service could keep those funds for itself. (Id., at 7,

Ex. 2.). On May 25, 2021, the Court granted MOS' Motion to Intervene, noting that "MOS may . . . be able to prove that it has an equitable lien on the funds, or establish some other equitable remedy." (Ex. H, Minute Entry, CV2021-000495 at 2 (Filed May 25, 2021). Subsequently, on November 15, 2021, the Court struck G-Service's crossclaims in their entirety. (Ex. I, Minute Entry Striking G-Service's Crossclaims, CV2021-000495 (filed November 15, 2021).). G-Service never provided any evidence that Maywind actually performed any of the services for which it was "prepaid" $4 million under the "Services Agreement."

On January 11, 2021, the Special Master asked certain parties—MOS, Defendant Jing, and Defendant Zhang—to submit "in writing on or before January 27, 2022, the identity . . . of those persons or entities that they believe may have a claim to the interpled funds." (Ex. J Hearing Recap, CV2021-000495 (Filed January 11, 2022). MOS filed its subsequent report within which it set forth that MOS has a claim to the interpled funds, and also noted that Santel, LLC and Medical Supply System International, LLC may also have a claim to the interpled funds. (Ex. K, Mountains of Spices LLC's Report to the Special Master Regarding Claimants, CV2021-000495 (Filed January 27, 2022).)

## III.    ARGUMENT

"Interpleader is a procedure where one holding money or property subject to adverse claims may seek to avoid multiple liability by joining in a single action anyone who asserts or may assert claims to the money or property." Ariz. R. Civ. P. 22(a)(1). Here, as a result of Maywind and Wei's misappropriation of MOS's funds, G-Service has been unjustly enriched with $4,000,000 of MOS' funds. As a result, MOS is entitled to the return of the $4,000,000 from the Comerica Bank account at issue in this case in the form of either restitution or, alternatively, a constructive trust or an equitable lien on the same amount.

### A. G-Service Has Been Unjustly Enriched With $4 Million in MOS' funds

"Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." Trustmark Ins. Co. v. Bank One, Ariz., NA, 202 Ariz. 535, 541 (App. 2002), as corrected (June 19, 2002). To establish an unjust-enrichment claim,

a party must establish the following: "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment; and (5) the absence of a legal remedy." *Id.* Each of these elements exists as to the $4,000,000 of MOS' funds that Maywind sent to G-Service.

Specifically, the evidence shows that $4 million of the $4.5 million MOS transferred to Maywind in August 2020 was thereafter disbursed without prior notice or authorization, on October 6, 2020, to G-Service's Comerica Bank Account, unjustly enriching G-Service. (Ex. B, Chase and Bank of America Statements Showing August 2020 Withdrawals totaling $4.5 million from MOS' Accounts to Maywind; Ex. A, Decl. of Q. Xia, ¶ 8, 12 and exhibits attached thereto; Ex. C, Comerica Statement showing an October 6, 2020, $4 million wire transfer from Maywind to G-Service's Comerica Account ending in "3064"; Ex. D Affidavit of Jian Peng In Support of G-Service LLC and Xin Zhang's Verified Response In Opposition to Mountains of Spices LLC's Verified Motion to Intervene, ¶ 10 CV2021-000495 (Filed on May 8, 2021).).

### 1. G-Service Has Been Enriched.

First, G-Service has been enriched by $4 million. Both the records provided by Wei and G-Service's bank statement demonstrate that G-Service received a payment from Maywind in the amount of $4 million in October 2020. (Ex, A, Decl. of Q. Xia, ¶ 12 and exhibits attached thereto; Ex. C, Comerica Statement showing an October 6, 2020, $4 million wire transfer from Maywind to G-Service's Comerica Account ending in "3064"). The cash remains in G-Service's Comerica Bank account. The receipt of cash is the most fundamental form of enrichment in a claim for unjust enrichment. *Trustmark Ins. Co.*, 202 Ariz. at 541 ("Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another.")

### 2. MOS Has Been Impoverished.

Second, MOS has been impoverished by $4 million. MOS had an arrangement with Sara Wei that its money was supposed to be sent to one entity, and Sara Wei sent it to a different entity. (Ex. A, Decl. of Q. Xia ¶ 6, 12.) MOS presently has no access to this money and did not receive anything in exchange for this money.

### 3. A Connection Exists Between the Enrichment and Impoverishment.

Third, there is a connection between G-Service's enrichment and MOS' impoverishment. Specifically, as confirmed by both MOS' and Maywind's bank records, in August 2020, MOS transferred $4.5 million to Maywind with the instructions that it be sent to ACA. (Ex. A, Decl. of Q. Xia, ¶ 7; Ex. B, Chase and Bank of America Statements (showing August 2020 Withdrawals totaling $4.5 million from MOS' Accounts to Maywind).) In October 2020, however, as confirmed by both Wei's and G-Service's bank records, Wei caused $4 million of this money to be sent to G-Service's Comerica Bank Account. (Ex. A, Decl. of Q. Xia, ¶ 8, 12; Ex. C, Comerica Statement (showing an October 6, 2020, $4 million wire transfer from Maywind to G-Service's Comerica Account ending in "3064").) By doing so, without MOS' authorization and against its expressed wishes, Wei both deprived MOS of its $4 million and enriched G-Service by the same amount.

### 4. No Justification Exists for 4 Either the Enrichment or the Impoverishment.

Fourth, there is no justification for G-Service's enrichment because it was obtained as a result of misappropriation by Wei and Maywind. "A person who obtains a benefit by misappropriating financial assets, or in consequence of their misappropriation by another, is liable in restitution to the victim of the wrong." Restatement (Third) of Restitution and Unjust Enrichment § 41 (2011); id. cmt. e ("[A] claim [for restitution] is usually asserted against a transferee of the misappropriated funds or their product . . . The underlying rationale in each such case is that the alternative to restitution is the unjust enrichment of the transferee . . . at the claimant's expense."); see Turley v. Ethington, 213 Ariz. 640, 643 (App. 2006) (applying the Restatement of Restitution and Unjust Enrichment); Liberty Life Ins. Co. v. Meyers, No. CV 10-2024-PHX-JAT, 2013 WL 530317, at *7 (D. Ariz. Feb. 12, 2013) (same and noting that "Arizona courts generally follow the Restatement of the Law"). Here, MOS entrusted $4.5 million of its money to Wei and Maywind to be sent to ACA to be invested and earn a return for individuals participating in the Loan Program. Instead of doing so as she agreed, however, Wei, without MOS' authorization, misappropriated $4 million of MOS' money by sending it to G-Service for reasons that are unclear, although they appear to have involved a

8

plan to abscond with the money. G-Service is, thus, liable for this sum. This is true regardless of whether G-Service was itself innocent of any wrongdoing or—as appears likely given the almost certainly fraudulent "Services Agreement" it entered into with Maywind[2]—it was a party to wrongdoing with Wei and Maywind. *See Boyd v. LaMaster*, 927 F.2d 237, 239–40 (6th Cir. 1991) (finding that an innocent recipient of a gift of stock wrongfully taken by a third party from the plaintiff was subject to unjust enrichment on that grounds that "Illinois law does not require that there be wrongful conduct by the person in possession before a constructive trust can be declared"; "It is a time-honored maxim, observed in Illinois, that even if 'the hand receiving it be ever so chaste . . . if it comes through a corrupt, polluted channel, the obligation of restitution will follow it.'"); *Gordon v. McCarty*, 3 Whart. 407, 412 (Pa. 1838) ("[W]hen [a transferee] has parted with, or given up nothing for [property], there is no reason why he should be permitted to derive any advantage from the one more than the other, when procured by the fraud of himself or that of a third person.").

### 5. MOS Lacks an Adequate Remedy Provided by Law

MOS lacks an adequate remedy at law. MOS had no contract with G-Service, was not otherwise in privity with G-Services, and had no direct dealings with the company. Indeed, MOS was unaware that its funds had been transferred to G-Service until almost four months after it provided those funds to Maywind. MOS, therefore, lacks any possible remedy at law to recover its funds from G-Service. *See Trustmark Ins. Co.*, 202 Ariz. at 541 n.5 (holding that a party has an adequate remedy at law, and may not pursue a claim for unjust enrichment, when "there is a contract which governs the relationship between the parties").

---

[2] The "Service Agreement" between Maywind and G-Service appears designed to perpetuate a fraud on MOS because the Agreement, a single page, contained a false date of October 4, 2020, and referred to certain services that G-Service has not—and, indeed, could not—establish that it actually performed. (Ex. G, MOS Verified Mot. to Intervene and exhibits attached thereto, CV2021-000495 (Filed Apr. 30, 2021).) G-Service cannot have entered into this purported contract and believed it to be anything but an instrument of fraud.

**B. MOS is Entitled to Restitution in the Amount of $4 Million—or, Alternatively, a Constructive Trust or Equitable Lien on the Same Amount of Money.**

As a result of G-Service's unjust enrichment, MOS is entitled to restitution to be taken from the Comerica Bank Account in the amount of the enrichment—$4 million. Alternatively, should the Court decline to award restitution, MOS is entitled to and requests the imposition of either a constructive trust or an equitable lien on $4 million of the funds in the Comerica Bank Account.

Initially, MOS is entitled to $4 million in cash restitution from G-Service. "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Pyeatte v. Pyeatte*, 135 Ariz. 346, 352 (App. 1982) (quoting Restatement of Restitution § 1 (1937)). "A claimant entitled to restitution may obtain a judgment for money in the amount of the defendant's unjust enrichment." Restatement (Third) of Restitution and Unjust Enrichment § 49(1); *see also id.* § 49 cmt. a (defining "restitution in money" as the "standard remedy" for unjust enrichment"). Thus, here, because G-Service was unjustly enriched at the expense of MOS in the amount of $4 million, MOS is entitled to restitution from G-Service in the same amount. *See* Restatement (Third) of Restitution and Unjust Enrichment § 49(2) ("Enrichment from a money payment is measured by the amount of the payment or the resulting increase in the defendant's net assets, whichever is less."). This restitution could and should be paid directly out of the Comerica Bank Account.

Alternatively—although likely achieving the same effective result—MOS is entitled to either a constructive trust or an equitable lien over the $4 million in the G-Service Account belonging to MOS that was transferred to G-Service by Maywind in October 2020. Both a constructive trust and an equitable lien are equitable remedies for unjust enrichment. *Murphy v. Farrell Dev., LLLP v. Sourant*, 229 Ariz. 124, 131 (App. 2012) ("A constructive trust is an equitable remedy that is not subject to any 'unyielding formula' for imposition .... The remedy is tied to unjust enrichment of the defendant and ... typically invoked when the enrichment is at the plaintiff's expense ...." (citations omitted)); *In re Marino*, 813 F.2d 1562, 1567 (9th Cir. 1987) ("An equitable lien is a remedy for unjust enrichment.").

10

"A court may impose a constructive trust 'whenever title to property has been obtained through actual fraud, misrepresentation, concealment, undue influence, duress or through any other means which render it unconscionable for the holder of legal title to continue to retain and enjoy its beneficial interest.'" *U.S. v. Arce-Padilla*, 981 F. Supp. 2d 852, 858 (D. Ariz. 2013) (quoting *Harmon v. Harmon*, 126 Ariz. 242, 244 (App. 1980)). "Where money is the asset upon which the constructive trust is based, it is necessary that the specific amounts be identified and located, either by tracing the money to a specific and existing account, or where the funds have been converted into another type of asset such as by the purchase of real property the money must be traced into the item of property." *ProData Comput. Servs., Inc. v. Ponec*, 590 N.W.2d 176 (Neb. 1999).

"An equitable lien, when imposed to prevent unjust enrichment, is a special form of constructive trust." *Coventry Homes, Inc. v. Scottscom P'ship*, 155 Ariz. 215, 218 (App. 1987). "An equitable lien is a right over property constituting an encumbrance, so that the property itself may be proceeded against in an equitable action and either sold or sequestered upon proof of a contract out of which the lien could grow or of a duty on the part of the holder so as to give the other party a charge of a lien on it." *Wolfswinkel v. Super. Ct. ex rel. Gila Cty.*, 145 Ariz. 154, 165 (App. 1984). In contrast to a constructive trust, there is no requirement that title to the property be obtained through fraud or that its retention be unconscionable. Instead, "[a]n equitable lien can be created by judicial decree in order to do equity under the peculiar circumstances of the case and prevent unjust enrichment." *In re Farnsworth*, 384 B.R. 842, 850 (Bankr. D. Ariz. 2008). Moreover, unlike for a constructive trust, the property subject to an equitable lien need not be directly traceable from the claimant to the defendant. Restatement (Third) of Restitution and Unjust Enrichment § 56 ("[T]he transactional nexus that will support equitable lien is not so narrowly circumscribed, and the property subject to equitable lien need not in every case be identified as the traceable product of misappropriated assets.").

Here, the application of a constructive trust on $4 million of the funds in the Comerica Bank Account is appropriate because the funds at issue were obtained through fraud and can be directly traced to MOS' possession. Initially, the funds at issue were obtained by G-Service

through a fraud perpetrated by Maywind, as Wei accepted MOS' funds under the false pretense that she would send them to ACA and then instead transferred them to G-Service. (Ex. A, Decl. of Q. Xia, ¶ 6-12). Moreover, G-Service appears to have attempted to disguise the transfer of the fees and avoid recovery by MOS through the use of the almost certainly fraudulent "Service Agreement" prepared by G-Service and Maywind. Moreover, MOS can trace the $4 million of its funds over which it seeks a constructive trust to the Comerica Bank Account: as confirmed by MOS' bank records, the funds were sent to Maywind's account in August 2020 (Ex. B, Chase and Bank of America Statements (showing August 2020 Withdrawals totaling $4.5 million from MOS' Accounts to Maywind)); then, as confirmed by Wei's statement and G-Service's bank statements, the $4 million was sent to G-Service's Comerica Bank Account, where it presently remains. (Ex. A, Decl. of Q. Xia, ¶ 8, 12; Ex. C, Comerica Statement (showing an October 6, 2020, $4 million wire transfer from Maywind to G-Service's Comerica Account ending in "3064").) However, should the Court determine that either of these elements is absent, MOS requests, in the alternative, the imposition of an equitable lien on $4 million in the Comerica Bank Account.

## IV.  CONCLUSION

For the reasons set forth above, MOS requests that the Court award it $4 million of the funds G-Service's Comerica Bank Account as restitution. In the alternative, MOS requests that the Court impose a constructive trust or an equitable lien in its favor on $4 million of the funds in the Comerica Bank Account.

