**THE QUINLAN LAW FIRM, LLC**
William J. Quinlan, State Bar No. 028679
2415 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
Tel: 602.732.6500
Dir: 312.629.6012
E-Mail: wjq@quinlanfirm.com

Eric T. Schmitt (*pro hac vice*)
233 S. Wacker Drive, 61st Floor
Chicago, Illinois 60606
Tel: 312.212.8211
E-Mail: eschmitt@quinlanfirm.com

Attorneys for Plaintiff

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| Mountains of Spices, LLC, a New York Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>Sara Lihong Wei Lafrenz a/k/a Sara Wei<br><br>Defendant. | CASE NO. 2:21-cv-01497-JAT<br><br>**PLAINTIFF MOUNTAINS OF SPICES, LLC'S RESPONSE IN OPPOSITION TO DEFENDANT SARA WEI'S MOTION TO SET ASIDE JUDGMENT** |

Plaintiff Mountains of Spices, LLC ("MOS"), hereby respectfully submits its Response in Opposition to Defendant Sara Wei's ("Sara") Motion to Set Aside Judgment (ECF 143) (the "Motion"). In support, MOS states as follows.

### INTRODUCTION

In December 2020, Sara betrayed the confidence of MOS and numerous other participants in a community loan program organized by anti-Chinese Communist Party activists by stealing millions of dollars that were entrusted to her as the program's administrator. In an attempt to recover these funds, MOS filed this lawsuit against Sara and several individuals that assisted her in August 2021. Since that time, MOS has engaged in substantial discovery, motion practice and negotiations with other defendants, the last of whom, Defendant Qisheng Chen

("Chen") was dismissed, with prejudice, on December 29, 2023. The result of these efforts was that the Court granted a default judgment against Sara in January 2023 for $4,550,000 and entered a final judgment in the same amount on January 4, 2024. (ECF 84; ECF 127.)

Despite being aware of this lawsuit for two-and-half years, during which time she participated in other lawsuits and discussed the case publicly multiple times, Sara failed to appear until just two weeks ago, after all other defendants had been dismissed and final judgment was entered against her. The timing was not a coincidence: Sara's multiple public pronouncements about the case included frequent attacks on Defendant Chen, making clear that she would blame him for the misappropriation at the heart of the case during any trial. Thus, Sara clearly waited until MOS dismissed its claims against Chen and the other defendants who would almost certainly have testified against her at trial in order to file her motion to set aside the judgment against her. The result is that, in violation of Rule 53(c)'s requirement that default be lifted only for "good cause," Sara not only intentionally and in bad faith avoided taking part in this litigation, but she did so in manner which was designed to inflict maximum prejudice on MOS should her default be vacated.

In her Motion, Sara makes essentially no effort to rebut the allegations against her, essentially conceding that she intentionally misled MOS and others and stole millions from the loan program she was entrusted to administer. Nor could she, as evidence uncovered after this case was filed demonstrates conclusively not only that Sara did so, but that she has continued to use misappropriated loan program funds for her own benefit—including paying for her Nordstrom's credit card bills—as recently as five weeks ago. Instead, the Motion attempts to argue that the judgment against Sara should be set aside because she has allegedly been "in hiding" since 2021, because she purportedly paid the loan program's designated borrower "more" than she took from MOS, and because MOS has recovered $3.5 million in funds in a separate case. The first two of these bases not only do not satisfy the requirements of Rule 60(b), they simply aren't true: Sara has been active online, including talking about the case and urging her followers to participate in it and related litigation, throughout its pendency; and, the bank statements produced by Sara in support of her Motion actually demonstrate exactly what

MOS has alleged throughout this case, that Sara did not, as she promised, send all loan program funds to a third-party borrower, but instead kept millions of them for her own personal benefit. As to the third, there is no basis under Rule 60 that would permit Sara to cynically use MOS' attempts to recover its own members funds by taking legal action against her compatriots in other venues to avoid her own personal liability.

Because Sara has, therefore, failed to meet her burdens under either Rule 55(c) or Rule 60(b) necessary to vacate a final default judgment, the Motion should be denied.

## FACTUAL BACKGROUND

### A. MOS Files Its Complaints Alleging Wrongdoing By Sara.

MOS filed its initial Complaint in the above captioned-case on August 31, 2021, its First Amended Complaint (the "FAC") on September 16, 2021, and its Second Amended Complaint (the "SAC") on January 19, 2022. (ECF 1; ECF 9; ECF 22.) Each of the complaints named the same defendants—Sara, Maywind Trading LLC ("Maywind"), Chen, Jian Peng ("Peng"), Jianjun Wang ("Wang"), and Sara's son, Xiuzhu "Devin" Wei ("Devin")—and contained essentially the same allegations. (*Id.*)

As set forth in the SAC, this case involves the Sara's misuse of funds from a community loan program developed by members of an anti-Chinese Communist Party activist movement and initiated in or around August 2020 (the "Loan Program"). (ECF 22, ¶¶ 1, 5, 4.) Sara was the administrator of the Loan Program and, in this role, was responsible for responsible for collecting, documenting, and tracking the Loan Program's funds and providing a regular accounting of the Loan Program's finances to movement members such as MOS. (ECF 22, ¶¶ 17, 22.) Sara used bank accounts held by Maywind and two other entities she controlled—Santell LLC and Medical Supply System International LLC—to receive and administer Loan Program funds. (ECF 22, ¶¶ 31-34.)

