# Exhibit E

**BEFORE THE PRESIDING DISCIPLINARY JUDGE**

| | |
|---|---|
| IN THE MATTER OF A NON-MEMBER OF THE STATE BAR OF ARIZONA, | PDJ 2023-9067 |
| | **FINAL JUDGMENT AND ORDER** |
| **GABRIEL VADASZ,** | (State Bar No. 21-1813) |
| **Respondent.** | **FILED SEPTEMBER 6, 2023** |

The Presiding Disciplinary Judge having accepted the parties' Agreement for Discipline by Consent submitted pursuant to Rule 57(a), Ariz. R. Sup. Ct.,

**IT IS ORDERED** that Respondent **Gabriel Vadasz** is reprimanded for his conduct in violation of the Arizona Rules of Professional Conduct, as outlined in the consent documents.

**IT IS FURTHER ORDERED** that Respondent abide by any confirmed arbitration award and pay restitution or return funds, if so ordered, to the person(s) or entity(ies) that provided funds to Diamondback Legal within 30 days of the confirmation of any such fee arbitration award or order following any fee arbitration proceeding based on the fee arbitration procedures set forth in Diamondback Legal's Engagement Letters signed by Xin Zhang. Respondent must promptly take steps to present any fee arbitration award entered against him or Diamondback Legal for confirmation or vacatur in an appropriate court and abide by any subsequently entered final court order. Respondent must comply with the final order within 30 days of entry of that order.

**IT IS FURTHER ORDERED** that Respondent pay the costs and expenses of the State

1

Bar of Arizona in the amount of $1,200.00, within 30 days.  There are no costs or expenses

incurred by the Office of the Presiding Disciplinary Judge in these proceedings.

**DATED** this 6th day of September, 2023.

*Margaret H. Downie*
**Margaret H. Downie**
**Presiding Disciplinary Judge**

Copy of the foregoing emailed
this 6th day of September, 2023, to:

James D. Lee
LRO@staff.azbar.org

J. Gregory Cahill
jgc@bowwlaw.com

by: SHunt

2

**BEFORE THE PRESIDING DISCIPLINARY JUDGE**

| | |
|---|---|
| IN THE MATTER OF A NON-MEMBER OF THE STATE BAR OF ARIZONA,<br><br>**GABRIEL VADASZ,**<br><br>    **Respondent.** | **PDJ 2023-9067**<br><br>**ORDER ACCEPTING AGREEMENT FOR DISCIPLINE BY CONSENT**<br><br>(State Bar No. 21-1813)<br><br>**FILED SEPTEMBER 6, 2023** |

On August 24, 2023, the parties filed an Agreement for Discipline by Consent ("Agreement") pursuant to Rule 57(a), Ariz. R. Sup. Ct. The State Bar of Arizona is represented by Senior Bar Counsel James D. Lee. Respondent Gabriel Vadasz is represented by J. Gregory Cahill. The Agreement resolves a matter for which a probable cause order has been entered but no formal complaint has been filed.

Contingent on approval of the proposed form of discipline, Mr. Vadasz has voluntarily waived his right to an adjudicatory hearing, as well as all motions, defenses, objections, or requests that could be asserted. As required by Rule 53(b)(3), Ariz. R. Sup. Ct., notice of the Agreement was sent to the complainant, who submitted an objection (exhibit C to the consent agreement). The State Bar has filed a comprehensive response to complainant's objection (exhibit D to the consent agreement)

The Agreement details a factual basis in support of Mr. Vadasz's conditional admissions and is incorporated by reference. *See* Rule 57(a)(4), Ariz. R. Sup. Ct. Mr. Vadasz

1

conditionally admits violating Rule 42, Ariz. R. Sup. Ct., ER 1.4(a) and (b), and Rule 43(b)(5). As a sanction, the parties agree to imposition of a reprimand and payment of restitution if ordered in pending private fee arbitration proceedings.  Mr. Vadasz also agrees to pay costs of these proceedings to the State Bar.

The Agreement describes in detail the factual background for the conditionally admitted ethical violations, which is not repeated herein.  Generally speaking, complainant Xin Zhang, on behalf of himself or one or more business entities, signed several engagement letters with Diamondback Legal, PLLC.  Mr. Vadasz is a member and principal of Diamondback Legal, PLLC and is licensed to practice law in New Mexico and Washington, D.C.  In a matter pending in Maricopa County Superior Court, Mr. Vadasz was admitted *pro hac vice* in order to represent Mr. Zhang's interests.

Sanctions imposed against lawyers "shall be determined in accordance with the American Bar Association's *Standards for Imposing Lawyer Sanctions*" ("ABA Standards"). Rule 58(k), Ariz. R. Sup. Ct.  In evaluating the propriety of an agreed-upon sanction, the PDJ considers the duty violated, the lawyer's mental state, the actual or potential injury caused by the misconduct, and the existence of aggravating and mitigating factors.

The parties rely on ABA Standards 4.14 and 4.43, which respectively call for admonition and reprimand as the presumptive sanction.  They agree that Mr. Vadasz violated duties owed to his clients.  The Agreement states that he "violated the Rules of

2

Professional Conduct by negligently failing to use a trust account check when returning funds from his client trust account to the clerk of court and negligently fail[ed] to adequately communicate appropriate information in Diamondback Legal's Engagement Letters." The parties acknowledge there was potential harm to the clients but no evidence of actual harm, noting that "the issue regarding fees paid in the form of Diamondback Legal's taxes is a civil issue, which Xin Zhang may challenge in fee arbitration. . . ."

The parties stipulate to the existence of one aggravating factor: multiple offenses. They agree that the following three mitigating factors apply: absence of a prior disciplinary record; full and free disclosure to the disciplinary board or cooperative attitude toward proceedings; and inexperience in the practice of law (Mr. Vadasz was admitted to practice law in New Mexico in 2018 and in Washington, D.C. in 2020).

Although Mr. Zhang has objected to the Agreement, the PDJ concurs with the State Bar's position, as set forth in exhibit D. Mr. Vadasz is not a member of the State Bar of Arizona. As such, he is not subject to suspension or disbarment in this jurisdiction. Additionally, Mr. Vadasz has agreed to abide by the outcome of pending private fee arbitration proceedings.

3

**I**T **IS ORDERED** accepting the Agreement for Discipline by Consent. A final judgment and order is signed this date.

**DATED** this 6th day of September, 2023.

*Margaret H. Downie*
**Margaret H. Downie**
**Presiding Disciplinary Judge**

Copy of the foregoing emailed
this 6th day of September, 2023, to:

James D. Lee
LRO@staff.azbar.org

J. Gregory Cahill
jgc@bowwlaw.com

by: SHunt

4

FILED
SHunt

James D. Lee, Bar No. 011586
Senior Bar Counsel
State Bar of Arizona
4201 North 24th Street, Suite 100
Phoenix, Arizona 85016-6266
Telephone: (602) 340-7250
Email: LRO@staff.azbar.org

J. Gregory Cahill, Bar No. 012654
Broening Oberg Woods & Wilson, PC
2800 North Central Avenue, Suite 1600
Phoenix, Arizona 85004-1047
Telephone: (602) 271-7726
Email: jgc@bowwlaw.com
Respondent's Counsel

**BEFORE THE PRESIDING DISCIPLINARY JUDGE**

| | |
|---|---|
| In the Matter of a Non-Member of the State Bar of Arizona, | **PDJ 2023-** 9067 |
| **GABRIEL VADASZ,** | **AGREEMENT FOR DISCIPLINE BY CONSENT** |
| Respondent. | [State Bar File No. 21-1813] |

The State Bar of Arizona, and Respondent Gabriel Vadasz, who is represented in this matter by Attorney J. Gregory Cahill, hereby submit their Agreement for Discipline by Consent pursuant to Rule 57(a), Ariz. R. Sup. Ct. A probable cause order was entered on April 20, 2023, but no formal complaint has been filed in this matter. Respondent voluntarily waives the right to an adjudicatory hearing, unless

1

otherwise ordered, and waives all motions, defenses, objections or requests which have been made or raised, or could be asserted thereafter, if the conditional admission and proposed form of discipline is approved.

Pursuant to Rule 53(b)(3), Ariz. R. Sup. Ct., notice of this agreement was provided to the complainant, Xin Zhang, by email on July 7, 2023. Mr. Zhang was notified of the opportunity to file a written objection to the agreement with the State Bar within five business days of bar counsel's notice. The State Bar has received an objection from Mr. Zhang, a copy of which is submitted as Exhibit C. Attached as Exhibit D is the State Bar's response to Mr. Zhang's objection.

Respondent conditionally admits that his conduct, as set forth below, violated Rule 42, Ariz. R. Sup. Ct., specifically ER 1.4(a) and (b), and Rule 43(b)(5), Ariz. R. Sup. Ct. Upon acceptance of this agreement, Respondent agrees to accept imposition of the following discipline: **Reprimand** and **Restitution** (if ordered by a fee arbitrator; see below). Respondent also agrees to pay the costs and expenses of the disciplinary proceeding, within 30 days from the date of this order. If costs are not paid within the 30 days interest will begin to accrue at the legal rate.[1] The State Bar's Statement of Costs and Expenses is attached hereto as Exhibit A.

---

[1] Respondent understands that the costs and expenses of the disciplinary proceeding include the costs and expenses of the State Bar of Arizona, the Disciplinary Clerk, the Probable Cause Committee, the Presiding Disciplinary Judge and the Supreme Court of Arizona.

## FACTS

## GENERAL ALLEGATIONS

1.      At all times relevant, Respondent Gabriel Vadasz was admitted to practice law in New Mexico (2019) and Washington, D.C. (July 7, 2020), but was not admitted to the State Bar of Arizona (he was, however, admitted *pro hac vice* in a case that was pending in Maricopa County Superior Court (see below)).

## COUNT ONE (File No.  21-1813/Zhang)

General Admissions

2.      Respondent, a member and principal of Diamondback Legal, PLLC, lived and worked in both New Mexico and Arizona, handling primarily federal law legal matters throughout the periods of time relevant to this consent agreement.

3.      In early 2021, Xin Zhang, on behalf of himself or one or more business entities, signed and dated six  "Engagement Letters" with Diamondback Legal regarding legal representation in various matters, including an interpleader case filed by Comerica Bank in Maricopa County, Arizona and a possible class action case.

a.      The signature lines for the "client's" signature on the Engagement Letters listed "Xin (Jonathan) Zhang," which made it appear that Mr. Zhang, rather than G-Service or other business entity, was the client in all of the matters.

3

b.    All Engagement Letters indicated that the initial and all subsequent "retainer[s]" would be held in a Chase Bank trust account located in a District of Columbia branch until earned or until necessary expenditures arose, as permitted by the Engagement Letters.

c.    The Engagement Letters (except the one pertaining to a possible class action lawsuit) stated that representation would be billed at Diamondback Legal's hourly rates, which were set forth in the Engagement Letters.

d.    The Engagement Letters also stated, "If a refund is to be issued, the funds will be mailed to the payor within 30-45days [sic] of the date of termination."

e.    A section of the Engagement Letters that addressed disputes between Diamondback Legal and the client stated (in all but the class action matter): "If a dispute arises between Diamondback and Client regarding fees, the parties agree to resolve that dispute through Diamondback's choice of an Arbitration Program in Maricopa County, Arizona. Client may initiate fee arbitration by notifying Diamondback of their intent to dispute a fee."

f.    The Engagement Letter for the possible class action case stated that fee disputes would be resolved through Diamondback Legal's choice of

an arbitration program in New Mexico, where Respondent was licensed to practice law.

g.    None of the six Engagement Letters included a provision that allowed Diamondback Legal to bill Xin Zhang or G-Service for any taxes that Diamondback Legal would incur if the total amount of fees paid to the firm "in an annual cycle" exceeded $50,000.

h.    Despite the absence of such language, Diamondback Legal billed for and was paid at least $206,284 for taxes.

4.    In March 2021, Xin Zhang signed a "Multi-Jurisdictional Practice" letter stating that Respondent was admitted to practice law only in New Mexico and Washington, D.C.

5.    On January 14, 2021, Xin Zhang electronically signed an Engagement Letter with Diamondback Legal, after which Maywind Trading, LLC paid an "initial retainer" of $25,000 for representation related to the Comerica Bank interpleader. Respondent also signed that Engagement Letter, which included the name of Marcos Garciaacosta (an Arizona attorney that worked with Diamondback Legal, but who was not an employee of the firm) and a Phoenix, Arizona address and telephone number near the top of the first page. That Engagement Letter included the following scope of representation regarding the Comerica Bank interpleader case:

5

Representation throughout the impleader [sic] claim filed by Comerica Bank against G-Service, LLC[,] in Superior Court. Helping [sic] the company wind down and distribute funds to any entitled creditors and any remaining balances to the members in proportion to their shares. Will also draft a statement to release to current employees who have been deprived of their pay because of this and file any counter claims [sic] against the former partner[,] as necessary.

6.      Also on January 14, 2021, Xin Zhang electronically signed a letter authorizing Respondent to associate with Attorney Marcos Garciaacosta in representing him/G-Service.

7.      On February 15, 2021, Xin Zhang electronically signed an Engagement Letter related to a possible class action case "on behalf of Xin Zhang and other presumed class" members, after which AEON Capital, LLC paid $2 million to Diamondback Legal as an "initial and flat fee retainer."

a.      Respondent's Engagement Letter for the class action case failed to clearly state the nature of the work to be performed to earn the "initial and flat fee" of $2 million.

i.      The Engagement Letter for the class action case stated in the "Scope of Representation (Limited)" section that the fee would "cover all litigation that we anticipate arising from this matter until a final disposition is reached," but later, in the "Fees and Billing Policy" section, stated "[t]he retainer is intended to be earned upon the

6

completion of the initial investigatory phase and the filing of the complaint with the local courthouse."

      ii.    The class action Engagement Letter also stated:

> The retainer will be earned in increments based off how much work has been done on the case. Because of the amount of investment needed on [the] part of the Firm for this case, the retainer will be earned in its entirety once we conclude the investigatory phase of the suit and file our complaint with [the] Federal Court. All additional forms of representation will be billed at the firms' [sic] hourly rate.

8.    The "retainers" paid  for the various representations were treated by Diamondback Legal as unearned fees being held in trust.

<u>Respondent's Failure to Use a Trust Account Check</u>

9.    On January 12, 2021, Comerica Bank filed an interpleader complaint against G-Service, Yun Jing, Xin Zhang and Qisheng Chen in Maricopa County Superior Court (*Comerica Bank v. G-Service, LLC, et al.*, No. CV2021-000495) ("the Comerica Interpleader/G-Service case").

10.    Respondent represented G-Service and others (including Xin Zhang) in the Comerica Interpleader/G-Service case in Maricopa County Superior Court.

      a.    Respondent was admitted *pro hac vice* in the Comerica Interpleader/G-Service case on April 2, 2021, and his name was included as co-counsel on various documents filed with the court.

7

b.    Respondent appeared in court on G-Service's behalf in the Comerica Interpleader/G-Service case (*e.g.*, at a hearing on April 29, 2021, regarding G-Service's motion for partial distribution of funds to process payroll and insurance).

11.    On or about April 28, 2021, Diamondback Legal filed a motion for partial distribution of funds that had been interpleaded by Comerica Bank so G-Service could pay its employees' salaries, payroll taxes, health insurance premiums, and Journey Payroll & HR (which provided payroll and human resources services for G-Service). At that time, G-Service owed a total of $221,635.23.

12.    On April 30, 2021, Maricopa County Superior Court Judge Timothy J. Thomason entered an order authorizing the distribution of $221,635.23 to Diamondback Legal from the funds that Comerica Bank had previously deposited with the clerk of court in the Comerica Interpleader/G-Service case. He also ordered the firm to use the funds to pay G-Service's bills.

13.    On October 17, 2021, Arizona Attorney Marcos Garciaacosta and Respondent (who by then had been granted *pro hac vice* admission in Arizona) notified the Court in a filing that Diamondback Legal had distributed $151,754.86 of the $221,635.23 released to it on April 30, 2021, but had been unable to distribute

8

the remaining funds after undertaking steps to determine the amounts owed and the identities of G-Service's creditors.

14.    On October 19, 2021, the Court ordered Diamondback Legal to return the undisbursed $78,379.95 to the Clerk of Court.

15.    On October 20, 2021, Respondent used a cashier's check (which was obtained using funds he had held in his client trust account), rather than a trust account check, to deposit $78,379.95 with the Clerk's Office.

Inadequate Communication re: Fees

16.    At    least    some    of    the    legal    services    invoices    that Respondent/Diamondback Legal sent to Xin Zhang (including at least some of the invoices regarding a possible class action case) included the following terms and conditions, which were not included in Diamondback Legal's Engagement Letters:

**Terms & Conditions:**

The client has 14days [sic] from being issued this invoice to contest the charges if they believe that they are improper. In the event that they don't, they understand that the firm will use these funds for the operations of the firm, distributions of funds for profits, and expenses incurred. As such, the amount will no longer be able to be contested and required to be placed back in trust. This transfer is a result of work done on the case, and authorized by the client in writing. *Additionally, for overall funds paid to the firm in excess of $50,000 in an annual cycle, an additional tax will be added either at the time of invoice or at a later date when the firm must pay taxes on this amount.* The tax expenses will be proportional to the individual income determined by the client's overall payment to the firm and the appropriate tax bracket

9

therein. If you believe that there is an error in this, please contact the firm immediately so that it can be resolved.

(Bold in original; Italics added).

17.   Although the payment of taxes was not included as a fee in any of Diamondback Legal's Engagement Letters, Respondent used at least $206,284.00 of the funds provided to Diamondback Legal to make some of Diamondback Legal's tax payments.

18.   Diamondback Legal's Engagement Letter for the class action case failed to clearly state the nature of the work to be performed to earn the "initial and flat fee" of $2 million (see paragraph 3 above, and its subparts).

<u>Violations of the Rules of Professional Conduct</u>

19.   By engaging in the conduct set forth above, Respondent violated Rule 42, Ariz. R. Sup. Ct., specifically ER 1.4(a) and (b), and Rule 43(b)(5), Ariz. R. Sup. Ct.

**CONDITIONAL ADMISSIONS**

Respondent's admissions are being tendered in exchange for the form of discipline stated below and are submitted freely and voluntarily and not as a result of coercion or intimidation. Respondent conditionally admits that he violated Rule 42, Ariz. R. Sup. Ct., specifically ER 1.4(a) and (b), and Rule 43(b)(5), Ariz. R. Sup. Ct.

10

## CONDITIONAL DISMISSALS

There are no conditional dismissals (because a formal complaint has not been filed).

## SANCTIONS

Respondent and the State Bar of Arizona agree that based on the facts and circumstances of this matter, as set forth above, the following sanctions are appropriate: **Reprimand** and **restitution** (as may be ordered by any arbitrator based on arbitration proceedings held as set forth in the Engagement Letters that Xin Zhang signed for representation by Diamondback Legal).

