WO

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mountains of Spices LLC, | No. CV-21-01497-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Sara Lihong Wei Lafrenz, | |
| Defendant. | |

Pending before the Court is Defendant Sara Lihong Wei Lafrenz motion to set aside the judgment. On June 18, 2024, the Court issued the following Order calling for supplemental briefing on the motion.

**I.    Do the Standards of Federal Rule of Civil Procedure ("Rule") 55(c) Apply to all Subsections of Rule 60(b) if there was a default judgment?**

Pending before the Court is Defendant Sara Lihong Wei Lafrenz's motion to set aside the judgment. (Doc. 143). Defendant moves under Federal Rules of Civil Procedure 55(c) and 60(b). (Doc. 143 at 1). Rule 60(b) has six distinct subparts. Defendant fails to specify which subsection she would argue applies to this case. (*See* Doc. 143). Instead Defendant generally references (without citation to any law), "newly discovered evidence," "misconduct by a party" and "fraud." (Doc. 143 at 1).

Newly discovered evidence falls under Rule 60(b)(2). Fraud and/or misconduct by an opposing party falls under 60(b)(3). Plaintiff, in its response, assumes by her reference to Rule 55(c), Defendant is also moving to set aside for good cause/excusable neglect under 60(b)(1). (Doc. 151 at 10).

Pursuant to Rule 55(c), a district court may set aside the entry of default upon a showing of good cause. **Once default judgment has been entered, relief is governed by Rule 60(b).** Where a defendant seeks relief under Rule 60(b)(1) based upon "excusable neglect," the

court applies the same three factors governing the inquiry into "good cause" under Rule 55(c). *Mesle,* 615 F.3d at 1091. Those factors, which courts consistently refer to as the "*Falk* factors," are: (1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default. *Falk v. Allen,* 739 F.2d 461, 463 (9th Cir. 1984).

*Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1110 (9th Cir. 2011) (emphasis added).

Plaintiff seems to believe that 55(c)'s good cause requirement is a threshold inquiry for setting aside a judgment if the case concluded by default. (Doc. 151 at 18 ("…because…Sara has failed to demonstrate the existence of any of the elements of finding good cause under Rule 55(c), such payments cannot justify vacating the default judgment against her regardless of whether any elements of the prongs of Rule 60(b) are met.").   In other words, Plaintiff argues that relief under Rule 60(b)(3) based on fraud is unavailable if 55(c) cannot be met. (*Id.*).   The Court finds no support for this argument in the caselaw.

Excusable neglect under Rule 60(b)(1) (applying the same standard as good cause under Rule 55(c)) is a basis to set aside a default judgment, but any basis under Rule 60(b) could provide relief. *See Castro v. C&C Verde LLC,* No. CV-18-4715-PHX-SMM (JZB), 2022 WL 17528196, at *4 (D. Ariz. Dec. 7, 2022) (setting aside default judgment under Federal Rule of Civil Procedure 60(b)(4) without first considering good cause/excusable neglect); *Campbell v. Fernando-Sholes*, No. CV 05-0880-PHX-SMM, 2009 WL 2030561, at *10 (D. Ariz. July 9, 2009) (considering whether relief was justified under Federal Rule of Civil Procedure 60(b)(3) independent of whether relief was justified under Federal Rule of Civil Procedure 60(b)(1)).   As another court has stated,

Under Rule 60(b)(4), a default judgment may be set aside where the judgment is void. Fed. R. Civ. P. 60(b)(4). A default judgment is void where the court lacks personal jurisdiction due to insufficient service of process. *S.E.C. v. Internet Solutions for Bus. Inc.*, 509 F.3d 1161, 1165 (9th Cir. 2007). Unlike a motion to set aside default judgment for equitable reasons, there is no discretion for a district court to exercise under Rule 60(b)(4); either a judgment is void or it is valid. *Thomas P. Gonzales Corp. v. Consego Nacional de Produccion de Costa Rica,* 614 F.2d 1247, 1256 (9th Cir. 1980). **Therefore, a district court need not consider the merits of the defense, prejudice to the plaintiff, or culpability of the defendant under Rule 60(b)(4).** *Internet Solutions,* 509 F.3d at 1165.