THE QUINLAN LAW FIRM, LLC

By:  /s/ William J. Quinlan
      William J. Quinlan

*Attorneys for Intervenor*
*Mountains of Spices LLC*

12

The foregoing document FILED and SERVED on April 15, 2022, via TurboCourt to:

Xin (Jonathan) Zhang
**G-SERVICE LLC**
14747 N. Northsight Blvd. Suite 111 #405
Scottsdale, AZ 85260
(xinzhang32@gmail.com)
*Defendant In Propria Persona*

Qisheng (Bryan) Chen
3431 Duplin Creek Drive
Katy, TX 77494
(bryanchenpr@gmail.com)
*Defendant In Propria Persona*

Daniel B. Mestaz
**MESTAZ LAW**
5090 N. 40th Street, Suite 200
Phoenix, AZ 85018
daniel@mestazlaw.com
*Attorney for Defendant/Crossclaim Defendant Yun Jing*

Rebecca A. Albrecht
**BOWMAN AND BROOKE LLP**
Phoenix Plaza – Suite 1600
2901 North Central Avenue
Phoenix, Arizona 85012-2736
rebecca.albrecht@bowmanandbrooke.com
*Special Master*

/s/ Nicole Griesbach

13

**THE QUINLAN LAW FIRM, LLC**
William J. Quinlan, State Bar No. 028679
2415 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
Tel: 312.883.5500
E-Mail: wjq@quinlanfirm.com
*Attorneys for Intervenor*
*Mountains of Spices LLC*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## COUNTY OF MARICOPA

| | |
|---|---|
| COMERICA BANK, a Texas Banking Association,<br><br>               Plaintiff/Interpleader,<br><br>v.<br><br>G-SERVICE, LLC, an Arizona Limited Liability Company; YUN JING, individually; XIN ZHANG, individually; and QISHENG CHEN, individually,<br><br>               Defendants. | Case No. CV2021-000495<br><br>**DECLARATION OF QIDONG (DAVID) XIA IN SUPPORT OF MOUNTAIN OF SPICES, LLC'S CLAIM FOR PORTION OF INTERPLEADER FUNDS**<br><br>(Honorable Timothy Thomason)<br><br>(Special Master: Rebecca A. Albrect) |
| **AND RELATED CROSSCLAIMS** | |
| G-SERVICE, LLC, an Arizona limited liability company,<br><br>               Crossclaim Plaintiff,<br><br>v.<br><br>Yun Jing, individually,<br><br>               Crossclaim Defendant. | |
| And<br><br>*MOUNTAINS OF SPICES, LLC*, a New York limited liability company,<br><br>               Intervenor-Defendant | |

Doc ID: 9670c4a8996bda873cf1a0bc96bfeae9745fa415

I, Qidong (David) Xia, declare under penalty of perjury that the following is true and correct:

1. I am and was, as relevant to this action, President of Mountains of Spices, LLC ("MOS")—an Intervenor in this Interpleader Action.

2. MOS—formed in the summer of 2020—is part of the anti-Chinese Communist Party ("anti-CCP") whitleblower movement (the "Movement").

3. Shortly after MOS' formation, it engaged with a loan program (the "Loan Program"), which was commenced by the members of the Movement.

4. Through the Loan Program MOS borrowed funds from lenders—individuals and businesses from the Chinese community.

5. MOS would then cause the funds to be first temporaily deposited at Maywind Trading LLC ("Maywind") before the funds were borrowed by third party with the ultimate goal of achieving financial benefit to lenders to MOS.

6. Pursuant to this arrangement, Sara Wei—the *de facto* manager of Maywind—was directed on behalf of Maywind to disburse the funds sent by MOS to Maywind only to ACA Corporation ("ACA")—an investment fund that makes equity investments.

7. Thus, between August 11, 2020, and August 26, 2020, MOS transferred at least $4.5 million to Maywind, expecting Maywind and Sara Wei to thereafter disburse the money to ACA to be invested.

8. Then, on December 19, 2020, Sara Wei disclosed to me —for the first time—that the funds had been disbursed not only to ACA, but also to, among other entities controlled by Sara Wei, an entity called G-Service, LLC ("G-Service")—a defendant in this Interpleader Action. A true and correct copy of this message is attached hereto as Exhibit 1.

9. MOS never authorized any payment of its funds to G-Service.

10. Accordingly, on around December 25, 2020, MOS sought an accounting of its funds from Sara Wei in Maywind.

11. On December 26, 2020, Sara Wei, sent me, via WhatsApp, a message listing the

1

remittance details for the Loan Program and and indicating that she should no longer be contacted regarding the Loan Program. A true and correct copy of this message is attached hereto as **Exhibit 2**

12. Along with her December 26, 2020 message, Sara Wei included a bank statement for G-Service indicating that, on October 6, 2020, Maywind transferred $4 million to G-Service. A true and correct copy of that document is attached hereto as **Exhibit 3**.

13. Thereafter, Sara Wei cut off contact with me and I have not been able to communicate with her since.

Executed on this 15th day of April, 2022, in New York.



_Qidong Xia_

Qidong (David) Xia

Doc ID: 9670c4a8996bda873cf1a0bc96bfeae9745fa415

☲ **HELLOSIGN**                                                    Audit Trail

| | |
|---|---|
| **TITLE** | 法庭宣誓书 亚利桑那州银行的案子 |
| **FILE NAME** | 20220413 NY DAVID AFF no mark.pdf |
| **DOCUMENT ID** | 9670c4a8996bda873cf1a0bc96bfeae9745fa415 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ℮ Signed |

## Document History

| | | |
|---|---|---|
| ℭ **SENT** | **04 / 15 / 2022** 15:29:30 UTC | Sent for signature to Qidong Xia (davy@davytonyintl.com) from cgqixia2020@gmail.com IP: 45.91.22.207 |
| ◎ **VIEWED** | **04 / 15 / 2022** 16:58:11 UTC | Viewed by Qidong Xia (davy@davytonyintl.com) IP: 172.56.34.42 |
| ↙ **SIGNED** | **04 / 15 / 2022** 16:58:26 UTC | Signed by Qidong Xia (davy@davytonyintl.com) IP: 172.56.34.42 |
| ☑ **COMPLETED** | **04 / 15 / 2022** 16:58:26 UTC | The document has been completed. |

Exhibit 15

# Exhibit 15



**CHASE** ⬡

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

August 07, 2020 through August 31, 2020
Account Number: ███████ 7921

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | www.Chase.com |
| Service Center: | 1-877-425-8100 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00011908 DRE 601 212 24720 NNNNNNNNNN 1 000000009 D4 0000

MAYWIND TRADING LLC
7161 E RANCHO VISTA DR APT 701
SCOTTSDALE AZ 85251-1495



## CHECKING SUMMARY
Chase Platinum Business Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $0.00 |
| Deposits and Additions | 53 | 27,360,548.13 |
| Electronic Withdrawals | 25 | -6,189,270.50 |
| Ending Balance | 78 | $21,171,277.63 |

Your Chase Platinum Business Checking account provides:
- No transaction fees for unlimited electronic deposits (including ACH, ATM, wire, Chase Quick Deposit)
- 500 debits and non-electronic deposits (those made via check or cash in branches) per statement cycle
- $25,000 in cash deposits per statement cycle
- Unlimited return deposited items with no fee

There are additional fee waivers and benefits associated with your account – please refer to your Deposit Account Agreement for more information.

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 08/10 | Book Transfer Credit B/O: Bangkok Bank Public CO Ltd Bangkok 10500 Thailand th Org█ | $31,000.00 |
| 08/11 | Book Transfer Credit B/O: JPMorgan Chase Bank, N.A. - Singaposingapore Singapore 68912- Sg Org:/7960260 Shi Jianhong Oob: JPMorgan Chase Bank, N.A. - Singapo17th Floor Capital Tower Ref: █ | 5,000,000.00 |
| 08/11 | Book Transfer Credit B/O: Mountains of Spices LLC Great Neck NY 11021-3429 US Ref: Mos LLC Tm█ | 1,400,000.00 |
| 08/11 | Fedwire Credit Via: Bank of America, N.A.█ B/O: Mountains of Spices LLC NY █ US Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ 85251-1495 US/Ac-0 00000006357 Rfb=Lcnp5Vaus Obi=Other Business Investment Bbi=/Chgs/USD0. ,00/Ocmt/USD1000000,00/█ | 1,000,000.00 |
| 08/11 | Book Transfer Credit B/O: Dbs Bank Ltd Singapore Singapore█ █ Peng Tao Ref: Dbsibnc/Ocmt/USD140999,/ | 140,999.00 |
| 08/12 | Fedwire Credit Via: Bank of America, N.A.█ B/O: Tien Yuen Foundation, Inc. San Gabriel, CA, 91776, US Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ █ Obi=Inves Tment Imad: | 500,000.00 |
| 08/13 | Book Transfer Credit B/O: Davy & Tony International Limited Great Neck NY 11021-3429 US Ref: From Davey & Tony International Limited Trm█ | 1,500,000.00 |
| 08/13 | Book Transfer Credit B/O: Mountains of Spices LLC Great Neck NY 11021-3429 US Ref: From: Mos LLC Tr█ | 1,000,000.00 |

**CHASE ⬡**

August 07, 2020 through August 31, 2020

Account Number: ⬛⬛⬛⬛7921

## DEPOSITS AND ADDITIONS (continued)

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 08/13 | Fedwire Credit Via: Bank of America, N.A ⬛⬛⬛ B/O: Himalaya New World Inc#Dba US Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ Himalayaya ⬛⬛⬛ | 466,000.00 |
| 08/13 | Fedwire Credit Via: Bank of America, N.A ⬛⬛⬛ B/O: Manjing Xu Andover, MA, 01810, US Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ 85251-1495 | 200,000.00 |
| 08/14 | Chips Credit Via: Citibank N.A./0008 B/O: Jianjun Liu Australia Ref: Nbnl=Maywind Trading LLC Scottsdale AZ 85251-1495 US/Ac-00000000 ⬛ Australia O Gb=National Australia Bank Limited Melbourne Australia 3001 Au Obi=Con Tract No Au1 - | 1,200,090.00 |
| 08/14 | Fedwire Credit Via: Bank of America, N.A./⬛ : Tong Bao Foothill Rnch, CA, 92610, US Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ 85251-1495 | 700,000.00 |
| 08/14 | Fedwire Credit Via: Sumitomo Mitsui Banking Corporation ⬛⬛ Yining Gong Japan Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ 85251-1495 US/Ac-0 I=Purpose:Long-Term Loan, Over 1 Ye AR. | 200,000.00 |
| 08/14 | Fedwire Credit Via: Sumitomo Mitsui Banking Corporation ⬛⬛ B/O: Shinichl Saito 0653-01350327 1008 Tokyo, Japan Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ 85251-1495 U⬛ I=Purpose:Long-Term Loan, Over 1 Yea R. ⬛ | 100,000.00 |
| 08/14 | Book Transfer Credit B/O: Saitama Resona Bank Ltd Saitama ⬛ Japan Jp | 100,000.00 |
| 08/14 | Fedwire Credit Via: The Bank of New York Mellon/⬛ B/O: Tut CO.,Ltd 812-0054 Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ 85251-1495 ⬛ Obi=N Otx Trade Import Goods Bbi=/Chgs/US | 100,000.00 |
| 08/17 | Fedwire Credit Via: Bank of America, ⬛ B/O: 9395-6100 Quebec Inc. Westmount, Pq, CA Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ ⬛ =Company Loan Bbi=/Chgs/USD10,00/B Nl/Chase Bank 14224 N Scottsdale Rd 177 Scottsdale, AZ, US | 1,000,010.00 |
| 08/17 | Fedwire Credit Via: Citibank N.A./⬛ B/O: Lee,Jeng-Shiuan City, Taiwan Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ 85251-1495 US/Ac-0 | 300,000.00 |
| 08/17 | Fedwire Credit Via: Bank of America, N.A.⬛ B/O: Jian Lan Arcadia, CA, 91006, US Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ 85251-1495 US/Ac-0 Obi=Inves Tment Imed: ⬛ | 200,000.00 |
| 08/17 | Chips Credit Via: Wells Fargo Bank, N.A ⬛ D: MS Min Liu Qc CA ⬛ Nbnl=Maywind Trading LLC Scottsdale AZ 85251-1495 US/Ac-000000006357 O ⬛ a Nk of Montreal Canada Obi=Invt Prog Ram Alberta Bbi=/Chgs/USD0.00/Chgs/USD15,00/Ocrnt/ ⬛ | 199,985.00 |
| 08/17 | Book Transfer Credit B/O: Mizuho Bank Ltd Tokyo Tokyo Japan 100-8-176 Jp | 100,000.00 |
| 08/17 | Fedwire Credit Via: Sumitomo Mitsui Banking Corporation ⬛ B/O: Han Xiaoguang ⬛ Japan Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ ⬛ Ob I=Purpose:Lend Money To A Friend S Company. ⬛ | 100,000.00 |
| 08/17 | Fedwire Credit Via: Bank of America, N.A. ⬛ B/O: Rei Yamamoto ⬛ Japan Ka 6 2500206 Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ ⬛ /Ac-Purpose:Inv Estment For Company . Order Ref:029 Tip | 100,000.00 |