As part of the Loan Program, MOS transferred $4.5 million directly to Maywind's bank accounts and caused an additional $5.4 million to be sent to Maywind from others. (ECF 22, ¶¶ 42-43.) The SAC also alleged that other participants in the Loan Program transferred at least an additional $34 million to Maywind's accounts—meaning Maywind received at least $44

million in funds as part of the Loan Program. (ECF 22, ¶ 45.) MOS and others made these transfers in reliance on Sara's representations that Loan Program funds "would only be provided to [a] third-party Borrower who would secure the loan and pay interest," that Sara would provide an executed loan agreement for any funds transferred, and that she would provide monthly accountings of the funds MOS and others lent to the Loan Program. (ECF 22, ¶¶ 37, 38, 77, 82-85.)

These representations turned out to be false. Specifically, on December 19, 2020, Sara publicly admitted that she had not sent all Loan Program funds to the designated Borrower but was instead herself retaining at least some Loan Program funds. (ECF 22, ¶ 48.) Further, it was subsequently revealed that Sara had used Loan Program Funds for other unauthorized ventures, including: transferring, as revealed in separate the separate case of *Comerica Bank v. G-Service LLC, et al.*, Case No. CV2021-000495 (Sup. Ct. Maricopa Cty.) (the "*Comerica Bank* Case"), at least $4,000,000 in Loan Program Funds from Maywind to a company controlled by her affiliate Xin Zhang ("Zhang") called G-Service, LLC ("G-Service") in October 2022; using, as Sara publicly admitted in February 2021, Loan Program funds deposited with Maywind to refund investors in a separate company she owned, VOG; and, transferring, as Sara publicly admitted in July 2021, Loan Program funds to Defendants Wang and Chen to make investments in commercial real estate in Texas. (ECF 22, ¶¶ 58, 60-64.) Finally, Sara refused to provide any accounting of the Loan Program funds she had received despite multiple requests that she do so from MOS and other Loan Program participants. (ECF 22, ¶¶ 7-8, 11, 46.) Based on these allegations, the SAC alleged claims against Sara for unjust enrichment, fraud, conversion, and negligent misrepresentation. (ECF 22, ¶¶ 65-98.)

**B. Sara Fails to Appear, Default is Entered, and MOS Moves for Default Judgment.**

On February 17, 2022, the Court granted MOS' motion for alternative service on Sara. (ECF 30.) Among the means the Court permitted MOS to use to serve Sara was her email address "vog202064@gmail.com." (ECF 30 at 5:3-7.) This is the same email address Sara identifies as her own at the top of her Motion. (ECF 142 at 1.) Sara was served at the vog202064@gmail.com email address the next day. (ECF 32.) After Sara subsequently failed

to appear, the clerk entered default against her March 14, 2022. (ECF 39.)

On July 1, 2022, MOS moved for entry of a default judgment against Sara and that the default judgment be treated as a final judgment pursuant to Rule 54(b). (ECF 70.) On January 26, 2023, the Court granted MOS' motion in part, finding that a default judgment would be proper against Sara in the amount of $4,550,000. (ECF 84 at 22:1-8.) In doing so, however, the Court declined to enter final judgment against Sara on the grounds that defendants Wang, Chen, and Devin were still defending the case.  (ECF 84 at 21:25-22:19.)

**C. MOS Uncovers Additional Evidence of Sara's Wrongdoing.**

Since the filing of its Complaints, not only has MOS confirmed the allegations in the SAC regarding Sara's misappropriation of Loan Program Funds, but it has also uncovered new evidence of wrongdoing by Sara.