## RESTITUTION

Respondent agrees to abide by the results of the arbitration(s) in a timely manner once confirmed. In the event that the arbitration award(s) determine that Respondent must pay restitution or return funds to the person or entity that provided funds to Diamondback Legal, Respondent will do so within 30 days of the confirmation of the arbitration award(s) or other orders following the conclusion of any fee arbitration proceeding between the parties and based on the fee arbitration procedures set forth in Diamondback Legal's Engagement Letters signed by Xin Zhang. Respondent must promptly take steps to present any fee arbitration award entered against him or Diamondback Legal for confirmation or vacatur in an

11

appropriate court and abide by any subsequently entered final court order. Respondent must comply with the final order within 30 days of entry of that order.

If Respondent violates any of the terms of this agreement, the State Bar may bring further discipline proceedings.

**LEGAL GROUNDS IN SUPPORT OF SANCTION**

In determining an appropriate sanction, the parties consulted the American Bar Association's *Standards for Imposing Lawyer Sanctions (Standards)* pursuant to Rule 57(a)(2)(E). The *Standards* are designed to promote consistency in the imposition of sanctions by identifying relevant factors that courts should consider and then applying those factors to situations where lawyers have engaged in various types of misconduct. *Standard* 1.3, *In re Pappas*, 159 Ariz. 516, 768 P.2d 1161 (1988). The *Standards* provide guidance with respect to an appropriate sanction in this matter.

In determining an appropriate sanction, the Presiding Disciplinary Judge and the Supreme Court of Arizona consider the duty violated, the lawyer's mental state, the actual or potential injury caused by the misconduct, and the existence of aggravating and mitigating factors. *Standard* 3.0.

The parties agree that the following *Standards* apply, given the facts and circumstances in this matter:

12

(1) *Standard* 4.14 – "Admonition is generally appropriate when a lawyer is negligent in dealing with client property and causes little or no actual or potential injury to a client." Respondent failed to use a trust account check to return funds to the clerk of court.

(2) *Standard* 4.43 – "Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client." This *Standard* is most relevant to a lawyer's failure to adequately communicate with a client. In this case, Diamondback Legal's Engagement Letters failed to clearly explain the nature of the work to be performed to earn the $2 million fee in the class action case and failed to note that in certain situations additional fees would be incurred in the form of payment of Diamondback Legal's taxes. Had Xin Zhang or the business entities he represented been aware of the lack of clarity and completeness of the Engagement Letters, they may have chosen not to hire Diamondback Legal or requested clarification.

**The duty violated**

Respondent's misconduct violated his duty to his clients.

13

**The lawyer's mental state**

Respondent violated the Rules of Professional Conduct by negligently failing to use a trust account check when returning funds from his client trust account to the clerk of court and negligently failing to adequately communicate appropriate information in Diamondback Legal's Engagement Letters.

**The extent of the actual or potential injury**

There was potential harm to Respondent's clients. There is no evidence of actual harm (the issue regarding fees paid in the form of Diamondback Legal's taxes is a civil issue, which Xin Zhang may challenge in fee arbitration, as set forth in the Engagement Letters he signed).

**Aggravating and mitigating circumstances**

The presumptive sanction is reprimand. The parties conditionally agree that the following aggravating and mitigating factors should be considered:

**In aggravation:**

   a)  9.22(d) multiple offenses.

**In mitigation:**

   a)  9.32(a) absence of a prior disciplinary record;

14

b) 9.32(e) full and free disclosure to the disciplinary board or cooperative attitude toward proceedings (including his willingness to enter into this consent agreement); and

c) 9.32(f) inexperience in the practice of law (Respondent was admitted to practice law in New Mexico in 2019 and Washington, D.C. on July 7, 2020).

**Discussion**

The parties conditionally agree that upon application of the aggravating and mitigating factors the presumptive sanction is appropriate.

The parties conditionally agree that a greater or lesser sanction is not appropriate. This agreement is based on the following: A greater sanction may not be imposed because Respondent was not a member of the State Bar of Arizona at the time during which he engaged in misconduct, and a lesser sanction is not warranted because the fees paid based on Diamondback Legal's taxes could have— and may still—be financially harmful to Respondent's former clients.

Based on the *Standards* and in light of the facts and circumstances of this matter, the parties conditionally agree that the sanctions set forth above are within the range of appropriate sanctions and will serve the purposes of lawyer discipline.

15

## CONCLUSION

The object of lawyer discipline is not to punish the lawyer, but to protect the public, the profession and the administration of justice. *In re Peasley*, 208 Ariz. 27, 90 P.3d 764 (2004). Recognizing that determination of the appropriate sanction is the prerogative of the Presiding Disciplinary Judge, the State Bar and Respondent believe that the objectives of discipline will be met by the imposition of the proposed sanctions of reprimand and restitution (based on compliance with any fee arbitration award or order entered following fee arbitration proceedings as set forth in any of the six matters for which Xin Zhang signed Diamondback Legal's Engagement Letters), and the imposition of costs and expenses. A proposed form of order is attached hereto as Exhibit B.

**DATED** this 24th day of August, 2023.

**STATE BAR OF ARIZONA**

*/s/James D. Lee*
 James D. Lee
Senior Bar Counsel

**This agreement, with conditional admissions, is submitted freely and voluntarily and not under coercion or intimidation.**

**DATED** this \_\_\_\_\_ day of August, 2023.

_____
Gabriel Vadasz
Respondent

16

## CONCLUSION

The object of lawyer discipline is not to punish the lawyer, but to protect the public, the profession and the administration of justice. *In re Peasley*, 208 Ariz. 27, 90 P.3d 764 (2004). Recognizing that determination of the appropriate sanction is the prerogative of the Presiding Disciplinary Judge, the State Bar and Respondent believe that the objectives of discipline will be met by the imposition of the proposed sanctions of reprimand and restitution (based on compliance with any fee arbitration award or order entered following fee arbitration proceedings as set forth in any of the six matters for which Xin Zhang signed Diamondback Legal's Engagement Letters), and the imposition of costs and expenses. A proposed form of order is attached hereto as Exhibit B.

**DATED** this _____ day of August, 2023.

### STATE BAR OF ARIZONA

_____
James D. Lee
Senior Bar Counsel

**This agreement, with conditional admissions, is submitted freely and voluntarily and not under coercion or intimidation.**

**DATED** this _19th_ day of August, 2023.

_____
Gabriel Vadasz
Respondent

16

**DATED** this _2/8_ day of August, 2023.

Broening Oberg Woods & Wilson, PC

J. Gregory Cahill
Counsel for Respondent

Approved as to form and content

Maret Vessella
Chief Bar Counsel

Original filed with the Disciplinary Clerk of
the Office of the Presiding Disciplinary Judge
of the Supreme Court of Arizona
this _____ day of August, 2023.

Copy of the foregoing emailed
this _____ day of August, 2023, to:

The Honorable Margaret H. Downie
Presiding Disciplinary Judge
Supreme Court of Arizona
1501 West Washington Street, Suite 102
Phoenix, Arizona 85007
Email: officepdj@courts.az.gov

J. Gregory Cahill
Broening Oberg Woods & Wilson, PC
2800 North Central Avenue, Suite 1600
Phoenix, Arizona 85004-1047
Email: jgc@bowwlaw.com
Respondent's Counsel

17

**DATED** this _____ day of August, 2023.

Broening Oberg Woods & Wilson, PC

_____
J. Gregory Cahill
Counsel for Respondent

Approved as to form and content

*/s/Maret Vessella*
Maret Vessella
Chief Bar Counsel

Original filed with the Disciplinary Clerk of
the Office of the Presiding Disciplinary Judge
of the Supreme Court of Arizona
this 24th day of August, 2023.

Copy of the foregoing emailed
this 24th day of August, 2023, to:

The Honorable Margaret H. Downie
Presiding Disciplinary Judge
Supreme Court of Arizona
1501 West Washington Street, Suite 102
Phoenix, Arizona 85007
Email: officepdj@courts.az.gov

J. Gregory Cahill
Broening Oberg Woods & Wilson, PC
2800 North Central Avenue, Suite 1600
Phoenix, Arizona 85004-1047
Email: jgc@bowwlaw.com
Respondent's Counsel

17

Copy of the foregoing hand-delivered
this 24th day of August, 2023, to:

Lawyer Regulation Records Manager
State Bar of Arizona
4201 North 24th Street, Suite 100
Phoenix, Arizona 85016-6266

by: */s/Jackie Brokaw*
    JDL/jlb

18

**EXHIBIT A**

**Statement of Costs and Expenses**

In the Matter of a Non-Member of
The State Bar of Arizona, Gabriel Vadasz, Respondent.

File No. 21-1813

## Administrative Expenses

The Supreme Court of Arizona has adopted a schedule of administrative expenses to be assessed in lawyer discipline. If the number of charges/complainants exceeds five, the assessment for the general administrative expenses shall increase by 20% for each additional charge/complainant where a violation is admitted or proven.

Factors considered in the administrative expense are time expended by staff bar counsel, paralegal, secretaries, typists, file clerks and messenger; and normal postage charges, telephone costs, office supplies and all similar factors generally attributed to office overhead.  As a matter of course, administrative costs will increase based on the length of time it takes a matter to proceed through the adjudication process.

*General Administrative Expenses*
*for above-numbered proceedings*                              **$1,200.00**

Additional costs incurred by the State Bar of Arizona in the processing of this disciplinary matter, and not included in administrative expenses, are itemized below.

## Additional Costs

Total for additional costs                                          $      0.00


TOTAL COSTS AND EXPENSES INCURRED                    $1,200.00

**EXHIBIT B**

**BEFORE THE PRESIDING DISCIPLINARY JUDGE**

| | |
|---|---|
| In the Matter of a Non-Member of the State Bar of Arizona, <br><br> **GABRIEL VADASZ,** <br><br> Respondent. | PDJ 2023-_____ <br><br> **FINAL JUDGMENT AND ORDER** <br><br> [State Bar No.  21-1813] |

The Presiding Disciplinary Judge of the Supreme Court of Arizona, having reviewed the Agreement for Discipline by Consent pursuant to Rule 57(a), Ariz. R. Sup. Ct., accepts the parties' proposed agreement.

Accordingly:

**IT IS ORDERED** that Respondent, **Gabriel Vadasz**, is **reprimanded** for his conduct in violation of the Arizona Rules of Professional Conduct, as outlined in the consent documents.

**IT IS FURTHER ORDERED** that Respondent abide by any confirmed arbitration award and pay restitution or return funds, if so ordered, to the person(s) or entity(ies) that provided funds to Diamondback Legal within 30 days of the confirmation of any such  fee arbitration award or order following any fee arbitration proceeding based on the fee arbitration procedures set forth in Diamondback Legal's

1

Engagement Letters signed by Xin Zhang. Respondent must promptly take steps present any fee arbitration award entered against him or Diamondback Legal for confirmation or vacatur  in an appropriate court and abide by any subsequently entered final court order. . Respondent must comply with the final order within 30 days of entry of that order.

**IT IS FURTHER ORDERED** that Respondent pay the costs and expenses of the State Bar of Arizona in the amount of $1,200.00, within 30 days from the date of service of this Order.

**IT IS FURTHER ORDERED** that Respondent shall pay the costs and expenses incurred by the disciplinary clerk and/or Presiding Disciplinary Judge's Office in connection with these disciplinary proceedings in the amount of        $ _____, within 30 days from the date of service of this Order.

**DATED** this _____ day of August, 2023.

_____
**Margaret H. Downie**
**Presiding Disciplinary Judge**

Original filed with the Disciplinary Clerk of
the Office of the Presiding Disciplinary Judge
of the Supreme Court of Arizona
this _____ day of August, 2023.

2

Copies of the foregoing emailed
this _____ day of August, 2023, to:

J. Gregory Cahill
Broening Oberg Woods & Wilson, PC
2800 North Central Avenue, Suite 1600
Phoenix, Arizona 85004-1047
Email: jgc@bowwlaw.com
Respondent's Counsel

James D. Lee
Senior Bar Counsel
State Bar of Arizona
4201 N 24th Street, Suite 100
Phoenix, Arizona 85016-6266
Email: LRO@staff.azbar.org

Lawyer Regulation Records Manager
State Bar of Arizona
4201 North 24th Street, Suite 100
Phoenix, Arizona 85016-6266

by: _____

3

**EXHIBIT C**

Objection to the Proposed Content Agreement with Garbriel Vadasz

**Memorandum of G-Service in Opposition to Arizona State Bar's Proposed Consent with Gabriel Vadasz**

G-Service LLC
c/o Xin Zhang
14260 NW Newberry Road #366
Newberry, FL 32669-2765

**PRELIMNARY STATEMENT**

Xin Zhang ("Zhang"), on behalf of G-Service LLC ("G-Service"), submits this brief in opposition to the State Bar of Arizona's Proposed Consent Agreement ("Agreement") with Gabriel Vadasz ("Vadasz") seeking a settlement with Vadasz. Based on the email communication, the agreement mentioned that:

*"Mr. Vadasz has agreed to accept the imposition of a reprimand for failing to use a trust account check to return funds to the Maricopa County Superior Court Clerk's Office and failing to adequately communicate in his Engagement Letters the scope of representation (class action case) and the basis for his firm's fees (the Comerica Interpleader/G-Service case). He has also agreed to pay restitution or return funds to you or the person or entity that provided funds to Diamondback Legal within 30 days of the entry of a fee arbitration award or order following any fee arbitration proceeding based on the fee arbitration procedures set forth in Diamondback Legal's Engagement Letters signed by you."*

What Vadasz has admitted above is just a nice talking point to the Bar and the Judge. In fact, he has not admitted any wrongdoing or attempted to return the money to G-Service. What's importantly, G-Service's allegations against Vadasz are not limited to the non-return of the unearned funds; the allegations against him also include maliciously and intentionally fabricating and altering invoices, willfully failing to make refunds, and thereby making it impossible for G-Service to hire a new attorney to continue the ongoing litigation, and the inability to hire new counsel prevented him from timely and effectively charging him with egregious behavior.

*"He has agreed to pay restitution or return funds following within 30 days of the entry of a fee arbitration award or order following any fee arbitration proceeding."*

This is a lie! Vadasz did not make any commitment to rerun return the funds because the returning is dependent on the future arbitration as he agreed in the Agreement. In fact, Vadasz already fabricated an ongoing arbitration process. In this so-called arbitration, all Vadasz's fee charges are justified, and so are the non-refunds. Not only is Vadasz not refunding a penny to G-Service, but he also wants G-Service to pay more than $5 million in damages. This so-called arbitration process was also filled with this harassment and bullying to Zhang and his family. Vadasz used the attorney's fees given to him by G-Service to fight against G-Service. This behavior is so rampant and arrogant that it cannot be tolerated in any way. This is not just a matter of misbehavior. This is a naked crime.

1

For the reasons set forth above, Zhang strongly object the proposed content agreement between the State Bar of Arionna and Vadasz. Zhang respectfully requests Presiding Disciplinary Judge (PDJ) to order deny of the Agreement and perform further investigation on Vadasz's wrongdoings.

## **RELEVANT BACKGROUND AND VADASZ'S WRONG DOINGS**

Between Jan. and August in 2021, Vadasz (DiamondBack Legal PLLC) represented G-Service in two cases (G-Service litigation CV2021-000495 and Class Action against Guo's G-entities) with the retainer fee in the amount of $838,000.00 and $2,000,000.00, respectively. On behalf of G-Service, Zhang signed engagement letters with Vadasz.

**A. G-Service Litigation (CV2021-000495):**

1. On Jan. 2021: $838,000 retainer fee was wired to Vadasz for the G-Service litigation of the interpleaded funds (G-Service's bank account was frozen, the funds were later sent to the Court as interpleaded funds).

2. 08/08/2021: Vadasz withdrew representation in this ongoing case; On 08/06/2021, in Vadasz's reference room, Vadasz informed Zhang that the unearned balance was about **$590,000.00**.

3. On Sep. 2021: Zhang received physical copies of the receipts. The unearned balance decreased to about **$274,000.00**.

4. The unreasonable invoices included below (but not limited to below):

   i)   Original invoice was modified, huge charge was added (***Exhibit 1***).

   The original 4/8/2021 invoice in the amount of $7970.00 was changed to 8/18/2021 invoice in the amount: $215,675.22. The original service dates: 3/25/21-4/6/21, the services 8/13/21-8/18/21 was added (Remember: Vadasz's had withdrawn representing at this period).

   **Most notably, two taxes were added: 8/14/21($95,983.00) and 8/18/21 ($110,301.00), $206, 284.00 in total.  What are these taxes?  For what reason G-Service need to pay these taxes? G-Service does not know these taxes and never agrees to pay any kind of taxes for Vadasz.**

2

ii) Compared to 30 original invoices dated before 06/12/2021, about 40 extra invoices were added for this period. What are those added expenses? If those invoices are true, why Vadasz did not notify G-Service in a timely manner?

iii) Eleven invoices (10 general counseling, 1 G-Service litigation): no description/explanation on what those services were, no information on how much time were spent. Simply, just charges (***Exhibit 2***). Why?

iv) Seven invoices ($86,989.43 in total) were paid to payroll services ($64,389.33) and G-Service employee salaries ($22,600.10) (***Exhibit 3***)

| | | |
|---|---|---|
| Employees' Payroll | | |
| 1/8, 1/22;2/3; Final Payroll | | $ 153,882.84 |
| Federal & State Taxes | | $ 30,600.00 |
| Journey Payroll | | $ 7,193.39 |
| Health Insurance | | $ 29,959.00 |
| **Total:** | | **$ 221,635.23** |

I declare under penalty of perjury that the foregoing is true and correct.

Signature: _____    Executed on April 28, 2021

XIN ZHANG

Why were the attorney fees used to pay Journey Payroll and G-Service employee payroll salaries? Vadasz received the funds ($221,635.23, also see section 6 in this part) released from the Court (interpleaded funds from G-Service's frozen bank account) on behalf of G-Service in May 2021. That funds were specifical used to pay G-Service employees' salaries and $7193.39 to Journey Payroll (as shown in above figure). Vadasz spent $64,389.33 to pay Journey Payroll. Totally $86,989.43 was used for this unknown purpose. Vadasz should explain it to G-Service.

5. Vadasz agreed to return the unearned funds as soon as possible at the beginning when he decided to withdraw. After more than one month, he refused to return any funds to G-Service. **This withdrew and not returning the funds brough big damage to G-Service in the ongoing interpleaded litigation. A company is required to have an attorney in the litigation. However, G-Service had no resources to afford a new attorney without Vadasz's return of the funds.**

6. Vadasz's wrongdoings in the litigation:

The Court released a partial distribution of the funds ($221,653.23) to Vadasz on 5/6/2021 for G-Service employee's' salaries, payroll taxes, and medical insurance. However, by his termination on Aug. 2021, he did not successfully distribute the funds:

   1) Employee salaries:  Based on Vadasz's report, there were still two paychecks reversed at the time of his withdraw.