*Eclipse Grp. LLP v. Fortune Mfg. Co.*, No. 14CV0441-GPC-WVG, 2014 WL 6907897, at *1 (S.D. Cal. Dec. 8, 2014) (emphasis added).

Thus, given that the Court must consider Movant's arguments independent of the *Falk* factors, the Court will require supplemental briefing from Plaintiff.   Specifically, the overarching argument of Movant's motion is that she has already paid Plaintiff the full amount of the judgment.

For purposes of default judgment, factual allegations are taken as true, damages allegations are not. *Geddes v. United Fin. Group*, 559 F.2d 557,

- 2 -

560 (9th Cir. 1977). In Plaintiff's response, Plaintiff never fully addresses exactly which funds were transferred to Sara, and which of those funds have now been recovered by Plaintiff (even if the funds were recovered from other entities to whom Sara may have transferred those funds). Plaintiff is not entitled to a duplicate recovery of the same money. And the burden of showing damages on default is on Plaintiff. Therefore,

**IT IS ORDERED** that, within 14 days of this Order, Plaintiff must supplement its response (Doc. 151) with an accounting of all monies sent to Sara (including dates and methods of transfer) and all monies recovered to date from its various collection efforts.[1] The Court is not seeking supplemental briefing or argument. Just an accounting (verified by a person with knowledge) of all monies transferred to Sara, and all recovery of those monies. Sara may respond to the accounting within 7 days of when it is filed.

(Doc. 154) (footnote in original).

## II.    Sara's Relationship to Other Entities

The Court has now reviewed the supplemental briefing. Plaintiff conflates any money sent to Maywind Trading LLC (hereinafter "Maywind") as money owed by Defendant Sara Lihong Wei Lafrenz's (hereinafter "Sara"). This raises two issues.

First, because Maywind could not continue in this case without destroying diversity, Plaintiff chose to voluntarily dismiss Maywind. (Doc. 102). Thus, Maywind is no longer a Defendant in this case. Sara argues she is not liable for money sent to Maywind in her most recent filing. (Doc. 156). However, in Doc. 84, the Court found Sara and Maywind jointly and severally liable. As indicated above, at that time, Sara and Maywind were both Defendants, and both in default. For purposes of the Order at Doc. 84, the Court assumed all facts as alleged by Plaintiff to be true, as the Court is required to do in a default situation. (Doc. 84 at n.1 citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). Plaintiff alleged, repeatedly, that Sara controlled Maywind and transferred money from Maywind to herself and entities she controlled, and thereafter engaged in self-dealing. (Doc. 84 at 4-5, 8, 10). Thus, the Court has accepted that Sara is liable for amounts transferred to Maywind. (Doc. 84). The Court will not set aside this conclusion unless Sara can meet the standards of Rule 60(b) as discussed in detail below.

---

[1] In determining the amount of damages in the Order at Doc. 84, the Court did not consider that some of the money owed by Sara might have already been recovered; nor did the Court do such a calculation upon the entry of judgment.

1    Second, two other entities G-Service, LLC ("G-Service") and Aeon Capital LLC

2   ("Aeon"), have repaid to Plaintiff more money than this Court found was owed to Plaintiff

3   in this case.  However, Plaintiff, by its filing at Doc. 151, argues that Sara should not get

4   "credit" for any money returned to Plaintiff by those entities.  Plaintiff does not explain

5   why Sara should not receive credit for any money paid back by G-Service and Aeon.