# CHASE ⬡



## DEPOSITS AND ADDITIONS (continued)

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 08/17 | Chips Credit Via: The Bank of New York Mellon/0001 B/O: Reiko Iwaki Shizuoka City, Shizuoka Pref. Ref: Nbnf=Maywind Trading LLC Scottsdale AZ 85251-1495 ⬛⬛Chi Zuoka City, Shizuoka Pref. Ogb=Shiz Uoka Bank Ltd. Shizuoka 424-8677, J Apan Bbi=/Ocmt/USD100000,00/Bn Ssn: ⬛ ms⬛ | 100,000.00 |
| 08/17 | Fedwire Credit Via: Citibank N.A. ⬛⬛ B/O: 139599049 G China Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ 85251-1495 US/Ac-0 ⬛ Bbi=/Acc/Chen BAI Imad: Rfb=O/B Citibank Nyc Ob I=⬛ | 100,000.00 |
| 08/18 | Chips Credit Via: Mufg Bank, Ltd. ⬛⬛/O: Fukuoka Kohrei 3-3-1 Shinagawa-Ku Tokyo 1420042 Jp Ref: Nbnf=Maywind Trading LLC Scottsdale AZ 85251-1495 ⬛⬛Shin Agawa-Ku Tokyo 1420042 Jp Ogb=Mufg Bank, Ltd. Tokyo Bbi=/Acc/Pay IN Fu Li/Bnf/JPMorgan Chase Bank | 200,000.00 |
| 08/18 | Chips Credit Via: Citibank N.A. ⬛⬛ B/O: MS Suchun Cao V6S 2C4 Ref: Nbnf=Maywind Trading LLC Scottsdale AZ 85251-1495 US/Ac-000000006357 O Rg=/506901121227 V6S ⬛⬛10 Noscatt Obi=Routing Number⬛⬛Fc Bbi=/Chgs/USD25,00/Ocmt/U SD200000,00/Exch/1,0/ Ssn: 0336327 | 199,975.00 |
| 08/18 | Fedwire Credit Via: Sumitomo Mitsui Banking Corporation⬛⬛ B/O: Liu Jing Fukuoka Japan Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ 85251-1495 US/Ac-0⬛ Rfb=150200818MT00898 Ob I=Liu Jing Passport ⬛⬛Te Purpose:Long-Term Loan, Over 1 Year. Imad: | 160,000.00 |
| 08/18 | Fedwire Credit Via: Sumitomo Mitsui Banking Corporation⬛⬛ B/O: Kin Eiraku ⬛⬛ Japan Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ 85251-1495 US/Ac-0 00000006357 Rfb=⬛⬛Ob I=Purpose:Long-Term Loan, Over 1 Ye AR. Imad. | 100,000.00 |
| 08/18 | Fedwire Credit Via: Citibank N.A.⬛⬛ B/O: Mr Samuel Cheng Coquitlam BC/CA Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ 85251-1495 US/Ac-0 ⬛⬛/Chgs/USD0,/Chgs/USD20,00/Ocmt/US Rfb=O/B Citibank Nyc BB I=⬛⬛224 N Scottsdale R D No. 177,S Cottsdale, AZ 85254, USA Swift Imad: | 99,990.00 |
| 08/18 | Book Transfer Credit B/O: Ocbc Wing Hang Bank Limited Hong Kong Hong Kong Hk Org: ⬛⬛ Zhulin Activated Carbon CO Ltd Ref: 1120 Tm:⬛ | 60,000.00 |
| 08/18 | Chips Credit Via: Hsbc Bank USA, N.A./0108 B/O: Hua Xuan International Trade Guangzhoushi China⬛⬛Ref: Nbnf=Maywind Trading LLC Scottsdale AZ 85251-1495 ⬛⬛Guangzhoushi China ID:2499306 Ogb=Hsbc Hong Kong Hong Kong Hong Kong | 24,960.13 |
| 08/19 | Fedwire Credit Via: Sumitomo Mitsui Banking Corporation⬛⬛ B/O: Zhang Peng Osaka-Shi Osaka Japan Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ 85251-1495 US/Ac-0 00000006357⬛=Purpose:Long-Term Loan, Over 1 Ye AR.⬛⬛ Tm:⬛ | 100,000.00 |
| 08/19 | Chips Credit Via: Citibank N.A./0008 B/O: Kilary Global Trading Group Limitedkhari Rd Wanchai Hk Hk Ref: Nbnf=Maywind Trading LLC Scottsdale AZ 85251-1495 ⬛⬛hari Rd Wanchai Hk Hk Ogb=Bank of China Hong Kong Ltd West Kowloon Hong Kong Hk Bbi=/⬛⬛/Ocmt/USD74979,00/ Ssn: ⬛ Trn: 3⬛ | 74,979.00 |
| 08/20 | Fedwire Credit Via: Sumitomo Mitsui Banking Corporation/⬛⬛ B/O: Wu Yamin Okyo Japan Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ 85251-1495 US/Ac-0 ⬛⬛Ob I=Purpose:Long-Term Loan, Over 1 Ye AR. | 100,000.00 |
| 08/21 | Fedwire Credit Via: Bank of America, N.A⬛⬛ B/O: MS Yanchun Liu West Vancouver, BC, CA Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ 85251-1495 ⬛⬛Ob I=Professional Service Chasusu3Xxx Bbi=/Chgs/USD10,00/Bnf/Chase Bank 1 4224 N Scottsdale Rd No 177 ⬛⬛ | 2,847,189.50 |
| 08/21 | Book Transfer Credit B/O: Shanghai Pudong Development Bank Coshanghai China China Ogb: ⬛⬛ l/Zhengzhou Olive Electronic Techno Shanghai Pudong Development Bank 12 Zhong Shan Dong Yi Lu Ref: Nonresident Payment./Chgs/USD18,00/Acc/Pls Pay Thru Chase Bank. Trn:⬛⬛ | 140,034.00 |

**CHASE ⬡**

August 07, 2020 through August 31, 2020
Account Number: ████████7921

## DEPOSITS AND ADDITIONS (continued)

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 08/21 | Fedwire Credit Via: Bank of America, N.A ████████ B/O: Rui Guo/Zheng Li CA ████ US Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ 85251-1495 █████████ n Obi=Servi Ces CA 0567 ████████Trn: Bbi=/Chgs/USD0,00/Ocml/USD120066,00/ Imad: ████████ | 120,066.00 |
| 08/21 | Fedwire Credit Via: Bank of America, N.A./████████ B/O: MS Yanchun Liu West Vancouver, BC, CA Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ •85251-1495 ████████ I=Loan Payment Bbi=/Chgs/USD10,00/B Nf/Chase Bank 14224 N Scottsdale Rd No 177 Scottsdale, AZ, US Imad: ████████ | 2,840.50 |
| 08/21 | Deposit    1858430215 | 100,000.00 |
| 08/24 | Book Transfer Credit B/O: Dbs Bank Ltd Singapore Singapore 01898-2 Sg Org:/████████ Wong Suit Fong Ref: LA Jp1-01102 Suitlong001 Gmail.Com Dbsibnc/Ocml/USD135000,/ Trn:████ | 135,000.00 |
| 08/24 | Chips Credit Via: Hsbc Bank USA, N.A./0108 B/O: Miss Sung Man Kuen Ann Le Peak Rd, Tsuen Wan Nt,Hong Kong Ref: Nbnf=Maywind Trading LLC Scottsdale AZ 85251-1495 ████████ Le Peak Rd, Tsuen Wan Nt,Hong Kong Ogb=Hsbc Hong Kong Hong Kong Hong Kong Obi=Loan Repay Ment Bbi=/Ocml/USD100000 Ssn: ████████ | 100,000.00 |
| 08/25 | Fedwire Credit Via: Mufg Bank, Ltd./████████ B/O: Our Clozette Ltd. Place, Nett, Pohnpei Fsm 96941 Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ 85251-1495 US/Ac-0 00000006357 Rfb=O/B Mufg Bank L Ob I=Payment For Secured Promissory No Teof 2,223,600 Imad: ████████ | 2,223,600.00 |
| 08/25 | Fedwire Credit Via: Sumitomo Mitsui Banking Corporation████████ B/O: Huang Yong Tokyo Japan Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ 85251-1495 ████████ Ob I=Please Inform ME When Money Reach Edjp1-01125 Purpose:Long-Term Loan, Over 1 Year.████████ | 400,000.00 |
| 08/25 | Fedwire Credit Via: Bank of America, N.A./████████ B/O: MS Hongqiao Chen Surrey, BC, CA Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ 85251-1495 US/Ac-0 ████████ Ob I=Money To Grandson'S Trading Acct Chasusu3Xxx Bbi=/Chgs/USD10,00/Bnf/Chase Bank 14224 N Scottsdale Rd, U Imad: ████████ | 149,990.00 |
| 08/25 | Book Transfer Credit B/O: Dbs Bank Ltd Singapore Singapore 01898-2 Sg Org:████████ Wong Suit Fong Ref: LA Jp1-01189 Suitlong001 Gmail.Com Wong Suit Fong Dbsibnca/Ocml/USD135 000,/ Trn:████ | 135,000.00 |
| 08/25 | Wire Reversal B/O: JPMC Cb Funds Transfer Same Day Tampa FL ████████ US Org: ████████ First Century Bank, NA Ref:/Bnf/Our Ref Jpm████████Chaseref ████████Fl Rfn Dtd 08/25/202 0 Trn 3101700238Es As Uta Due To A Cc Tnot Eligible For Wire Transfer Web Design Web Design Trn: ████████ | 2,588.00 |
| 08/26 | Book Transfer Credit B/O: Mountains of Spices LLC Great Neck NY 11021-3429 US Trn: | 1,100,000.00 |
| 08/26 | Fedwire Credit Via: Bank of America,████████ B/O: Mr Jiaxin Chen Scarborough, On, CA Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ 85251-1495████████ ████91 122100024 Purchase of E Quipement Bbi=/Chgs/USD10,00/Bnf/Ch Ase Bank 14224 N Scottsdale, A Imad: ████████ Trn | 139,332.00 |
| 08/27 | Fedwire Credit Via: Citibank N.A./021000089 B/O: Mr Lee Thian Guan John 97 Bedok ████████ Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ ████████ B Citibank Nyc BB I=/Acc/Swift Chasus33 Imad: ████████ 85251-1495 U | 1,169,950.00 |

**CHASE** ⬡

August 07, 2020 through August 31, 2020

Account Number: ████████7921

## DEPOSITS AND ADDITIONS (continued)

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 08/27 | Fedwire Credit Via: Citibank N.A. ████████ B/O: Mr Lee Thian Guan John 97 Bedok 460097 ID: ████ C Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ 85251-1495 ████ Bth=O/B Citibank Nyc BB ████ N Scottsdale Rd 177 Scot Tsdal E AZ 85254 USA Swift Imad: ████ | 1,000,000.00 |
| 08/31 | Fedwire Credit Via: Bank of America, N.A. ████ B/O: Mrs Weil Chen Concord, On, CA Ref: Chase Nyc/Ctr/Bnf=Maywind Trading LLC Scottsdale AZ 85251-1495 US/Ac-0 ████ Ob I=Routing N: ████ Trading Bbi=/Chgs/USD10.00/Bnf/Chase Bank 14224 N Scottsdale Rd, Unit 177 Scottsda Imad: | 479,990.00 |
| 08/31 | Book Transfer Credit B/O: Royal Bank of Canada Payment Centertoronto On Canada M5V2Y-1 CA Org: ████ Xuesong Jiang Ref: CA - 8952/Chgs/USD0,/Chgs/USD20.00/Ocmt/USD155000,/ Trn: ████ | 154,980.00 |
| | | **$27,360,548.13** |

**Total Deposits and Additions**

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 08/12 | 08/12 Online International Wire Transfer A/C: E Sun Commercial Bank, Ltd. Taipei Taiwan Tw Ref: Web Technology Expenses/Te ████ 1/Bnf/Gnews Trn: ████ | $30,000.00 |
| 08/13 | 08/13 Online Domestic Wire Transfer Via: Fst Western Trust ████ A/C: Hudye Group Lp ████ Trn: Scottsdale AZ 85251 US Ref: Rental 7001/Bnf/Renting Imad: ████ | 8,500.00 |
| 08/13 | 08/13 Online International Wire Transfer Via: Dbtco Americas Nyc/ ████ A/C: Jppsjpj1Xxx Tokyo 100-8793 Jp Ben: Li Yang Tsukuba Shi Jp Ref: Web Little Technology, Expenses/Bnf/Web ████ | 5,000.00 |
| 08/14 | 08/14 Online International Wire Transfer A/C: E Sun Commercial Bank, Ltd. Taipei Taiwan Tw Ref: Web Technology Expenses ████ | 5,500.00 |
| 08/17 | 08/17 Online Domestic Wire Transfer Via: Community Fsb ████ A/C: Hua Guo New York NY 10010 US Ref: Web Design/Bnf/Web Design Imad: ████ | 10,763.50 |
| 08/17 | 08/17 Online Domestic Wire Transfer A/C: Xin Qi Sammamish WA 98074-5100 US Ref: Web Design/Bnf/Web Design Trn ████ | 4,373.00 |
| 08/17 | 08/17 Online Domestic Wire Transfer Via ████ A/C: Xunanguo New York NY 10010 US Ref: Web Design/Bnf/Web Design/Time/06:48 Imad: ████ | 7,209.00 |
| 08/17 | 08/17 Online Domestic Wire Transfer Via: Community Fsb ████ A/C: Qingcai Zhang New York NY 10010 US Ref: Web Design/Bnf/Web Design Imad: ████ 3 Trn: | 2,640.00 |
| 08/17 | 08/17 Online Domestic Wire Transfer Via: Discover Bank ████ A/C: Huangyi Ge Greenwood De 19950 US Ref: Web Design/Bnf/Web Design Imad: ████ Trn ████ | 5,212.00 |
| 08/17 | 08/17 Online Domestic Wire Transfer Via: Community Fsb ████ A/C: Chandtai Du New York NY 10010 US Ref: Web Design/Bnf/Web Design Imad: ████ | 5,252.00 |
| 08/18 | 08/18 Online Domestic Wire Transfer Via: Citibank Fsb Chgo ████ A/C: Jian Peng Chicago IL 60616 US Ref: Web Design/Bnf/Web Design Imad ████ | 5,000.00 |
| 08/18 | 08/18 Online Domestic Wire Transfer Via: Bk Amer Nyc ████ A/C: Yubo Qin Piscataway NJ 08854 US Ref: Web Design/Bnf/Web Design Imad: ████ | 1,688.00 |
| 08/19 | 08/19 Online International Wire Transfer A/C: Bangkok Bank Public CO Ltd Bangkok 10500 Thailand th Ref: Web Design Fee Technology Expenses/Bnf/Web Design Fee Trn: | 9,500.00 |
| 08/21 | 08/21 Online Domestic Wire Transfer Via: Community Fsb ████ A/C: Jing Zhou New York NY 10010 US Ref: Web Design/Bnf/Web Design Imad: ████ Trn: | 11,368.00 |