First, bank records, other documents, and the testimony of Defendant Wang revealed that Sara transferred used over $7,000,000 in Loan Program funds to an LLC of which she was a member, Six Pines Investment, LLC ("Six Pines") to purchase commercial real estate in Texas. Specifically, Maywind bank records demonstrate that Maywind sent $10,000,000 to Aeon on December 9, 2020, with Defendant Peng first withdrawing the money from Maywind's account—via a deposit slip with the memo "funding Aeon"—and then depositing the same amount in the account of another company for which he is listed as the sole member, Aeon Capital LLC ("Aeon"). (ECF 82, Exs. F, G.) Importantly, these transfers took place just days before she Sara revealed on December 19, 2020 that she had not transferred all Loan Program funds to the third-party borrower as promised. (ECF 22, ¶ 48.) Subsequently, on or around January 14, 2023, $4,910,740 was transferred from Maywind to Six Pines and $2,000,000 was transferred from Aeon to Six Pines, pursuant to two no-interest loan agreements. (ECF 82, Ex. E (Maywind Loan Agmt.); Ex. A (Aeon Loan Agmt.); Ex. B, Jan. 31, 2022 Wang Dep. Tr., 163:22-164:12.) Sara was a member of Six Pines, along with Defendants Chen, Devin, Peng, and Wang. (ECF 82, Ex. D (Six Pines LLC Agmt.); Ex. C, Jan. 24, 2022 Wang Dep. Tr., 42:13-23.) Six Pines used these funds to purchase commercial real estate in Texas. (Ex. C, Jan. 24, 2022 Wang Dep. Tr., 46:14-49:9.) Wang testified that Sara

The Quinlan Law Firm℠    Chicago | Phoenix | Silicon Valley

subsequently admitted to him in June 2021 that she had stolen the funds use to finance Six Pines from the investors in the Loan Program and that she had attempted to coerce the other members of Six Pines to transfer their shares to her around the same time. (Ex. C, Jan. 24, 2022 Wang Dep. Tr., 44:18-46:12; Ex. B, Jan. 31, 2022 Wang Dep. Tr., 162:16-163:22.)

Documents produced in discovery have also revealed that Sara used over $4.7 millions in Loan Program funds to pay attorneys for her own personal benefit. First, Maywind sent $2,850,000 to the law firm Coppersmith Brockelman, $1,450,000 on November 6, 2020 and another $1,400,000 on December 24, 2020 (ECF 70-1, Ex. G. at SB1296331-F3, pp. 124, 152.) Coppersmith Brockelman subsequently represented Sara in at least one legal proceeding, securities fraud claims brought against her by the Arizona Corporations Commission ("ACC"). (*See* ECF 27-1, Ex. W, P. 9, ¶ 4.)  As part of those proceedings, on December 20, 2021, Sara consented to the entry of an order by ACC finding that she and her company VOG had, among other things, had violated Arizona securities laws. (*See* ECF 27-1, Ex. W.)

Additionally, Sara sent $2,826,000 to the Diamondback Legal Group ("Diamondback Legal"), $826,000 from Maywind on January 15 and 19, 2021 and another $2,000,000 from Aeon on February 18, 2021 (ECF 70-1, Ex. G. at SB1296331-F3, pp. 45, 218). Filings by G-Service's purported CEO Xin Zhang, in a disciplinary against his attorney at Diamondback Legal attorney Gabriel Vadasz and in the *Comerica Bank* Case, reveal that these funds were used to fund G-Service's litigation in the *Comerica Bank* Case and to finance a class-action lawsuit. (Ex. D, G-Service Claim for Interpleader Funds, filed Apr. 15, 2022 in *Comerica Bank* Case, at 3; Ex. E, G. Vadasz Ariz. State Bar Disciplinary Filing, Agmt for Discipline By Consent, ¶ 7; *id.*, Memo. of G-Service in Opp. to Ariz. State Bar's Proposed Consent with Gabriel Vadasz, at 2.) Moreover, Vadasz testified in his disciplinary proceedings that Sara took part in at least one discussion involving the proposed class action. (Ex. E, G. Vadasz Ariz. State Bar Disciplinary Filing, State Bar's Response to Complainant's Objections to the Consent Agreement, at *1.)

Finally, G-Service's bank statements demonstrate that Sara has continued to use stolen Loan Program funds to pay for her own personal expenses through at least the end of January

2024, almost a month after the final judgment was entered against her. Specifically, these bank statements show that, between March 23, 2023 and November 20, 2023, G-Service received nine transfers from Aeon totaling $225,000, (Ex. G, G-Service Bank of America Statements at BOA00160, 168, 176, 184, 190, 196, 204, 210, 218), and that Sara used at least $16,551 of these funds to pay her credit card bill at the luxury clothing store Nordstrom's, the last of which was made on January 22, 2024. (*Id.* at 176, 184, 190, 197, 204, 210, 218-219, 229.) This was done despite the fact that Zhang, the purported CEO of G-Service, filed an affidavit in the *Comerica Bank* Litigation on November 9, 2023 stating that he was the sole employee of G-Service after February 4, 2021. (Ex. G, Declaration of Xin Zhang, filed Nov. 9, 2023 in *Comerica Bank* Case.)

### D. MOS Dismisses The Other Defendants and a Final Default Judgment Is Entered Against Sara.

On April 10, 2023, MOS filed stipulations to dismiss defendants Devin and Wang. (ECF 100, 101.) On April 13, 2023, MOS dismissed its claims against Maywind without prejudice. (ECF 102.)