   2) Medical insurance: By August 2001, Vadasz still told Zhang that he could not reach the medical insurance company.  Zhang had to contact the insurance company by himself (08/19/2021), and then requested Vadasz to pay the medical insurance. Finally, Vadasz distributed the funds to the insurance company.

   3) Payroll taxes: By the Aug. 2021, Vadasz still failed to distribute the payroll taxes after receiving the funds for 3 months. Zhang requested to distribute the payroll taxes by himself but was denied by Vadasz. Finally, Vadasz returned the undistributed payroll taxes back to the Court. G-Service had to re-claim the payroll taxes in the litigation. This delay brought big damage to G-Service due the penalties and interests of the late payment.

## B. Class Action Case

1. On Jan. 2021: $2 million retainer fee were wired to Vadasz as the attorney fee for a class action case.
2. On July 2021: G-Service informed Vadasz to terminate the class action with oral notice on 7/14/2021, and written notice on 7/30/202.
3. 08/02/2021: Vadasz agreed to return the unearned funds within 30-45 days (a written statement dated on 07/01/2021, see *Exhibit 4*).
4. On 07/30/2021 and 08/03/2021, Vadazsz requested Zhang to sign three documents related to the $1million flat fees which occurred on 2/19/2021 ($200K), 2/26/2021 ($400K), and 3/29/2021 ($400K) (*Exhibit 5*), respectively. Zhang rejected the request.
5. 08/08/2021: Vadasz informed G-Service that he refused to return the unearned funds (via email on 08/08/2021).

6. On Sep. 2021:   Zhang received physical copies of the receipts of the class action. These receipts include:

   1) Three flat fees of $1M in total (#588, $400K on 3/29/2021; #533: $200K; 2/19/2021; #530: $400K on 2/18/2021; and 2) One single huge invoice on 08/09/2021 (this is the date after the termination of the representing) in the amount of **$1,239,957.50**.

**The calculation was so "beautiful"! Vadasz charged about $2.24 M for the class action. That means by August 9, 2021, the $2M was not enough, the remaining $240K approximately was paid from the $270.000.00 balance of the G-Service litigation case. By then, almost all the retainer fees were used up.**

Vadasz had at least three versions of the invoices. Apart from the hard copies Zhang received on Sep. 2021, there were at least two other copies Zhang recognized: one version from Vadasz's counsel (received by Zhan during his email communications with Vadasz's counsel; Although not a complete version, differences already be found compared with Zhang's version;) and a version Vadasz/his counsel submitted to State Bar of Arizona and SEC.  There were differences among all those versions of the invoices. Zhang could not figure out which version is the final version. It looks not eas for Vadasz to make the invoices look more reasonable. He needed to make changes frequently.  Vadasz did not take G-Service into considerations when he made these changes because he did not plan to return the money back to G-Service at all.

7. The three unreasonable $1 million flat fee invoices (*Exhibit 6*): How did Vadasz earn these 1 million flat fees?  What were these 1 million flat fees used for?

8. The 08/09/2021 invoice (#804, **$1,239,957.50):**

   This 46-page invoice was created on 08/09/2023, a date after Vadasz's termination of the service.  The service in this invoice covered the period 02/04/2021-08/06/2021. It included two parts: 1) Expense costs at $952,789.00; and 2) Hourly counted service at $287,177.50.

   1) The $952,789.00 expense fees (*Exhibit 7*)

      - Four fees of taxes, $115k each, $460K in total; What are these taxes? G-Service never knew what these taxes were, and never agreed to pay these taxes for Vadasz no matter what they were.

5

- Website Development fee at $14,500.00: Vadasz never developed any website for the class action by Aug. 2021.
- Payroll fee at $24,500.00: what is these payroll fee? G-Service never agreed to this fee.

2) The $287,177.50 hourly service fees:

The hourly counted service fees in this invoice were dominated by WhatsApp Correspondence (45-pages). It is so common to charge 5-6 hours/per day, for many consecutive days, and lasted for several months. Take one day for example (6/30/2021): 65 WhatsApp communications at 11 hours in total; in addition, still the same day, there were 2 more hours' charge on for class action research and docs review, respectively (***Exhibit 8***).  In a single day, 13 hours were charged, 11 hours for chatting on WhatsApp.  Does it make sense? A single message counted 0.2 hour such as "Hi", "Yes", "Get it", "Will call you later this afternoon".

Most importantly, Vadasz had never told G-Service that this kind of communications were charged in this way.  Accordingly, Vadasz had never sent any invoice for such kind of communication during the whole period until a huge bill was created on 08/09/2021, a date after Vadasz's termination.

### C. The continued fraud and harassment by a forged Arbitration

1. G-Service understands that an arbitration procedure is required for the fee argument according to the engagement letter G-Service signed.   G-Service has not filed a fee arbitration against Vadasz in any jurisdiction or has not filed any lawsuit for the recovery of the fees G-Service paid to Vadasz because G-Service does not have any available funds to afford any attorney fees for such kind of activities. The interpleaded funds were still not release from the Court. Vadasz did not return a single penny to G-Service. Another reason is that G-Service had thought that the State Bar Arizona could help with the recovery of the fees paid to Vadasz.

2. **An ongoing arbitration forged by Vadasz**

On 05/24/2023, Zhang got a notice on the front door of his home in Florida. The notice was for an undelivered letter, and Zhang got the letter from local USPS office on 05/25/2025. This letter is an Arbitration Notice of Claim and Final Hearing AR2023-03-100 from Milton

Powell ("Powell") ("Notice") (**Exhibit 9**). The notice is mainly about: 1) An arbitration is going on, service has been delivered in many ways, Zhang tried not to respond to the service; 2) Multiple hearings have been performed with Zhang's absence, there was a final hearing on 05/31/2023; 3) "*Vadasz is seeking $5,120, 658.63 in punitive digamies*".  Zhang has been considering it as a forged arbitration for the reasons below.

1)  Th notice contains a series of falsehoods, creating the illusion that Zhang deliberately did not accept the service on purpose.

Flowing are the falsehoods which Zhang verified with Powell but received no answers or no real answers (two questions were responded, but not really answered).

*"The arbitration has commenced on 03/23/2023.  The service has been sent to 14747 N Northsight Blvd suite 111 405, Scottsdale, AZ 85260 as well as 2625 East Camelback road, Phoenix, AZ 85015."*

This is not true: the 14747 address was a valid address Zhang used at Arizona. **No service was received in this address**. Camelback was not a valid address after June 2021.

*"The plaintiff hired a private investigator to locate my address at 3476 SW 73rd Way, Gainesville FL, 32608,"* and *"Service was sent to this address via regular mail"*.

This is not true: Vadasz knew Zhang's home address, or at least Vadasz did not need a private investigator to locate Zhang's home address at Florida.  No regular mails of the service were received in this address. Zhang never received any certified mail of service before 05/25/2023. The Notice on 05/25/2023 is the first notice Zhang received.

*"On May 31st, 2023, a final hearing will be held. You were also emailed at the following addresses through a private investigation report: xz65@ksu.edu, xin.zhang@ufl.edu, xzhang@ufl.edu, pastry_123@hotmail.com. No response was received. "*

Vadasz knew Zhang's email: xinzhang32@gmail.com starting on early 2021 and he used this email to communicate with Zhang frequently at that time. But Vadasz excluded this email, but purposely sent the service either to the wrong emails or expired emails. Obviously, this is a deliberate attempt to keep Zhang from receiving the service via email.  xz65@ksu.edu was an email Zhang used at K-State University, and Zhang left K-State 8 years ago. The other three emails were not Zhang's emails.

2)  The Notice caused Zhang to recognize that Vadasz had threatened and harassed Zhang and Zhang's family.

*"An individual by the name of Ting Ting Song signed for the notice on March 31st at 1:22PM"*

On 03/31/2023, Zhang's wife Tingting Song received and signed a letter in Florida home. The recipient of the letter is Zhang/Song. The sender's addressed is 312 W 2nd St #3229, Casper WY 82601.  The letter was sent out from Redwood City, California. Inside the envelope was two pieces of blank A4 paper (***Exhibit 10***).

The strange letter frighted Zhang and Zhang's wife, especially Zhang's wife. They considered this as a clear provocation and threatening behavior and it spilled over to Zhang's family.  Zhang and Song firstly called 312 W 2nd Casper, WY, but failed to identify who made this harassment. Then Zhang and Song called the U.S. Postal Inspection Service at 877-876-2455 on 03/31/2023, 04/01/2023, and 04/03/2023 (***Exhibit 11***). Unfortunately, the U.S. Postal Inspection Service was unable to initiate an investigation because there was no hazardous material in the mail. It was not until Zhang received the Notice on 05/25/2023 that Zhang and his family recognized what had happened: It was Vadasz's "masterpiece".

Why Vadasz involved my wife into his plot? If Vadasz put Zhang's wife's name as one of the recipients because he really wanted Zhang to receive the Notice, then why didn't Vadasz put the real document in it? Besides the threatening and harassment, it's also a lie and fraud. Based on this and other falsehoods, the 5/25/2023 Notice concluded that Zhang did receive the service.

8

3) Who is the arbitrator C. Milton Powell, Esq.? Is he/she a real lawyer?

C. Milton Powell, Esq.
LAW OFFICE OF C. MILTON POWELL LLC
1420 N. Street, NW, Suite #102
Washington, DC 20005

**VIA CERTIFIED AND REGULAR MAIL**                                    May 13th, 2023

Xin Zhang

3476 Southwest 73rd Way,
Gainesville, FL 32608 (Residence)

And,

5123 N 43rd Pl,
Phoenix, AZ, 85018 (Place of Business)

Re:    Arbitration Notice of Claim and Final Hearing
       AR2023-03-100

*"You are required to email or call the Law Office of C Milton Powell for instruction. You may also call or email the Mr. Powell requesting a link to the virtual hearing …"*

Powell requested Zhang to contact him by either email or phone call. But Powell did leave his email and phone number in the Notice. Zhang checked with Powell the reason. Powell did not answer the question yet. Without email and phone number, how to reach Powell? Only a LinkedIn webpage was found for C Milton Powell at https://www.linkedin.com/in/c-milton-powell-449965b6/ (***Exhibit 12***). No other was available information for Powell, no matter his personal biography, his law firm information, et.al. Later Zhang figured out Powell's email: agooddclawyer@gmail.com. Is Powell a real lawyer?

Zhang kept requesting Powell on the "facts" listed in the Notice, especially Powell's identity (his and his law firm's information, requesting copies of his licenses) and the 03/31/2023 notice information via email on 06/01/2023, 06/05/2023, and 06/07/2023. Powell did not answer Zhang's questions, instead, he requested Zhang to sign three engagement letters and to pay three invoices on the same day of the invoice date (06/06/2023). Finally, Mr. Powell responded to (but not really answered) two questions on 06/08/2023 as below.

9



C. Milton Powell
to me, Gabriel

Thu, Jun 8, 1:34 AM

Dear Mr. Zhang:

I am presuming this is Mr. Zhang. I am simply responding to an email address and would love the opportunity to first verify you by holding a preliminary meeting with me, DLG Trust PLLC and you. Could we accommodate such a meeting forthwith? Perhaps, set a date for this Friday at 2PM EST? I could schedule a zoom conference. Thereafter in order to discuss any further issues in the matter substantively or procedurally, you will have to sign the engagement letters. If the payment of the fees are somehow a deterrent to your participation then let me know. As to your preliminary questions I state the following:

1) Please tell me who you are by providing your own information, your law firm's information, and your license(s), especially your license in Arizona. I am C. Milton Powell, Esq. attorney at law licensed in the District of Columbia where I have my Law Practice. I have been a practicing attorney since 2003. I have been trained in Dispute Resolution since 2002 at the Martin Luther King Dispute Resolution Foundation in Los Angeles, California. I have taught Dispute Resolution in the Public Sector at the Graduate level and I have handled volumes of hearings since 2002. I am well versed in Dispute Resolution.

2) Please provide me the information on the 03/31/2023 notice such as who sent out that notice and what notice it is. As to your reference of the 03/3/2023 notice, could you please provide a copy of this notice that you said you received. I am truly not at liberty to discuss any matter other than my credentials because that is only appropriate once you have signed the engagement letters and entered the matters to file whatever applications or motions or otherwise raise any concerns. Again, I have not verified whom I am sending this information to. Since Mr. Vadasz knows you personally, I believe the proper course is to hold a preliminary meeting to solidify your identity, my identity and that of Mr. Vadasz as well as lay the groundwork for you to be satisfied to enter the matters.

Accordingly, please advise if you are available Friday June 9th at 2PM EST for such a meeting.

ATTORNEY/CLIENT PRIVILEGED COMMUNICATION AND WORK PRODUCT

Kind Regards,

C. Milton Powell, Esq.
LAW OFFICE OF C. MILTON POWELL LLC
1420 N. Street, NW, Suite #102
Washington, DC 20005

By providing above information, Powell informed Zhang he has answered Zhang's questions. For his own information, he briefly said he was a good DC lawyer/disputer, but not providing Zhang his license, and not answering why the arbitration was help in New Mexico. As for the information on the 03/31/2023 notice, his answer is to request Zhang to provide him a copy of that notice. Does Powell really want to look at the picture of the two blank white pages? On 06/08/2023, Zhang informed Mr. Powell to stop any communications and to cancel any scheduled hearing. **G-Service/Zhang does not accept this arbitration.**

4) Another fact is that several hearings have been held before Zhang received the Notice on 05/25/2023. Powell already made the decisions for the class action on 05/12/2023. It is not a surprise that decisions include: 1) The huge bills/charges are reasonable; 2) Not returning the unearned funds is reasonable; 3) The cost of the arbitration should be paid by Zhang; etc. (***Exhibit 13***).

10

5) On 06/05/2023, Vadasz requested huge documents for the first-round discovery of the arbitration including requests for production, admissions, and special interrogatories (***Exhibit 14***).

Vadasz ordered a deadline of 14 days. Obviously, Vadasz had laid out too much work. Not to mention 14 days, even if Zhang was given another 14 days, it would be impossible for Zhang to fulfill Vadasz's requesting, even if Zhang did nothing but focus on Vadasz's assignment. It looks like the roles of Vadasz and Zhang are switched, with Vadasz becoming the victim and Zhang becoming the perpetrator.

Vadasz's behavior an ongoing harassment and threat. Vadasz is using his client's money and his attorney's expertise to brutalize this client, who has no legal expertise after robbing him of all his money.

6) To date, the arbitration is continuing, with cost still being incurred by G-Service/Zhang, but incomplete disregard of G-Service/Zhang. To date, Vadasz has declared that G-Service/Zhang owes Vadasz's firm at least $1,706,886.21 excluding any other expenses incurred (***Exhibit 15***).

## CONCLUSION

As described herein, Zhang has established by a preponderance of the evidence to demonstrate that:

1. Although Vadasz admitted some wrongdoings in the Agreement (*accept the imposition of reprimand for failing to use a trust account check to return funds and failing communicate in his Engagement Letters the scope of representation (class action case) and the basis for his firm's fees (the Comerica Interpleader/G-Service case). He has also agreed to pay restitution or return funds to you… within 30 days of the entry of a fee arbitration ...")*, Vadasz simply downplayed the wrongdoings made, avoided the issue, and defrauded the State Bar of Arizona. Apart from what he has admitted, his wrongdoings at least include maliciously and intentionally fabricating and altering invoices, willfully failing to make refunds, and thereby making it impossible for G-Service to hire a new attorney to continue the ongoing litigation, and the inability to hire new counsel prevented him from timely and effectively

charging him with egregious behavior. Vadasz's purpose to embezzle all the funds has been clearly demonstrated in these behaviors as describe in above section.

2. In addition, Vadasz continues to perpetrate further fraud and harassment against G-Service and Zhang, and even Zhang's family, through the fabricated arbitration. In the fabricated arbitration: 1) all Vadasz's fee charges are reasonable; 2) the non-refund is reasonable, 3) Vadasz does not need return a single penny to G-Service, instead, G-Service should pay Vadasz more than $5 million. So, does Vadasz admit any wrongdoings? Or does Vadasz really agree to the commitment to return funds to G-service?

The current situation between a professional lawyer and his client is like this. By using the client's funds and not returning the unearned funds, the lawyer takes advantages of his expertise to fight against his client in many ways including lying, fraud, bullying, and harassment, etc. The client not only has no funds to hire a new attorney for the ongoing lawsuit, but also has no expertise and has no funds to hire a new attorney to protect himself from the attack coming from the lawyer who is still using his money. Within seven months, the lawyer used up all $2.8 million attorney fee, and now is seeking more than $5 million from his client. The client is suffering from the harassment—time, energy, physically and mentally. The whole scenario has been reported to the State Bar of Arizona, whereas the Bar believes there is no big issue.

Vadasz's behavior is a complete violation of the basic ethical code of conduct for attorneys and has caused significant damages to G-Service/Zhang and is unacceptable under any circumstances. If such kind of behaviors are acceptable, what else are not acceptable? And how client's rights are protected to hire the next attorney? Pray for luck to encounter a good attorney?

WHEREFORE, for all the forgoing reasons, G-Service/Zhang hereby respectfully requests that the PDJ reject the Proposed Content Agreement with Gabriel Vadasz, and order:

1) Vadasz to return the unearned balance to G-Service immediately.

12

2)  To perform further investigation on the current invoices/charges with the help of the Court and with the involvement of G-Service, and then refund G-Service those unreasonable charges.

3)  To investigate the ongoing arbitration, Vadasz's fraud/harassment behaviors in this arbitration, the arbitrator's identity.