6   Indeed, Plaintiff admits that the money it received from G-Service ($3,508,872.00) was

7   money Sara transferred from Maywind to G-Service.  (Doc. 151 at 4).  Additionally,

8   Plaintiff admits that the money it received from Aeon ($4,630,416.58) was money

9   transferred from Maywind to Aeon. (Doc. 151 at 5).  Given that the money owed by Sara

10  all comes from transfers to Maywind, and Aeon and G-Services have refunded to Plaintiff

11  money that came from Maywind, the allegedly "newly discovered evidence" (namely the

12  $8,136,288.58 paid to Plaintiff by these other entities) raises a question of whether Sara

13  still owes Plaintiff the amount of the judgment.

### III.    Rule 60(b)(2)

15       "Newly discovered evidence" has a particular meaning under Ninth Circuit law.

16      "Relief from judgment on the basis of newly discovered evidence is
17      warranted if (1) the moving party can show the evidence relied on in fact
         constitutes 'newly discovered evidence' within the meaning of Rule 60(b);
18      (2) the moving party exercised due diligence to discover this evidence; and
         (3) the newly discovered evidence must be of 'such magnitude that
19      production of it earlier would have been likely to change the disposition of
         the case.'"

20  *Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003) (citation

21  omitted).  Evidence is not "newly discovered" under Rule 60(b)(2) if it was in the moving

22  party's possession at the time of judgment or could have been discovered with reasonable

23  diligence.  *See Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 212 (9th

24  Cir. 1987).  Further, Rule 60(b)(2) limits newly discovered evidence to "…evidence that,

25  with reasonable diligence, could not have been discovered in time to move for a new trial

26  under Rule 59(b) [which is 28 days from the entry of judgment.]"

27       Here, most of this evidence is only "newly discovered" to the Court.  Specifically,

28  Sara cites to the $3,508,872.00 recovered by Plaintiff from G-Service in the Maricopa

County case.  (Doc. 143 at 2).  However, that payment was ordered by the superior court in a public record and made on November 7, 2023, before judgment entered on January 4, 2024, in this case.  Both parties were aware of the parallel case when the bank interpleaded the money in 2021 and no party could access it.  (Doc. 155 at 2).  Thus, this "new evidence" of a court order in a public record, in a case the parties were aware of, that occurred almost two months before the entry of judgment in this case is not "newly discovered" within the meaning of Rule 60(b)(2).

Next, the payment of $4,630,416.58 of money belonging to Aeon occurred after Sara filed her first motion to set aside the judgment in this case.[2]  When Sara filed her second motion (which seems to mirror the first motion), she did not reference this payment.  Thus, this payment cannot be the basis of the motion to set aside.  Additionally, such payment would not make the judgment in this case "incorrect" on the date the judgment was entered.  Such payment (if attributable to Sara) would instead be evidence that the judgment has been satisfied.[3]  Thus, the Court will not consider this payment as a basis to set aside the judgment.

Finally, the various other evidence[4] Sara offers dates back to before the judgment in this case was entered and was all a matter of public record in other courts.  (*Id.*).  These other cases were also known to the parties before the entry of judgment.  Sara argues it was fraud or misconduct for Plaintiff to not disclose these cases to the Court.  However, Plaintiff notes that it has advised the Court of the existence of the parallel Maricopa County case since 2021.  (Doc. 155 n.1).  The other recovery was nothing more than a potential future payment at the time judgment entered, so there was nothing to disclose.  Finally, the

---

[2]  The Illinois court ordered the payment on February 13, 2024; Sara filed her first motion to set aside the judgment on February 8, 2024.

[3]  The Court accounted for such a future possibility in Doc. 84 when it specified that Plaintiff would be barred from receiving a double recovery.  (Doc. 84 at 5).

[4]  The evidence includes actions in other court cases that occurred on January 3, 2024 and March 15, 2023.  (Doc. 143 at 2).  While perhaps the January 3, 2024 court filing could not realistically have been discovered before judgment entered in this case on January 4, 2024, it certainly could have been discovered within 28 days of January 4, 2024 with the exercise of reasonable diligence.

information in the other cases does not seem to bear on liability in this case.[5]  Thus, the Court concludes that Sara cannot set aside the default judgment under Rule 60(b)(2) because she has not presented any evidence that qualifies as "newly discovered" evidence.