**CHASE** 🅞

August 07, 2020 through August 31, 2020
Account Number: ⬛⬛⬛⬛7921

## ELECTRONIC WITHDRAWALS (continued)

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 08/24 | 08/24 Online Domestic Wire Transfer Via: Community Fsb ⬛⬛⬛ A/C: Jianyu Yang New York NY 10010 US Ref: Web Design/Bnf/Web Design Imad: ⬛⬛⬛ Trn: | 4,960.00 |
| 08/25 | 08/25 Online Domestic Wire Transfer Via: Community Fsb ⬛⬛ A/C: ⬛⬛⬛ New York NY 10019 US Ben: Zhihui Hu New York NY 10010 US Ref: Web Design/Bnf/Web Design Imad: ⬛⬛⬛ | 5,328.00 |
| 08/25 | 08/25 Online Domestic Wire Transfer Via: Community Fsb ⬛⬛ A/C: Aba ⬛⬛ New York NY 10019 US Ben: Tao Zhang New York NY 10010 US Ref: Web Design/Bnf/Web Design Imad: ⬛⬛⬛ | 4,045.00 |
| 08/25 | 08/25 Online Domestic Wire Transfer Via: First Centry Bk NA ⬛⬛ A/C: Zhiyun Quan Bluefield WV 24701 US Ref: Web Design/Bnf/Web Design Imad: ⬛ | 2,588.00 |
| 08/25 | 08/25 Online Domestic Wire Transfer Via: Community Fsb/026073008 A/C: Aba ⬛⬛ New York NY 10019 US Ben: Xin Huang New York NY 10010 US Ref: Web Design/Bnf/Web Design Imad: ⬛⬛ | 7,680.00 |
| 08/28 | 08/28 International Wire Transfer A/C: First Abu Dhabi Bank P.J.S.C. Abu Dhabi U.A.E. Ae Ben:/Aes ⬛⬛ Aoa Capital Group Limited Ref: First Payment Trn: | 6,000,000.00 |
| 08/31 | 08/31 Online Domestic Wire Transfer Via: US Bank Arizona ⬛⬛ A/C: Gns Realty Scottsdale AZ 85258 US Ref: Renting5036/Bnf/Renting Imad: 0831B1Qgc07C002992 Trn: | 30,000.00 |
| 08/31 | 08/31 Online Domestic Wire Transfer Via: Community Fsb/026073008 A/C: Zhenxing Zhao New York NY 10010 US Ref: Web Design/Bnf/Web Design Imad: ⬛⬛⬛ Trn: | 5,684.00 |
| 08/31 | 08/31 Online Domestic Wire Transfer A/C: Wanfeng Zhang Jersey City NJ 07302-6339 US Ref: Web Design/Bnf/Web Design Trn: ⬛⬛ | 960.00 |
| 08/31 | 08/31 Online International Wire Transfer A/C: Foreign Cur Bus Acct Bk 1 Columbus Newark De ⬛⬛ Maywind Trading LLC Ben:/De ⬛⬛ Wencheng Gmbh Ref: To Wencheng Gmbh For Media Consullingtechnology Expenses/Ocmt/Eur3266, ⬛⬛ Wencheng Gmbh For Media Con/Sult:n G Trn: 5849200 | 4,000.00 |
| 08/31 | 08/31 Online International Wire Transfer A/C: Taipei Fubon Commercial Bank CO Ltd Taipei 106 Taiwan Tw Ref:/Rfb ⬛⬛ Web Design Technology Expenses/Te ⬛⬛ Bnf/Web Design Trn: ⬛ | 12,020.00 |
| | **Total Electronic Withdrawals** | **$6,189,270.50** |

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|---|---|
| 08/10 | $31,000.00 | 08/18 | 16,593,871.63 | 08/25 | 23,179,689.63 |
| 08/11 | 7,571,999.00 | 08/19 | 16,759,350.63 | 08/26 | 24,419,021.63 |
| 08/12 | 8,041,999.00 | 08/20 | 16,859,350.63 | 08/27 | 26,586,971.63 |
| 08/13 | 11,196,499.00 | 08/21 | 20,058,112.63 | 08/28 | 20,586,971.63 |
| 08/14 | 13,591,069.00 | 08/24 | 20,288,152.63 | 08/31 | 21,171,277.63 |
| 08/17 | 15,755,634.50 | | | | |

## SERVICE CHARGE SUMMARY

| | |
|---|---|
| Monthly Service Fee | $0.00 |
| Other Service Charges | $535.00 |
| **Total Service Charges** | **$535.00**  Will be assessed on 9/3/20 |

Page 6 of 8



August 07, 2020 through August 31, 2020

Account Number: 7921



## SERVICE CHARGE DETAIL

| DESCRIPTION | VOLUME | ALLOWED | CHARGED | PRICE/ UNIT | TOTAL |
|---|---|---|---|---|---|
| **Other Service Charges:** | | | | | |
| Electronic Credits | 51 | Unlimited | 0 | $0.40 | $0.00 |
| Electronic Credits | | | | | |
| Credits | 28 | 500 | 0 | $0.40 | $0.00 |
| Non-Electronic Transactions | | | | | |
| Electronic Credits | 37 | Unlimited | 0 | $15.00 | $0.00 |
| Domestic Incoming Wire Fee | 10 | Unlimited | 0 | $15.00 | $0.00 |
| International Incoming Wire Fee | | | | | |
| Miscellaneous Fees | 1 | 1 | 0 | $50.00 | $0.00 |
| US Dollar Intl Wire Fee | 5 | 3 | 2 | $40.00 | $80.00 |
| Online US Dollar Intl Wire Fee | 1 | 0 | 1 | $5.00 | $5.00 |
| Online Fx Intl Wire Fee | 18 | 0 | 18 | $25.00 | $450.00 |
| Online Domestic Wire Fee | | | | | $535.00 |
| Subtotal Other Service Charges (Will be assessed on 9/3/20) | | | | | |

ACCOUNT 921

| | |
|---|---|
| **Other Service Charges:** | |
| Electronic Credits | 51 |
| Electronic Credits | |
| Credits | 28 |
| Non-Electronic Transactions | |
| Electronic Credits | 37 |
| Domestic Incoming Wire Fee | 10 |
| International Incoming Wire Fee | |
| Miscellaneous Fees | 1 |
| US Dollar Intl Wire Fee | 5 |
| Online US Dollar Intl Wire Fee | 1 |
| Online Fx Intl Wire Fee | 18 |
| Online Domestic Wire Fee | |

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:
   •   Your name and account number
   •   The dollar amount of the suspected error
   •   A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

 JPMorgan Chase Bank, N.A. Member FDIC



**CHASE** ◉

This Page Intentionally Left Blank

## CHASE ⬡

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218-2051

October 01, 2020 through October 30, 2020
Account Number:                    7921

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | www.Chase.com |
| Service Center: | 1-877-425-8100 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00012008 DRE 601 212 30920 NNNNNNNNNNN 1 000000000 D4 0000

MAYWIND TRADING LLC
7161 E RANCHO VISTA DR APT 701
SCOTTSDALE AZ 85251-1495

---

## CHECKING SUMMARY

Chase Platinum Business Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $12,268,299.36 |
| Deposits and Additions | 4 | 784,944.00 |
| ATM & Debit Card Withdrawals | 4 | -1,167.73 |
| Electronic Withdrawals | 34 | -8,412,956.08 |
| Fees | 1 | -360.00 |
| Ending Balance | 43 | $4,638,759.55 |

Your Chase Platinum Business Checking account provides:
- No transaction fees for unlimited electronic deposits (including ACH, ATM, wire, Chase Quick Deposit)
- 500 debits and non-electronic deposits (those made via check or cash in branches) per statement cycle
- $25,000 in cash deposits per statement cycle
- Unlimited return deposited items with no fee

There are additional fee waivers and benefits associated with your account – please refer to your Deposit Account Agreement for more information.

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/13 | Chips Credit Via: Standard Chartered Bank/0256 B/O: Unicus Pty Consultancy Limited/Hong Kong Ref: Nbnf=Maywind Trading LLC Scottsdale AZ 85251-1495 Hong Kong Og B=Standard Chartered Bank (Hong Kon G) Hong Kong Hong Kong Hk Obi=28.00 Fee Deducted Bbi=/Chgs/USD28./Ocml/ Ssn         Tm:         Tc | $349,972.00 |
| 10/14 | 10/09/2020 Book Transfer Credit B/O: JPMC Cb Funds Transfer Previous Daytampa FL 33610-9128 US Org:         Bank of Montreal Ref:/Bnl/Our Ref Jpm         s As Transaction Exc Eeds Chasere         I Rtn Dtd 10/08/202 0 Tm         Banks Risk Tol Tm | 5,000.00 |
| 10/19 | Chips Credit Via: Standard Chartered Bank/0256 B/O: Unicus Pty Consultancy Limited/Hong Kong Ref: Nbnf=Maywind Trading LLC Scottsdale AZ 85251-1495 Hong Kong Og B=Standard Chartered Bank (Hong Kon G) Hong Kong Hong Kong Hk Obi=28.00 Fee Deducted Bbi=/Chgs/USD28./Ocml/ Ssn         4 Tm: | 379,972.00 |
| 10/26 | Book Transfer Credit B/O: Mountains of Spices LLC Great Neck NY 11021-3429 US Ref: Form: Mos LLC Tm | 50,000.00 |
| | **Total Deposits and Additions** | **$784,944.00** |

Page 1 of 6

# CHASE ○

October 01, 2020 through October 30, 2020
Account Number:　　　　　　7921

## ATM & DEBIT CARD WITHDRAWALS

|  |  | AMOUNT |
|---|---|---|
| DATE | DESCRIPTION |  |
| 10/19 | Card Purchase　　10/16 Google*Cloud 0146BI-0C Internet CA Card 8288 | $100.00 |
| 10/22 | Card Purchase With Pin  10/22 Chevron/Bro Retail Gro Phoenix AZ Card 8288 | 28.97 |
| 10/26 | Card Purchase　　10/24 Google*Cloud 0146BI-0C Internet CA Card 8288 | 1,000.00 |
| 10/28 | Card Purchase With Pin  10/28 Shell Service Station Phoenix AZ Card 8288 | 38.76 |
| **Total ATM & Debit Card Withdrawals** | | **$1,167.73** |

## ATM & DEBIT CARD SUMMARY

Jian Peng  Card 8288

| | | |
|---|---|---|
| Total ATM Withdrawals & Debits | | $0.00 |
| Total Card Purchases | | $1,167.73 |
| Total Card Deposits & Credits | | $0.00 |

ATM & Debit Card Totals

| | | |
|---|---|---|
| Total ATM Withdrawals & Debits | | $0.00 |
| Total Card Purchases | | $1,167.73 |
| Total Card Deposits & Credits | | $0.00 |

## ELECTRONIC WITHDRAWALS

|  |  | AMOUNT |
|---|---|---|
| DATE | DESCRIPTION |  |
| 10/01 | 10/01 Online Domestic Wire Transfer Via: Fst Western Trust/　　　W/C: Hudye Group Lp　Tm: Scottsdale AZ 85251 US Ref: Rental/Bnf/Renting Imed: | $8,500.00 |
| 10/01 | 10/01 Online Domestic Wire Transfer Via: US Bank Arizona/　　　W/C: Gns Really　Tm: Scottsdale AZ 85258 US Ref: Renting5123/Bnf/Renting Imed: | 15,000.00 |
| 10/05 | 10/05 Online Domestic Wire Transfer A/C: Yuerong Zhang OR Qisheng Chen Katy TX 77494-6334 US Ref: Operation Funding/Bnf/Operation Funding/Ac　　　Qisheng Chen 970 9 Bellaire Blvd Houston TX 77036 US Tm: | 80,000.00 |
| 10/05 | 10/05 Online Domestic Wire Transfer Via: Bank of America, N.A./0959 A/C: Bank of America, N.A. Dallas TX US Ben: Yuerong Zhang Katy TX 77449 US Ref: Operation Funding/Bnf/Operation Funding Ssn:　　　Tm: | 50,000.00 |
| 10/06 | 10/08 Online International Wire Transfer A/C: Canadian Imperial Bank of Commerce Toronto　　　Bin Guo Ref:/Lmpd/Web Design Technology Expenses/Bnf/Web Design Tm: | 5,000.00 |
| 10/08 | 10/08 Online International Wire Transfer A/C: Foreign Cur Bus Acct Bk 1 Columbus Newark De 197132107 US Org:　　　Maywind Trading LLC Ben:　　　Jiawei Liu Ref: Web Designtechnology Expenses/Ocml/Eur2472,90/Exch/0.8243/Cntr/5045163 5/Acc/Web Design Tm: | 3,000.00 |
| 10/06 | 10/08 Online International Wire Transfer A/C: Foreign Cur Bus Acct Bk 1 Columbus Newark De　　　Maywind Trading LLC Ben:/Do3　　　Wencheng Gmbh Ref: To Wencheng Gmbh For Media Consultingtechnology Expenses/Ocml/　　　/Acc/To Wencheng Gmbh For Media Con/Sullin G Tm: 9468200 | 3,000.00 |
| 10/09 | 10/09 International Wire Transfer A/C: First Abu Dhabi Bank P.J.S.C. Abu Dhabi U.A.E. Ae Ben:/Ae930277771201996490026 Aca Capital Group Limited Ref: Third Payment Tm: | 7,000,000.00 |
| 10/13 | 10/13 Online Domestic Wire Transfer A/C: Teris-Phoenix, LLC Phoenix AZ 85012-2128 US Ref: Seo/Bnf/Teris Fee Tm: | 19,891.38 |
| 10/13 | 10/13 Online Domestic Wire Transfer Via: Frost Bank　　　A/C: Brian Carney IOLTA Midland TX 79701 US Ref: Lawyer Fee/Bnf/Lawyer Fee/Time/09:05 Imed: | 10,000.00 |
| 10/19 | 10/19 International Wire Transfer A/C: JPMorgan Chase Bank, N.A. - Singaposingapore Singapore 68912- Sg Tm: | 1,000,000.00 |