Beginning in April 2023, MOS and Chen engaged in intensive settlement discussions. (Ex. H, Schmitt Decl., ¶ 5.) After months of negotiations, on December 29, 2023, MOS and Chen agreed that MOS would stipulate to the dismissal of all claims against Chen with prejudice. (ECF 123.) Although it believed it had potentially valid claims against Chen, MOS decided to settle with and dismiss its claims against Chen based, in part, on Sara's default and the resulting minimal potential benefits that would have resulted from holding a trial against Defendant Chen alone. (Ex. H, Schmitt Decl. ¶ 6.) On January 4, 2024, the Court ordered that, consistent with its January 26, 2023 Order, a final judgment be entered against Sara and in favor of MOS in the amount of $4,550,000. (ECF 126.) The Clerk entered judgment in this amount the same day. (ECF 127.)

### E. During the Course of this Litigation, Sara Continues to Publicly Broadcast, Discuss This Case, and Threaten Defendants Chen and Wang.

Despite her claims that she has been in hiding since early 2021, Sara continued to regularly host live broadcasts on YouTube from 2021 until at least December 2023. (Ex. I,

Zhang Decl., ¶ 9.) On at least four occasions during these broadcasts, she discussed this lawsuit, while making numerous statements attacking Chen (and at least one attacking Wang) and urging others to join in lawsuits against him and MOS.

First, during a March 18, 2022 broadcast, Sara discussed this case and the participation of Chen, who had appeared and filed a Motion to Set Aside his default four days earlier (ECF 40). Specifically, Sara said that "Changdao Brother [MOS President Qidong Xia] from Himalaya MOS Farm is after the money" and "is going after Maywind for the money, to get the money back." (Ex. G, Zhang Decl., ¶ 11-12 & Ex. 1.) Sara then went on to attack Chen, asserting that "[n]ow Chen Qisheng gets involved because Chen Qisheng took the money," that "he [Chen] is going to work with Himalaya MOS Farm," and that Chen is "such a terrible person." (*Id.*, ¶ 11 & Ex. 1.) Sara then urged her followers to get involved in this case, telling them to "keep an eye on the case" and that the case "is the opportunity" for individuals to get their money back from Chen. (*Id.*)

Next, during a June 8, 2022 broadcast, Sara asserted that "[r]egarding the legal action initiated by Changdao [MOS President Xia] against me, Maywind, Chen Qisheng, my son [Devin], and others, it is crucial for everyone to understand that he is not entitled to claim this money." (*Id.*, ¶ 12 & Ex. 2.) Sara then asserted that the funds involved in this case are "under Chen Qisheng's control" and threatened Chen, stating that any settlement negotiations with MOS would be "strictly prohibited." (*Id.*) Sara urged her followers to "join in" and participate in this case, which she characterized as "the opportunity to reclaim their funds." (*Id.*)

Next, during an August 10, 2022 broadcast, Sara discussed both the *Comerica Bank* Case and the present case, claiming that the former "involv[ed] G-Service" and that this lawsuit involved "the money related to Chen Qisheng." (*Id.*, ¶ 13 & Ex. 3.) Sara then went on to again urge her followers that to participate in both cases, stating that "everyone must tell them that you are going to personally participate in the legal proceedings" and promising her followers that "you don't need to pay attorney fees on your own." (*Id.*)

Finally, during a November 4, 2022 broadcast, Sara again discussed the *Comerica Bank* Case and the present case, referring to them as the "two litigations." (*Id.*, ¶ 13 & Ex. 4.) Sara

admitted that, as alleged in the SAC, the cases involved a "Loan Project" and that, as part of the litigation, three companies she controlled, "Santel, Medical Supply, and Maywind," which "received totally almost $90 million, a little bit over $89 million." (*Id.*) Sara then went on to discuss Six Pines, which she stated, "bought some real estate" and was "used to pay salaries" to various people until, she alleged, Defendants "Chen Qisheng and Wang Jianjun wanted to embezzle this money." (*Id.*)

Sara also previously indicated during her broadcasts that she was aware of this and various lawsuits against her and that she would not answer them. (ECF 70-1, Ex. I, ¶¶ 9-11.) During one broadcast on October 22, 2021, she admitted she intended to intentionally default in at least one of these lawsuits, stating: "They keep going after me and ask 'why don't I answer the lawsuit?' I don't need to answer this lawsuit, as the lawsuit can be ruled when the defendant does not show up. I will not spend money on this, I know I'll lose the lawsuit." (ECF 70-1, Ex. I, Ex. C (ECF p. 67).) And, in fact, during the course of this litigation, Wei has had at least two other cases where a default or default judgment was entered against her based on her failure to appear. (*See* Ex. J, *Weiguo Sun, et al., v. GTV Media Group, Inc., et al.*, Case No. 1:21-cv-04529 (S.D.N.Y.), Default Judgment Order, filed Oct. 14, 2021; Ex. K, *Zhang v. Voice of Guo Media Inc., et al.*, No. CV-21-01079 (D. Ariz.), Default Order, filed June 2022.)