4)  **Alternatively, if the Judge deems it necessary, to conduct a real arbitration with the help of the Court using the unearned fees hold by Vadasz.**

Dated: July 13, 2023                                    Respectfully submitted,

Xin Zhang

c/o G-Service LLC

By:

Xin Zhang

CEO of G-Service LLC

(785)320-3180

13

**Exhibit 1**    **An example of a modified invoice with huge amount taxes added (#592)**

**Diamondback Legal**
3101 N Central Ave
Suite 1150
Phoenix, AZ 85012
United States
602 726 2045



Xin (Jonathan) Zhang

| | |
|---|---|
| Balance | $0.00 |
| Invoice # | 00592 |
| Invoice Date | August 18, 2021 |
| Payment Terms | |
| Due Date | |

**Xin Jonathan Zhang - G-Services**
**Litigation**

**Time Entries**

| DATE | EE | ACTIVITY | DESCRIPTION | RATE | HOURS | LINE TOTAL |
|---|---|---|---|---|---|---|
| 03/25/2021 | MG | Meeting | Team meeting to review case and strategy | $400.00 | 2.00 | $800.00 |
| 03/26/2021 | MG | Communication | Communication with Opposing counsel on withdrawal of motion to dismiss. Review of filing. | $400.00 | 0.20 | $80.00 |
| 03/29/2021 | GV | Document Preparation | Reviewed the corresponding documents. Motion to dismiss has been withdrawn pending filing with the court. Discussed this with the team. Correspondeded with client over the withdrawal as well. Preparing documents to bring in Maywind | $400.00 | 4.90 | $1,960.00 |
| 03/29/2021 | MG | Case Preparation | Review, edit and filing of Joint Stipulation of Motion to Withdrawal of Motion to Dismiss from Defendant Jing. Opposing counsel was not able to do the filing so we had to do it. The withdrawal was without prejudice so that Jing could refile later as necessary. | $400.00 | 0.20 | $80.00 |
| 04/01/2021 | GV | Case Preparation | Reveiwed corressponding documents. Followed up with bank for discrepency. No correspondence. Spoke with client. Met with Moscatello. | $400.00 | 3.90 | $1,560.00 |
| 04/05/2021 | GV | Case Preparation | PHV application approved. Talked with Anita about several factors moving forward. Opposing counsel would like to get his client removed from the suit. Will hop on call tomorrow to discuss further. Began reviewing stipulation. Corresponded with J over it. | $400.00 | 4.90 | $1,960.00 |
| 04/06/2021 | GV | Communication | Spoke with Anita and opposing counsel. They are wanting to have the cross claims for Jing dismissed in exchange for letting us direct the funds. Spoke with M and A over strategy. | $400.00 | 3.80 | $1,520.00 |
| 08/13/2021 | MG | Document Preparation | Review, preparation and filing of Motion to Withdraw Zhang, LLC | $400.00 | 2.00 | $800.00 |

14

| 08/16/2021 | MG | Document Preparation | Review, Preparation, Filing of Motion to Withdraw Chen | $400.00 | 1.00 | $400.00 |
| 08/18/2021 | MG | Communication | Review, communication with team and entry of time | $400.00 | 0.50 | $200.00 |
| | | | | Totals: | 23.40 | $9,360.00 |

**Expenses**

| DATE | EE | ACTIVITY | DESCRIPTION | COST | QUANTITY | LINE TOTAL |
|---|---|---|---|---|---|---|
| 03/29/2021 | MG | Filing Fee | Filing fee for Stipulation for withdrawal of Motion of Dismissal by Jing | $10.61 | 1.0 | $10.61 |
| 08/13/2021 | MG | Filing Fee | Withdraw Motion Zhang and LLC | $10.61 | 1.0 | $10.61 |
| 08/14/2021 | GV | Taxes | | $95,983.00 | 1.0 | $95,983.00 |
| 08/16/2021 | MG | Filing Fee | Motion for withdraw from case for Chen | $10.61 | 1.0 | $10.61 |
| 08/18/2021 | GV | Taxes | | $110,301.00 | 1.0 | $110,301.00 |
| | | | | | Expense Total: | $206,315.83 |

**Adjustments**

| ITEM | APPLIED TO | TYPE | DESCRIPTION | BASIS | PERCENT | LINE TOTAL |
|---|---|---|---|---|---|---|
| Discount | Expenses | $ - Amount | | | | ($0.61) |
| | | | | | Discount Total: | ($0.61) |

| | |
|---|---|
| Time Entry Sub-Total: | $9,360.00 |
| Expense Sub Total: | $206,315.83 |
| Sub-Total: | $215,675.83 |
| Discounts: | ($0.61) |
| Total: | $215,675.22 |
| Amount Paid: | $215,675.22 |
| BALANCE DUE: | $0.00 |

**Terms & Conditions:**

The client has 14days from being issued this invoice to contest the charges if they believe that they are improper. In the event that they don't, they understand that the firm will use these funds for the operations of the firm, distributions of funds for profits, and expenses incurred. As such, the amount will no longer be able to be contested and required to be placed back in trust. This transfer is a result of work done on the case, and authorized by the client in writing. Additionally, for overall funds paid to the firm in excess of $50,000 in an annual cycle, an additional tax will be added either at the time of invoice or at a later date when the firm must pay taxes on this amount. The tax expenses will be proportional to the individual income determined by the client's overall payment to the firm and the appropriate tax bracket therein. If you believe that there is an error in this, please contact the firm immediately so that it can be resolved.

15

## Payment History

| Activity | Date | Payment Method | Amount | Responsible User | Deposited Into |
|---|---|---|---|---|---|
| Payment Received | Aug 26, 2021 | Trust | $207,705.22 | Gabriel Vadasz (Attorney) | Operating |
| Payment Received | Apr 8, 2021 | Trust | $7,970.00 | Gabriel Vadasz (Attorney) | Operating |

## Account Summary

Xin (Jonathan) Zhang's Trust Balance

Balance As Of 08/31/2021:
$376,012.75

16

**Exhibit 2    Eleven invoices without any service or hour description/explanation**

**Diamondback Legal**
3101 N Central Ave
Suite 1150
Phoenix, AZ 85012
United States
602 726 2045



James Wong

| | |
|---|---|
| Balance | $0.00 |
| Invoice # | 00479 |
| Invoice Date | Jan 6, 2021 |
| Payment Terms | |
| Due Date | |

Xin Jonathan Zhang - G-Services Litigation

## Payment Receipt

Date: 2021-01-06 18:01:04 UTC

Payment: $4,220.00 on Invoice #00479

Payment Type: Trust

Payment Identifier: 14815738

Entered By: Gabriel Vadesz

**Diamondback Legal**
3101 N Central Ave
Suite 1150
Phoenix, AZ 85012
United States
602 726 2045



Voice of Good
Xin (Jonathan) Zhang

| | |
|---|---|
| Balance | $0.00 |
| Invoice # | 00495 |
| Invoice Date | Jan 22, 2021 |
| Payment Terms | |
| Due Date | |

Xin Jonathan Zhang - General Counseling

## Payment Receipt

Date: 2021-01-22 21:28:58 UTC

Payment: $2,040.00 on Invoice #00495

Payment Type: Trust

Payment Identifier: 14991728

Entered By: Gabriel Vadesz

17

**Diamondback Legal**
3101 N Central Ave
Suite 1150
Phoenix, AZ 85012
United States
602 726 2045



**Voice of Good**
**Xin (Jonathan) Zhang**

| | |
|---|---|
| Balance | $0.00 |
| Invoice # | 00502 |
| Invoice Date | Jan 27, 2021 |
| Payment Terms | |
| Due Date | |

**Xin Jonathan Zhang - General Counseling**

## Payment Receipt

Date: 2021-01-27 17:51:34 UTC

Payment: $4,120.00 on Invoice #00502

Payment Type: Trust

Payment Identifier: 15036024

Entered By: Gabriel Vadasz

18

**Diamondback Legal**
3101 N Central Ave
Suite 1150
Phoenix, AZ 85012
United States
602 726 2045



**Voice of Good**
**Xin (Jonathan) Zhang**

| | |
|---|---|
| Balance | $0.00 |
| Invoice # | 00512 |
| Invoice Date | Feb 3, 2021 |
| Payment Terms | |
| Due Date | |

Xin Jonathan Zhang - General Counseling

# Payment Receipt

Date: 2021-02-03 21:30:22 UTC

Payment: $2,200.00 on Invoice #00512

Payment Type: Trust

Payment Identifier: 15132356

Entered By: Gabriel Vadasz

**Diamondback Legal**
3101 N Central Ave
Suite 1150
Phoenix, AZ 85012
United States
602 726 2045



**Voice of Good**
**Xin (Jonathan) Zhang**

| | |
|---|---|
| Balance | $0.00 |
| Invoice # | 00514 |
| Invoice Date | Feb 5, 2021 |
| Payment Terms | |
| Due Date | |

Xin Jonathan Zhang - General Counseling

# Payment Receipt

Date: 2021-02-05 12:56:52 UTC

Payment: $800.00 on Invoice #00514

Payment Type: Trust

Payment Identifier: 15156164

Entered By: Gabriel Vadasz

19

**Diamondback Legal**
3101 N Central Ave
Suite 1150
Phoenix, AZ 85012
United States
602 726 2045



**Voice of Good**
Xin (Jonathan) Zhang

| | |
|---|---|
| Balance | $0.00 |
| Invoice # | 00519 |
| Invoice Date | Feb 10, 2021 |
| Payment Terms | |
| Due Date | |

Xin Jonathan Zhang - General Counseling

# Payment Receipt

Date: 2021-02-10 19:15:47 UTC

Payment: $3,710.00 on Invoice #00519

Payment Type: Trust

Payment Identifier: 15209687

Entered By: Gabriel Vadasz

---

**Diamondback Legal**
3101 N Central Ave
Suite 1150
Phoenix, AZ 85012
United States
602 726 2045



**Voice of Good**
Xin (Jonathan) Zhang

| | |
|---|---|
| Balance | $0.00 |
| Invoice # | 00523 |
| Invoice Date | Feb 12, 2021 |
| Payment Terms | |
| Due Date | |

Xin Jonathan Zhang - General Counseling

# Payment Receipt

Date: 2021-02-12 11:35:55 UTC

Payment: $1,680.00 on Invoice #00523

Payment Type: Trust

Payment Identifier: 15226817

Entered By: Gabriel Vadasz

20

**Diamondback Legal**
3101 N Central Ave
Suite 1150
Phoenix, AZ 85012
United States
602 726 2045



**Voice of Good**
**Xin (Jonathan) Zhang**

| | |
|---|---|
| **Balance** | $0.00 |
| **Invoice #** | 00556 |
| **Invoice Date** | Mar 11, 2021 |
| **Payment Terms** | |
| **Due Date** | |

**Xin Jonathan Zhang - General Counseling**

# Payment Receipt

Date: 2021-03-11 00:38:43 UTC

Payment: $1,240.00 on Invoice #00556

Payment Type: Trust

Payment Identifier: 15532811

Entered By: Gabriel Vadasz

**Diamondback Legal**
3101 N Central Ave
Suite 1150
Phoenix, AZ 85012
United States
602 726 2045

**Voice of Good**
**Xin (Jonathan) Zhang**

| | |
|---|---|
| **Balance** | $0.00 |
| **Invoice #** | 00585 |
| **Invoice Date** | Mar 26, 2021 |
| **Payment Terms** | |
| **Due Date** | |

**Xin Jonathan Zhang - General Counseling**

# Payment Receipt

Date: 2021-03-26 23:09:02 UTC

Payment: $2,000.00 on Invoice #00585

Payment Type: Trust

Payment Identifier: 15723508

Entered By: Gabriel Vadasz

21

**Diamondback Legal**
3101 N Central Ave
Suite 1150
Phoenix, AZ 85012
United States
602 726 2045



**Voice of Good**
**Xin (Jonathan) Zhang**

| | |
|---|---|
| Balance | $0.00 |
| Invoice # | 00613 |
| Invoice Date | Apr 25, 2021 |
| Payment Terms | |
| Due Date | |

**Xin Jonathan Zhang - General Counseling**

## Payment Receipt

Date: 2021-04-25 23:01:51 UTC

Payment: $1,680.00 on Invoice #00613

Payment Type: Trust

Payment Identifier: 16064955

Entered By: Gabriel Vadasz

**Diamondback Legal**
3101 N Central Ave
Suite 1150
Phoenix, AZ 85012
United States
602 726 2045



**Voice of Good**
**Xin (Jonathan) Zhang**

| | |
|---|---|
| Balance | $0.00 |
| Invoice # | 00655 |
| Invoice Date | May 15, 2021 |
| Payment Terms | |
| Due Date | |

**Xin Jonathan Zhang - General Counseling**

## Payment Receipt

Date: 2021-05-15 00:11:22 UTC

Payment: $6,320.00 on Invoice #00655

Payment Type: Trust

Payment Identifier: 16318021

Entered By: Gabriel Vadasz

**Exhibit 3    Seven invoices: attorney fees paid to Journey Payroll and salaries**



Diamondback Legal
3101 N Central Ave
Suite 1150
Phoenix, AZ 85012
United States
602 726 2045

James Wong

| | |
|---|---|
| Balance | $0.00 |
| Invoice # | 00687 |
| Invoice Date | May 28, 2021 |
| Payment Terms | |
| Due Date | |

Xin Jonathan Zhang - G-Services
Litigation

**Expenses**

| DATE | EE | ACTIVITY | DESCRIPTION | COST | QUANTITY | LINE TOTAL |
|---|---|---|---|---|---|---|
| 05/28/2021 | GV | Journey Payroll | | $4,538.45 | 1.0 | $4,538.45 |
| | | | | | Expense Total: | $4,538.45 |

| | |
|---|---|
| Expense Sub-Total: | $4,538.45 |
| Sub-Total: | $4,538.45 |
| Total: | $4,538.45 |
| Amount Paid: | $4,538.45 |
| BALANCE DUE: | $0.00 |

**Payment History**

| Activity | Date | Payment Method | Amount | Responsible User | Deposited Into |
|---|---|---|---|---|---|
| Payment Received | May 28, 2021 | Trust | $4,538.45 | Gabriel Vadasz (Attorney) | Operating |

23

**Diamondback Legal**
3101 N Central Ave
Suite 1150
Phoenix, AZ 85012
United States
602 726 2045



Xin (Jonathan) Zhang

| Balance | $0.00 |
|---|---|
| Invoice # | 00695 |
| Invoice Date | June 8, 2021 |
| Payment Terms | |
| Due Date | |

**Xin Jonathan Zhang - G-Services**
**Litigation**

**Expenses**

| DATE | EE | ACTIVITY | DESCRIPTION | COST | QUANTITY | LINE TOTAL |
|---|---|---|---|---|---|---|
| 06/08/2021 | GV | Journey Payroll | | $1,695.14 | 1.0 | $1,695.14 |
| 06/08/2021 | GV | Journey Payroll | | $594.17 | 1.0 | $594.17 |
| 06/08/2021 | GV | Journey Payroll | | $1,859.42 | 2.0 | $3,718.84 |
| | | | | | Expense Total: | $6,008.15 |

| | |
|---|---|
| Expense Sub-Total: | $6,008.15 |
| Sub-Total: | $6,008.15 |
| Total: | $6,008.15 |
| Amount Paid: | $6,008.15 |
| **BALANCE DUE:** | **$0.00** |

**Terms & Conditions:**

The client has 14days from being issued this invoice to contest the charges if they believe that they are improper. In the event that they don't, they understand that the firm will use these funds for the operations of the firm, distributions of funds for profits, and expenses incurred. As such, the amount will no longer be able to be contested and required to be placed back in trust. This transfer is a result of work done on the case, and authorized by the client in writing. Additionally, for overall funds paid to the firm in excess of $50,000 in an annual cycle, an additional tax will be added either at the time of invoice or at a later date when the firm must pay taxes on this amount. The tax expenses will be proportional to the individual income determined by the client's overall payment to the firm and the appropriate tax bracket therein. If you believe that there is an error in this, please contact the firm immediately so that it can be resolved.

24

**Diamondback Legal**
3101 N Central Ave
Suite 1150
Phoenix, AZ 85012
United States
602 726 2045



Xin (Jonathan) Zhang

| | |
|---|---|
| Balance | $0.00 |
| Invoice # | 00696 |
| Invoice Date | May 26, 2021 |
| Payment Terms | |
| Due Date | |

**Xin Jonathan Zhang - G-Services
Litigation**

**Expenses**

| DATE | EE | ACTIVITY | DESCRIPTION | COST | QUANTITY | LINE TOTAL |
|---|---|---|---|---|---|---|
| 06/08/2021 | GV | Journey Payroll | | $5,359.76 | 1.0 | $5,359.76 |
| 06/08/2021 | GV | Journey Payroll | | $4,809.60 | 1.0 | $4,809.60 |
| 06/08/2021 | GV | Journey Payroll | | $1,679.74 | 1.0 | $1,679.74 |
| 06/08/2021 | GV | Journey Payroll | | $1,462.91 | 1.0 | $1,462.91 |
| | | | | | Expense Total: | $13,312.01 |

| | |
|---|---|
| Expense Sub-Total: | $13,312.01 |
| Sub-Total: | $13,312.01 |
| Total: | $13,312.01 |
| Amount Paid: | $13,312.01 |
| **BALANCE DUE:** | $0.00 |

**Terms & Conditions:**

The client has 14days from being issued this invoice to contest the charges if they believe that they are improper. In the event that they don't, they understand that the firm will use these funds for the operations of the firm, distributions of funds for profits, and expenses incurred. As such, the amount will no longer be able to be contested and required to be placed back in trust. This transfer is a result of work done on the case, and authorized by the client in writing. Additionally, for overall funds paid to the firm in excess of $50,000 in an annual cycle, an additional tax will be added either at the time of invoice or at a later date when the firm must pay taxes on this amount. The tax expenses will be proportional to the individual income determined by the client's overall payment to the firm and the appropriate tax bracket therein. If you believe that there is an

25

**Diamondback Legal**
3101 N Central Ave
Suite 1150
Phoenix, AZ 85012
United States
602 726 2045



Xin (Jonathan) Zhang

| | |
|---|---|
| **Balance** | $0.00 |
| **Invoice #** | 00827 |
| **Invoice Date** | May 21, 2021 |
| **Payment Terms** | |
| **Due Date** | |

## Xin Jonathan Zhang - G-Services Litigation

### Expenses

| DATE | EE | ACTIVITY | DESCRIPTION | COST | QUANTITY | LINE TOTAL |
|---|---|---|---|---|---|---|
| 05/21/2021 | GV | Journey Payroll | Ding Lin | $608.90 | 1.0 | $608.90 |
| 05/21/2021 | GV | Journey Payroll | Ding Lin | $1,970.09 | 1.0 | $1,970.09 |
| 05/21/2021 | GV | Journey Payroll | Ding Lin | $1,802.31 | 1.0 | $1,802.31 |
| 05/21/2021 | GV | Journey Payroll | Ding Lin | $1,970.09 | 1.0 | $1,970.09 |
| 05/21/2021 | GV | Journey Payroll | Jienan Shen | $2,143.10 | 2.0 | $4,286.20 |
| 05/21/2021 | GV | Journey Payroll | Jienan Shen | $2,125.95 | 1.0 | $2,125.95 |
| 05/21/2021 | GV | Journey Payroll | Qian Zhang | $1,595.39 | 1.0 | $1,595.39 |
| 05/21/2021 | GV | Journey Payroll | Qian Zhang | $1,595.40 | 1.0 | $1,595.40 |
| 05/21/2021 | GV | Journey Payroll | Qian Zhang | $1,129.53 | 1.0 | $1,129.53 |
| 05/21/2021 | GV | Journey Payroll | Qian Zhang | $496.33 | 1.0 | $496.33 |
| 05/21/2021 | GV | Journey Payroll | Chang Zhang | $408.93 | 1.0 | $408.93 |
| 05/21/2021 | GV | Journey Payroll | Chang Zhang | $1,310.84 | 3.0 | $3,932.52 |
| 09/10/2021 | GV | Journey Payroll | Jienan Shen | $678.46 | 1.0 | $678.46 |