## IV.    Rule 60(b)(1)

To the extent Sara's reference to Rule 55(c) should be liberally construed as a motion to set aside the judgment under Rule 60(b)(1), Plaintiff argues that Sara cannot meet the test for setting aside default under Rule 55(c), which is the same test the Court applies to motions under Rule 60(b)(1), because of her culpable conduct.  As quoted above from the prior Order, the test is: (1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default. *Falk v. Allen,* 739 F.2d 461, 463 (9th Cir. 1984).

Prongs 1 and 3 clearly favor Plaintiff.  Plaintiff will be prejudiced to have to start anew its efforts to recover this money in 2024 in a case that was filed in 2021.  Additionally, Sara's culpable conduct clearly led to the default.

Notably, Sara does not dispute Plaintiff's assertions that she has been aware of this case almost from the beginning.[6]  Instead, Sara argues that she did not appear because she was in hiding because she was "afraid" of people affiliated with Plaintiff.  (Doc. 143 at 1). However, nothing as changed since the beginning of this case to embolden Sara to no longer be afraid.  Instead, she waited until judgment was entered against her, and collection efforts began, to move to set aside the judgment.  The Court finds Sara's "excuse" to be at best unpersuasive, and at worse, untrue.  Therefore, Sara knew of this case, and intentionally evaded this case.  Sara now appears in this case, seemingly solely for the

---

[5]    For example, Sara offers evidence that the Federal government has brought claims against people allegedly affiliated with Plaintiff for defrauding various people.  (Doc. 143 at 2).  Sara seems to imply (without citation) that Plaintiff's affiliates' alleged actions should absolve Sara from defrauding Plaintiff out of its ill-gotten gains. (Doc. 143 at 6). But Sara does not explain, and the Court cannot immediately guess, why Plaintiff having (allegedly) defrauded investors would mean Sara can then defraud Plaintiff.

[6]    Plaintiff has also submitted evidence, which the Court accepted as true for purposes of default, that Sara has admitted in various on-line forums (including videos) that she knew about this case. (*See* Doc. 70-1 at 66–67).  Additionally, the Court found Sara was intentionally evading service.  (Doc. 30 at 4).

purposes of delaying any collection efforts.[7]

The Court of Appeals has instructed regarding the *Falk* factors that: "This tripartite test is disjunctive….Hence, the trial court's denial of a motion to vacate a default judgment will be affirmed if the defendant's own culpable conduct prompted the default." *In re Hammer*, 940 F.2d 524, 525–26 (9th Cir. 1991). Thus, the fact that Sara engaged in culpable conduct that caused default, alone, is a basis to deny relief under Rule 60(b)(1).

Finally, the Court does not have enough information regarding prong 2 to determine if it favors setting aside default. Specifically, the Court does not know if Sara has a meritorious defense. In her initial filing, Sara argues that she has paid back this money. (Doc. 143). In response to Plaintiff's accounting as ordered by this Court, Sara adds an argument that Maywind received the money at the outset, not her. (Doc. 156). This Court previously found Sara and Maywind jointly and severally liable for the amounts owed to Plaintiff. (Doc. 84 at 22 (accepting Plaintiff's allegations as true on default)). Impliedly, Sara is now challenging this finding. On this record, the Court cannot determine if Sara's challenge is meritorious. Accordingly, the Court cannot determine if prong 2 favors Sara or Plaintiff.[8]

Based on the foregoing, Sara cannot show that she meets the disjunctive *Falk* factors. Thus, she is not entitled to relief under 60(b)(1).

## V.    Rule 60(b)(3)

---

[7] Moreover, even if Sara's claims of "fear" are true, Sara has cited no case, and the Court is aware of none, that allows a defendant to not participate in a case for two and a half years due to "fear" or intimidation by the opposing party; and then use that self-serving avowal of fear to undo an entire litigation.