# CHASE ⬡

October 01, 2020 through October 30, 2020
Account Number:        7921



## ELECTRONIC WITHDRAWALS (continued)

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 10/20 | 10/20 Online International Wire Transfer A/C: Bangkok Bank Public CO Ltd Bangkok 10500 Thailand th Ref: Web Design Technology Expenses/Bnf/Web Design Tm | 11,050.00 |
| 10/20 | 10/20 Online Domestic Wire Transfer A/C: Chong Zhang Houston TX 77082-1317 US Ref: Buy Foods/Bnf/Foods Tm: | 10,000.00 |
| 10/20 | 10/20 Online Domestic Wire Transfer Via: Wells Fargo           8 A/C: Aba      Fort Worth TX 76101 US Ben: Victor T Perez Spring TX 77379 US Ref: Refund/Bnf/Refund/Time/05:09 Imad: Tm: | 3,000.00 |
| 10/21 | 10/21 Online International Wire Transfer A/C: Foreign Cur Bus Acct Bk 1 Columbus Newark De           Maywind Trading LLC      US Org: Ben:         Zhengdong Jin Ref: Web Designtechnology Expenses/Ocmt/Eur2047,         0/Acc/Web Design Tm: | 2,500.00 |
| 10/23 | 10/23 Online Domestic Wire Transfer Via: US Bk Wash Sea         A/C: Perkins Coie Llp Seattle WA 98101 US Ref: Lawyer Fee6270721/Bnf/Lawyer Fee Imad: Tm: | 32,272.20 |
| 10/23 | 10/23 Online Domestic Wire Transfer Via: US Bk Wash Sea         05 A/C: Perkins Coie Llp Seattle WA 98101 US Ref: Lawyer Fee         Bnf/Lawyer Fee Imad: Tm: | 14,676.50 |
| 10/23 | 10/23 Online Domestic Wire Transfer Via: Community Fsb           A/C: Zhenxing Zhao New York NY 10010 US Ref: Web Design/Bnf/Web Design Imad:           Tm: | 11,000.00 |
| 10/23 | 10/23 Online Domestic Wire Transfer Via: Community Fsb           C: Fan Zhou New York NY 10010 US Ref: Web Design/Bnf/Web Design Imad:           Tm: | 8,000.00 |
| 10/23 | 10/23 Online Domestic Wire Transfer A/C: Wanfeng Zhang Jersey City NJ 07302-6339 US Ref: Web Design/Bnf/Web Design Tm | 5,720.00 |
| 10/23 | 10/23 Online Domestic Wire Transfer Via: Community Fsb         A/C: Aba      New York NY 10019 US Ben: Zhihui Hu New York NY 10010 US Ref: Web Design/Bnf/Web Design Imad:         8 Tm: | 2,920.00 |
| 10/23 | 10/23 Online Domestic Wire Transfer Via: Community         8 A/C: Hua Guo New York NY 10010 US Ref: Web Design/Bnf/Web Design Imad:         Tm: | 2,680.00 |
| 10/23 | 10/23 Online Domestic Wire Transfer Via: US Bk Wash Sea         A/C: Perkins Coie Llp Seattle WA 98101 US Ref: Lawyer Fee6270719/Bnf/Lawyer Fee Imad:         Tm | 1,831.00 |
| 10/23 | 10/23 Online Domestic Wire Transfer A/C: Stel, LLC Dba Stel Design OR Santa Goleta CA         US Ref: Sample Cards Fee For Gservice Tm | 300.00 |
| 10/23 | 10/23 Online Domestic Wire Transfer Via: Community Fsb         A/C: Changtai Du New York NY 10010 US Ref: Web Design/Bnf/Web Design Imad:         Tm: | 5,915.00 |
| 10/23 | 10/23 Online Domestic Wire Transfer Via: Citibank Fsb Chgc         A/C: Jian Peng Chicago IL 60616 US Ref: Web Design/Bnf/Web Design Imad:         Tm: | 3,000.00 |
| 10/23 | 10/23 Online Domestic Wire Transfer A/C: Xin Qi Sammamish WA 98074-5100 US Ref: Web Design/Bnf/Web Design Tm | 1,360.00 |
| 10/23 | 10/23 Online Domestic Wire Transfer Via: Bk Amer Nyc         A/C: Yubo Qin Piscataway NJ 08854 US Ref: Web Design/Bnf/Web Design Imad:         Tm: | 840.00 |
| 10/26 | 10/26 Online Domestic Wire Transfer A/C: Chong Zhang Houston TX 77082-1317 US Ref: Buy Foods/Bnf/Foods Tm | 10,000.00 |
| 10/28 | 10/28 Online Domestic Wire Transfer A/C: Chong Zhang Houston TX 77082-1317 US Ref: Buy Foods/Bnf/Foods Tm | 30,000.00 |
| 10/29 | 10/29 Online Domestic Wire Transfer Via: Prosperity Bk Elca         C: Eofficial Enterprises Inc Plano TX 75024 US Ref: Hotel Fee/Bnf/Hotel Fee/Time/15:01 Imad:         1 Tm: | 28,000.00 |

**CHASE** ⬡

October 01, 2020 through October 30, 2020
Account Number: ⬛7921

## ELECTRONIC WITHDRAWALS (continued)

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/30 | 10/30 Online Domestic Wire Transfer Via: US Bank Arizona/⬛ A/C: Gns Realty Tm: ⬛ Scottsdale AZ 85258 US Ref: Renting5123/Bnf/Renting Imad: ⬛ | 15,000.00 |
| 10/30 | 10/30 Online Domestic Wire Transfer A/C: Chong Zhang Houston TX 77082-1317 US Ref: Buy Foods/Bnf/Foods Tm⬛ | 10,000.00 |
| 10/30 | 10/30 Online Domestic Wire Transfer Via: Fst Western Trust⬛ A/C: Hudye Group Lp Tm: ⬛ Scottsdale AZ 85251 US Ref: Rental/Bnf/Renting Imad: ⬛ | 8,500.00 |
| | | $8,412,956.08 |

**Total Electronic Withdrawals**

## FEES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/05 | Service Charges For The Month of September | $360.00 |
| | | $360.00 |

**Total Fees**

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|---|---|
| 10/01 | $12,244,799.36 | 10/14 | 5,428,519.98 | 10/23 | 4,691,298.31 |
| 10/05 | 12,114,439.36 | 10/19 | 4,808,391.98 | 10/26 | 4,730,298.31 |
| 10/08 | 12,103,439.36 | 10/20 | 4,784,341.98 | 10/28 | 4,700,259.55 |
| 10/09 | 5,103,439.36 | 10/21 | 4,781,841.98 | 10/29 | 4,672,259.55 |
| 10/13 | 5,423,519.98 | 10/22 | 4,781,813.01 | 10/30 | 4,636,759.55 |

## SERVICE CHARGE SUMMARY

| | |
|---|---|
| Monthly Service Fee | $0.00 |
| Other Service Charges | $690.00 |
| Total Service Charges | $690.00  Will be assessed on 11/4/20 |

## SERVICE CHARGE DETAIL

| DESCRIPTION | VOLUME | ALLOWED | CHARGED | PRICE/ UNIT | TOTAL |
|---|---|---|---|---|---|
| Monthly Service Fee | | | | | |
| Monthly Service Fee Waived | 0 | | | $95.00 | $0.00 |
| Other Service Charges: | | | | | |
| Electronic Credits | | | | | |
| Electronic Credits | 4 | Unlimited | 0 | $0.40 | $0.00 |
| Credits | | | | | |
| Non-Electronic Transactions | 38 | 500 | 0 | $0.40 | $0.00 |
| Electronic Credits | | | | | |
| Domestic Incoming Wire Fee | 2 | Unlimited | 0 | $15.00 | $0.00 |
| Miscellaneous Fees | | | | | |
| US Dollar Intl Wire Fee | 2 | 2 | 0 | $50.00 | $0.00 |
| Online US Dollar Intl Wire Fee | 2 | 2 | 0 | $40.00 | $0.00 |
| Online Fx Intl Wire Fee | 3 | 0 | 3 | $5.00 | $15.00 |
| Online Domestic Wire Fee | 27 | 0 | 27 | $25.00 | $675.00 |
| Subtotal Other Service Charges (Will be assessed on 11/4/20) | | | | | $690.00 |

ACCOUNT ⬛/21

| Other Service Charges: | | | | | |
|---|---|---|---|---|---|
| Electronic Credits | | | | | |
| Electronic Credits | 4 | | | | |

 CHASE

October 01, 2020 through October 30, 2020
Account Number: ⬛⬛⬛⬛7921



## SERVICE CHARGE DETAIL (continued)

| DESCRIPTION | VOLUME | ALLOWED | CHARGED | PRICE/ UNIT | TOTAL |
|---|---|---|---|---|---|
| Credits | | | | | |
| Non-Electronic Transactions | 38 | | | | |
| Electronic Credits | | | | | |
| Domestic Incoming Wire Fee | 2 | | | | |
| Miscellaneous Fees | | | | | |
| US Dollar Intl Wire Fee | 2 | | | | |
| Online US Dollar Intl Wire Fee | 2 | | | | |
| Online Fx Intl Wire Fee | 3 | | | | |
| Online Domestic Wire Fee | 27 | | | | |

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

 JPMorgan Chase Bank, N.A. Member FDIC

**CHASE** ⬡

This Page Intentionally Left Blank

Exhibit 16

Exhibit 16

Granted as Submitted
***See eSignature page***

Clerk of the Superior Court
*** Electronically Filed ***
S. Ortega, Deputy
10/4/2023 8:00:00 AM
Filing ID 16691013

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## COUNTY OF MARICOPA

| | |
|---|---|
| COMERICA BANK, a Texas Banking Association, | Case No. CV2021-000495 |
| Plaintiff/Interpleader, | **ORDER RE MOUNTAINS OF SPICES, LLC'S MOTION TO RELEASE FUNDS PURSUANT TO ADOPTION OF SPECIAL MASTER'S REPORT** |
| v. | |
| G-SERVICE, LLC, an Arizona Limited Liability Company; YUN JING, individually; XIN ZHANG, individually; and QISHENG CHEN, individually, | |
| Defendants. | (Honorable Christopher A. Coury) |
| **AND RELATED CROSSCLAIMS** | (Special Master: Rebecca A. Albrecht) |
| G-SERVICE, LLC, an Arizona limited liability company, | |
| Crossclaim Plaintiff, | |
| v. | |
| Yun Jing, individually, | |
| Crossclaim Defendant. | |
| And | |
| *MOUNTAINS OF SPICES, LLC*, a New York limited liability company, | |
| Intervenor-Defendant. | |

This matter comes before the Court on Mountains of Spices, LLC's Motion to Release Funds Pursuant to Adoption of Special Master's Report. This Court has considered the Motion, previous Orders, and the Special Master's Report and Recommendations, which was adopted by the Court on July 20, 2023.

Pursuant to the Special Master's Report and prior Orders, the Clerk of the Court is directed to release funds in the amount of $3,508,872.00 to Mountains of Spices, LLC, care of the Quinlan Law Firm, LLC.

Dated: _____, 2023.

Hon. Christopher A. Coury
Judge of the Superior Court

1

# eSignature Page 1 of 1

Filing ID: 16691013   Case Number: CV2021-000495
Original Filing ID: 16545292

Granted as Submitted

Judicial Officer Comments

/s/ Christopher A. Coury

October 3, 2023

 /S/ Christopher Coury Date: 10/3/2023
Judicial Officer of Superior Court

## ENDORSEMENT PAGE

CASE NUMBER: CV2021-000495

E-FILING ID #: 16691013

SIGNATURE DATE: 10/3/2023

FILED DATE: 10/4/2023 8:00:00 AM

DANIEL BACA MESTAZ

TAO DUAN
12616 WINTER WREN CT HERNDON VA 20171

JANESSA E KOENIG

TE TAO
# 6, ALY 12, LN 315 SEC 1, JING-GWO RD
HSINCHU CITY ROC TAIWAN

REBECCA A ALBRECHT

XIN ZHANG
14260 W NEWBERRY RD #366 NEWBERRY FL 32669

WILLIAM JOHN QUINLAN

YUDUO CHEN
1610 CHESAPEAKE PL PHILADELPHIA PA 19122

EMIN CHEN
1505/200 SPENCER ST MELBOURNE VIC 3000
AUSTRALIA

YUQING XIAO
STE 1206 50/11 DONG AN RD SHANGHAI 20003 CHINA

G-SERVICE L L C
14260 W NEWBERRY RD #366 NEWBERRY FL 32669

ZHUO FENG
6/42-48 CULWORHT AVE KILLARA NSW 2071
AUSTRALIA

HUI LIANG
13 HARBOURNE RD KINGSFORD NSW 2032
AUSTRALIA

LIPING CHEN
10 DE FELICE PL WANTIRNA VIC 3152 AUSTRALIA

OI KUEN LINSIE CHEUK
13538 CLERMONT ST THORNTON CO 80241

QISHENG CHEN
3431 DUPLIN CREEK DR KATY TX 77494

**Granted with Modifications**
**"See eSignature page"**

Clerk of the Superior Court
*** Electronically Filed ***
A. Walker, Deputy
11/7/2023 8:00:00 AM
Filing ID 16854836

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

### COUNTY OF MARICOPA

| | |
|---|---|
| COMERICA BANK, a Texas Banking Association,<br><br>Plaintiff/Interpleader,<br><br>v.<br><br>G-SERVICE, LLC, an Arizona Limited Liability Company; YUN JING, individually; XIN ZHANG, individually; and QISHENG CHEN, individually,<br><br>Defendants. | Case No. CV2021-000495<br><br>AMENDED ORDER RE MOUNTAINS OF SPICES, LLC'S MOTION TO RELEASE FUNDS PURSUANT TO ADOPTION OF SPECIAL MASTER'S REPORT<br><br>(Honorable Christopher A. Coury)<br><br>(Special Master: Rebecca A. Albrecht) |
| AND RELATED CROSSCLAIMS | |
| G-SERVICE, LLC, an Arizona limited liability company,<br><br>Crossclaim Plaintiff,<br><br>v.<br><br>Yun Jing, individually,<br><br>Crossclaim Defendant.<br><br>And<br><br>*MOUNTAINS OF SPICES, LLC*, a New York limited liability company,<br><br>Intervenor-Defendant. | |

This matter comes before the Court on Mountains of Spices, LLC's Motion to Release Funds Pursuant to Adoption of Special Master's Report. This Court has considered the Motion,

previous Orders, and the Special Master's Report and Recommendations, which was adopted by the Court on July 20, 2023.

Pursuant to the Special Master's Report and prior Orders, the Clerk of the Court is Ordered to release funds in the amount of $3,508,872.00 to Mountains of Spices, LLC care of The Quinlan Law Firm, LLC.

IT IS FURTHER ORDERED that the Clerk of the Superior Court check should be held for pick up and released to QLF's Paralegal, Nicole Griesbach. Ms. Griesbach shall provide two forms of identification, one being a photo ID, at the time of pick-up.

Dated: November 6, 2023.

Hon. Christopher A. Coury
Judge of the Superior Court

1

# eSignature Page 1 of 1

Filing ID: 16854836   Case Number: CV2021-000495
Original Filing ID: 16757689

Granted with Modifications

Judicial Officer Comments

/s/ Christopher A. Coury

November 6, 2023

 /S/ Christopher Coury Date: 11/6/2023
Judicial Officer of Superior Court

ENDORSEMENT PAGE

CASE NUMBER: CV2021-000495

E-FILING ID #: 16854836

SIGNATURE DATE: 11/6/2023

FILED DATE: 11/7/2023 8:00:00 AM

AMY WILKINS HOFFMAN

OI KUEN LINSIE CHEUK
13538 CLERMONT ST THORNTON CO 80241

DANIEL BACA MESTAZ

QISHENG CHEN
3431 DUPLIN CREEK DR KATY TX 77494

JANESSA E KOENIG

TAO DUAN
12616 WINTER WREN CT HERNDON VA 20171

REBECCA A ALBRECHT

TE TAO
# 6, ALY 12, LN 315 SEC 1, JING-GWO RD
HSINCHU CITY ROC TAIWAN

WILLIAM JOHN QUINLAN

XIN ZHANG
14260 W NEWBERRY RD #366 NEWBERRY FL 32669

EMIN CHEN
1505/200 SPENCER ST MELBOURNE VIC 3000
AUSTRALIA

YUDUO CHEN
1610 CHESAPEAKE PL PHILADELPHIA PA 19122

HSIEH SHU HUI
6F NO 37 LN 261 CHANG'AN ST BANQIAO DIST
NEW TAIPEI CITY 22035 TAIWAN

YUQING XIAO
STE 1206 50/11 DONG AN RD SHANGHAI 20003 CHINA

HUI LIANG
13 HARBOURNE RD KINGSFORD NSW 2032
AUSTRALIA

ZHUO FENG
6/42-48 CULWORHT AVE KILLARA NSW 2071
AUSTRALIA

JINGRAN YANG
5400 OVERLAND DR U3 LAWRENCE KS 66049

LIPING CHEN
10 DE FELICE PL WANTIRNA VIC 3152 AUSTRALIA

Clerk of the Superior Court
*** Electronically Filed ***
L. Sanchez, Deputy
11/8/2023 11:37:09 AM
Filing ID 16872890

CLERK OF THE COURT
201 WEST JEFFERSON
CENTRAL COURT COMPLEX
PHOENIX, ARIZONA 85003

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| COMERICA BANK | |
| | BOOKING # _____ |
| PLAINTIFF, | CASE # __CV2021-000495__ |
| VS. | |
| G-SERVICE LLC | NOTICE OF RELEASE OF DEPOSIT WITH THE COURT |
| YUN JING ET AL | |
| DEFENDANT | |

PAYMENT ID:    1347002_____

PAID TO:    MOUNTAINS OF SPICES LLC_____

AMOUNT OF    __$3,508,872.00____

DATE OF    __11/08/2023____

MAIL

RELEASED TO: _____
(Signature)

NRD

Exhibit 17

Exhibit 17

FILED
8/8/2023 2:42 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH04526
Calendar, 8
22624794

Hearing Date: 9/5/2023 10:00 AM
Location: Court Room 2510
Judge: Mullen, Michael Tully

FILED DATE: 5/8/2023 2:42 PM    2023CH04526

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

MOUNTAINS OF SPICES, LLC

        Plaintiff,

v.