## ARGUMENT

"Motions to set aside an entry of default and default judgment are governed by Rules 55(c) and 60(b) of the Federal Rules of Civil Procedure." *Warfield v. Alaniz*, No. CV 03-2390-PHX-JAT, 2005 WL 8160846, at *1 (D. Ariz. July 13, 2005). Rule 55(c) provides: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b) provides, in relevant part:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment . . . for the following reasons: . . . (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party . . .

Fed. R. Civ. P. 60(b). Because Sara has failed to meet her burden of demonstrating that both of these standards have been met, the Motion must be denied.

**A. Sara Has Failed To Demonstrate that Good Cause Exists Under Rule 55(c).**

"The 'good cause' standard that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b)." *Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 925–26 (9th Cir. 2004) (citing *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir.2001)). As the Ninth Circuit has explained:

> The good cause analysis considers three factors: (1) whether [the movant] engaged in culpable conduct that led to the default; (2) whether [the movant] had a meritorious defense; or (3) whether reopening the default judgment would prejudice [the nonmoving party]. As these factors are disjunctive, the district court [is] free to deny the motion "if any of the three factors was true."

*Id.* at 925-26 (citations omitted). The moving party bears "the burden of showing that any of these factors favor[] setting aside the default. *Id.* at 926 (citing *TCI Group*, 244 F.3d at 697).

Because Sara cannot demonstrate that any of the three Rule 50(c) good cause factors exist, the Motion must be denied.

**1. Sara Engaged In Culpable Conduct Leading To the Default By Failing to Respond to the SAC.**

Initially, the Motion should be denied because Sara is clearly culpable for the default entered against her. For the purposes of Rule 55(c), "[i]f a defendant 'has received actual or constructive notice of the filing of the action and failed to answer,' its conduct is culpable." *Franchise Holding*, 375 F.3d at 926 (quoting *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 690 (9th Cir. 1988)). Here, there is no question that Sara received actual notice of the filing and failed to answer. Pursuant to the Court's February 17, 2022 Order, service was effectuated on Sara on February 18, 2022, via, among other means, the same email address that she lists as belonging to her in the Motion: vog202064@gmail.com. (ECF 30; ECF 32; ECF 142 at 1.) Additionally, Sara subsequently discussed the details of this case in her YouTube broadcasts at least four times. (Ex. I, Zhang Decl, ¶¶ 11-14.)

Sara is also experienced with the legal system, having retained an attorney to participate

in her case before the ACC during the pendency of this action and having discussed filing a class action lawsuit with another attorney. (*See* ECF 27-1, Ex. W; Ex. E, State Bar's Response to Complainant's Objections to the Consent Agreement, at *1); *TCI Group*, 244 F.3d at 699 n.6 ("Absent some explanation . . . it is fair to expect that individuals who have previously been involved in litigation or have consulted with a lawyer appreciate the consequences of failing to answer and do so only if they see some advantage to themselves"). Further, Sara made clear during her broadcasts that she was aware of the consequences of not responding to a complaint, stating in October 2021 she would not answer a lawsuit against her because a "lawsuit can be ruled when the defendant does not show up." (ECF 70-1, Ex. I, Ex. C (ECF p. 67).)

In her Motion, Sara does not deny that she received notice of this case. Instead, Sara asserts that alleged online threats purportedly made by MOS and others between 2021 and the present prevented her participation in this case by purportedly causing her to go into hiding. (ECF 143 at 3-5.) Sara's actions during the pendency of this litigation, however, demonstrate that this assertion is untrue. Instead of hiding, Sara continued to broadcast online regularly throughout 2022 and 2023, repeatedly mentioning this case and attacking the other parties, while urging her followers to get involved. (Ex. I, Zhang Decl, ¶¶ 9-14.) Additionally, as noted above, Sara participated in proceedings in front of the ACC as late as December 2021 and discussed filing a class action lawsuit with an attorney in 2021. Sara provides no explanation as to why she was able to participate in the ACC case, and potentially another class action, but not the present case. Finally, Sara provides no explanation as to why, despite these alleged threats, she is now, after final judgment has been entered, finally able to participate in this case.

In fact, Sara's broadcasts reveal the real reason she declined to participate in this case until now: she was waiting for MOS to settle and dismiss its claims against Defendant Chen, whom she has made clear in her broadcasts that she intends to blame at trial for the misappropriation and other wrongdoing at the heart of the case. (*See* Ex. I, Zhang Decl., ¶¶ 11-14.) Because Sara's own words reveal not only that she intentionally chose not to participate in this case despite being aware of it, but did so for a strategic advantage, the Motion should be denied based on the culpability prong of Rule 55(b) alone.