Expense Total: **$22,600.10**

26

**Diamondback Legal**
3101 N Central Ave
Suite 1150
Phoenix, AZ 85012
United States
602 726 2045



James Wong

| | |
|---|---|
| Balance | $0.00 |
| Invoice # | 00656 |
| Invoice Date | May 17, 2021 |
| Payment Terms | |
| Due Date | |

**Xin Jonathan Zhang - G-Services**
**Litigation**

**Expenses**

| DATE | EE | ACTIVITY | DESCRIPTION | COST | QUANTITY | LINE TOTAL |
|---|---|---|---|---|---|---|
| 05/17/2021 | GV | Payroll | Journey Debt | $7,193.39 | 1.0 | $7,193.39 |
| | | | | | Expense Total: | $7,193.39 |

| | |
|---|---|
| Expense Sub-Total: | $7,193.39 |
| Sub-Total: | $7,193.39 |
| Total: | $7,193.39 |
| Amount Paid: | $7,193.39 |
| BALANCE DUE: | $0.00 |

**Payment History**

| Activity | Date | Payment Method | Amount | Responsible User | Deposited Into |
|---|---|---|---|---|---|
| Payment Received | May 17, 2021 | Trust | $7,193.39 | Gabriel Vadasz (Attorney) | Operating |

27

**Diamondback Legal**
3101 N Central Ave
Suite 1150
Phoenix, AZ 85012
United States
602 726 2045



**James Wong**

| | |
|---|---|
| Balance | $0.00 |
| Invoice # | 00672 |
| Invoice Date | May 24, 2021 |
| Payment Terms | |
| Due Date | |

## Xin Jonathan Zhang - G-Services
## Litigation

**Time Entries**

| DATE | EE | ACTIVITY | DESCRIPTION | RATE | HOURS | LINE TOTAL |
|---|---|---|---|---|---|---|
| 05/21/2021 | MG | Document Review | Review of Document from MOS attorney, notes and email to team. | $400.00 | 2.00 | $800.00 |
| | | | | Totals: | 2.00 | $800.00 |

**Expenses**

| DATE | EE | ACTIVITY | DESCRIPTION | COST | QUANTITY | LINE TOTAL |
|---|---|---|---|---|---|---|
| 05/24/2021 | GV | Journey Payroll | | $126.00 | 3.0 | $378.00 |
| 05/24/2021 | GV | Journey Payroll | | $132.00 | 1.0 | $132.00 |
| | | | | Expense Total: | | $510.00 |

| | |
|---|---|
| Time Entry Sub-Total: | $800.00 |
| Expense Sub-Total: | $510.00 |
| Sub-Total: | $1,310.00 |
| Total: | $1,310.00 |
| Amount Paid: | $1,310.00 |
| BALANCE DUE: | $0.00 |

28

**Diamondback Legal**
3101 N Central Ave
Suite 1150
Phoenix, AZ 85012
United States
602 726 2045



James Wong

| | |
|---|---|
| Balance | $0.00 |
| Invoice # | 00686 |
| Invoice Date | May 28, 2021 |
| Payment Terms | |
| Due Date | |

**Xin Jonathan Zhang - G-Services**
**Litigation**

## Expenses

| DATE | EE | ACTIVITY | DESCRIPTION | COST | QUANTITY | LINE TOTAL |
|---|---|---|---|---|---|---|
| 05/28/2021 | GV | Journey Payroll | | $5,096.03 | 1.0 | $5,096.03 |
| 05/28/2021 | GV | Journey Payroll | | $1,696.78 | 1.0 | $1,696.78 |
| 05/28/2021 | GV | Journey Payroll | | $1,477.74 | 1.0 | $1,477.74 |
| 05/28/2021 | GV | Journey Payroll | | $4,674.39 | 2.0 | $9,348.78 |
| 05/28/2021 | GV | Journey Payroll | | $4,133.31 | 2.0 | $8,266.62 |
| 05/28/2021 | GV | Journey Payroll | | $2,125.20 | 2.0 | $4,250.40 |
| 05/28/2021 | GV | Journey Payroll | | $1,345.49 | 2.0 | $2,690.98 |

Expense Total: **$32,827.33**

| | |
|---|---|
| Expense Sub-Total: | $32,827.33 |
| Sub-Total: | $32,827.33 |
| Total: | $32,827.33 |
| Amount Paid: | $32,827.33 |
| **BALANCE DUE:** | $0.00 |

29

**Exhibit 4    Vadasz agreed to return unearned funds on 07/01/2021**



3101 N Central Ave, Ste 1150                                                July 1st, 2021
Phoenix, AZ 85012
(602) 726 2045

**Re: Class Action Termination**

Dear Mr. Zhang,

We are sorry to hear about the circumstances that led to you needing to terminate this scope of representation. Although we completely understand, we hope that the services rendered thus far were satisfactory.

Our staff will prepare your client file over the next several days for you to pick up at our office. We can also provide you with a mailed copy if requested, however, shipping costs may apply given the size of the client file. Please be advised that the file itself is several thousand pages with an additional several thousand pages stored digitally on a thumb drive. As such, shipping these documents could be superfluous.

Regarding the retainer paid to the firm, per our fee agreement, any fees deemed unearned will be returned within 30-45days from termination of representation. Although you have expressed the desire to terminate representation now, we must wind down representation for all clients that have engaged our firm on behalf of the class. In order to do so, the firm will continue to incur expenses until this is complete. 30-45days after these services are complete, you can expect a refund of your retainer paid to Diamondback Legal, P.C.. We will do our best to conclude these matters promptly, although we ask your patience and cooperation given the magnitude of this case.

We will let you know when the current client file is ready for pick up or delivery. Please advise as to where you would like us to send the check for any amount unearned, if any. Additionally, please include the name of who you'd like us to remit the check to. Thanks in advance.

**Exhibit 5        Vadasz requested makeup signature on 08/03/2021**



31



**DIAMONDBACK** LEGAL

3101 N Central Ave, Ste 1150                                           February 19, 2021
Phoenix, AZ 85012
(602) 726 2045

**Re: Guo Class Action**

Dear valued client,

This letter is to serve as a formal request for the advancement of funds from your retainer account with the firm. The purpose of this agreement is to enumerate the basis of the advance of funds, while outlining what the intended funds will be used for.

In accordance with Rule 1.5 of the Rules of Professional Conduct, an attorney may advance their retainer in part or in full if doing so is authorized by the client. The advance may be used for the overhead needed by the firm to sustain the case, profits for the firm staff on the case, payroll for the employees needed to work on the case, infrastructural costs, such as increased lease costs and furnishing expenses therein. The funds may also be used to sustain a newly developed website to support the increased traffic expected with a class action of this nature. Further, these funds may be used to support advertising costs that may be incurred in order to find individual members of the class.

In the current matter, the firm requests an advance of $200,000.00 for the previously listed costs. By signing below, you are agreeing to such an advance for the purposes listed above.

_____                                    2/19/21

Xin Zhang                                                            Date

32



**DIAMONDBACK**
LEGAL

3101 N Central Ave, Ste 1150                                   February 26ᵗʰ, 2021
Phoenix, AZ 85012
(602) 726 2045

**Re: Guo Class Action**

Dear valued client,

    This letter is to serve as a formal request for the advancement of funds from your retainer account with the firm. The purpose of this agreement is to enumerate the basis of the advance of funds, while outlining what the intended funds will be used for.

    In accordance with Rule 1.5 of the Rules of Professional Conduct, an attorney may advance their retainer in part or in full if doing so is authorized by the client. The advance may be used for the overhead needed by the firm to sustain the case, profits for the firm staff on the case, payroll for the employees needed to work on the case, infrastructural costs, such as increased lease costs and furnishing expenses therein. The funds may also be used to sustain a newly developed website to support the increased traffic expected with a class action of this nature. Further, these funds may be used to support advertising costs that may be incurred in order to find individual members of the class.

    In the current matter, the firm requests an advance of $400,000.00 for the previously listed costs. By signing below, you are agreeing to such an advance for the purposes listed above.

_____              <u>2/26/21</u>
     Xin Zhang                                      Date

33



**DIAMONDBACK** LEGAL

3101 N Central Ave, Ste 1150                                    March 29th, 2021
Phoenix, AZ 85012
(602) 726 2045

**Re: Guo Class Action**

Dear valued client,

    This letter is to serve as a formal request for the advancement of funds from your retainer account with the firm. The purpose of this agreement is to enumerate the basis of the advance of funds, while outlining what the intended funds will be used for.

    In accordance with Rule 1.5 of the Rules of Professional Conduct, an attorney may advance their retainer in part or in full if doing so is authorized by the client. The advance may be used for the overhead needed by the firm to sustain the case, profits for the firm staff on the case, payroll for the employees needed to work on the case, infrastructural costs, such as increased lease costs and furnishing expenses therein. The funds may also be used to sustain a newly developed website to support the increased traffic expected with a class action of this nature. Further, these funds may be used to support advertising costs that may be incurred in order to find individual members of the class.

    In the current matter, the firm requests an advance of $400,000.00 for the previously listed costs. By signing below, you are agreeing to such an advance for the purposes listed above.

_____                                    3/29/21

Xin Zhang                                                                      Date

34

**Exhibit 6    Three invoices of the $1 million flat fee for the class action**

**Diamondback Legal**
3101 N Central Ave
Suite 1150
Phoenix, AZ 85012
United States
602 726 2045



**Voice of Good**

| | |
|---|---|
| **Balance** | $0.00 |
| **Invoice #** | 00533 |
| **Invoice Date** | February 19, 2021 |
| **Payment Terms** | |
| **Due Date** | |

**Guo Class Action**

**Flat Fees**

| DATE | ITEM | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 02/19/2021 | Flat Fee | Initial Fee Distribution | $200,000.00 |
| | | Flat Fee Total: | $200,000.00 |



| | |
|---|---|
| Flat Fee Sub-Total: | $200,000.00 |
| Sub-Total: | $200,000.00 |
| Total: | $200,000.00 |
| Amount Paid: | $200,000.00 |
| **BALANCE DUE:** | $0.00 |

**Terms & Conditions:**

The client has 14days from being issued this invoice to contest the charges if they believe that they are improper. In the event that they don't, they understand that the firm will use these funds for the operations of the firm, distributions of funds for profits, and expenses incurred. As such, the amount will no longer be able to be contested and required to be placed back in trust. This transfer is a result of an advance issued and authorized by the client in writing. Additionally, for funds paid to the firm in excess of $50,000, an additional tax will be added either at the time of invoice or at a later date when the firm must pay taxes on this amount. The tax expenses will be proportional to the individual income determined by the client's overall payment to the firm and the appropriate tax bracket therein. If you believe that there is any error in this, please contact the firm immediately so that it can be resolved.

35

**Diamondback Legal**
3101 N Central Ave
Suite 1150
Phoenix, AZ 85012
United States
602 726 2045



**Voice of Good**

| | |
|---|---|
| **Balance** | $0.00 |
| **Invoice #** | 00829 |
| **Invoice Date** | February 26, 2021 |
| **Payment Terms** | |
| **Due Date** | |

---

## Guo Class Action

### Flat Fees

| DATE | ITEM | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 02/26/2021 | Flat Fee | | $400,000.00 |

Flat Fee Total: $400,000.00

| | |
|---|---|
| Flat Fee Sub-Total: | $400,000.00 |
| Sub-Total: | $400,000.00 |
| Total: | $400,000.00 |
| Amount Paid: | $400,000.00 |
| BALANCE DUE: | $0.00 |

**Terms & Conditions:**

The client has 14days from being issued this invoice to contest the charges if they believe that they are improper. In the event that they don't, they understand that the firm will use these funds for the operations of the firm, distributions of funds for profits, and expenses incurred. As such, the amount will no longer be able to be contested and required to be placed back in trust. This transfer is a result of work done on the case, and authorized by the client in writing. Additionally, for overall funds paid to the firm in excess of $50,000 in an annual cycle, an additional tax will be added either at the time of invoice or at a later date when the firm must pay taxes on this amount. The tax expenses will be proportional to the individual income determined by the client's overall payment to the firm and the appropriate tax bracket therein. If you believe that there is an error in this, please contact the firm immediately so that it can be resolved.

36

**Diamondback Legal**
3101 N Central Ave
Suite 1150
Phoenix, AZ 85012
United States
602 726 2045



**Voice of Good**

| | |
|---|---|
| **Balance** | $0.00 |
| **Invoice #** | 00588 |
| **Invoice Date** | March 29, 2021 |
| **Payment Terms** | |
| **Due Date** | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Guo Class Action**

**Flat Fees**

| DATE | ITEM | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 03/29/2021 | Flat Fee | | $400,000.00 |
| | | Flat Fee Total: | $400,000.00 |

| | |
|---|---|
| Flat Fee Sub-Total: | $400,000.00 |
| Sub-Total: | $400,000.00 |
| Total: | $400,000.00 |
| Amount Paid: | $400,000.00 |
| BALANCE DUE: | $0.00 |

**Terms & Conditions:**

The client has 14days from being issued this invoice to contest the charges if they believe that they are improper. In the event that they don't, they understand that the firm will use these funds for the operations of the firm, distributions of funds for profits, and expenses incurred. As such, the amount will no longer be able to be contested and required to be placed back in trust. This transfer is a result of an advance issued and authorized by the client in writing. Additionally, for funds paid to the firm in excess of $50,000, an additional tax will be added either at the time of invoice or at a later date when the firm must pay taxes on this amount. The tax expenses will be proportional to the individual income determined by the client's overall payment to the firm and the appropriate tax bracket therein. If you believe that there is any error in this, please contact the firm immediately so that it can be resolved.

37

**Exhibit 7    The expense cost in invoice #804 ($952,789.00)**

## Diamondback Legal

| DATE | EE | ACTIVITY | DESCRIPTION | | QUANTITY | |
|---|---|---|---|---|---|---|
| 08/04/2021 | GV | Case Preperation | Created statement. Discussed the matter with the DC bar. Received correspondence from BM regarding the invoicing for the class. | $400.00 | 2.10 | $840.00 |
| 08/04/2021 | GV | Accounting | Accounting for invoicing. | $400.00 | 0.40 | $160.00 |
| 08/05/2021 | AB | Case Preparation | SEC File prep. | $125.00 | 4.00 | $500.00 |
| 08/06/2021 | AB | Case Preperation | SEC file prep. | $125.00 | 2.50 | $312.50 |
| 08/06/2021 | MM | Case Preparation | SEC file prep. | $125.00 | 4.00 | $500.00 |
| 08/06/2021 | MM | Case Preperation | SEC File prep | $125.00 | 3.00 | $375.00 |
| | | | Totals: | | 910.60 | $287,177.50 |

### Expenses

| DATE | EE | ACTIVITY | DESCRIPTION | COST | QUANTITY | LINE TOTAL |
|---|---|---|---|---|---|---|
| 02/23/2021 | GV | Retainer | Legal fees paid to Lewis Roca to provide oversite regarding case development and contract review/ drafting. | $8,000.00 | 1.0 | $8,000.00 |
| 03/24/2021 | GV | Local Counsel Retainer | Hired Moscatello Goodson Manley Law to handle the support, research and drafting of the class action. | $200,000.00 | 1.0 | $200,000.00 |
| 04/01/2021 | GV | Taxes | Payment remitted to IRS and AZ department of Revenue Q1 | $115,000.00 | 1.0 | $115,000.00 |
| 04/01/2021 | GV | Increased Office Space | Signed new lease to support increased staffing in anticipation of litigation | $4,105.00 | 36.0 | $147,780.00 |
| 07/01/2021 | GV | Taxes | Payment remitted to IRS and AZ Department of Revenue Q2 | $115,000.00 | 1.0 | $115,000.00 |
| 07/29/2021 | GV | Website Development | Redeveloping Site to support increased traffic and provide for a globally integrated client experience, including translations to other languages. | $14,500.00 | 1.0 | $14,500.00 |
| 07/29/2021 | GV | Payroll | Increased staffing to support the class action development | $24,500.00 | 5.0 | $122,500.00 |
| 08/06/2021 | GV | Taxes | Payment to be remitted to IRS and AZ Department of Revenue Q3 | $115,000.00 | 1.0 | $115,000.00 |
| 08/06/2021 | GV | Taxes | Payment to be remitted to IRS and AZ Department of Revenue Q4 | $115,000.00 | 1.0 | $115,000.00 |
| | | | | Expense Total: | | $952,780.00 |

| | |
|---|---|
| Time Entry Sub-Total: | $287,177.50 |
| Expense Sub Total: | $952,780.00 |
| Sub-Total: | $1,239,957.50 |
| Total: | $1,239,957.50 |
| Amount Paid: | $239,957.50 |

38

**Exhibit 8    An example of daily charge in invoice #804 ($952,789.00)**

| Date | Initials | Category | Description | Rate | Hours | Amount |
|---|---|---|---|---|---|---|
| 06/29/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/29/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/29/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/29/2021 | GV | Communication | Whatsapp Correspondence | $400.00 | 0.20 | $80.00 |
| 06/29/2021 | GV | Communication | Whatsapp Correspondence | $400.00 | 0.20 | $80.00 |
| 06/29/2021 | GV | Communication | Whatsapp Correspondence | $400.00 | 0.20 | $80.00 |
| 06/29/2021 | GV | Communication | Whatsapp Correspondence | $400.00 | 0.20 | $80.00 |
| 06/29/2021 | GV | Communication | Whatsapp Correspondence | $400.00 | 0.20 | $80.00 |
| 06/29/2021 | GV | Communication | Whatsapp Correspondence | $400.00 | 0.20 | $80.00 |
| 06/29/2021 | GV | Communication | Email Correspondence | $600.00 | 0.20 | $120.00 |
| 06/29/2021 | GV | Communication | Email Correspondence | $600.00 | 0.20 | $120.00 |
| 06/29/2021 | MM | Legal Research | Class Action Research | $125.00 | 1.20 | $150.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |

| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
|---|---|---|---|---|---|---|
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |

40

| Date | Initials | Category | Description | Rate | Hours | Amount |
|---|---|---|---|---|---|---|
| 06/30/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 06/30/2021 | MM | Legal Research | Class Action Research | $125.00 | 0.80 | $100.00 |
| 06/30/2021 | MM | Document Review | Docs Review | $125.00 | 1.20 | $150.00 |
| 07/01/2021 | GV | Case Preperation | Team meaetings with Michael Cohen adn Jeff Phillips. Sent documents and researched other cases. | $400.00 | 1.50 | $600.00 |
| 07/01/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 07/01/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 07/01/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 07/01/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 07/01/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 07/01/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 07/01/2021 | GV | Communication | Whatsapp Correspondence | $400.00 | 0.20 | $80.00 |
| 07/01/2021 | GV | Communication | Whatsapp Correspondence | $400.00 | 0.20 | $80.00 |
| 07/01/2021 | GV | Communication | Whatsapp Correspondence | $400.00 | 0.20 | $80.00 |
| 07/01/2021 | GV | Communication | Whatsapp Correspondence | $400.00 | 0.20 | $80.00 |
| 07/01/2021 | GV | Communication | Email Correspondence | $400.00 | 0.30 | $120.00 |
| 07/01/2021 | GV | Communication | Email Correspondence | $400.00 | 0.20 | $80.00 |
| 07/01/2021 | GV | Communication | Email Correspondence | $400.00 | 0.20 | $80.00 |
| 07/01/2021 | GV | Communication | Email Correspondence | $600.00 | 0.30 | $180.00 |
| 07/01/2021 | GV | Communication | Email Correspondence | $600.00 | 0.30 | $180.00 |
| 07/01/2021 | AB | Legal Research | Research into other class actions/case law | $125.00 | 2.60 | $325.00 |
| 07/01/2021 | MM | Interview | Reviewed Interviews | $125.00 | 2.00 | $250.00 |
| 07/01/2021 | MM | Legal Research | Class Action Research | $125.00 | 1.00 | $125.00 |
| 07/01/2021 | MM | Scheduling | Scheduled Meeting w/ Bank Legal Team | $125.00 | 0.30 | $37.50 |
| 07/02/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 07/02/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 07/02/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 07/02/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 07/02/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 07/02/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 07/02/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 07/02/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 07/02/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 07/02/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 07/02/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 07/02/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 07/02/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |
| 07/02/2021 | GV | Communication | Whatsapp Correspondence | $600.00 | 0.20 | $120.00 |

41

**Exhibit 9    The notice of Arbitration received on 05/25/2023**



C. Milton Powell, Esq.
LAW OFFICE OF C. MILTON POWELL LLC
1420 N. Street, NW, Suite #102
Washington, DC 20005

**VIA CERTIFIED AND REGULAR MAIL**                        May 13th, 2023

Xin Zhang

3476 Southwest 73rd Way,
Gainesville, FL 32608 (Residence)

And:

5123 N 43rd Pl,
Phoenix, AZ, 85018 (Place of Business)

Re:    Arbitration Notice of Claim and Final Hearing
       AR2023-03-100

Dear Mr. Zhang:

Please be advised that an arbitration has been initiated against you by DLG Trust PLLC

for enforcement of an agreement you or your agents entered into on or around February 2021. The

Arbitrator has been provided by the Law Office of C Milton Powell.