[8] As indicated above, with respect to Rule 60(b)(2), the Court determined that Sara did not submit any "newly discovered" evidence; and, thus, denied relief under Rule 60(b)(2). Alternatively, the fact that this Court cannot determine if Sara has a meritorious defense means she did not establish the third prong for the test to set aside a judgment for newly discovered evidence; specifically: that the evidence was of such a magnitude that it would have changed the disposition of this case. The Court cannot tell if the Court considered all of Sara's evidence if she would nonetheless be jointly and severally liable for the missing money with Maywind. Thus, Sara has not submitted evidence of such a magnitude that it shows the result of this case would have been different. Accordingly, Sara has failed to meet her burden on this prong and relief under Rule 60(b)(2) is denied for this alternative reason.

Finally, the Court will consider Sara's claims of fraud and misconduct by Plaintiff.

> Rule 60(b)(3) permits a losing party to move for relief from judgment on the basis of "fraud, ... misrepresentation, or other misconduct of an adverse party." Fed. R. Civ. P. 60(b)(3). To prevail, the moving party must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense. *See Lafarge Conseils et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.,* 791 F.2d 1334, 1338 (9th Cir.1986); *Jones v. Aero/Chem Corp.,* 921 F.2d 875, 878–79 (9th Cir.1990). **Rule 60(b)(3) "is aimed at judgments which were unfairly obtained, not at those which are factually incorrect."** *In re M/V Peacock,* 809 F.2d 1403, 1405 (9th Cir.1987).

*De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000) (emphasis added).

There is no fraud or misrepresentation that prevented Sara from "fully and fairly presenting the defense". She elected to not participate in this case. Sara makes no argument to the contrary. Instead, she attempts to argue that, on the merits, certain money was never transferred to Maywind, or not transferred to ACA Corporation as it was supposed to be. (Doc. 143 at 2-3). However, Sara asking this Court to re-examine the evidence the Court relied on to reach its conclusions in Doc. 84 cannot be done at the Rule 60 stage. Sara's argument is nothing more than an alternative interpretation of that evidence, which is not a basis for Rule 60(b)(3) relief.

To the extent Sara argues that the Court's conclusions in Doc. 84 were the product of fraud by Plaintiff, no party has been completely transparent with the source of the money, the purpose of the money, or the ultimate end location of the money. (*See* Doc. 84 at 1-2). Thus, it has been very difficult for the Court to determine whether Sara indeed owes money to Plaintiff. Further complicating matters, Plaintiff at one point tried to recover additional money for unnamed "other" alleged investors. (Doc. 84 at 16). Although Plaintiff claims as much as $90,000,000.00 was transferred, there are no contracts, emails or other written records confirming any of these transactions. (Doc. 84 at 2, 17). And eventually, seven other pro se third parties attempted to intervene as Plaintiffs in this case (*see* Docs. 124, 129, 131, 134, 141) arguing Sara owed them money too through this (or a related) investment scheme. These pro se specifically disavowed that

- 8 -

1  Plaintiff was "representing" their interests.

2        Against this record, the Court dismissed many Defendants, reduced the amount of

3  damages to $4,550,000, and entered default judgment against Sara after presiding over this

4  case for two and a half years.  A party choosing, as Sara did, to not participate in this case

5  while all the other parties were conducting discovery and motion practice cannot prevail

6  by arguing that this Court's interpretation of the evidence was wrong.  As stated above,

7  Rule 60(b)(3) "is aimed at judgments which were unfairly obtained, not at those which are

8  factually incorrect." *In re M/V Peacock,* 809 F.2d 1403, 1405 (9th Cir.1987).  As the Order

9  at Doc. 84 shows, this Court made an earnest effort to unwind the transactions that underlie

10  this case. To reiterate, Sara's alternative interpretation of that evidence does not rise to the

11  level of fraud or misconduct that would justify setting aside the judgment.  Thus, Sara's

12  only path under Rule 60(b)(3) would be to argue that Plaintiff's misconduct prevented her

13  from participating.