MAYWIND TRADING LLC and AEON
CAPITAL, LLC,

        Defendant(s)

Case No. _2023CH04526_____

---

## COMPLAINT

---

Plaintiff Mountains of Spices, LLC ("MOS"), by its undersigned counsel, alleges as follows against Maywind Trading, LLC ("Maywind") and Aeon Capital, LLC ("Aeon").

### I.    INTRODUCTION

1.    This action concerns Defendants' exploitation of a community loan program ("Loan Program") to their own ends, including the unlawful taking of funds from the Loan Program, and acts of fraud to conceal their theft committed either as administrators of the Loan Program or recipients of lender funds.

2.    Plaintiff MOS is part of the anti-Chinese Communist Party ("anti-CCP") whistleblower movement ("the Movement"). The Movement consists predominantly of Chinese and Hong Kong nationals and community organizations, colloquially called "Farms," located throughout the world with the human-rights mission to promote freedom and democracy in China. Farms are typically organized in a particular geographic area, such as New York or Phoenix.

3.    The organization of individual Farms varies, with some organized under a particular business entity and others organized less formally. For instance, the New York Farm is organized and operates via MOS. The Phoenix Farm, is not organized under a particular business entity, but it at times has been operated through Maywind, an Illinois Limited Liability Company that lists its principal place of business as Chicago. At all relevant times, the Phoenix Farm was led by Sara Lihong Wei LaFrenz ("Sara").

FILED DATE: 5/8/2023 2:42 PM 2023CH04526

4.      On information and belief, Maywind's sole formal member is an individual named Jian Peng ("Jian"). On information and belief, at or around the time of the start of the Loan Program, Jian resided in Chicago but at some point thereafter moved to Phoenix, Arizona. However, at all relevant times, Sara exercised effective control over the Maywind and held herself out as its agent.

5.      MOS and other members of the Movement have publicly exposed CCP human-rights abuses and corruption through protests and created social media platforms allowing uncensored reporting on the CCP's activities and free communication among the Movement's supporters in China and worldwide.

6.      Beginning in July 2020, members of the Movement developed the Loan Program. The Loan Program allowed participating anti-CCP activists to loan money to a community fund that would then loan funds to a designated third-party borrower ("Borrower") as a short-term investment to allow Loan Program participants to realize a return on that investment to support themselves and their anti-CCP efforts.

7.      In or around August 2020, Sara's Phoenix Farm initiated the Loan Program under Sara's direction. Sara managed all the funds and financials of the Loan Program for all individual and group lenders. Sara was chiefly responsible for managing and reporting to participating individuals and groups on funds received from participants and lent to the Borrower. Sara also selected her team at the Phoenix Farm to assist her in administering the Loan Program, including Jian.

8.      The Loan Program was well-received by the Movement, and many Farms and individuals participated. MOS contributed approximately $9,966,866 to Sara's team for the Loan Program, all of which was sent to Maywind.

9.      In December 2020, Loan Program participants, including MOS and other lenders, became aware of complaints regarding Sara's failure to provide an executed Loan Agreement at the Phoenix Farm after the lenders' funds were received by her team. Leaders of Farms, including MOS, began demanding from Sara that she explain this failure as well as provide a full accounting

2

FILED DATE: 5/8/2023 2:42 PM    2023CH04526

of all funds received and loaned out by the Loan Program. Concerns arose that Sara, Maywind, and Sara's team had mismanaged the Loan Program funds and that money was missing.

10.     Sara and her team refused to provide any accounting as demanded. Instead, on December 26, 2020, Sara sent a letter to the Loan Program participants, including MOS, stating that the funds received from them were loaned to the Borrower and disclaiming any further responsibility. Sara did not provide an accounting of the total amount of funds received from Farms and individual lenders, what funds remained under her control, or bank statements showing the Loan Program funds received and disbursed. Sara's letter inexplicably stated that Loan Program participants had to deal directly with Maywind. Sara closed her communication by telling the participants to no longer contact her regarding the Loan Program. Thereafter, Sara cut off contact with the Loan Program participants.

11.     Similarly, Maywind and its owner Jian, despite being asked repeatedly by the Farms and lenders, have failed to provide any bank statements or accounting regarding the Loan Program funds Maywind received, and have not returned any funds to the lenders or the community groups. In fact, Maywind and Jian in a separate civil litigation in Arizona made false representations to the court that Maywind is an operating business and the true owner of approximately $4 million in funds belonging to lenders of the Loan Program. Sara, despite maintaining contact with Jian, made no effort to correct or expose these false statements.

12.     As of the start of 2021, Sara went into hiding after several individual lenders filed police complaints against her and protested outside her known residence in Arizona demanding their money. She has periodically appeared on her YouTube channel and on her Discord chat group where she admitted her managing role in the Loan Program and presented proof of some loans issued. During these broadcasts, Sara has declined to answer questions regarding the Loan Program's funds. On one occasion, however, she admitted that she was using funds from the Loan Program to repay individuals she had defrauded in a securities transaction for which she is being investigated and presented images of bank account statements showing funds being paid to individuals rather than the Borrower.

FILED DATE: 5/8/2023 2:42 PM    2023CH04526

13. To date, MOS and other Farms have not been given a full accounting of the money they sent to Sara and her team for the Loan Program and have not had their Loan Program funds returned.

14. Moreover, around the time Sara broke off communications with Loan Program Participants, Sara, Jian, and Maywind also transferred tens of millions of dollars of Loan Program funds out of Maywind and to several companies Sara controlled, including Defendant Aeon, without the permission of Loan Program participants. These transfers resulted in Maywind becoming insolvent. Sara, Jian, and Maywind have failed to provide Loan Program participants with any explanation as to why they did so or what they have done with such funds.

15. Each of the Defendants: (a) directly participated in the receipt and unlawful conversion of funds from MOS, to their benefit and MOS's detriment; (b) participated in, was aware of, or recklessly disregarded the diversion of MOS' funds were outside of the Loan Program; (c) was directly or indirectly involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and documents alleged herein; (d) was aware of or recklessly disregarded the fact that they were in receipt of stolen funds or funds obtained through fraudulent statements and information; and/or (e) approved or ratified these statements and information.

## II. JURISDICTION & VENUE

16. This Court has personal jurisdiction over each Defendant named herein pursuant to 735 ILCS 5/2-209 because each Defendant has sufficient minimum contacts with this state so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

17. Venue is proper in this Court pursuant to pursuant to 735 ILCS 5/2-101.

## III. PARTIES

18. Plaintiff Mountains of Spices LLC ("MOS") is a New York limited liability company with its principal place of business in Nassau County, NY. MOS contributed approximately $9,966,846 to Sara and Maywind for the Loan Program. Qidong Xia, MOS' president and sole member, is a citizen of New York state.

4

FILED DATE: 5/8/2023 2:42 PM    2023CH04526

19.     Defendant Maywind Trading LLC ("Maywind") is an Illinois limited liability company. In its filings with the Illinois Secretary of State's office, Maywind lists its principal place of business as Chicago, Illinois. On information and belief, Maywind's sole formal member is Jian, but, at all relevant times, Sara exercised effective control over the Maywind and held herself out as its agent.

20.     Defendant Aeon Capital, LLC ("Aeon") is an Arizona limited liability company that received Loan Program Funds from Maywind. On information and belief, the sole formal member of Aeon is Jian, but, at all relevant times, Sara exercised effective control over the Aeon.

## IV.    FACTUAL BACKGROUND
### A.    Background of the Movement and the Loan Program

21.     Beginning in July 2020, MOS, Sara, and other leaders of the Movement discussed the creation of a program in which Movement supporters and Farms would create a fund that would loan funds to Movement supporters while allowing lender participants to earn interest on loans (the "Loan Program"). Farms, such as MOS, entered into loan agreements with individual lenders to bundle their individual contributions and provide them to the Loan Program.

22.     These loan agreements provided that the individual lenders could loan money to MOS and other Farms in one of two ways: 1) either by loaning it directly to the Farm; or 2) by transferring it to an account belonging to a third party (such as Maywind) as directed by the Farm. Regardless of to where the lender sent the money, however, the loan was considered a loan from the individual to the Farm, which was obligated to repay the loan amount to the individual lender with interest.

23.     The Movement leaders had identified a third-party Borrower to borrow the Loan Program funds. The Movement leaders, including MOS and Sara, agreed that all funds initially captured by the Loan Program would be loaned to the Borrower. Those loans would be secured by the Borrower and earn 6% interest to be paid to the farms.

24.     The Loan Program created a Borrower Agreement for the Borrower and allowed the loaned funds to be used for general working capital purposes of the Borrower, including for their political activities, to make further investment into equity markets, or for operating expenses.

5

25.   In June 2020, Sara, Farms, including MOS, and individual Movement leaders began the Loan Program through community meetings and various on-line platforms.

26.   At that time, Sara was one of the Movement's most visible leaders who hosted an on-line video blog called "Voice of Guo" ("VOG"), which had thousands of viewers each week. In addition, Sara had extensive experience in coordinating and administering past Movement initiatives, including managing finances and overseeing Movement funds.

27.   MOS and other Movement leaders designated Sara as the administrator for the Loan Program and agreed that the loan proceeds would be collected in accounts that Sara controlled. As administrator, Sara was responsible for collecting, documenting, and tracking the Loan Program's funds; documenting and issuing loans to the Borrower; and providing a regular accounting of the Loan Program's finances to Movement leaders including MOS. Sara was the only one designated to act in this capacity for the Loan Program and the sole person responsible to the Movement for maintaining the Loan Program's books.

28.   MOS and the other lenders relied on Sara to administer the Loan Program, and she was uniquely situated with superior access to and control over the Loan Program proceeds.

29.   On information and belief, Sara initially designated Jian's company, Maywind, to serve as the entity that would receive and administer the Loan Program's funds since Maywind existed and already had bank accounts.

30.   At all times Sara, maintained full control and authority over the Maywind's bank accounts and the funds transferred to them.

**B.   MOS Involvement with the Loan Program Operations and Sara and Maywind**

31.   Sara directly or through her team including Jian coordinated the collection of loan funds from individuals by communicating with them via WhatsApp or her Discord VOG chatgroup.

32.   At the beginning of the Loan Program, Sara and Maywind promised MOS and other Farms which bundled individuals' funds for the Loan Program an executed and binding Loan Agreement laying out the terms of their loans. Sara would confirm with MOS the receipt of funds transferred to Maywind. In addition, Sara told MOS, and MOS relied upon her stating, that she

6

FILED DATE: 5/8/2023 2:42 PM    2023CH04526

would provide them a monthly accounting of the funds MOS transmitted as well as an accounting of the funds loaned by the Loan Program to the Borrower.

33.    Sara was acting as Maywind's agent when she made each of these promises to MOS, acting with the actual and/or apparent authority to do so.

34.    Sara and Maywind, however, failed to provide a Loan Agreement executed by them or designees for the Loan Program, despite promising to provide one after the lenders transmitted their funds to the bank account Sara and/or her team designated. In refusing to do this, Sara and Maywind deprived all lenders, including MOS, of any record of the transmittal of and receipt of their funds to the Loan Program as well as the interest and legal terms applicable to their loan.

35.    At the start of August 2020, Sara provided bank account information to Movement leaders and the Farms, including MOS. At the start of the Loan Program, the bank accounts designated by Sara and provided to the Farms, including MOS, belonged to Maywind.

36.    MOS and other Farms began transmitting funds collected from individual Loan Program participants to Maywind's accounts. Sara would confirm the amount of funds received by the Loan Program with the individual Farms via WhatsApp.

37.    Further, MOS and other lenders relied on Sara as the principal responsible party for coordinating with the Loan Program's designated Borrower on the signing of agreements and the actual issuance of the loan funds to the Borrower.

38.    Between August 11, 2020, and October 6, 2020, in reliance on Sara and Maywind's representations and Sara's position as administrator of the Loan Program, MOS directly transferred a total of $4,550,000 in funds that it had bundled from individual lenders directly to Maywind's Chase Bank account for the Loan Program.

39.    Further, between August and December 2020, again relying on Sara and Maywind's representations and Sara's unique position and role as the administrator of the Loan Program, MOS caused and directed several other lenders with whom MOS had signed loan agreements to transfer $5,416,866 in funds belonging and lent to MOS directly to Maywind's bank accounts. Sara and Maywind subsequently acknowledged receipt of all these funds.

FILED DATE: 5/8/2023 2:42 PM    2023CH04526

40.    In total, MOS directly transferred or caused to be transferred approximately $9,966,866.00 of funds belonging to it to Sara and Maywind, with Sara and Maywind acknowledging the receipt of all of MOS' fund transfers. MOS made and continued to make these transfers based on Sara's role as administrator of the Loan Program and based on her and Maywind's representations that the funds would be properly accounted for and utilized for the Loan Program.

41.    On information and belief, from August 11 to December 8, 2020, MOS, other participating Farms, and individual lenders estimate they collectively transmitted at least $44 million in loan proceeds to Maywind's bank accounts through wire transfers.

C.    **Defendants' Misconduct with the Loan Program Funds Comes to Light as Sara Absconds.**

42.    Although Sara would acknowledge receipts of funds by the Loan Companies, she and Maywind failed to provide accounting and bank statements to MOS or any other Farm participants regarding the Loan Program's funds and the loans to the Borrower despite multiple requests from MOS to Sara.

43.    Individual lenders also began to complain to participating Farms and Movement leaders that Sara had failed to provide them a fully executed Lender Agreement as she had promised and that Sara and her team in Phoenix were no longer responding to their requests for their executed agreements or account statements.

44.    On December 19, 2020, Sara disclosed for the first time via WhatsApp to MOS and other Farm participants that she had not fully issued the loan to the designated Borrower. Sara did not explain why she as the Administrator was holding onto the Loan Program's funds particularly since the Loan Program leaders had identified and approved only one Borrower at that time.