The Quinlan Law Firm | Chicago | Phoenix | Silicon Valley

**2.    Sara Has Failed to Identify a Meritorious Defense.**

Next, the Motion should be denied because Sara has failed to demonstrate that she holds a meritorious defense. To justify vacating a default judgment, a movant must "present the district court with specific facts that would constitute a defense." *Franchise Holdings*, 375 F.3d at 926. "A 'mere general denial without facts to support it' is not enough to justify vacating a default or default judgment." *Id*. (citations omitted).

In the Motion, Sara largely ignores the allegations against her in the SAC. Specifically, Sara does not deny that, as alleged in the SAC: She was the administrator of the Loan Program (ECF 22, ¶¶ 17, 22); in that role, she used bank accounts held by Maywind and two other entities she controlled to receive and administer Loan Program funds (ECF 22 ¶¶ 31-34); MOS transferred $4.5 million directly to Maywind's bank accounts and caused an additional $5.4 million to be sent to Maywind from others (ECF 22, ¶¶ 42-43); Maywind received at least $44 million in Loan Program Funds from MOS and others (ECF 22, ¶ 45); MOS and others made these its transfers in reliance on Sara's representations that Loan Program funds "would only be provided to [a] third-party Borrower" and that she would provide an executed loan agreement and monthly accountings (ECF 22, ¶¶ 38, 77, 82-85); and that these representations were false. (ECF 22, ¶¶ 7-8, 11, 46, 48, 58, 60-64.)

Instead, Sara raises only one possible defense in her Motion: that MOS was purportedly never damaged because she allegedly did provide the $4.5 million in Loan Program funds she received from MOS to the third-party borrower. (ECF 143 at 6-7.) In support of this, Sara attaches two bank statements from the Chase Bank Account of Maywind, dated August and October 2020, which she claims show that, during those months Maywind sent the third-party Borrower "far more than what MOS deposited." (ECF 143 at 7.)

These two statements do not, however, as Sara claims, show that all of MOS' funds were sent the company that the Motion asserts was the third-party Borrower, ACA Corporation ("ACA"). Instead, the August statement shows that Maywind received $27,360,548.13 in Loan Program funds from MOS and others but sent only $6,000,000 of these funds to ACA. (ECF No. 143-4, Ex. 15) Similarly, the October 2020 statement shows that, even after she transferred

12

additional Loan Program funds to ACA, Maywind still retained over $4.5 million in its accounts. (ECF No. 143-4, Ex. 15 at ECF p. 54.) No explanation is provided as to what happened to the rest of the Loan Program funds which these statements show Maywind and Sara received but did not send to ACA, nor does Sara provide any explanation as to why she believes the funds she sent to ACA during these two months specifically included all of the funds that MOS had sent to her, as opposed to those of other Loan Program participants.

Moreover, these documents also provide additional evidence that, as alleged in the SAC, Sara misappropriated Loan Program funds. Specifically, the August 2020 statement shows that Sara sent thousands of dollars of Loan Program funds to other individuals for "web design," including $5,000 to Defendant Peng. (ECF No. 143-4, Ex. 15.) Similarly, the October 2020 statement shows that Sara paid $80,000 in Loan Program funds to Defendant Chen on October 5 and approximately $50,000 to the law firm of Perkins Coie LLP on October 23. (ECF No. 143-4, Ex. 15 at ECF p. 56.) Far from demonstrating a meritorious defense, these documents demonstrate exactly what MOS alleged in the SAC—and what subsequent discovery has borne out in great detail—that despite Sara's promise to send all Loan Program funds to the third-party Borrower, she did not do so, but instead used a large portion of these funds for her own personal benefit.

### 3. Setting Aside the Judgment Will Result In Substantial Prejudice to MOS.

Finally, MOS would be substantially prejudiced by vacating the judgment against Sara. The standard for determining if a delay is prejudicial "is whether [Plaintiff's] ability to pursue [its] claim will be hindered." *ThermoLife Int'l, LLC v. Sechel Holdings, Inc.*, No. CV 14-2291-PHX-JAT, 2015 WL 1521779, at *3 (D. Ariz. Apr. 3, 2015). "[D]elay alone does not constitute the sort of prejudice cognizable upon a Rule 55(c) motion: it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Id.* (citation omitted). A plaintiff's settlement with the defaulted defendant's co-defendant has been found to be an example of such prejudice. *See Prescott v. MorGreen Solar Sols., LLC*, 352 F. Supp. 3d 529, 539 (E.D.N.C. 2018) (denying motion to vacate default on the basis of the prejudice that would result where Plaintiff and co-

defendant had reached a settlement "over the course of several months" after "extensive investigation and negotiation").