The arbitration has commenced on March 23rd, 2023 against yourself and other

Respondents. The Plaintiff alleges that this matter is arbitrable because you signed an engagement

letter with DLG Trust, PLLC, formerly known as Diamondback Legal. The agreement that you

signed affords them with the ability to arbitrate any disputes regarding the fees. The causes of

action are the direct consequence of a dispute regarding the fees. In turn, the dispute in its entirety

is arbitrable.

You have been provided with notice of this hearing via several different avenues. Firstly,

the Plaintiff attempted to effectuate service at an address that you hold out as your own and current;

i

43

14747 N Northsight Blvd suite 111 405, Scottsdale, AZ 85260, as well as 2625 East Camelback Road, Phoenix, AZ 85016. When process servers were unable to effectuate service at these addresses, the Plaintiff hired a private investigator to determine what other addresses you hold out as your own. The private investigator located a property owned by you addressed 3476 Southwest 73rd Way, Gainesville, FL 32608. The Plaintiff attempted service at this address as well, unsuccessfully. A Notice of Arbitration was also sent via regular mail and certified mail, return receipt requested to the Florida address.

> Except as otherwise provided in the Uniform Arbitration Act [44-7A-1 NMSA 1978], a person gives notice to another person by taking action that is reasonably necessary to inform the other person in ordinary course, whether or not the other person acquires knowledge of the notice. A person has notice if the person has knowledge of the notice or has received notice. A person receives notice when it comes to the person's attention or the notice is delivered at the person's place of residence or place of business, or at another location held out by the person as a place of delivery of such communications.

On March 28th, 2023 at 10:30am, USPS attempted effectuating delivery at the address you hold out as your own. An individual by the name of Ting Ting Song signed for the notice on March 31st at 1:22PM. The non-certified mail was also not sent back to the original sender and thus will be deemed received and delivered to your place of residence that you hold out to the public. Lastly, the Plaintiff was directed to submit a weekly publication for three cycles to ensure that all possible methods of making you aware of these proceedings are exhausted. Notice by publication concluded on April 19th when the third publication went live. You were afforded with 10 days to

2

44

respond before the hearing would proceed in your absence. Despite these efforts, you have failed to appear at any of the hearings.

The arbitration seeks to enforce the agreement for a total remaining value of $1,706,886.21. Additionally, the Plaintiff in this matter seeks to hold you and other respondents liable for tortious interference of contractual affairs due to allegedly contacting and soliciting the Firms' clients' in an attempt to dissuade them from continuing with their cases. The Plaintiff argues that you and the other Respondents should be subject to punitive damages for the conduct they have described in support of finding you liable. The Plaintiff is seeking $5,120658.63 in punitive damages, which is the statutory maximum that they can seek; being three times the actual damages imputed under the contract.

On April 25th, the Plaintiff furnished proof that notice was effectuated by publication, as well as other means. A tentative date for a hearing was scheduled for May 9th, 2023. Had you have requested additional time, it would have been granted, however, you made no attempt to contact neither the Arbitrator or the Plaintiff in this matter. On May 9th, 2023, the hearing was held to establish the Plaintiffs case and any defenses you may have. You failed to appear for this hearing, despite having received adequate notice of it on or around March 28th by mail; April 5th, April 12th, and April 19th via publication. On May 31st, 2023, a final hearing will be held. You were also emailed at the following addresses provided through a private investigation report: xz65@ksu.edu, XIN.ZHANG@ufl.edu, XZHANG@ufl.edu, Pastry_123@hotmail.com. No response was received. Absent you contacting the arbitrator for this matter requesting to participate, a decision will be rendered at this hearing. Please note that additional time may also be granted if a justified reason for your absence is presented and deemed appropriate.

3

Note that this claim requires arbitration in New Mexico. The arbitration and arbitrator will be offering remote services. If you are requesting in-person services, please let us know in your email.

You are required to email or call the Law Office of C Milton Powell for further instruction. You may also call or email the Mr. Powell requesting a link to the virtual hearing that will be held on May 31st at 1PM EST. In your email, please reference case number **AR2023-03-100** for further instructions on how to contact the arbitrator handling your case. If we do not hear from you the **arbitration will commence and conclude in your absence.**

4

**Exhibit 10 A letter received on 03/31/2023 (two pieces of blank paper)**
**"Or the so-called 03/31/2023 notice of arbitration"**



47

**Exhibit 11 Report to USPS Inspection Service**



48

| | | | | |
|---|---|---|---|---|
| 04/07/2023 08:06:26 AM | 785.410.4878 | INCOMING | SDDV | 2 |
| 04/07/2023 07:55:35 AM | 785.410.4878 | MANHATTAN | SDDV | 2 |
| 04/07/2023 07:39:16 AM | 785.410.4878 | INCOMING | SDDV | 2 |
| 04/07/2023 07:34:09 AM | 785.410.4878 | INCOMING | SDDV | 2 |
| 04/06/2023 06:06:56 PM | 785.410.4878 | INCOMING | SDDV | 1 |
| 04/06/2023 05:34:05 PM | 352.222.0206 | INCOMING | SDDV | 2 |
| 04/06/2023 01:19:45 PM | 352.222.0206 | GAINESVL | SDDV | 7 |
| 04/06/2023 10:00:09 AM | 609.945.8000 | INCOMING | SDDV | 17 |
| 04/04/2023 11:57:25 AM | 352.222.0206 | GAINESVL | SDDV | 2 |
| 04/03/2023 06:14:47 PM | 972.732.4871 | INCOMING | SDDV | 12 |
| 04/03/2023 02:29:23 PM | 352.870.8787 | GAINESVL | SDDV | 1 |
| 04/03/2023 02:27:24 PM | 206.521.2967 | SEATTLE | SDDV | 1 |
| 04/03/2023 02:01:15 PM | 877.876.2455 | Toll Free | SDDV | 13 |
| 04/03/2023 01:45:14 PM | 855.259.8568 | Toll Free | SDDV | 15 |
| 04/03/2023 10:03:18 AM | 407.697.9592 | ORLANDO | SDDV | 2 |
| 04/01/2023 11:33:52 AM | 877.876.2455 | Toll Free | SDDV | 9 |

49

| | | | | |
|---|---|---|---|---|
| 04/01/2023 11:33:52 AM | 877.876.2455 | Toll Free | SDDV | 9 |
| 03/31/2023 06:37:12 PM | 407.697.9592 | ORLANDO | SDDV | 1 |
| 03/31/2023 06:18:09 PM | 877.876.2455 | Toll Free | SDDV | 13 |
| 03/31/2023 06:04:19 PM | 520.419.8653 | INCOMING | SDDV | 5 |
| 03/31/2023 04:35:26 PM | 352.955.7275 | INCOMING | SDDV | 1 |
| 03/31/2023 04:06:19 PM | 206.521.2967 | SEATTLE | SDDV | 1 |
| 03/31/2023 03:07:53 PM | 845.579.5770 | SPRING VLY | SDDV | 12 |
| 03/31/2023 03:02:02 PM | 307.266.2223 | CASPER | SDDV | 4 |
| 03/31/2023 12:36:28 PM | 352.870.8787 | GAINESVL | SDDV | 5 |
| 03/31/2023 12:35:46 PM | 206.521.2967 | SEATTLE | SDDV | 1 |
| 03/31/2023 12:34:40 PM | 206.521.2967 | SEATTLE | SDDV | 1 |
| 03/31/2023 12:25:12 PM | 352.870.8787 | INCOMING | SDDV | 4 |
| 03/30/2023 11:26:57 AM | 202.290.5424 | WASHINGTON | SDDV | 12 |
| 03/30/2023 10:09:09 AM | 603.413.4075 | INCOMING | SDDV | 36 |

**Exhibit 12 Webpage of the arbitrator**



51

**Exhibit 13 Vadasz Requested Documents for Discovery**

# LAW OFFICE OF C. MILTON POWELL, PLLC

1420 N Street, NW, Suite #102
Washington, D.C. 20005
Email: agooddclawyer@gmail.com
Tel. (202) 506-8858
Fax. (202) 331-3759

## ARBITRATION SERVICES

Licensed in The District of Columbia, United States of America.
Licensed in The Federal District Court of Maryland, United States of America.

## ARBITRATION DECISION HEARING

Ref:  **AR#2023-02-100 – CLASS ACTION MATTER**

Re:    **DLG Trust, PLLC v. Xin Zhang – Arbitration Complaint**
       **Reference Number AR#2023-02-100**
       **Date: May 12, 2023**

### ARBITRATOR'S DECISION

This matter came before Arbitrator C. Milton Powell, Esq. on April 24, 2023, for an Arbitration Conference concerning Plaintiff DLG Trust, PLLC's claim to entitlement of fees from Defendant Xin Zhang in relation to a Class Action Matter that Xin Zhang retained DLG Trust, PLLC as counsel.  Plaintiff DLG Trust, PLLC appeared via Gabriel Vadasz, Esq. representative of DLG Trust, PLLC. Neither Defendant Xin Zhang nor his representative appeared. The hearing took place via videoconference.

Based upon the responses of the parties and the filings herein, on this 12th day of May, 2023, I hereby render the following decision.

According to Mr. Vadasz, the representative for DLG Trust, PLLC, the central questions before me are two-fold.

First, whether Xin Zhang, without having any rights to the funds used to pay the Firm, is entitled to dispute the reasonableness of the fees assessed in this case, and

Second, whether a third-party payor that agreed to fund a lawsuit can impact the representation of other clients by unilaterally attempting to end the cause of action on the client's behalf.

It is well settled in the cannons of law that the relationship between client and attorney is sacrosanct. In fact, there are a plethora of laws that have codified several tenets as it relates to this relationship and specifically preserving the sanctity of it as well as bestowing various rights and obligations that are grounded in any contractual obligation.

1

52

One such right is the right of every client to commandeer the path that his attorney takes in his case. That right solely belongs to the client, regardless of the supply of the source of funds used to finance the attorney's engagement. Another aspect of these rights relates to the circumstances where the attorney's representation ceases regardless of the reason for termination of representation.

In the event that an attorney must reimburse a client for unearned fees or unused expenses, the attorney must submit such reimbursement to the source from which the funds derived. Were the attorney to release funds to an entity or individual other than the source from which the funds derived would be tantamount to gross negligence and certainly actionable conduct both criminal and civil as well as subjecting such an attorney to State Bar discipline.

The key takeaway is that only a person who supplied the source of funds has standing to address the matter. In the present case, therefore before we can discuss the issue of reasonableness of fees or whether a third-party payor can impact the outcome of a client's case, we must discuss standing.

An important consideration in deliberating about standing is what choice of law governs the interpretation of the issue. In this case, the Plaintiff DLG Trust, PLLC in its brief posits that,

> "The appropriate governing law regarding the fees in this matter is that of DC because the trust account was out of DC, and the billing structure was tailored to the rules of DC. AZ Rule 8.5(b)(2) states that a lawyer shall not be subject to discipline if the lawyer's conduct conforms to the rules of a jurisdiction where the lawyer reasonably believes the predominant effect of the lawyer's conduct will occur.[1] The Firm is exercising the choice of law provision of its agreement with Zhang consistent with the law of the District of Columbia, including applicable ethical rules of professional conduct, solely referring to the fees and any allegations regarding the fees."

I agree and hold that District of Columbia is the appropriate choice of laws for application. Under the District of Columbia, Xin Zhang need to have standing to assert any right to fees.

In analyzing the facts presented before me, I agree and hold that Xin Zhang lacks standing to assert any claim to the fees because he is not the source of the fees.

Since Xin Zhang did not have standing to assert such right, the analysis should end there. As a matter of procedural defect, as it relates to standing, Xin Zhang fails in his efforts and DLG Trust PLLC succeeds in this arbitration.

2

53

Notwithstanding, the question of reasonableness of fees was the second part of the first prong. DLG Trust PLLC states that,

> "Notwithstanding these contentions, the fee assessed is reasonable for the size of the class and the amount being disputed. Additionally, the amount expensed to date was appropriate and authorized to the fullest degree necessary under the applicable rules.[3] Expenses cannot be disputed as unreasonable under the governing rules; they must simply be authorized by the party paying for the representation.[4] Here, Zhang, Sara, and Peng all sufficiently authorized the disbursement of funds for large expenses in hopes of building a firm that can support this cause of action. These expenses were authorized in writing, provided to Zhang and Peng, and forwarded to Sara.[5]"

Again, I hold and agree that a class action matter is quite substantial in the business of litigation. Class actions by their very nature are labor intensive as it relates to legal work to be performed. In the case before me, I have reviewed the volume of engagement letters by the class members of the Class Action DLG Trust is handling, and I find overwhelming evidence that a legitimate class action matter has commenced and the fees charged by DLG Trust, PLLC are within the penumbra of reasonableness and fairness given the special nature of class action litigation. And the relevant parties who funded the class action matter did so giving DLG Trust, PLLC full authority to litigate and expenses are a necessary part of that type of litigation.

The second prong of this analysis is whether a third-party payor that agreed to fund a lawsuit can impact the representation of other clients by unilaterally attempting to end the cause of action on the client's behalf. DLG Trust, PLLC contends that,

> "For Sara, Peng or Zhang to no longer be bound under a third-party payor agreement, he [Zhang] must seek a court order establishing good cause as to why he should no longer be liable for the fees under the contract.[14]"

I agree. I hold that Xin Zhang is not a proper third-party payor who has standing to assert a right to any fees relating hereto and that based upon the reasonableness of the fees that DLG Trust, PLLC is entitled to the fees as invoiced, Notwithstanding, if for any reason fees would need to be returned it would not be appropriate or lawful for DLG Trust, PLLC to tender that to Xin Zhang.

Additionally, and finally, I agree that the arbitration fees in this matter, should be borne solely by Xin Zhang. Notwithstanding the prepayment by the Plaintiff herein namely DLG Trust, PLLC, DLG Trust, PLLC has the full right to

3

54

apply for full reimbursement of said arbitration fees in the matter. This takes into consideration that Xin Zhang was fully and properly served and neither Xin Zhang nor his representative has appeared in the matter, notwithstanding having been granted the full opportunity to appear.

It is So ORDERED.

DATED: May 12, 2023

C. Milton Bwell
_____
Arbitrator

4

55

**Exhibit 14 Vadasz Requested Documents for Discovery**



ARB2023-02-200; Discovery

Gabriel Vadasz <gabriel@virtualadvocate.co>
to me, Milton

Jun 5, 2023, 6:11 PM

Mr. Zhang,

Please find attached the first round of discovery for the above refferenced matter held virtually in Arizona.

The attached includes the following:

- Request For Productions
- Request For Admissions
- Special Interogatories

Please note that the responses are required to be via email on this thread, cc'ing the arbitrator for this matter, Mr. Powell.

The deadline to respond is 14 calendar days from today. Accordingly, please have your responses submitted by June 19th at 5PM EST, or sooner so that it can be reviewed in advance of the hearing scheduled for June 26th. Any extensions must be approved by the parties on this thread.

Note that your responses must be under oath and penalty of perjury. If you submit a non-confirming response, it will be treated as non-compliant and handled accordingly.

Sincerely,

Gabriel Vadasz
Gabriel@VirtualAdvocate.co

56



**DIAMONDBACK** LEGAL

712 H Street, N.E. Suite 1418                                              June 5, 2023
Washington DC 20002

| | |
|---|---|
| DLG Trust PLLC, a company<br>Claimant, | Case No. **AR2023-02-200** |
| v. | **Request For Production** |
| Xin Zhang, an individual,<br>Respondent. | Hearing Date:   06/26/2023<br>Time: 1PM EST<br>Arbitrator: Mr. C. Milton Powell |

**PROPOUNDING PARTY:**    **DLG Trust, PLLC**

**RESPONDING PARTY:**    **Xin Zhang**

**SET NO:**    **ONE**

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

Pursuant to the New Mexico of Civil Procedures ("NMCP"), Defendant Xin Zhang, is defined in the foregoing paragraph, (collectively "Defendant" or "Propounding Party") hereby demands that, within 14 days of service, Xin Zhang respond in writing, under oath, to each of the following requests for production of documents and produce all responsive documents for inspection and copying at DLG Trust, PLLC, either via email or in person at a location to be determined at your request. If no stipulation is made an email cc'ing the

arbitrator in this matter will be deemed the appropriate manner of conveying the requested documents and statements. The documents must be sent to DLG Trust via their counsel of records email: Gabriel@DNGLV.com. When producing documents, provide a copy of all correspondence and documents to the Arbitrator in this matter as well, by including him as a cc'd party. The email that should be used is the same as the one provided in prior communications.

## DEFINITIONS

For the purposes of this Request for Admission, the Term "Defendant" shall include Zhang and any of his officers, directors, agents, representatives, employees, attorneys, consultants, investigators and anyone who acts, or purports to act, on their behalf.