14        As indicated above, Sara argues that people affiliated with Plaintiff intimidated her

15  into not defending this case. To support this argument, Sara attached various printed screen

16  shots of various internet interactions, most of which were in Chinese.  The Court has no

17  ability to verify the authenticity of the original post, nor the accuracy of the English

18  translation (when provided).[9]  Moreover, the Court has no ability to know whether the

19  various posts and comments (assuming they were truly made) are attributable to Plaintiff.

20  The Court has (as best it could[10]) reviewed Sara's 354 pages of exhibits attached to her

21  motion and additional 191 pages of exhibits attached to her reply, and none of them prove

22  intimidation or misconduct by Plaintiff specifically directed at Sara.[11]

23        Thus, Sara cannot show that the judgment should be set aside under Rule 60(b)(3).

---

24  [9]   Sara offered to send the videos themselves to the Court, but the Court has no ability to
25  authenticate or understand them.

[10]   In addition to many exhibits being in a foreign language, large portions of the exhibits
26  are redacted.

27  [11]   Moreover, the Court believes some of the screen shots are of videos Sara herself posted
28  (which then received comments).  Sara posting videos throughout this lawsuit undermines
her claim that she has been "in hiding" such that she could not mail filings to this Court.
(*See also* Doc. 151 at 7-9.)

## VI.    Motion to Seal

Sara also filed a motion to seal.  Sara redacted information in her public filing at Doc. 143.  (Doc. 143 at 9-10).  Sara argues that this information should be sealed not only from the public, but from Plaintiff.  (Doc. 145 at 1).  Thus, this is not just a motion to seal, but also a motion to submit arguments ex parte and in camera.  Plaintiff opposes the Court considering information Plaintiff has not received.  (Doc. 151 at 18, n.3).

The Court has reviewed the sealed, ex parte, redacted information.  (Doc. 146).  It does not change the outcome of this case and is largely disclosed elsewhere in the public version of the filing.  (Doc. 143 at 3).  Thus, while Plaintiff is likely correct that this Court should not consider this information ex parte, the Court will nonetheless grant the motion to "seal" and leave the unredacted document under seal because the information does not change the outcome of the case, and Plaintiff is not prejudiced.

## VII.    Conclusion

The Court has liberally construed Sara's motion to set aside the judgment and addressed all theories of relief she mentions even though she did not cite any subsection of Rule 60 or any caselaw to aid the Court's analysis.  The Court having concluded none of Sara's arguments entitle her to relief, the motion to set aside will be denied.

Because Sara is not entitled to relief from judgment under Rule 60, the Court is still left with the same issue from the beginning of this Order: given that the money owed by Sara all comes from transfers from Plaintiff to Maywind, and given that G-Service and Aeon have refunded to Plaintiff transfers they received from Maywind, Sara has at least raised an inference that the $8,136,288.58 paid to Plaintiff satisfied the $4,550,000 judgment from this case.

Plaintiff argues these payments do not satisfy the judgment citing cases that hold that the entry of a judgment against one joint-tortfeasor does not resolve a claim against another joint-tortfeasor.  (Doc. 151 at 17-18).  That may be true, but payment in full of the judgment satisfies the judgment as to all obligors. *See* Restatement (Second) of Judgments

§ 50 (1982) ("(2) Any consideration received by the judgment creditor in payment of the judgment debtor's obligation discharges, to the extent of the amount of value received, the liability to the judgment creditor of all other persons liable for the loss.").  As this Court stated in the Order at Doc. 84, Plaintiff is "barred from collecting a double recovery…." (Doc. 84 at 5 citing *Adelman v. Christy*, 90 F. Supp. 2d 1034, 1045 (D. Ariz. 2000)).[12]

Plaintiff has convinced two other courts to refund to Plaintiff $8,136,288.58 from transfers Plaintiff made to Maywind. (Doc. 151 at 4-5 wherein Plaintiff admits that the money held by G-Service and Aeon was transfers from Maywind).  Plaintiff makes no allegation that it directly transferred funds to G-Service or Aeon.  Thus, the Court cannot determine any basis of this recovery other than a refund of the transfers to Maywind.