45.    On or around December 25, 2020, MOS requested via WhatsApp that Sara provide an accounting of the loan funds transferred to Maywind including an itemized accounting of funds received by Maywind, the total amount of loan proceeds received by Maywind, and copies of the bank records of all companies receiving Loan Program funds.

46.    On December 26, 2020, Sara sent a WhatsApp message with attachments to MOS

8

FILED DATE: 5/8/2023 2:42 PM    2023CH04526

and the other Farm participants, stating the Phoenix Farm had been dissolved and all Loan Program funds remitted.

47.    In addition, Sara's letter indicated that MOS and the other Farms would have to directly request an accounting of Loan Program funds from Maywind. Sara's assertion that she did not control the funds at Maywind and had no financial information from Maywind's account, despite controlling the company's bank accounts, was false and appalling to the Loan Program lenders, including MOS.

48.    Sara's public announcement that she was unilaterally washing her hands of all responsibility over the Loan Program funds, and further had dissolved the Phoenix Farm, was a shock to MOS and other lenders. Sara failed to include a full accounting of the proceeds, only indicating that the funds been loaned but not indicating where and how much remained in the Maywind and other companies accounts.

49.    Following Sara's announcement, MOS, other participating Farms, and individual lenders demanded a full accounting from Sara, Maywind, and her Loan Program team. Many individual participants of the Loan Program protested outside of Sara's Arizona residence demanding their money and loan agreements.

50.    Sara, Jian, and Maywind have ignored all requests from MOS to provide bank statements pertaining to Loan Program funds and a full accounting of the funds. They have never provided a response or accounting to MOS.

**D.    Sara, Jian, and Maywind Transfer Tens of Millions of Loan Program funds to Bank Accounts of Aeon and Other Companies She Controls**

51.    Both before and after her December 26, 2020 message, Sara, Jian and Maywind transferred tens of millions of dollars in Loan Program funds from Maywind to the bank accounts of several companies that Sara controlled or in which she and Jian held an interest for their own personal benefit.

52.    On or around December 9, 2020, Sara, Jian and Maywind transferred approximately $10,000,000 of Loan Program funds from Maywind to Aeon, a company owned by Jian, and, on information and belief, controlled by Sara.

9

FILED DATE: 5/8/2023 2:42 PM    2023CH04528

53.    Since this time, Sara has caused Aeon to spend millions of dollars of Loan Program funds on services that benefit Sara and Jian personally, including paying for items to finance a legal campaign against other members of the Whistleblower Movement.

54.    Sara, Jian, and Maywind made the $10,000,000 transfer to Aeon without any notification or request for permission from Loan Program participants. Moreover, Sara not only failed to mention the transfer in her December 26, 2020 message, but she has failed to subsequently provide any indication to Loan Program participants of the transfer.

55.    Additionally, Sara and Jian transferred millions of dollars in Loan Program funds from Maywind and Aeon to another entity in which Sara and Jian held an ownership interest, Six Pines Investment, LLC, for the benefit of themselves and others.

56.    Specifically, in or around January 2021, Sara caused approximately $7,000,000 in Loan Program funds to be transferred to Six Pines via two entities she controlled: Maywind and Aeon. Specifically, Sara caused $4,910,74.96 to be transferred from Maywind and $2,000,000 to be transferred from Aeon. These payments were purportedly made as no interest loans pursuant to promissory notes between Six Pines and Maywind or Aeon.

57.    After making this payment, Maywind was, on information and belief, entirely exhausted of funds.

58.    At the direction of Sara, in or around May 2021, Six Pines used millions of the funds it received from Maywind and Aeon to purchase commercial real estate in Texas that it continues to own.

59.    In or around June 2021, Sara admitted to the other members of Six Pines that the funds that Six Pines had received from Maywind and Aeon actually belonged to the Loan Program.

E.    **Jian and Maywind Frustrate and Prevent the Return of MOS' Loan Program Funds that Maywind Transferred to G-Service LLC.**

60.    On January 12, 2021, Comerica Bank filed an interpleader suit with the Superior Court of Arizona, County of Maricopa, asking the court to decide the rightful claimants to $8,909,024.07 deposited in an account for G-Service, LLC, by Maywind and other companies controlled by Sara. (Comerica Bank v. G-Service LLC, et al., Case No. CV2021-000495 (Sup. Ct.

10

Maricopa Cty.) ("Interpleader Suit").)

61.    Xin Zhang was a co-owner of G-Service and was also a member of Sara's Loan Program office. The interpleader suit arose from an ownership dispute when Zhang attempted to transfer his 50% ownership stake in the company to another individual.

62.    During the course of this interpleader suit, it was revealed that Maywind had transferred $4 million to G-Service in October 2020. Zhang's co-owner declared in a filing in the Interpleader Suit that the entire $8,909,024.07 in G-Service's account, including funds transferred by Maywind, belonged to the lenders in the Loan Program, and should be returned to the lenders of the Loan Program. Indeed, those funds had only been transferred to G-Service at Sara's request.

63.    In response to his co-owner's attestation, Zhang presented a fabricated contract signed with Jian purporting that Maywind engaged the G-Service for website services and was entitled to a refund of the entire $4 million that it transferred to G-Service. At no time did Zhang or Jian reveal their participation and work with Sara on the Loan Program or that Maywind was solely operating in Arizona to receive Loan Program funds. Further, Zhang and Jian continue to assert falsely in court that the funds belong to Jian and not the Loan Program's participants. The interpleader suit remains pending.

**F.    Sara Admits to Misusing the Loan Program Funds, and Defendants Leave MOS Without Redress**

64.    On February 16, 2021, Sara posted on her Discord chatgroup that she had provided refunds to investors of a security private placement for which she and her company, VOG, were under investigation by the SEC. As proof that she made these payments, Sara posted images of bank account statements from showing payments to various individuals. Individuals also publicly acknowledged receiving Maywind checks reimbursing them for their investment in VOG. In doing so, Sara admitted and posted evidence that she used Loan Program funds deposited in Maywind's bank account to pay individuals for potential personal and corporate liabilities she and her company owed. The use of funds for this purpose were not authorized in the Loan Program.

11

FILED DATE: 5/8/2023 2:42 PM   2023CH04526

65.    On July 23, 2021, Sara, on her VOG Discord chatgroup and the VOG YouTube channel, admitted that Loan Program funds from Maywind had been transferred to two other individuals for "safekeeping" and that they had absconded with the funds and ceased communications with Maywind—an apparent reference to the Loan Program funds provided to Six Pines.

66.    Sara did not explain why she directed Maywind to transfer these funds, how much Loan Program money was transferred to them, nor has she provided any updates on the missing funds.

67.    On July 28, 2021, Sara held another discord chat on her VOG chatgroup where she discussed Maywind. Again, Sara admitted that Loan Program funds were transferred from Maywind to the individuals at Six Pines. Sara again claimed that they refused to return the Loan Program funds to Maywind. Sara stated she took a risk in allowing them to use the Loan Program money to make investments in commercial real estate in Texas.

## V.    CLAIMS FOR RELIEF

### COUNT I
### Unjust Enrichment
### (Against Maywind and Aeon)

68.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

69.    Plaintiff conferred a benefit on Defendants when it sent, or caused to be sent, $9,966,866.00 to Defendant Maywind for purposes of the Loan Program.

70.    Defendant Maywind thereafter transferred Plaintiff's funds to Defendant Aeon without Plaintiff's authorization or awareness. At the time of the transfer, all Defendants were all aware that the funds belong to Plaintiff.

71.    Accordingly, Defendants Maywind and Aeon were unjustly enriched by Plaintiff's nearly $10 million that was intended for the Loan Program.

72.    Defendants' actions have impoverished Plaintiff by the loss of their funds transmitted for the Loan Program.

12

73.    Defendants' enrichment from Plaintiff's Loan Program funds, for their own purposes unrelated to the Loan Program, was improper, unauthorized, and without justification.

74.    Defendants never provided Plaintiff with the Loan Agreement and accounting, although Defendants received the funds voluntarily and never returned the funds to Plaintiff MOS.

75.    Defendants have retained funds transferred or caused to be transferred by MOS and have engaged in a pattern of false, misleading, and deceptive conduct designed to prevent Plaintiff from recovering the funds and any earned interest.

76.    Particularly because Sara and Defendants failed to provide Plaintiff with the promised Loan Agreement and accounting, Plaintiff lacks a remedy at law for their unjust enrichment. It would be against justice, equity, and good conscience to permit Defendants to continue to retain the money at Plaintiff's expense.

### COUNT II
### Fraud
### (Against Maywind)

77.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

78.    Plaintiff and Defendant Maywind established a relationship for purposes of the Loan Program that demonstrates confidences and trust so similar to a fiduciary relationship that it should be treated as a fiduciary or confidential relationship.

79.    Plaintiff also entrusted Maywind with its funds for purposes of the Loan Program, including that they would only be provided to the Borrower. Maywind held a superior position to Plaintiff with respect to the control and use of the Loan Program funds.

80.    Plaintiff reasonably relied on and trusted on Maywind to manage and account for the Loan Program funds for the intended purpose of the Loan Program.

81.    At all relevant times, Sara held actual authority to speak and act on Maywind's behalf.

82.    At all relevant times, Sara also had the apparent authority to do so because she held herself out to Plaintiff and others as being in a position to speak and act on Maywind's behalf.

13

FILED DATE: 5/8/2023 2:42 PM   2023CH04526

83. Maywind breached its confidential relationship with Plaintiff, including by making, through its agent Sara, material misstatements and/or omissions about the Loan Program in connection with receiving funds from Plaintiff, the status of the funds, and the use of the funds.

84. Maywind also breached its confidential relationship with Plaintiff by misusing Plaintiff's Loan Program funds they were entrusted with, refusing, or failing, to account for those funds, and by seeking to prevent the return of Plaintiff's funds in the course of the Interpleader Suit.

85. Maywind's material misstatements and omissions were made with knowledge of their falsity or misleading character and with an intent to deceive, manipulate, and defraud Plaintiff into sending money to Maywind at her instruction.

86. Maywind's material misstatements and/or omissions to Plaintiff, made through its agent Sara, include:

    a. False or misleading statements concerning the purpose and use of the funds obtained from Plaintiff for the Loan Program, including that the Loan Program funds would only be provided to the third-party Borrower who would secure the loan and pay interest;

    b. False or misleading statements concerning the terms for the loans, including her use of the Loan Program proceeds without securing the funds and her personal taking and use of the funds;

    c. False or misleading statements concerning providing regular account reports of funds lent by Plaintiff to the Loan Program as well as bank statements;

    d. False and misleading statements concerning the location of the funds;

    e. False and misleading statements that the Loan Programs funds were fully loaned to the Borrower.

    f. False, misleading statements, and omissions that Loan Programs were transferred to individuals, neither who was a Borrower.

87. Plaintiff reasonably relied on these misstatements and/or omissions and transferred funds to Maywind for the Loan Program.

88. Had Plaintiff known the truth, it would not have transferred or caused to be transferred funds to Maywind.

89.   As a result of Maywind's misstatements and/or omissions in breach of its relationship with Plaintiff, Plaintiff has been injured by the loss of its funds transmitted for the Loan Program.

### COUNT III
### Conversion
### (Against Maywind and Aeon)

90.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

91.   At all relevant times, Plaintiff had a right to the funds intended for the Loan Program.

92.   Defendants Maywind and Aeon intentionally acted in concert to exercise control over Plaintiff's funds intended for the Loan Program in order to divert those funds from the Loan Program to their own benefit.

93.   Maywind intentionally exercised control over Plaintiff's funds, and interfered with Plaintiff's right to those funds, by failing to return those funds specifically received for purposes of the Loan Program following Plaintiff's demands for accounting and return of those funds.

94.   Maywind also intentionally exercised control over Plaintiff's funds by transferring them to Aeon for the personal use of Sara and Jian without the authorization or approval of Plaintiff.

95.   Aeon intentionally exercised control over Plaintiff's funds intended for the Loan Program, interfering with Plaintiff's right to those funds, including by wrongfully receiving and using those funds for purposes unauthorized by Plaintiff.

96.   Maywind and Aeon also intentionally exercised control over Plaintiff's funds intended for the Loan Program, interfering with Plaintiff's right to those funds, by wrongfully transferring those funds to Six Pines for purposes of an undisclosed real estate investment in Texas. Plaintiff's funds were provided to Maywind solely for purposes of the Loan Program, and no commercial real estate or other personal investment was ever authorized or approved by Plaintiff.

15

97.    Defendants' egregious appropriation of Plaintiff's funds that were intended solely for the Loan Program and their refusal to cooperate much less return the funds has seriously interfered with Plaintiff's right to those funds such that they should be obligated to pay the entire amount of Plaintiff's contribution to the Loan Program.

## COUNT IV
### Aiding and Abetting Fraud
### (Against Maywind)

98.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

99.    As the administrator of the Loan Program, Sara held a unique and superior position to Plaintiff with respect to the use and accounting of the Loan Program funds, including the nearly $10 million Plaintiff transferred at Sara's direction for the Loan Program. Plaintiff also entrusted Sara with its funds for purposes of the Loan Program, including that they would only be provided to the Borrower. Sara also held a superior position to Plaintiff with respect to the control and use of the Loan Program funds.

100.    Plaintiff and Sara established a relationship for purposes of the Loan Program that demonstrates confidences and trust so similar to a fiduciary relationship that it should be treated as a fiduciary relationship.

101.    Sara breached her confidential relationship with Plaintiff, including by making the material misstatements and/or omissions about the Loan Program set forth above.

102.    Sara also breached her confidential relationship with Plaintiff by misusing Plaintiff's Loan Program funds she and Maywind were entrusted with, refusing, or failing, to account for those funds, and by seeking to prevent the return of Plaintiff's funds in the course of the Interpleader Suit.

103.    Sara's material misstatements and omissions were made with knowledge of their falsity or misleading character and with an intent to deceive, manipulate, and defraud Plaintiff into sending money to Maywind at her instruction.

16

FILED DATE: 5/8/2023 2:42 PM   2023CH04526

104.  Plaintiff reasonably relied on these misstatements and/or omissions and transferred funds to Sara and Maywind for the Loan Program.

105.  Had Plaintiff known the truth, it would not have transferred or caused to be transferred funds to Sara and Maywind.

106.  As a result of Sara's misstatements and/or omissions in breach of its relationship with Plaintiff, Plaintiff has been injured by the loss of their funds transmitted for the Loan Program.

107.  Sara's improper actions, thus, constitute fraud.

108.  At all relevant times, Jian and Maywind were aware of their role in Sara's improper actions and that Sara's statements and omissions were false and/or misleading.