Here, MOS would be significantly prejudiced should the judgment against Sara be vacated because, during the 18 months that Sara was in default, MOS dismissed its claims against two of the defendants against whom Sara has made clear in her public broadcasts that she will, as a defense at trial, blame for the misappropriation of Loan Program funds at the center of this case: Wang and Chen. (Ex. I, Zhang Decl, ¶¶ 12-14; *see also* ECF 22, 61-64 (noting that Sara had made similar statements attacking Chen and Wang in 2021).) The prejudice related to Chen would be particularly great because the claims against him were dismissed, with prejudice, after months of settlement negotiations and the dismissal was, at least in part, motivated by Sara's default. (Ex. H, Schmitt Decl., ¶¶ 5-6.) Moreover, it would be extremely difficult for MOS to obtain additional discovery or compel the attendance of either Wang or Chen at trial as both are residents of Texas and Chen, in particular proved particularly difficult to serve with a summons, necessitating the Court to order alternative service. (ECF 22, ¶¶ 21, 22; ECF 27 at 4:12-6:12.) Indeed, it would be particularly perverse to permit Sara to vacate her default given that the length of the settlement negotiations with Chen was almost certainly caused by her public demonization of Chen to her followers and, in particular, her public threats against him warning that he should not settle with MOS. (Ex. I, Zhang Decl., ¶¶ 11-14.) Finally, Sara's flagrant and continued misappropriation of Loan Program funds through at least the end of January 2024 to, among other things, pay her Nordstrom's bills, demonstrates that vacating the judgment would only provide her with greater opportunity for fraud and collusion. (*See* Ex. F at BOA00229.)

**B. Sara Has Failed to Meet Her Burden Under Rule 60(b).**

Sara appears to allege that the final judgment against her should be set aside under Rule 60(b) for three reason: because she has purportedly identified newly discovered evidence; because MOS allegedly obtained its judgment through fraud about its damages; and because MOS has received compensation for its damages in the *Comerica Bank* Case. None of the purported evidence that she offers in support of these assertions meets her burden of

demonstrating that the final judgment against her should be vacated.

### 1.   Sara Has Not Identified Any Newly Discovered Evidence.

Sara asserts that vacation is justified based on three allegedly newly identified pieces of evidence: 1) MOS was purportedly identified as a "fraudulent enterprise" in a superseding indictment in the case of *United States v. Ho Wan Kwok*, Case No. 1:23-cr-00118 (SDNY) (the "Kwok Case") filed on January 4, 2024; 2) MOS was named as a defendant in the case of *SEC v. Ho Wan Kwok*, Case No. 23-cv-022200 (SDNY) (the "SEC Case") filed on March 15, 2023; and 3) MOS received $3,509,872 in funds in the *Comerica Bank* Case. None of these facts, however, support vacating a final judgment under Rule 60.

Initially, it is important to note that MOS has not even been named as a defendant in the *Kwok* Case, let alone convicted of any crime. Similarly, MOS has not even answered in the SEC Case, which was stayed soon after it was filed on April 28, 2023. (Ex. L, Stay Order in SEC Case.) Thus, neither of these cases can possibly support in any way a claim against MOS.

More fundamentally, Sara's argument fails because she misunderstands the relevant standard. Specifically, Rule 60(b) requires not simply evidence that was newly discovered by the movant, but "newly discovered evidence that, with reasonable diligence, <u>could not have been discovered in time to move for a new trial under Rule 59(b)</u>." Fed. R. Civ. P. 60(b) (emphasis added). The time for a new trial under Rule 59(b) is "no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(b). Final judgment against Sara was entered on January 4, 2024. Thus, Sara must show that she could not have discovered her newly discovered evidence before February 1, 2024, four weeks later. The Motion itself, however, states each of the three pieces of allegedly newly discovered evidence took place well before, February 1, alleging that: the superseding indictment in the *Kwok* Case was filed on January 3, 2024[1]; the SEC Case was filed on March 15, 2023; and the order was issued in the *Comerica Bank* Case

---

[1] Moreover, the initial indictment in the *Kwok* Case, which is the version of the indictment that Sara actually attaches to and discusses in her Motion, and which includes the same allegations regarding the Loan Program as the superseding indictment, was filed on March 29, 2023, almost a year before the final judgment against Sara was entered. (ECF 143, Ex. 1 at 40.)

awarding MOS $3.5 million on March 17, 2023. (Mot. 2.) Sara provides no explanation as to why she would not have been able to discover these documents with reasonable diligence. Nor is any explanation possible given that each is a publicly filed document. Moreover, this is particularly unlikely given that Sara claims that she has "cooperating with" both with the prosecutors in the *Kwok* Case and the SEC since "early 2021." (ECF 143 at 3.)

### 2.    Sara Has Failed To Demonstrate Fraud.

Sara's fraud allegations fare no better. Rule 60(b)(3) permits a losing party to move for relief from judgment on the basis of "fraud, . . . misrepresentation, or other misconduct of an adverse party." Fed. R. Civ. P.(b)(3). "To prevail, the moving party must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct <u>and</u> the conduct complained of prevented the losing party from fully and fairly presenting the defense." *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000) (citing *Lafarge Conseils et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1338 (9th Cir.1986)) (emphasis added).