"Zhang", "You" and "Your" shall mean Xin Zhang including any agents, representatives, employees, attorneys, consultants, investigators and anyone who acts, or purports to act, on their behalf.

"Firm" and "Diamondback" and "DLG" shall mean DLG Trust PLLC, the Plaintiff in this action.

"Accounts" shall mean any bank accounts or other financial instrument used in the ordinary course of business for purposes of maintaining deposits. Including but not limited to reserve accounts. Accounts shall also include personal accounts held for every day purposes.

"Authorization" shall be deemed any writing or statement made by a necessary explicitly authorizing the act or capacity described therein.

"Document" or "Documents" means all writing and includes, but is not limited to, any and all records, and other tangible forms of expression in responding parties possession or custody, or subject to their control, whether such documents are drafts or unfinished versions, original, or annotated or nonconforming copies, however and by whomever created, produced, or stored (manually, mechanically, electronically, or otherwise) including communications, books, papers, files, minutes, summaries, records, analyses, plans, correspondence, memoranda, ledger sheets, schedules, invoices, account statements, reports, wires, telegrams, electronic mail ("e-mail"), electronically stored information ("ESI"), telephone logs, notes or records of conversations of meetings, contracts, agreements, calendars, date books, work sheets, working papers, bills, records of payment, magnetic tape, tape recordings, disks, diskettes, disk packs, and other electronic media (including computerized data compilations), microfilm, storage devices, appointment books, diaries, notices, message slips, photographs and videotapes. A draft or non-identical copy is a separate document within the meaning of this term.

"Communication" or "Communications" means the transmittal of information in the form of facts, ideas, inquiries or otherwise.

## REQUEST FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All COMMUNICATIONS exchanged between YOU and Sara Wei, including all communications between YOUR agents, employees, or representatives, and G-Service's agents, employees, or representatives and Ms. Wei.

**REQUEST FOR PRODUCTION NO. 2:**

59

All DOCUMENTS constituting or referring to any agreement, contract, or understanding between YOU and Maywind Trading LLC or representatives of Maywind Trading LLC and/ or AEON Capital LLC.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS constituting or referring to any agreement, contract, or understanding between YOU and Maywind Trading LLC or representatives of AEON Capital LLC.

**REQUEST FOR PRODUCTION NO. 4:**

All COMMUNICATIONS exchanged between YOU and Jian Peng, including all communications between YOUR agents, employees, or representatives, and G-Service's agents, employees, or representatives and Mr. Peng.

**REQUEST FOR PRODUCTION NO. 5:**

All COMMUNICATIONS exchanged between YOU and any of the members of Six Pines LLC.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS signed by or reviewed by YOU regarding Six Pines LLC.

**REQUEST FOR PRODUCTION NO. 7:**

All bank records and records of transactions for Six Pines LLC.

**REQUEST FOR PRODUCTION NO. 8:**

All loan applications you have submitted for the last Seven years

**REQUEST FOR PRODUCTION NO. 9:**

All COMMUNICATIONS regarding obtaining a loan that you have had in the last Seven years.

**REQUEST FOR PRODUCTION NO. 10:**

All COMMUNICATIONS by loan providers obtained regarding the approval, denial, status of payment, or status of loan.

**REQUEST FOR PRODUCTION NO. 11:**

All bank statements held by YOU in your personal or professional capacity over accounts that you exert dominion or control over, and otherwise have a lawful right to.

**REQUEST FOR PRODUCTION NO. 12:**

All invoices that you have received by Diamondback Legal, PLLC.

**REQUEST FOR PRODUCTION NO. 13:**

All COMMUNICATIONS YOU received by Diamondback Legal, PLLC or their respective representatives.

**REQUEST FOR PRODUCTION NO. 14:**

All COMMUNICATIONS between YOU and other members of Six Pines LLC.

**REQUEST FOR PRODUCTION NO. 15:**

All documents relating to Six Pines LLC and any transfers in, or out of their Bank Accounts. Specifically, but not limited to, international transfers to Abu Dabi.

**REQUEST FOR PRODUCTION NO. 16:**

Any agreements between YOU, G-Service LLC, or other business entity that you claim to control that serve the primary purpose of obtaining capital.

**REQUEST FOR PRODUCTION NO. 17:**

All taxes paid by yourself and your entities filed in the last five years demonstrating the exact basis of each loan or means of funding that you purport to have over the money paid to Diamondback Legal.

**REQUEST FOR PRODUCTION NO. 18:**

Any notices, communications, or other correspondence regarding any loans or capital accounts and the status of each.

**REQUEST FOR PRODUCTION NO. 19:**

Any mortgages that you currently hold in your name, be it individually or with another.

**REQUEST FOR PRODUCTION NO. 20:**

Any lease agreements signed by you for a location of residence.

**REQUEST FOR PRODUCTION NO. 21:**

Any written statements that you have made to Diamondback Legal regarding a dispute of funds for the underlying matter.

**REQUEST FOR PRODUCTION NO. 22:**

All DOCUMENTS signed or reviewed by Sara Wei at YOUR request.

**REQUEST FOR PRODUCTION NO. 23:**

All COMMUNICATIONS exchanged between YOU and Bryan Chen, including all communications between YOUR agents, employees, or representatives, and Bryan Chen's agents, employees, or representatives.

**REQUEST FOR PRODUCTION NO. 24:**

All DOCUMENTS signed or reviewed by Jian Peng at YOUR request.

**REQUEST FOR PRODUCTION NO. 25:**

All COMMUNICATIONS exchanged between YOU and Jian Peng, including all communications between YOUR agents, employees, or representatives, and Jian Peng's agents, employees, or representatives.

**REQUEST FOR PRODUCTION NO. 26:**

All DOCUMENTS signed or reviewed by YOU at Jian Peng or his representative's request.

**REQUEST FOR PRODUCTION NO. 27:**

All DOCUMENTS RELATING TO the current ownership and management of Maywind Trading PLLC.

**REQUEST FOR PRODUCTION NO. 28:**

All DOCUMENTS RELATING TO the current ownership and management of AEON Capital LLC.

**REQUEST FOR PRODUCTION NO. 29:**

All DOCUMENTS RELATING TO the ACCOUNTS held by AEON Capital, Maywind or G-Service.

**REQUEST FOR PRODUCTION NO. 30:**

All COMMUNICATIONS RELATING TO the ACCOUNTS held by AEON Capital, Maywind or G-Service.

**REQUEST FOR PRODUCTION NO. 31:**

All DOCUMENTS supporting the allegations YOU made that you have a lawful right to the funds used to pay Diamondback Legal, PLLC

**REQUEST FOR PRODUCTION NO. 32:**

All COMMUNICATIONS between YOU and any third party RELATING TO the funds used to pay Diamondback Legal.

**REQUEST FOR PRODUCTION NO. 33:**

All DOCUMENTS YOU referenced or consulted in responding to the Firms' Interrogatories.

**REQUEST FOR PRODUCTION NO. 34:**

All DOCUMENTS RELATED TO YOUR transfer of any funds from the ACCOUNTS that were used to pay Diamondback Legal.

**REQUEST FOR PRODUCTION NO. 35:**

All documents sufficient to identify your personal net worth.

**REQUEST FOR PRODUCTION NO. 36:**

Complete copies of all state and federal income tax returns filed by YOU for the years 2018, 2019, 2020, 2021, 2022, and 2023 quarterlies.

**REQUEST FOR PRODUCTION NO. 37:**

Complete copies of all state and federal income tax returns filed by G-Service, or any of the LLC's you claim to have rights in.

**REQUEST FOR PRODUCTION NO. 38:**

Any proof of payments remitted by you to other third parties for purposes of maintaining a loan.

**REQUEST FOR PRODUCTION NO. 39:**

All COMMUNICATIONS between YOU and other third parties regarding Diamondback Legal, PLLC.

**REQUEST FOR PRODUCTION NO. 40:**

Any COMMUNICATIONS or DOCUMENTS remitted by YOU to the Court in the Comerica Litigation, asserting ANY rights you may have to funds that G-Service obtained via bank transfer from an ACCOUNT held by Maywind Trading LLC.

**REQUEST FOR PRODUCTION NO. 41:**

Any COMMUNICATIONS or DOCUMENTS remitted by G-Service LLC asserting a claim to the funds that were interpled in the G-Service litigation.

**REQUEST FOR PRODUCTION NO. 42:**

Any COMMUNICATIONS or DOCUMENTS stating or demonstrating that smaller investors, excluding yourself, were in fact the rightful owners of funds transferred by Maywind Trading LLC, AEON Capital LLC, Six Pines LLC, or G-Service LLC.

Dated:   June 4th, 2023

By:   _____

Gabriel Vadasz, Esq.

Attorney for DLG Trust, PLLC

64



**DIAMONDBACK** LEGAL

712 H Street, N.E. Suite 1418                                              June 5, 2023
Washington DC 20002

DLG Trust PLLC, a company                    Case No. **AR2023-02-200**
              Claimant,

     v.                                      **Request For Admissions**

Xin Zhang, an individual,                    Next Hearing Date:    06/26/2023
              Respondent.                    Time: 1PM EST
                                             Arbitrator: Mr. C. Milton Powell

**PROPOUNDING PARTY:**        **DLG Trust, PLLC**

**RESPONDING PARTY:**         **Xin Zhang**

**DISCOVERY SET NO:**         **ONE**

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

Pursuant to the New Mexico of Civil Procedures ("NMCP"), Defendant Xin Zhang, is defined in the foregoing sentence, (collectively "Defendant" or "Propounding Party") hereby demands that, within 14 days of service, Xin Zhang respond in writing, under oath, to each of the following requests for admission of documents and produce all responsive documents for inspection and copying at DLG Trust, PLLC, either via email or in person at a location to be determined at your request. If no stipulation is made an email cc'ing the arbitrator in

65

this matter will be deemed the appropriate manner of conveying the requested documents and statements.

## DEFINITIONS

For the purposes of this Request for Admission, the Term "Defendant" shall include Zhang and any of his officers, directors, agents, representatives, employees, attorneys, consultants, investigators and anyone who acts, or purports to act, on their behalf.

"Zhang", "You" and "Your" shall mean Xin Zhang including any agents, representatives, employees, attorneys, consultants, investigators and anyone who acts, or purports to act, on their behalf.

"Firm" and "Diamondback" and "DLG" shall mean DLG Trust PLLC, the Plaintiff in this action.

"Accounts" shall mean any bank accounts or other financial instrument used in the ordinary course of business for purposes of maintaining deposits. Including but not limited to reserve accounts. Accounts shall also include personal accounts held for every day purposes.

"Authorization" shall be deemed any writing or statement made by a necessary explicitly authorizing the act or capacity described therein.

"Document" or "Documents" means all writing and includes, but is not limited to, any and all records, and other tangible forms of expression in responding parties possession or custody, or subject to their control, whether such documents are drafts or unfinished versions, original, or annotated or nonconforming copies, however and by whomever created, produced, or stored (manually, mechanically, electronically, or otherwise)

including communications, books, papers, files, minutes, summaries, records, analyses, plans, correspondence, memoranda, ledger sheets, schedules, invoices, account statements, reports, wires, telegrams, electronic mail ("e-mail"), electronically stored information ("ESI"), telephone logs, notes or records of conversations of meetings, contracts, agreements, calendars, date books, work sheets, working papers, bills, records of payment, magnetic tape, tape recordings, disks, diskettes, disk packs, and other electronic media (including computerized data compilations), microfilm, storage devices, appointment books, diaries, notices, message slips, photographs and videotapes. A draft or non-identical copy is a separate document within the meaning of this term.

"Communication" or "Communications" means the transmittal of information in the form of facts, ideas, inquiries or otherwise.

## REQUESTS FOR ADMISSIONS

**Request for Admissions:**

**Request For Admission No. 1:**

Admit that you have no lawful right to any of the funds used to pay the Firm.

**Request For Admission No. 2:**

Admit that you have no affiliation with AEON Capital.

**Request For Admission No. 3:**

Admit that you have no affiliation with Maywind Trading.

**Request For Admission No. 4:**

Admit that neither yourself, nor any representative of your businesses have at any point lawfully earned or acquired rights to funds used to pay the Firm.

**Request For Admission No. 5:**

Admit that you stated that you stated that you had "no idea" what the origin of the funds used to pay the Firm were—thereafter stating that you would need to verify the origin of the funds from their lawful owners.

**Request For Admission No. 6:**

Admit that the lawful owners of the funds stated that they participated in the unlawful sale of securities on a joint video call that occurred on or around July 12th, 2021.

**Request For Admission No. 7:**

Admit that the primary reason for the video call that occurred on or around July 12th, 2021 was to attempt to impact the representation of class members upon finding out that Sara would be a named party in the lawsuit.

**Request For Admission No. 8:**

Admit that Sara and Peng stated on the aforementioned call that most of the funds they held did not lawfully belong to them; citing to this reason for why they wanted to terminate the class action.

**Request For Admission No. 9:**

Admit that you at no juncture sought to assert a claim to funds paid by Maywind Trading to G-Service in the underlying interpleader case after the Firm disengaged.

**Request For Admission No. 10:**

Admit that Federal agents were involved in the underlying case because of criminal acts committed by you or your affiliates associated with the G-Service litigation and the origin of funds.

**Request For Admission No. 11:**

Admit that the Federal agents in the G-Service litigation were correct in their assessment that the funds interplead by Comerica were derived through the sale of unregistered securities, securities fraud, or other financial crimes tantamount to depriving individuals of funds that lawfully belonged to them.

**Request For Admission No. 12:**

Admit that you sought to have the Firm return funds to you that you were never in lawful possession of. Never having remitted funds to the Firm, to an account that you hold in your own capacity.

**Request For Admission No. 13:**

Admit that You or your agents falsified, copied, photoshopped or otherwise forged documents to assert that G-Service held a loan with Maywind Trading, later admitting that the documents were fabricated.

**Request For Admission No. 14:**

Admit that when asked to furnish proof of the origin of funds, you were unable to provide any tangible documentation.

**Request For Admission No. 15:**

Admit that when asked to provide a written statement regarding the origin of funds, you declined to do so.

**Request For Admission No. 16:**

Admit that you and your colleagues at all junctures relevant, prior to the video call on or around July 12th, 2021, alleged that the funds used to pay the Firm were not tainted and were otherwise lawfully derived.

**Request For Admission No. 17:**

Admit that on the video call on or around July 12th, 2021 the other parties to the call stated that the SEC would be investigating the origin of the funds, and that the funds were likely the derivative of the sale of unregistered securities.

**Request For Admission No. 18:**

Admit that you had access to all invoices through your client portal with the Firm.

**Request For Admission No. 19:**

Admit that you viewed invoices issued by the Firm through your client portal.

**Request For Admission No. 20:**

Admit that you had actual knowledge that Mr. Vadasz was licensed only out of DC and New Mexico when the Firm represented you.

**Request For Admission No. 21:**

Admit that you and other parties authorized the Firm to hire staff, increase office space and extract tax liabilities for your legal representation due to the higher nature of the transactions.

**Request For Admission No. 22:**

Admit that Mr. Vadasz declined to continue representing you in the general scope and g-service litigation once you refused to reduce to writing where the funds originated from.

**Request For Admission No. 23:**

Admit that you were unable to reduce to writing where the funds originated form because you yourself did not have any knowledge of where the funds originated.

**Request For Admission No. 24:**

Admit that you have not paid taxes on any of the funds used to pay the Firm.

**Request For Admission No. 25:**

Admit that you never declared the funds used to pay the Firm as a loss on your personal or business tax returns.

Dated:    June 4th, 2023

By:    _____
Gabriel Vadasz, Esq.
Attorney for DLG Trust, PLLC

71



**DIAMONDBACK**
LEGAL

712 H Street, N.E. Suite 1418                                           June 5, 2023
Washington DC 20002

DLG Trust PLLC, a company                    Case No. **AR2023-02-200**

                    Claimant,

            v.                               **Special Interrogatories**

Xin Zhang, an individual,                       Next Hearing Date:    06/26/2023
                    Respondent.                 Time: 1PM EST
                                                Arbitrator: Mr. C. Milton Powell

**PROPOUNDING PARTY:**          **DLG Trust, PLLC**

**RESPONDING PARTY:**          **Xin Zhang**

**DISCOVERY SET NO:**          **ONE**

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

Pursuant to the New Mexico of Civil Procedures ("NMCP"), DLG Trust, PLL (The "Firm"), and their respective counsel hereby requests that Defendant Xin Zhang, (collectively "Defendant" or "Propounding Party") within 14 days of service, Xin Zhang respond in writing, under oath and penalty of perjury, to each of the following special interrogatories. If no stipulation is made an email cc'ing the arbitrator in this matter will be deemed the appropriate manner of conveying the requested documents and statements.

## REQUESTS FOR ADMISSIONS

**Request for Admissions:**

**Special Interrogatory No. 1:**

State why YOU believe you have a lawful right to the funds used to pay the Firm.

**Special Interrogatory No. 2:**

Explain why you never included any claim for funds remitted by Maywind Trading to G-Service in the Comerica litigation.

**Special Interrogatory No. 3:**

Explain where the funds used to pay the Firm originated from.

**Special Interrogatory No. 4:**

Explain, in detail, the transactions, communications, payments, receipts, defaults, and ongoing correspondence regarding any funds used by third parties to pay the Firm

**Special Interrogatory No. 5:**

Explain, in detail, what the basis for the video call on or around July 12th, 2021 with the Firm. Specifically, any reasons provided for no longer wanting to pursue the class action.

**Special Interrogatory No. 6:**

State what YOU mean when YOU state that funds were received from "smaller investors".

**Special Interrogatory No. 7:**

Explain YOUR involvement with any of the funds used to pay the Firm and where they were derived.

**Special Interrogatory No. 8:**

State what you mean when you reference "farms".

**Special Interrogatory No. 9:**

State any involvement that YOU had with ANY respective farms.

**Special Interrogatory No. 10:**

Explain whether you were contacted by any Federal agency regarding YOUR involvement with the illegal sale of securities, securities fraud, money laundering, wire fraud or investigations of other crimes of the sort.

**Special Interrogatory No. 11:**

Explain the basis for any statements you've made regarding not knowing that Mr. Vadasz was licensed only out of DC and New Mexico (formerly).

**Special Interrogatory No. 12:**

Explain why you refused to sign any document stating that the funds used to pay the Firm were not tainted or otherwise derived from unlawful conduct.

**Special Interrogatory No. 13:**

Explain why you could not answer questions in an in-person meeting held on August 6, 2021 with Mr. Vadasz regarding where the funds originated, if you were the lawful owner of those funds.

**Special Interrogatory No. 14:**

Explain what you meant when you stated that you were going to go to prison during an in person meeting on August 6th, 2021.

**Special Interrogatory No. 15:**

Explain what you meant when you stated that you never received any invoices or any accounting from the Firm during the entire time that you were represented.