Additionally, Plaintiff makes no allegation that it ever directly transferred funds to Sara.  (Doc. 151).  Thus, Sara's liability stems only from her transfer of funds out of Maywind.  Based on the evidence in this record, it appears to the Court that the judgment against Sara is satisfied because Maywind has effectively refunded to Plaintiff all money Plaintiff claims it transferred to Maywind.  (Doc. 155 at 2 (showing only $4,550,000 in transfers from Plaintiff to Maywind)).[13]

Thus, on this record, it appears the judgment is valid, but satisfied.  As a result, the Court will deny the application for writ of garnishment.

---

[12]  *See also Clark v. City of Tucson,* No. CV-14-02543-TUC-CKJ, 2020 WL 914524, at *19 (D. Ariz. Feb. 26, 2020) (noting that a plaintiff cannot recover twice for the same conduct by using multiple legal theories).

[13]  Given that Plaintiff can show only $4,550,000.00 in transfers to Maywind, the Court is unclear how Plaintiff has recovered over eight million dollars in other courts without already having achieved a double recovery.

    The Court notes that Plaintiff likely would dispute that there has been a double recovery by its statement that "… Sara [may not] cynically use MOS' attempts to recover its own members funds by taking legal action against her compatriots in other venues to avoid her own personal liability." (Doc. 151 at 3).  For purposes of diversity jurisdiction, Plaintiff (a limited liability company) alleged it had one member (Doc. 103 at 2), so the Court does not know who these "members" are.  Regardless, the Court has already ruled that Plaintiff may not recover for other unidentified investors, it may only recover for itself.  (Doc. 84 at 13 ("…the complaint fails to explain how third parties sending money to Maywind harmed Plaintiff, and otherwise fails to demonstrate Plaintiff's standing to sue for the return of that money.")).  Thus, for purposes of this Court's judgment, the Court will not hold Sara (or Maywind) liable for the money allegedly lost by "members" whose claims are not a part of this case.

As a final note, the Court has indicated multiple times throughout this case that a full accounting of all money that went through Maywind (from Plaintiff, or the seven pro ses that attempted to intervene in this case, or other transferors) and where all the money in Maywind ended up (with Sara, other Defendants herein, Six Pines, Aeon, G-Service or other entities) has never occurred.  If Plaintiff intends to ask this Court for relief from this Order, Plaintiff has to produce evidence, and as necessary come to an evidentiary hearing, to create such an accounting.  In so doing, Plaintiff must be prepared to show why the payments from Aeon and G-Service are not attributable to Maywind and Sara.

The Court is aware that Plaintiff and Sara have accused each other of various violations of federal law throughout the course of this case.  The parties are reminded that "in civil proceedings adverse inferences can be drawn from a party's invocation of [their] Fifth Amendment right."  *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000).

Based on the foregoing,

**IT IS ORDERED** that the motion to seal (Doc. 145) is granted.  Doc. 146, which is currently lodged under seal, may be filed under seal.  The Clerk of the Court shall also make a note that this document was received ex parte and that no one may receive a copy of it without an Order from this Court.

**IT IS FURTHER ORDERED** that the motion to set aside judgment (Doc. 143) is denied.

**IT IS FURTHER ORDERED** that the application for a writ of garnishment (Doc. 142) is denied.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    **IT IS FINALLY ORDERED** that the judgment at Doc. 127 is deemed to be

2  satisfied and Plaintiff cannot engage in collection efforts without first obtaining relief from

3  this Order.

4    Dated this 26th day of July, 2024.

5

6

7

8                                      James A. Teilborg
                                  Senior United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28