109.  Jian and Maywind also knowingly and substantially assisted Sara in her improper actions by, among other things, permitting her to make the misstatements and or omissions on Maywind's behalf, intentionally accepting the funds Sara had solicited from Plaintiff with knowledge that they were fraudulently obtained from MOS, subsequently transferring those funds to third parties (including Aeon and Six Pines), and generally operating Maywind at Sara's direction.

## COUNT IV
**Violation of the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/5**
**(Against Maywind and Aeon)**

110.  Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

111.  As set forth above, Plaintiff held and holds claims against Sara and Maywind in the entire amount of the funds Plaintiff transferred to Maywind for the purposes of the Loan Program.

112.  Maywind's transfer of Plaintiff's funds from Maywind to Aeon was intended to hinder, delay, or defraud Plaintiff. The transfer thus constituted fraud in fact.

113.  The specific badges of fraud demonstrating that Maywind intended to defraud Plaintiff include, but are not limited to:

  a.  The transfer was made to an insider, Aeon, which was owned and controlled by the same individuals as Maywind, Jian and Sara;

17

FILED DATE: 5/8/2023 2:42 PM   2023CH04526

b.  Maywind, Sara, and Jian retained possession and control of the property transferred after the transfer through Jian and Sara's control of Aeon;

c.  The transfer was concealed and never publicly acknowledged by Maywind, Sara, and Jian;

d.  Maywind, Sara, and Jian all absconded only days after the transfer;

e.  Maywind, Sara, and Jian concealed assets;

f.  Aeon provided no consideration in exchange for the transfer; and

g.  Maywind became insolvent shortly after the transfer was made, in large part as a result of the transfer, which involved essentially all of its remaining assets.

114.  Maywind and Jian's transfer of Plaintiff's funds to Aeon also constituted fraud in law.

115.  Maywind did not receive reasonably equivalent value for the transfer. Indeed, Maywind did not receive anything in exchange for the transfer.

116.  Additionally, at the time of the transfer, as part of the Loan Program, Maywind was engaged in a business for which its remaining assets were unreasonably small and had incurred and intended to incur debts beyond its ability to repay. Indeed, after the transfer, Maywind held essentially no assets other than its "loan" to Six Pines despite having tens of millions of dollars in obligations as part of the Loan Program.

117.  Maywind and Aeon's transfer of Plaintiff's funds from Maywind and Aeon to Six Pines were also intended to defraud Plaintiff. The transfer thus constituted fraud in fact.

118.  The specific badges of fraud demonstrating that Maywind and Aeon intended to defraud Plaintiff by transferring funds to Six Pines include, but are not limited to:

a.  The transfer was made to an insider, Six Pines, which was owned and controlled by the same individuals as Maywind and Aeon, Jian and Sara;

b.  Jian and Sara retained possession or control of the property transferred after the transfer through Sara's control of Six Pines;

c.  The transfer was concealed;

d.  Maywind, Sara, and Jian had all absconded prior to the transfer;

e.  Sara, Jian, Maywind, and Aeon concealed assets; and

f.  Maywind became insolvent after the transfer was made.

18

FILED DATE: 5/8/2023 2:42 PM    2023CH04526

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

(A)    Awarding damages in favor of Plaintiff against all of the Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(B)    Ordering Defendants to pay restitution in the amount of any funds belonging to Plaintiffs with which they were unjustly enriched;

(C)    Imposing a constructive trust, equitable lien, and/or other equitable remedy on any properties improperly held by Defendants as a result of their unjust enrichment and/or fraudulent transfers; and

(D)    Awarding such other relief as the Court may deem just and proper.

## VII.    JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: May 8, 2023.                                         MOUNTAINS OF SPICES, LLC

/s/ William J. Quinlan
William J. Quinlan
Eric T. Schmitt
**The Quinlan Law Firm, LLC**
233 S. Wacker Drive, Suite 6142
Chicago, Illinois 60606
Tel: (312) 883-5500
docketing@quinlanfirm.com
Firm ID: 43429

19

Exhibit 18

# Exhibit 18

Hearing Date: 12/...
Location: <<CourtRoomNumber>>
Judge: Calendar, 8

FILED
11/21/2023 2:24 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH04526
Calendar, 8
25304313

Citation Notice                                                    (12/01/20) CCG 0648 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### CHANCERY DIVISION

### CITATION NOTICE

| | |
|---|---|
| MOUNTAINS OF SPICES, LLC | Case No. _____ |
| Judgment Creditor | |
| v. | Court Date: _____ |
| MAYWIND TRADING, LLC and | |
| AEON CAPITAL, LLC | Time: _____ O AM O PM |
| Judgment Debtor | |

Judgment Debtor's last known:

Name: AEON CAPITAL, LLC _____

Address: 3101 N. Central Avenue Suite 183      City: Phoenix _____

State: AZ  Zip: 85012   Telephone: _____

Primary Email: _____

A judgment in favor of MOUNTAINS OF SPICES, LLC _____ and

against AEON CAPITAL, LLC _____ was entered on 11/7/23 , (or revived

on _____ in the amount of $ 9,966,866.00 and $ 9,966,866.00 remains unsatisfied.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 1 of 3

Citation Notice                                            (12/01/20) CCG 0648 B

Name and address of Attorney for Judgment Creditor or Judgment Creditor (if without an attorney):

◉ Atty. No.: 6310119

○ Pro Se 99500

Name: ERIC SCHMITT

Atty. for (if applicable):

MOUNTAINS OF SPICES, LLC

Address: 233 S. Wacker Drive, Suite 6142

City: Chicago

State: IL    Zip: 60606

Telephone: 312-883-5500

Primary Email: docketing@quinlanfirm.com

Name of person to receive Citation: Bank of America

NOTICE: The court has issued a citation against the person named above. The citation directs that the person to appear in court to be examined for the purpose of allowing the judgment creditor to discover income and assets belonging to the judgment debtor or in which the judgment debtor has an interest. The citation was issued on the basis of a judgment against the judgment debtor and in favor of the judgment creditor in the amount stated above. On or after the court date stated above, the court may compel the application of any discovered income or assets toward payment on the judgment.

The amount of income or assets that may be applied toward the judgment is limited by federal and Illinois law. THE JUDGMENT DEBTOR HAS THE RIGHT TO ASSERT STATUTORY EXEMPTIONS AGAINST CERTAIN INCOME OR ASSETS OF THE JUDGMENT DEBTOR WHICH MAY NOT BE USED TO SATISFY THE JUDGMENT IN THE AMOUNT STATED ABOVE.

1. Under Illinois or federal law, the exemption of personal property owned by the debtor includes the debtor's equity interest, not to exceed $4,000 in value, in any personal property as chosen by the debtor, including money in a bank account.
2. Social Security and SSI benefits;
3. Public assistance benefits;
4. Unemployment compensation benefits;
5. Worker's compensation benefits;
6. Veteran's benefits;
7. Circuit breaker property tax relief benefits;
8. The debtor's equity interest, not to exceed $2,400 in value, in any one motor vehicle;
9. The debtor's equity interest, not to exceed $1,500 in value, in any implements, professional books, or tools of the trade of the debtor;
10. Under Illinois law every person is entitled to an estate in homestead, when it is owned and occupied as a residence, to the extent in value of $15,000, which homestead is exempt from judgment.

Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois

cookcountyclerkofcourt.org

FILED DATE: 11/21/2023 2:24 PM   2023CH04526

**Citation Notice** _____ **(12/01/20) CCG 0648 C**

11. Under Illinois law, the amount of wages that may be applied toward a judgment is limited to the lesser of (i) 15% of gross weekly wages or (ii) the amount by which disposable earnings for a week exceed the total of 45 times the greater of the state or federal minimum hourly wage.

12. Under federal law, the amount of wages that may be applied toward a judgment is limited to the lesser of (i) 25% of disposable earnings for a week or (ii) the amount by which disposable earnings for a week exceed 30 times the federal minimum hourly wage.

13. Pension and retirement benefits (including IRA accounts) and refunds may be claimed as exempt under Illinois law.

The judgment debtor may have other possible exemptions under the law.

THE JUDGMENT DEBTOR HAS THE RIGHT AT THE CITATION HEARING TO DECLARE EXEMPT CERTAIN INCOME OR ASSETS OR BOTH. The judgment debtor also has the right to seek a declaration at an earlier date by notifying the clerk in writing at the office of the Clerk of the Circuit Court in Room   2503  ,  50 W. Washington Street, Chicago  ,

Street                                    City

Illinois. When so notified, the Clerk of the Circuit Court will obtain a prompt hearing date from the court and will provide the necessary forms that must be prepared by the judgment debtor or the attorney for the judgment debtor and sent to the judgment creditor or the judgment creditor's attorney by regular first class mail, regarding the time and location of such hearing.

This notice may be sent to the judgment debtor by regular first class mail.

---

**CERTIFICATION OF MAILING BY JUDGMENT CREDITOR OR ATTORNEY FOR JUDGMENT CREDITOR**

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure (735 ILCS 5/109), the undersigned certifies that s/he mailed by regular first-class mail a copy of the citation notice and this citation to defendant at the address shown below upon filing of the citation or within three business days of service if served upon Third Party Respondent.

Signature: _Eric Schmitt_          Name: Eric Schmitt

---

Preparer Information

_Eric Schmitt_

Preparer's Signature

O Atty. No.: 6310119

O Pro Se 99500

Name: Eric Schmitt

Atty. for (if applicable):

MOUNTAINS OF SPICES, LLC

Address: 233 S. Wacker Drive, Suite 6142

City: Chicago

State: IL   Zip: 60606

Telephone: 312-883-5500

Primary Email: docketing@quinlanfirm.com

Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois

cookcountyclerkofcourt.org

Page 3 of 3

Exhibit 19

# Exhibit 19

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION
TAX & MISCELLANEOUS REMEDIES SECTION

MOUNTAINS OF SPICES, LLC,

    Judgment Creditors,

v.

MAYWIND TRADING LLC and AEON
CAPITAL, LLC,
    Judgment Debtor.

Bank of America, N.A.,
    Respondent.

Case No. 2023 CH 04526
(Transferred to Law Division)

Hon. James E. Hanlon, Jr.
Calendar 5

## ORDER

THIS CAUSE COMING to be heard before the Honorable James E. Hanlon, Jr on Judgment Creditor's motion for a Turn Over of Funds, the Court being advised in the premises and having jurisdiction;

**IT IS HEREBY ORDERED:**

1.    That the Citation respondent is ordered to turn over funds of the Judgment Debtor that it is currently holding pursuant to a served Citation in the amount of **$4,630,416.58.**

2.    That said funds shall be turned over to the Judgment Creditor through its attorneys to satisfy in part the judgment entered herein.

3.    Bank of America shall turn over and pay the funds as described in Paragraph 1 by hard-copy check, payable to Mountains of Spices, LLC c/o The Quinlan Law Firm, LLC, by FedEx mail to counsel for Judgment Creditor Mountains of Spices, LLC at the following address:

    Eric T. Schmitt
    The Quinlan Law Firm, LLC
    233 S. Wacker Dr., Ste. 6142
    Chicago, IL 60606

1

4.    That any and all funds in excess of the amount indicated in this order are to be returned to the account holder, that the freeze on said account is lifted, and the Citation is dismissed.

Associate Judge James E. Hanlon, Jr.

FEB 13 2024 AH

ENTERED:    **Circuit Court-2216**

_____
Judge James E. Hanlon, Jr.

Order Prepared By:
Eric T. Schmitt
The Quinlan Law Firm, LLC
233 South Wacker Drive, Suite 6142
Chicago, Illinois 60606
312.212.8211
eschmitt@quinlanfirm.com
Firm ID No. 43429
*Attorneys for Judgment Creditor*

2

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION
TAX & MISCELLANEOUS REMEDIES SECTION



| | |
|---|---|
| MOUNTAINS OF SPICES, LLC, <br><br> Judgment Creditors, <br><br> v. <br><br> MAYWIND TRADING LLC and AEON CAPITAL, LLC, <br> Judgment Debtor. | Case No. 2023 CH 04526 <br> (Transferred to Law Division) <br><br><br> Hon. James E. Hanlon, Jr. <br> Calendar 5 |

## ORDER

THIS CAUSE COMING to be heard on 1) the citation to discover assets issued to Bank of America, NA regarding Judgment Debtor Aeon Capital, LLC (the "Bank of America Citation"), 2) the citation to discover assets issued to JP Morgan Chase Bank, N.A. regarding Judgment Debtor Aeon Capital, LLC (the "Chase-Aeon Citation"), 3) the citation to discover assets issued to JP Morgan Chase Bank, N.A. regarding Judgment Debtor Maywind Trading, LLC (the "Chase-Maywind Citation"), 4) the citation to discover assets issued to National Bank of Arizona regarding Judgment Debtor Maywind Trading, LLC (the "National Bank of Arizona Citation"), 5) the citation to discover assets issued to Wells Fargo Bank, N.A. regarding Judgment Debtor Maywind Trading, LLC (the "Wells Fargo Citation"), 6) the citation to discover assets issued to MidFirst Bank regarding Judgment Debtor Maywind Trading, LLC (the "MidFirst Citation"), 7) the citation to discover assets issued to Western Alliance Bank – Alliance Bank of AZ regarding Judgment Debtor Maywind Trading, LLC (the "Western Alliance Citation"), the 8) the citation to discover assets issued to National Bank of Arizona regarding Judgment Debtor Maywind Trading, LLC, and 9) Judgment Debtor's Motion for Turnover Order Against Third-Party Bank of America, N.A.

(the "Turnover Motion") counsel for the Judgment Creditor being present, due notice having been given and the Court being fully advised in the premises, **IT IS HEREBY ORDERED:**

1.     A hearing on the Turnover Motion is set for February 13, 2024, at 10:30 A.M. Judgment Creditor may effect service of the Turnover Motion on the Judgment Debtor via mail sent to Judgment Debtor's registered agent. The parties may appear in person in Room 2503 or via zoom. 6337 - 4251 - 4806

2.     The Chase-Aeon, Chase-Maywind, Midfirst, and Wells Fargo Citations are terminated. 9406

3.     The Bank of America, Western Alliance, First Fidelity, and National Bank of Arizona Citations are entered and continued to February 13, 2024, at 10:30 am. The parties may appear in person in Room 2503 or via zoom. 9405 - 4806

4.     The Zoom Credentials for the February 13, 2024 hearing are: Meeting ID 967 3454 1119; Passcode 268697.

Associate Judge James E. Hanlon, Jr.

JAN 22 2024 /M/

Circuit Court-2216

ENTERED:

_____
Judge James E. Hanlon, Jr.

Order Prepared By:
Eric T. Schmitt
The Quinlan Law Firm, LLC
233 South Wacker Drive, Suite 6142
Chicago, Illinois 60606
312.212.8211
eschmitt@quinlanfirm.com
Firm ID No. 43429
*Attorneys for Judgment Creditor*

2