Sara alleges that the January 4, 2024 judgment was obtained through fraud on two bases. First, Sara asserts that the judgment was fraudulently obtained because two Maywind bank statements from August and October 2020 purportedly show that Maywind sent more to ACA during those months than MOS sent to Maywind and thus "MOS was never damaged." (Mot. 6.) As set forth in more detail above, this claim fails because its characterization of these bank records is simply untrue: rather than showing that MOS never damaged, they demonstrate that, as alleged in the SAC, Sara received far more Loan Program funds than she sent to the borrower, failed to send all Loan Program funds to the designated borrower as she promised to do and, instead, used at least a portion of the funds she did receive for her own benefit. Moreover, despite her serious allegations, Sara fails to actually identify any false or misleading statements that MOS made to the Court in order to obtain a default judgment against her. And, in fact, there are none. Instead, in its Motion for Default Judgment, MOS was clear that the basis for its fraud claim was not that Sara had not sent <u>any</u> funds to the designated Borrower, but that Sara "fail[ed] to send <u>all</u> funds to the Borrower" as promised and had instead

"misappropriated millions in Loan Program funds for her own benefit." (ECF 70, 4:8-11 (emphasis added).) Finally, Sara's allegation fails because any alleged misconduct could not possibly have "prevented [Sara] from fully and fairly presenting the defense" because her undisputed control of Maywind and her use of Maywind bank statements in the Motion makes clear that the very evidence she asserts would have resulted in a successful defense are and have been in her possession.

Next, Sara alleges that MOS committed fraud by failing to inform the Court that the Loan Program had purportedly been designated as a fraud scheme in the indictment in the *Kwok* Case. Sara fails to offer any explanation as to why MOS was obligated to so inform the Court or how its failing to do so prevented her from fully defending herself. Nor could she, as mere allegations in an indictment in a case in which MOS is not a defendant—and which has not yet gone to trial or resulted in a conviction—obviously do not constitute admissible evidence against MOS in this case. Moreover, even if such evidence were admissible, which it is not, MOS could not possibly have misled the Court by failing to produce it because the initial indictment in the Kwok Case was not even filed until March 29, 2023 (ECF 143, Ex. 1 at 40), over eight months after MOS filed its Motion for Default Judgment on July 1, 2022. (ECF 70.)

### 3. The Award of Funds in the *Comerica Bank* Case Does Not Justify Vacating the Judgment.

Finally, Sara asserts that the final judgment against her should be vacated because MOS has received $3.5 million dollars in the *Comerica Bank* Case. Sara does not cite which provision of Rule 60(b) she believes justifies vacating the award on this basis, other than as newly discovered evidence, which, as set forth above, it is not.

Nor could the entry of a judgment in another case against a different defendant or an award of funds pursuant to such a judgment serve as grounds to vacate the judgment against Sara in this case. Under Arizona law, "[t]he rendition of a judgment in an action against one of two or more persons liable for a tort does not affect the claim against the other." *Rager v. Superior Coach Sales & Serv. of Arizona*, 110 Ariz. 188, 190 (1973). Instead,

> The doctrine is well established that when separate actions are brought for a joint trespass the plaintiff can recover against one or all, though others be acquitted; and

17

if separate judgments are obtained, he may make his election to take the larger judgment or pursue the solvent party, and when made, he is concluded. This is a privilege of which he cannot be deprived.

*Id.* at 190–91 (quoting *Power v. Baker* (C.C.D.Minn.), 27 F. 396, 397 (1886).)[2]

Additionally, because, as set forth above, Sara has failed to demonstrate the existence of any of the elements of finding good cause under Rule 55(c), such payments cannot justify vacating the default judgment against her regardless of whether any elements of the prongs of Rule 60(b) are met.[3]

## CONCLUSION

For the foregoing reasons, MOS requests that the Court deny Sara Wei's Motion to Set Aside the Judgment.

Dated March 4, 2024.

Respectfully submitted,

**THE QUINLAN LAW FIRM, LLC**

/s/ William Quinlan

William J. Quinlan
Eric T. Schmitt

*Attorneys for Plaintiff*
*Mountains of Spices LLC*

---

[2] Sara's argument that the judgment against her should be vacated because MOS has filed another lawsuit against Maywind fails for the same reason. MOS is entitled to pursue claims against different parties in different courts.

[3] The Motion ends with three paragraphs and a section heading that are redacted in their entirety and which Sara apparently seeks to file under seal. (ECF 143 at 9-10.) Because MOS has not seen unredacted versions of these paragraphs it cannot address them and, therefore, urges the Court not to rely on any allegations set forth therein.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2023, I electronically transmitted the forgoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF Registrants in this matter.

I also served sent the document to Sara Wei via email to vog202064@gmail.com.


/s/ Will Wanberg