**Special Interrogatory No. 16:**

State each and every physical address that you have held in the last 7 years, excluding any PO Boxes. Specifically, list each and every location where you have physically resided.

**Special Interrogatory No. 17:**

State whether you have received a complete and full copy of your client file.

**Special Interrogatory No. 18:**

State each and every time you have communicated with harmed class members.

**Special Interrogatory No. 19:**

State your methods of contacting each underlying class member and the dates of which you attempting contacting them, as well as the primary basis for doing so.

**Special Interrogatory No. 20:**

Admit that you had actual knowledge that the funds used to pay the Firm are not and never were in fact your lawful funds.

Dated:    June 4th, 2023

By:    _____
         Gabriel Vadasz, Esq.
         Attorney for DLG Trust, PLLC

**Exhibit 15      Vadasz's Notice of Claim & Final hearing (6/29/2023)**



DIAMONDBACK
LEGAL

712 H Street, N.E. Suite 1418
Washington DC 20002

**VIA PROCESS SERVER & REGULAR MAIL**

Xin Zhang
3476 Southwest 73rd Way
Gainesville, FL 32608

> Re:   **DLG Trust, PLLC v. Xin Zhang**
> **Reference Number ARB#2023-03-100Z1**
> **Notice of Claim & Final Hearing**

Mr. Zhang:

*[handwritten: 6/29/23 | 8:50 SH CPS 2021-005]*

As we are sure that you are aware, your complaints have initiated an arbitration against yourself

and other relevant parties. Per our agreement that you and other relevant parties signed, the Firm

is of the position that you are in a material breach of contract and that you must fully perform.

Additionally, because you have continuously attempted to sway the direction of the Firms' clients

for your own personal benefit, we are also suing you for tortious interference of contractual

relations. To date you owe the Firm $1,706,886.21, excluding any other expenses incurred. The

Firm believes that to avoid your interference with active cases, the appropriate remedy is to

accelerate your performance and render the full balance due. Further, the Firm is seeking punitive

damages in the amount of three times this because of your bad faith actions. If you would like to

discuss this matter further, we are not opposed to do so, but strongly encourage you to seek the

advice of counsel. We are also willing to proceed with mediation to put this matter to a close.

Please direct future correspondence to the arbitrator/ arbitration panel in this matter provided by the Law Office of Milton Powell.

C. Milton Powell, Esq.
Email: agooddclawyer@gmail.com
1420 N Street, NW, Suite #102
Washington, D.C. 20005

The exact questions posed to the arbitrator are as follows:

1. Whether [Name Remitted 1] and [Name Remitted 2] are bound by the contract signed by Zhang, when Zhang was operating under their direction and with fraudulent intent.

2. Whether a third-party payor that agreed to fund a lawsuit, acting in bad faith, can impact the representation of other clients by unilaterally attempting to end the cause of action on the client's behalf.

3. Whether the reasonableness of fees can be evaluated before the conclusion of the representation. In the alternative, whether the bad faith acts would accelerate performance due under the contract, otherwise rendering an analysis of fee obsolete because the full balance under the contract would become due. In the alternative, whether the overall assessment of fees remitted to the trust ($2MM + Expenses) for the Class Action was reasonable.

4. Whether the Respondents are liable for the intentional tort of Intentional Interference With Contractual Relations.

5. Whether all respondents should be required to pay the costs of the arbitration.

You have contacted the arbitrator seeking that the hearing originally scheduled for the June 2nd, be moved to June 26th at 1PM EST. Despite contentions from DLG Trust, the arbitrator did so. After doing so, you failed to enter your appearance and then failed to appear once more. You also failed

77

78

to participate in any of the discovery proceedings that were also served onto you at your requested in email address. At this juncture, another hearing was scheduled for July 10th at 1PM EST. If you would like to participate, you are required to enter your appearance. No costs will be assessed at this juncture since DLG Trust has paid for the arbitrations in full. The Firm is, however, seeking to recover these costs at a later date.

If any questions arise, please direct them at Mr. Powell. If you seek to resolve this by means of settlement, feel free to contact the Firm in writing. We look forward to resolving this matter in an amicable fashion.



**DIAMONDBACK**
LEGAL

712 H Street, N.E. Suite 1418
Washington DC 20002

## VIA PROCESS SERVER & REGULAR MAIL

Xin Zhang
3476 Southwest 73rd Way
Gainesville, FL 32608 (Residence)

Or,

5123 N 43rd Pl
Phoenix, AZ 58018 (Place of Business)

> Re:   DLG Trust, PLLC v. Xin Zhang
> Reference Number AR#2023-02-200
> Notice of Final Hearing

Mr. Zhang:

As we are sure that you are aware, your complaints have initiated an arbitration against yourself and other relevant parties. Pursuant to your complaint to the Arizona bar, this arbitration was initiated to make a determination regarding the reasonableness of the general scope fee agreement and the G-Service fee agreement. The arbitration date was tentatively set for June 2nd at 1PM EST. You contacted the arbitrator seeking an extension of the hearing to June 26th at 1PM EST. Services were to be held virtually but may have been in person, in Arizona if requested. If another extension is needed for any reason, do not hesitate to let us or the arbitrator know. A final decision will be rendered by July 14th, 2023 if you do not contact the arbitrator and show good cause for why you missed the hearing once more. Additionally, you will be required to enter your

79

appearance in order to reschedule the matter further. Once you do so, briefs and evidence will be shared by all respective parties. You will also be required to participate in good faith in discovery, just as you would if the bar chooses to proceed with charges. These proceedings are no different and provide for an expeditious resolution to your disputes.

The Firm is seeking to have the costs of arbitration recovered by means of these proceedings. If you would like to discuss this matter further, we are not opposed to do so, but strongly encourage you to seek the advice of counsel. We are also willing to proceed with mediation to put this matter to a close. Please direct future correspondence to the arbitrator/ arbitration panel in this matter provided by the Law Office of Milton Powell.

C. Milton Powell, Esq.
Email: agooddclawyer@gmail.com
1420 N Street, NW, Suite #102
Washington, D.C. 20005
The exact questions posed to the arbitrator are as follows:

1. Whether you (Zhang) can raise a claim for whether the fees are reasonable.

2. Whether the rules of DC govern the fee structure applied in this scope of representation.

3. Whether you (Zhang) and other third party payors were informed in writing of the expenses to be incurred by the representation.

4. Whether you (Zhang) have standing to assert any claim to the fees.

5. Whether all respondents should be required to pay the costs of the arbitration.

If any questions arise, please direct them at Mr. Powell. If you seek to resolve this by means of settlement, feel free to contact the Mr. Vadasz on behalf of DLG Trust in writing. We look forward to resolving this matter in an amicable fashion.

80


**DIAMONDBACK**
LEGAL

712 H Street, N.E. Suite 1418                                                    June 28, 2023
Washington DC 20002

Re:    **Reopening Arbitration Proceedings**
       **Reference Number AR#2023-02-100**

### Final Notice

Mr. Zhang, please be advised that the Firm has opted to proceed with the arbitrations on the dates that you stated you would be available. Per your request, matter AR#2023-02-100 will be reopened once you enter your appearance and provide the documents requested of you for a meaningful participation. The proceedings were held at your request on June 26th, 2023 via Zoom. To participate in these proceedings, you needed to enter your appearance. Doing so required that you sign an engagement sent by the arbitrator. You have once more failed to participate in the hearings, despite the matter being reopened at your request. The Firm covered the expenses of the arbitrations to ensure that money is not a deterrent for you. Despite covering these expenses, the Firm seeks to be reimbursed. Once you enter your appearance, the arbitration briefs and evidence relied on will be provided to you. This is done to protect confidentiality of the materials contained therein. The next scheduled hearing will take place on July 6th, 2023 at 1PM EST.

If you do not enter your appearance with the arbitrator, this final proceeding will continue in your absence and will not be reopened again. Failing to do so could very well result in an adverse decision to your interests in the matter. Once more, the payment for the arbitration has been

Page 1

81

rendered by the firm and will not be necessary from you. Notwithstanding, the Firm seeks to be reimbursed for the proceedings at the conclusion, if successful.

The core issues posed once more in this specific arbitration are as follows:

1. Whether [You] are entitled to dispute the reasonableness of the fees assessed in this case.

2. Whether a third-party payor that agreed to fund a lawsuit can impact the representation of other clients by unilaterally attempting to end the cause of action on the client's behalf.

3. In the alternative, if the arbitrator finds that [You] can dispute the reasonableness of fees, then whether the fees assessed were reasonable.

The core issue predicating this dispute is that you are not, and at no point were, the lawful owner of the funds used to pay the Firm.

By filing a grievance with the Arizona Bar (the "Bar"), claiming a wide range of improper conduct on the part of Mr. Vadasz, you have waived attorney client privilege as it relates to these foregoing issues. For all purposes relevant to these proceedings, you mainly alleged that the Firm refused to remit any "unearned" fees to you and that the fees earned were also unreasonable. The arbitrator in this matter is, once more, specifically tasked with determining whether these claims hold merit as it relates to your rights to funds paid to the firm.

It is the firms positions that the fees assessed were reasonable and that you have no lawful right to the funds used to pay the firm. If you have any proof to substantiate a claim to the funds, the firm is amenable to changing their position in the event that you proffer it.

This matter will be reopened on the next hearing date due to your contentions regarding notice. Despite being adequately served, the Firm wants to make sure that the rights of all parties are adequately met. Accordingly, by providing timely discovery, as served onto you, a signed engagement with the arbitrator, a written explanation regarding you were unable to appear until

Page 2

82

now and a written acknowledgment regarding fees the firm is amenable to reopening this matter. Please note, that no further delays are believed to be warranted at this juncture. As such, this will be the last notice regarding this specific matter. In the event that you fail to respond or appear, the Firm will move to confirm the award rendered.

Additionally, please note that a motion to correct the previously issued award has been submitted and is currently pending. The motion does not make any material changes, but instead simply adds remarks and formatting recommended by the Arizona bar. Despite this modification and a reopening of the case, any award consistent with previous awards will be backdated to the original award. Alternatively, any materially altered awards will be dated on the day they are rendered. If you'd like a copy of any of the responsive pleadings, notices, or other documents, simply enter your appearance, at no cost to you and they will be forwarded.

If you have any additional questions regarding the claims made against you, we are happy to provide such information in the absence of you entering your appearance, with limitations to protect confidentiality.

Page 3

83

**EXHIBIT D**

## State Bar's Response to Complainant's Objection
## to the Consent Agreement

Preliminarily, the State Bar notes that the proposed Consent Agreement provides the maximum degree of discipline the State Bar can impose on a non-member. Notwithstanding this fact, The State Bar contends that a reprimand is the appropriate discipline given the conduct addressed.

### Complainant's Concerns re: Invoices

Regarding Complainant's concerns about fabricating and altering invoices, Respondent's initial counsel stated the class action "invoices" are "at least partly reconstructed . . . because there was no need to actually invoice the [class action] 'fees.'" He stated that was the case because the fee for class action representation was in-part based on a flat fee and in-part a contingency fee. Respondent's initial counsel also stated that Respondent sought Lewis Roca's help when preparing the invoices for the class action case for the following reason: Respondent, Complainant, LaFrenz Wei (aka Sara) and Jian Peng (aka PJ) were all on a Zoom call (apparently after Respondent received the funds) during which it was stated that the money Respondent received from Complainant/G-Service was illicitly obtained in one of two ways: either through the sale of unregistered securities or by stealing the money from Miles Guo (the Chinese billionaire they intended to sue); Sara and PJ told Respondent the SEC wanted him to put together an invoice with all the line items and expenses they had incurred and to return all unearned funds. Respondent hired Lewis Roca to assist in preparing the class action invoices because he wanted to show the SEC what he believed Diamondback Legal had earned and to justify expenses incurred prior to discovery that the origin of the funds was illegal.

Respondent's initial counsel stated:

> When the firm was putting together the invoice and expenses to [sic] the SEC, initially it was put together and framed in a way to support any expense endured contractually resulting from [Complainant] as if the firm had to see the contract through [to] its finish. This was later rectified[,] and the invoiced expenses were accounted for more thoroughly with the help of the firm's staff, its book keeper [sic], Lewis Roca and even [Complainant] (in part).

(Parenthetical in original).

### Complainant's Concerns about Unreturned Funds

Respondent's counsel said Respondent has not refunded any unearned fees to Complainant because there is conflicting evidence regarding the source of the funds (Complainant informed Respondent at one time that the funds belonged to him, but later stated that he had borrowed the funds from MayWind Trading, LLC). In addition, the SEC is presently investigating the source of funds that Complainant used to operate G-Service. For possible liability reasons, Respondent does not intend to return the unearned fees to anyone until the SEC permits their return. He stated the SEC requested that an interpleader of unearned funds not be filed until it has completed its review of "the massive document production" that was made in response to an SEC subpoena.

Respondent's initial counsel said Respondent spoke with the Washington, D.C. Bar regarding the funds he continued to hold from the class action case. He said they agreed with Respondent's analysis and told him to interplead the funds. He immediately hired Lewis Roca to file an interpleader. Shortly thereafter, the SEC issued a subpoena for Diamondback Legal's

financial documents regarding the case. According to counsel, Complainant authorized release of the information. Thereafter, Lewis Roca had a telephone conversation with the attorney at the SEC, at which time Lewis Roca was instructed not to file the interpleader at that time. He stated the SEC attorney told them that the SEC would instruct them on when to file an interpleader. Counsel said that advice was given presumably because the SEC had several active investigations pending against Respondent's clients that would become public if an interpleader were filed identifying them and Miles Guo, a Chinese billionaire, as defendants.

Respondent's initial counsel also stated:

> The fees have not been returned because [Respondent] Vadasz was told not to return them by the DC ethics hotline – this is because [Complainant] Zhang stated the funds were not his. The funds were not interpleaded because the SEC advised and counseled [Respondent] Vadasz to not interplead the funds. Such direction seems consistent with the Federal Agents direction in the Comerica case. The D.C. Ethics hotline further analyzed that maintaining the funds at the direction of the Federal government was appropriate under E.R. 1.15, Comment 10 and E.R. 3.4(a). Senior ethics counsel for the D.C. bar further explained that doing anything contrary to the direction of the Federal government in this matter will likely be construed as an obstruction of the government[']s access to evidence in a matter that is evidently ongoing.

<u>Alleged Inappropriate Use of G-Services Funds</u>

The State Bar has not received any evidence that Respondent is inappropriately using the funds he has held in trust until their disposition can be arbitrated, the superior court enters an order, or the SEC gives direction to Respondent regarding release of the funds.

<u>Complainant's Concerns re: Taxes Included on Invoices</u>

Complainant's concerns about the inclusion of the payment of Diamondback Legal's taxes is a civil legal issue that can be addressed in pending private (non-State Bar) fee arbitration proceedings. Although Diamondback Legal's Engagement Letters did not address the payment of the firm's taxes as part of the legal fee charged, it was included in the invoices made available to Complainant. Also, according to Respondent's initial counsel, there were allegedly preliminary discussions regarding that "fee" prior to the firm being hired. Respondent's counsel's assertion that Diamondback Legal never transferred funds to its operating account for about one-half of the taxes. The firm's August 14, 2021 invoice, however, stated that the funds were transferred to the operating account on August 26, 2021. Additionally, Respondent contends that the inclusion of the taxes was compliant with the DC's Rule 1.5, as the District of Columbia Bar does not require expenses to be reasonable, just that they be communicated to the client in writing, which was done with the invoices that Respondent provided to Complainant.

<u>Complainant's Concerns re: "Invoices" without Descriptions of Work</u>

It appears that Complainant conflates "invoices" with the "Payment Receipts" he received when Diamondback Legal transferred funds from its trust account to its operating account.

<u>Complainant's Concerns re: Alleged Use of Attorney's Fees to Pay G-Service Payroll</u>

Monies held by Diamondback Legal for attorneys' fees were not used to pay G-Service Payroll as claimed. As discussed in paragraphs 11-15 of the Consent Agreement, Diamondback Legal,

on behalf of G-Service, filed a motion in the Comerica/G-Service interpleader action requesting a distribution of $221,635.23 of the funds interpleaded by Comerica Bank to pay G-Service' bills. The Court ordered the distribution and further ordered that the distributed funds be used to pay G-Service's bills. Diamondback Legal did so in the amount of $151,754.86. Thereafter, Diamondback Legal returned the undisbursed $78,379.95 to the Clerk of the Court.

When the Court released the funds, they were deposited into Diamondback Legal's trust account, but were accounted for on the firm internal management software as funds under Complainant's name. Once the SEC raised concerns regarding the propriety of the funds paid to Diamondback Legal from Maywind Trading, LLC and AEON Capital, LLC, Diamondback Legal separated the two respective funds to include funds remitted for attorneys' fees and funds released by the Court. Diamondback Legal's invoices initially accounted for both; however, once the SEC issues arose and the funds internally segregated, an invoice specifically documenting payment of G-Service bills in the amount of $151,754.86 was issued. G-Service's bills were only paid out of funds distributed from the Comerica/G-Service interpleader action.<u>Respondent's Alleged Failure to Distribute Funds Released</u>
<u>to Him by the Superior Court</u>

The State Bar's investigation revealed that Respondent made payments authorized by the Maricopa County Superior Court and then returned the funds he could not distribute to the court (the return of funds to the court without the use of a trust account check is one of the violations in the consent agreement that Respondent has agreed he committed).

<u>Complainant's Concerns re: Diamondback Legal's Fees</u>

The State Bar is unable to determine whether certain fees received by Diamondback Legal in the various matters were reasonable (Respondent asserts that Complainant approved the various expenditures and fees related to the class action case). Therefore, the issue of fees should be addressed in the pending private arbitration.

<u>Complainant's Concerns re: Pending Private Arbitration</u>

Complainant's concerns about the private arbitration process, including the adequacy of service of process, should be addressed in that forum and/or in any subsequent court proceeding. However, Respondent has provided satisfactory evidence to the State Bar that Respondent initiated fee arbitration proceedings and Complainant was provided with notice of the pending fee arbitration proceedings. Additionally, Complainant's objection acknowledges that he has been in contact with the arbitrator regarding these matters. This disciplinary proceeding is not the proper forum, in the first instance, to address issues, if any, regarding the parties' fee dispute or the contractually required arbitration to resolve such disputes. *In the Matter of Connelly*, 203 Ariz. 413, 55 P.3d 756 (2002). Respondent has provided the State Bar with documents where service of process was attempted for notice of the proceedings, but Complainant or his spouse may have attempted to evade service and mislead process servers. Thereafter, Respondent and the arbitrator agreed to reopen proceedings and add additional neutrals if the Complainant sought to participate in good faith. These matters are subject to the forums in the appropriate State(s) and/or Federal Courts. See 9 U.S.C. §§1-16; See also NM Stat § 44-7 (1996 through 1st Sess. 50th Legis); See also Ariz. Rev. Stat. § 12-3001–12-3029.